JH

**FILED**

J N

OCT 3 1 2007

*OCT. 31, 2007*

MICHAEL W. DOBBINS

CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

AYANNA WALKER, )
                         *Plaintiff,* )
                          )
      v. )
CALUMET CITY, ILLINOIS, )
                    *Defendant.* )
                         )
                         )
                         )

07cv6148
JUDGE SHADUR
MAG. JUDGE VALDEZ

**VERIFIED COMPLAINT FOR TEMPORARY**
**RESTRAINING ORDER, PRELIMINARY INJUNCTION,**
**PERMANENT INJUNCTION, DECLARATORY AND OTHER RELIEF**

Plaintiff Ayanna Walker ("Walker"), by her attorneys, Grippo & Elden LLC, for her

complaint against defendant, Calumet City, Illinois ("City") states as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action of injunctive, declaratory, and other relief, pursuant to

42 U.S.C. § 1983, and 28 U.S.C. §§2201 and 2202 to redress the deprivation, under color of law,

of rights guaranteed to Walker, by the United States Constitution and under Illinois law.

Plaintiff seeks declarations that certain provisions of Chapter 14 of the Municipal Code of

Calumet City, Illinois, (the "Code"), codified through Ordinance No. 06-68, enacted August 24,

2006, are unconstitutional.

2.      More particularly, Plaintiff seeks a declaration that Section 14-1 of Article I of

Chapter 14 of the Code (the "Point of Sale Inspection Ordinance," attached as Ex. A), is

unconstitutional because it (a) unreasonably and unconstitutionally restrains property owners'

right to sell their property without due process of law and (b) fails to provide procedural due

process.

137255v2

3.      Plaintiff requests immediate declaratory and injunctive relief by which the Court, among other things, would preliminarily and permanently enjoin enforcement of the Point of Sale Inspection Ordinance and declare it unconstitutional.

4.      Plaintiff challenges the constitutionality of the Point of Sale Inspection Ordinance on its face because it takes City owners' property rights, without due process. Walker has standing to bring this suit as a property owner in City. A judgment from this Court will redress the harm being suffered and directly advance and protect the interests of Walker.

**JURISDICTION AND VENUE**

5.      Plaintiff's claims arise under the United States Constitution. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

6.      City is subject to personal jurisdiction in this district and venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this district.

**PARTIES**

7.      Walker owns property in City located at 521-23 Greenbay Avenue. Walker's property contains four dwelling units. Each unit has passed City's annual inspections. The property is listed for sale and subject to the Point of Sale Inspection Ordinance. By virtue of its Point of Sale Ordinance, City has taken and interfered and continues to take and interfere with Walker's right to alienate her property, without due process of law.

8.      Defendant Calumet City, Illinois (the "City") is a unit of local government incorporated under the laws of Illinois. City is located in Cook County, Illinois.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

I.      **Summary Of Point Of Sale Inspection Ordinance.**

9.      The Point of Sale Inspection Ordinance (Ex. A) and other provisions of the Code provide that property can only be sold if City issues transfer stamps. Code §§ 82-325, 82-328.

2

In all but one instance,[1] the only way for sellers to obtain transfer stamps is to first obtain a final

or conditional "Certificate of Compliance" from City and to pay any outstanding water bill (even

if disputed). Code §§ 14-1(h); 14-1(i); § 82-327(b). City will issue a Certificate of Compliance

only if it decides that property "passed" a point of sale inspection. To "pass" an inspection and

obtain a Certificate of Compliance, a property owner must make all repairs (using a licensed

contractor) ordered by City after the inspection. *Id.*; *see also id.* at § 14-1(k).

     10.    The Point of Sale Inspection Ordinance has no due process safeguards of any kind

(and no appeal process). A property owner is not provided any opportunity to challenge City's

refusal to issue a Certificate of Compliance or the repair order issued by an inspector, before the

owner's right to alienate property is taken. Thus, property owners must capitulate to an

inspector's demands, even if the repair work is unnecessary from a public health or safety

standpoint, if they want to sell their property. In addition, the Point of Sale Inspection Ordinance

requires citizens to pay the water bill before City will issue transfer stamps. *Id.* at § 14-1(i).

Although the Point of Sale Inspection Ordinance states that an owner can dispute the water bill in

a "predeprivation hearing," the ordinance does not explain the due process protections, if any, of

such hearing and requires the owner to pay the bill "under protest" while he challenges it. Thus,

if a property owner wants to sell his property, he must capitulate and pay (albeit "under protest")

what City claims it is owed. *Id.* Otherwise, he will be unable to obtain the necessary transfer

stamp. *Id.*

     11.    The Point of Sale Inspection Ordinance does not restrict, in any way, the scope of

searches. Rather, City inspectors are permitted to search for *any* violation of City's codes

---

[1]    The only situation in which a Certificate of Compliance is not required to obtain transfer stamps is when an owner refuses his consent to an inspection and City fails to obtain a warrant to conduct the search. Code §14-1(f).

(regardless of whether the violation relates to health or safety issues) and the ordinance does not contain any limitations on the duration or location of inspections (*e.g.*, there is no limitation on inspectors searching bedrooms, closets, desks or other areas where private or personal property may be stored). In sum, City inspectors have unfettered discretion to search for as long as, and for whatever, and wherever they want.

12.     Under a similar prior ordinance (which was amended during the pendancy of related litigation filed by the Realtor® Association of West/South Suburban Chicagoland) City repeatedly stopped sales of property (by refusing to issue Certificates of Compliance) until property owners made "cosmetic repairs" unrelated to health, safety, and public welfare such as:

a.     Painting windows, tightening a loose soap dish, replacing a "decorative cover" on a vanity;

b.     Replacing floor tiles, tightening a loose soap dish, painting a bedroom wall, putting a "globe" on a light, painting a bathroom ceiling;

c.     Repairing closet doors, painting door trims, repairing kitchen cabinets; and

d.     "Patch – Paint – Clean – Decorate."

13.     A seller of property cannot stop an overly intrusive search or refuse to make cosmetic repairs because the seller needs a "Certificate of Compliance" to obtain a "transfer stamp" to transfer the property. The seller/owner is completely at the mercy of the inspector's unfettered discretion in conducting the search and ordering repairs.

14.     The Point of Sale Inspection Ordinance permits City to order the "deconversion" of "illegally converted" property. Code §§ 14-1(c)(2), 14-1(g). The Point of Sale Inspection Ordinance contains no due process protection against City improperly ordering the deconversion of *legal nonconforming* property as a precondition of the right to sell the property. There is no

4

hearing at which property owners are permitted to be represented by counsel and to submit

evidence that the property is legal. *Id.* Similarly, property owners cannot appeal a decision by

City's inspector that the property is illegal. *Id.* There is no right to judicial review. *Id.* Thus,

City may prevent the sales of *legal nonconforming* property simply by declaring it illegal. *Id.*

15.    City's Zoning Ordinance § 12.5 (which created a Zoning Appeal Board pursuant

to 65 ILCS 5/11-13-3), does not apply to the Point of Sale Inspection Ordinance or its

deconversion provisions; rather it is limited to the appeal of *zoning* decisions, *i.e.* the request for

a variance. The Zoning Ordinance § 12.5, establishes a Zoning Board of Appeals with

jurisdiction to "hear and decide appeals from any order, requirement, decision or determination

made by the zoning administrator under this ordinance." *Id.* The zoning administrator has no

role in the enforcement of the Point of Sale Inspection Ordinance.

## II.    Other Relevant Codes.

16.    City has also enacted a Code Enforcement Ordinance (Ex. B), to prosecute

property owners who fail to maintain their property in compliance with City's building and

maintenance codes. *Id.* City can also remedy health and safety related code violations through

its Rental Dwelling Inspection Ordinance, which permits City to annually inspect multi-unit

dwellings. (Ex. C) Unlike the Point of Sale Inspection Ordinance, neither the Code

Enforcement Ordinance nor the Rental Dwelling Inspection Ordinance is tied to the transfer of

property. Rather, City may invoke the provisions (including as respects illegal conversions)

whenever it believes that there is a code violation that poses a risk to public health and safety.

17.    Unlike the Point of Sale Inspection Ordinance, the Code Enforcement Ordinance

contains due process protections. For example, under the Code Enforcement Ordinance, a

property owner is entitled to an administrative hearing where he is permitted to be represented by

counsel, to present testimony and other evidence to challenge City's complaint, and to subpoena

5

and cross-examine City officials regarding the alleged code violation. Ex. B at §§ 2-943, 2-946.

Further, a property owner may petition for rehearing of an adverse decision before the

enforcement administrator, *Id.* at § 2-949, and appeal any final decision to a Cook County Court.

*Id.* at § 2-950. Finally, if a property owner is found guilty of a code violation, he is fined, *id.* at §

2-952, not deprived of his Constitutional right to sell and transfer his property. None of these

due process protections are present in the Point of Sale Inspection Ordinance.

III.    **Impact Of The Point Of Sale Inspection Ordinance On City Property Owners.**

18.    As of October 29, 2007, according to the multiple listing service, there were 46

residential real estate listings in City with contracts pending. There are 642 active listings of

property in City.

19.    Each of the 46 properties under contract are subject to an unconstitutional taking

of the right to transfer prior to closing if City is permitted to enforce the Point of Sale Inspection

Ordinance. Similarly, the 642 properties currently listed for sale are potentially at risk of

unconstitutional taking by City pursuant to the Point of Sale Inspection Ordinance. The

unconstitutional taking of the right to alienate property depresses the value of all residential

property in City.

## CAUSES OF ACTION

### COUNT I: THE POINT OF SALE INSPECTION ORDINANCE UNREASONABLY RESTRAINS THE RIGHT OF PROPERTY OWNERS TO TRANSFER THEIR PROPERTY

20.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-19, as

though fully set forth herein.

21.    Title 42, Section 1983 of the United States Constitution provides as follows:

> Every person who, under the color of an statute, ordinance, regulation,
> custom, or usage of any State or Territory, or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or

6

other person within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in equity, or
other proper proceeding for redress.

22.    City, as a municipal corporation under the laws of Illinois, is a "person" that is
subject to suit under 42 U.S.C. § 1983.

23.    The Point of Sale Inspection Ordinance unreasonably and unconstitutionally
restrains the alienability of property. The Point of Sale Inspection Ordinance provides that
property cannot be sold unless City issues a transfer stamp. Code § 14-1(h) and § 82-327(b);
Code §§ 82-325, 82-328. With one limited exception (*see* n. 1), the only way to obtain a transfer
stamp is to first obtain a "Certificate of Compliance" which, in turn, can only be obtained if an
inspector decides that property "passed" a point of sale inspection. *Id.* A property owner can
"pass" a point of sale inspection only if it completes all repairs required by the inspector -- even
if those repairs are cosmetic in nature -- by using a licensed contractor. *Id.* at § 14-1(k). Thus,
even if property complies with all City codes, a property owner may not transfer his property if
City refuses to issue a "Certificate of Compliance." When City fails or refuses to issue a
"Certificate of Compliance" a property owner has no right to a hearing to contest the inspector's
decision, an administrative appeal or judicial review. *Id.*

24.    In addition, the Point of Sale Inspection Ordinance requires a seller to pay the
water bill before City will issue transfer stamps. *Id.* at § 14-1(i). Although an owner can dispute
the water bill in a "predeprivation hearing," the ordinance does not provide any detail regarding
the due process protection of such hearing and requires the owner to pay the disputed bill "under
protest" while he challenges the bill if he wants to obtain a transfer stamp. *Id.*

25.    Although cities are permitted to adopt ordinances to protect public health and
safety, they may not use such ordinances to restrict the free transfer of property. *See* Op. Ill.

7

137255v2

Att'y Gen. No. 94-024 (Oct. 25, 1994), 1994 WL 601863 ("Municipalities are authorized, under Article 11 of the Municipal Code (65 ILCS 5/11-1-1 *et seq.*) (West 1992)) to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines ... Further, municipalities may impose various fees for other services relating to real property. *In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such code.*") (emphasis added).

26.    Walker has suffered and will continue to suffer immediate and irreparable harm from enforcement of the Point of Sale Inspection Ordinance. The Point of Sale Inspection Ordinance is unconstitutional because it violates the protections in the U.S. Constitution against unreasonable governmental restriction on the right to sell private property. This irreparable harm to Walker will substantially outweigh any harm to City if immediate relief is granted. Even if the Point of Sale Inspection Ordinance is enjoined, City can protect public health and safety with the Code Enforcement Ordinance and Rental Dwelling Inspection Ordinance.

27.    There is no adequate remedy at law. Money damages are wholly inadequate to remedy the immediate loss of the Constitutional right to alienate property.

**WHEREFORE**, Plaintiff prays for the following relief:

a.    A declaration that the Point of Sale Inspection Ordinance is unconstitutional;

b.    A temporary restraining order, preliminary and permanent injunction prohibiting City from enforcing the Point of Sale Inspection Ordinance and enjoining City from prohibiting the sale of property or refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of compliance;"

8

c. An award of reasonable attorneys fees and expenses as part of the costs of this action, pursuant to 42 U.S.C. § 1988; and

28. Such other relief as the Court deems just and proper.

### COUNT II:  LACK OF PROCEDURAL DUE PROCESS

29. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-19, as though fully set forth herein.

30. The Point of Sale Inspection Ordinance fails to provide procedural due process. Among other things, the due process clause requires that, at a minimum, a hearing must be provided *before* a property right -- here, the right to transfer property -- can be taken. As respects point of sale inspections, the Point of Sale Inspection Ordinance has no due process safeguards that allow citizens to challenge the failure to issue a Certificate of Compliance or an inspector's repair order.  Property owners are not entitled to a hearing at which they can challenge the finding of a code violation or a repair order.  Further, property owners are not provided the right to appeal the refusal to issue a Certificate of Compliance or judicial review of any aspect of City's action or inaction.  Thus, property owners must capitulate to City's inspectors' demands, even if the repair work is mistaken, unnecessary from a public health or safety standpoint or otherwise improper, if they want to sell their property.  The Point of Sale Inspection Ordinance prohibits the transfer of every residential property unless City consents, but no due process protection attaches.  In effect, City has enjoined the transfer of residential property -- without a complaint, evidence, a hearing or any procedural or substantive rules -- until it decides to consent.  The home seller has no protection if an inspector conditions City's consent on "repairs" that have no relationship to health or safety.  Such a scheme does not comport with due process.

9

31.     As respects deconversions, the Point of Sale Inspection Ordinance does not provide *any* procedural due process protection to ensure that City does not wrongfully deprive property owners of the "valuable property right" to sell and transfer legal nonconforming property. The ordinance does not provide any notice of how City will determine whether property is "legal" or "illegal." Further, property owners are not granted a hearing where they can be represented by counsel, rebut City's positions or submit evidence to show that the property is not an illegal conversion. Further, there is no right to an administrative appeal of a determination that property is "illegal." There is also no right to judicial review.

32.     Walker has suffered and will continue to suffer immediate and irreparable harm from enforcement of the Point of Sale Inspection Ordinance, including its deconversion provisions, because the Point of Sale Inspection Ordinance fails to provide procedural due process guaranteed by the U.S. Constitution. This irreparable harm to Walker will substantially outweigh any harm to City if immediate relief is granted. Even if the Point of Sale Inspection Ordinance is enjoined, City can protect public health and safety with the Code Enforcement Ordinance and Rental Dwelling Inspection Ordinance.

33.     There is no adequate remedy at law. Money damages are wholly inadequate to remedy the immediate loss of Constitutional rights.

**WHEREFORE**, Plaintiff prays for the following relief:

a.      A declaration that the Point of Sale Inspection Ordinance is unconstitutional under the United States Constitution;

b.      A temporary restraining order, preliminary and permanent injunction prohibiting City from enforcing the Point of Sale Inspection Ordinance and enjoining City from prohibiting the sale of property or refusing to issue transfer stamps in the

10

absence of a point of sale inspection and/or issuance of a "certificate of compliance;"

c.     An award of reasonable attorneys fees and expenses as part of the costs of this action, pursuant to 42 U.S.C. § 1988; and

34.     Such other relief as the Court deems just and proper.

DATED:  October 31, 2007

Respectfully submitted,

AYANNA WALKER

By: _____
     One of Her Attorneys

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin
Maggie M. Hanel
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
Phone: (312) 704-7700
Fax: (312) 558-1195

11

## VERIFICATION

I, Ayanna Walker, verify under penalty of perjury that the foregoing statements set forth in the Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Declaratory and Other Relief are true and correct.

Ayanna Walker

137250v1

# EXHIBIT A

## ARTICLE I. IN GENERAL

**Sec. 14-1. Point of sale inspection requirement; certificate of compliance procedures.**

   (a) *Department created; definition; general requirement.*

     (1)   A department of inspectional services is hereby created pursuant to this section. The department of inspectional services ("department") shall be headed by a director of inspectional services ("director," which shall also include the director's designees) who shall be appointed by the mayor with the advice and consent of the city council. All inspectional services concerning point of sale matters within the city, including building and housing, shall be under the jurisdiction of the department. The buildingcommissioner, electrical inspector, plumbing inspector, housing director and all department inspectors and staff shall be responsible for reporting to the director relative to all matters relating to this section and the director shall have full authority to direct, train and provide appropriate personnel subject to city council approval as to expenditures and/or requirements as provided herein.

     (2)   For the purpose of this section, the term "point of sale inspection" means an inspection of real property by the department conducted in connection with a taxable transfer of real estate to determine whether the condition of said property conforms to the specific regulations identified in this section.

     (3)   A point of sale inspection shall be required relative to any transfer of any interest in property which is subject to this section, except as exempted herein.

   (b) *Notice of transfer of real property required.* Whenever an owner of real property in the city proposes to engage in a transfer of real property in the city which is subject to taxation under Chapter 82, Article X of the Calumet City Municipal Code (Real estate transfer tax), such owner shall provide the department a notice of transfer for said property, on a form therefore provided by the department.

   (c) *Compliance; inspection; pertinent code requirements.* The notice of transfer form shall also constitute the director's request to inspect such property ("compliance inspection") to determine whether such property is in compliance with the following specific requirements, which the corporate authorities of the city find are related to the public health, safety and welfare:

     (1)   *Compliance with specific city codes.* All structures shall be in compliance with city building ordinances, including any property maintenance codes adopted by the city, which codes are set forth elsewhere in this chapter 14.

     (2)   *Inspection to determine possible illegal conversions.* All structures shall be inspected to determine whether they have been illegally converted. For purposes of this subsection, "illegally converted" means that the property was converted to another or additional use beyond that for which the property was originally permitted, and which (i) is in violation of the property's zoning limitations and (ii) is not a legal nonconforming use under section V of the City Zoning Ordinance.

   (d) *Proposed compliance inspection.* When the owner files the notice of transfer, the department will schedule a proposed compliance inspection to be conducted within twenty-eight (28) calendar days of the notice. The notice of transfer form shall include the following:

     (1)   Date and time of the proposed compliance inspection;

     (2)   A statement that the owner or occupant has the right to withhold consent to the compliance inspection and require the city to obtain a warrant to conduct the inspection;

     (3)   For occupied rental dwellings, the city must also request and obtain the consent of the tenant prior to conducting any inspection; and

     (4)   A space for the owner and/or to indicate that the owner and/or tenant either consent to the compliance inspection, or refuse consent.

   (e) *Refusal to consent; warrant procedures.* If the owner or occupant does not consent to the proposed inspection, the director may appear before any judge in the Circuit Court of Cook County and seek an administrative search warrant to allow an inspection. Any such application shall be made within ten (10)

calendar days after the owner's nonconsent. The application for the warrant shall specify the basis upon which the warrant is being sought and shall include a statement that the inspection will be limited to a determination whether there are violations of the Code provisions identified in this section, and whether there have been any illegal conversions. The court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:

(1)  Eyewitness account of violation;

(2)  Citizen complaints;

(3)  Tenant complaints;

(4)  Plain view violations;

(5)  Violations apparent from city records;

(6)  Property deterioration;

(7)  Age of property;

(8)  Nature of alleged violation;

(9)  Condition of similar properties in the area;

(10)  Documented violations on similar properties in the area;

(11)  Passage of time since last inspection;

(12)  Previous violations on the property.

(f)  *Uninspected property; transfer stamps.*  In the event the owner or occupant refuses to consent to an inspection, and the director does not seek a warrant (or if court refuses an application for the warrant), the department shall notify the city clerk that "uninspected property" transfer stamps may issue. In connection with the issuance of transfer stamps, the city clerk shall advise the purchaser of such property that it is "uninspected property."

(g)  *Inspection procedures.*  In the event consent is given or a warrant issued, the department shall conduct the compliance inspection as provided in subsections (c) and (d). Within three (3) business days after the compliance inspection the department shall issue a written notice of violations and repairs, if any, necessary to bring the property into compliance with this section. In the event the inspection reveals a structure which has been illegally converted, the department shall issue a notice of deconversion, specifying the measures which must be taken in order to bring the illegally converted structure into compliance with applicable zoning regulations.

(h)  *Follow-up repairs; reinspection.*  A party issued a notice of repairs as provided for in subsection (g) shall proceed to make such repairs. Upon completion of said repairs and notice thereof to the department, the department will conduct a reinspection within three (3) business days thereafter. Upon completion of the follow-up repairs, and the completion of any deconversion measures required by the department, the department shall issue a certificate of compliance.

(i)  *Payment of current water bills; predeprivation hearing.*  The seller must pay the current water bill (as defined in subsection 82-327(b) of the Municipal Code) and other fees owed by the seller to Calumet City prior to the issuance of transfer stamps. In the event the owner disputes any such obligation (or any portion thereof), the office of city clerk shall promptly provide the owner with a predeprivation due process hearing consistent with the principles enunciated in *Memphis Light, Gas & Water Division v Craft,* 436 U.S. 1 (1978). The city clerk's office shall provide the hearing within three (3) business days of a request. If the owner disputes the city's determination as to liability, the owner may pay said bill under protest, and may pursue any remedies available to said seller to recover the claimed overcharge.

(j)  *Conditional certificate of compliance; procedures.*  An owner who has not completed the repairs identified through the inspection may nevertheless transfer ownership of property if:

(1)  The owner or agent has deposited with the city an amount of money determined by the director or his designee to be sufficient to bring the structure into compliance with all city building and zoning ordinances and any applicable housing, fire or property maintenance codes or regulations; and

(2)  The buyer, conveyee, transferee, assignee or successor in title, ownership or interest (hereinafter

"buyer") has entered into an agreement with the city whereby the buyer agrees to bring the structure into compliance within the time period determined by the director or his designee, to bring the structure into compliance with all applicable Code requirements within a period not to exceed one hundred eighty (180) calendar days after the closing of the transaction ("closing").

(3)  If the buyer enters into such an agreement, a conditional certificate of compliance will issue an order to allow the closing to be completed. The conditional certificate of compliance shall be issued by the department and shall terminate on the one hundred eighty-first day after closing and no extensions shall be granted. A buyer who elects to accept the premises, subject to the inspection with existing violations, and who agrees, in order to close, to be responsible as provided herein, shall execute a sworn affidavit satisfactory to the director, which will clearly indicate that the buyer is fully aware of the existing violations as well as the possibility of violations that may have existed but were undiscovered due to lack of access and agrees to accept the requirement and obligation to bring the structure into compliance within one hundred eighty (180) days of the closing. The city shall issue a certificate of compliance upon completion of the repairs necessary to bring the dwelling or structure into compliance.

(4)  In the event the buyer fails to complete the required repairs, and have the repairs verified on reinspection, the director is hereby authorized to pursue enforcement proceedings through the Calumet City administrative adjudication process, or, at his discretion, through the Circuit Court of Cook County. The buyer hereby agrees to submit to the jurisdiction and venue of the Calumet City Administrative Adjudication Process and the Circuit Court of Cook County and to waive service of summons subject only to the notice requirement as required by law in order to enable the city to expeditiously obtain an order of compliance with this section.

(5)  If reasonable proof that the repairs have been completed is not received by the director or his designee within the required period for the repairs to be completed, the city, may also issue a citation for violation of this chapter and/or the escrow repair agreement, and may also pursue any applicable administrative or judicial remedies to bring the structure and property into compliance with applicable codes and regulations.

(6)  The fine for violations of this chapter shall be not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) per day for each day the violations remain uncorrected.

(k)  *Licensed and bonded contractors.* All contractors performing repairs identified in the point of sale inspection, or issuing certifications shall be licensed by the city and bonded and shall make available, upon request, copies of their license(s), verification of their liability insurance, errors and omissions insurance policies, and surety bond.

(l)  *Validity of certificate of compliance.* A certificate of compliance issued to the seller shall be valid for one hundred eighty (180) days from the date of issuance.

(m)  *No warranty.* In issuing a certificate of compliance or a conditional certificate of compliance, the city and its agents do not make any warranty, representation or statement nor does it intend to insure or guarantee to either buyer or seller of the property subject to the point of sale inspection or any of their designees, agents, representatives, heirs or assigns or any other interested party, including mortgage companies, insurance companies, banks or any other party which may have any interest relative to the property subject to the point-of-sale inspection, nor does the city affirm that there are no additional unnoted violations relative to any other provisions of any of the Municipal Code of the City of Calumet City, or relevant statutes, ordinances, rules and regulations of the County of Cook, the State of Illinois, or the United States of America.

(o)  *Inspection fee schedule.*

(1)  The fee for a point of sale inspection shall be one hundred-fifty dollars ($150.00) for all single-family residential inspections. The failure of an owner/seller or his designee to appear at the time of inspection shall result in a fifty-dollar penalty.

(2)  The fee for a point of sale inspection shall be one hundred-fifty dollars ($150.00) plus twenty-five additional dollars ($25.00) for each residential unit in excess of one unit.

(3)  A fee of twenty cents ($0.20) per square foot shall be charged for each commercial/industrial unit inspected with a minimum fee of two hundred dollars ($200.00) per commercial/industrial unit.

(4)  Each fee set for the above covers the cost of one follow-up inspection to verify compliance. In the event that additional inspections are required because full compliance did not exist at the time of the

reinspection, then an additional reinspection fee of fifty dollars ($50.00) per unit shall be assessed.

(5)  If an owner, agent or tenant has failed to appear for two (2) previously scheduled inspections, an additional inspection fee of fifty dollars ($50.00) per unit shall be assessed.

(Ord. No. 06-68, § 1, 8-24-2006)

**Editor's note:**  Section 1 of Ord. No. 06-68, adopted Aug. 24, 2006, amended § 14-1 in its entirety to read as herein set out. Former § 14-1 pertained to similar subject matter and derived from § 6-308 of the 1980 Code; Ord. No. 96-28, adopted May, 9, 1996; Ord. No. 04-50, adopted Aug. 10, 2004; and Ord. No. 06-48, adopted June 22, 2006.

## Sec. 14-2. Rebates for overhead sewers.

(a)  The city will rebate up to fifty (50) percent of the cost with a maximum of two thousand five hundred dollars ($2,500.00) to the homeowner for all completed overhead sewer repairs or installations that have been preapproved by the city. The city will additionally rebate up to fifty (50) percent of the cost with a maximum of two thousand five hundred dollars ($2,500.00) to the homeowner for all completed installation, repair or replacement of sewer traps, valves, and waterproofing.

(b)  The applicant must submit a request for funding reimbursement to the city on forms prescribed by the city for preapproval. Two (2) estimates and the recommendation of a contractor who is licensed with the city are required. After the work is completed, the property will be inspected to verify compliance with Code requirements. The homeowner must provide paid receipts and their property index number (PIN).

(Ord. No. 03-61, §§ 1, 2, 10-9-2003; Ord. No. 04-09, § 1, 3-11-2004; Ord. No. 05-12, § 1, 2-10-2005)

Secs. 14-3--14-20. Reserved.

# EXHIBIT B

## ARTICLE IX. CODE ENFORCEMENT*

_____

*Cross references: Fire code prevention, § 30-161 et seq.

State law references: Administrative adjudication of ordinances, 65 ILCS 5/1-2.1-1 et seq.

_____

### Sec. 2-941. Purpose.

The stated purpose of this article is to provide for the fair and efficient enforcement of the Municipal Code of Calumet City, Illinois, other than those ordinances pertaining to vehicular standing, parking or vehicle compliance regulation (hereafter the "City Code"), as may be allowed by law and directed by ordinance, through an administrative adjudication of violations; and, establishing a schedule of fines and penalties, and authority and procedures for collection of unpaid fines and penalties.

(Code 1980, § 2-501; Ord. No. 99-63, § VI, 11-10-1999)

### Sec. 2-942. Creation.

There is hereby established a department of the city government to be known as the ordinance enforcement department and to have the power to enforce any municipal ordinance as from time to time authorized by the city council, except for (i) any offense enforced pursuant to Article VII.5 of Chapter 17 of this Code; (ii) any offense under the Illinois Vehicle Code (625 ILCS 5/1-100 et seq.); or a similar offense that is a traffic regulation governing the movement of vehicles; and, (iii) except for any reportable offense under 625 ILCS 5/6-204. The establishment of the ordinance enforcement department does not preclude the mayor and city council from using any other method or court with jurisdiction to enforce ordinances of the city.

(Code 1980, § 2-503; Ord. No. 99-63, 11-10-1999)

### Sec. 2-943. Administrative composition.

(a)  The ordinance enforcement department shall be composed of a hearing officer, an ordinance enforcement administrator, system coordinator/computer operator and hearing room security personnel, with the power and authority as hereinafter set forth.

(1)  The hearing officer is authorized and directed to:

a.  The hearing officer, prior to appointment, must be an attorney licensed to practice law for at least three (3) years in the State of Illinois. The hearing officer shall preside over all adjudicatory hearings and shall have the following powers and duties:

1.  To administer oaths;

2.  To hear testimony and accept evidence that is relevant to the existence of the City Code violation;

3.  To issue subpoenas directing witnesses to appear and give relevant testimony at the hearing, upon the request of the parties or their representatives;

4.  To preserve and authenticate the record of the hearing and all exhibits and evidence introduced at the hearing;

5.  To issue and sign a written finding, decision and order stating whether a City Code violation exists;

6. To impose penalties, sanctions or such other relief consistent with applicable City Code provisions and assessing costs upon finding a party liable for the charged violation, except however, that in no event shall the hearing officer have authority to impose a penalty of incarceration; and,

7. To review final determination of liability for an ordinance violation in accordance with the administrative review procedures hereinafter set forth.

b. Prior to conducting administrative adjudication proceedings under this article, the hearing officer shall have successfully completed a formal training program which includes the following:

1. Instruction on the rules of procedure of the administrative hearings over which the hearing officer shall preside;

2. Orientation to each subject area of the code violations that he/she will adjudicate;

3. Observation of administrative hearings; and

4. Participation in hypothetical cases, including ruling on evidence and issuing final orders.

(2) The ordinance enforcement administrator is authorized and directed to:

a. Operate and manage the ordinance enforcement department.

b. Adopt, distribute and process all notices as may be required under this article or as may be reasonably required to carry out the purpose of this article.

c. Collect moneys paid as fines and/or penalties assessed after a final determination of liability.

d. Certify copies of final determinations of an ordinance violation adjudicated pursuant to this article, and any factual reports verifying the final determination of any violation liability which was issued in accordance with this article.

e. Promulgate rules and regulations reasonably required to operate and maintain the administrative adjudication system hereby created.

f. Collect unpaid fines and penalties through private collection agencies and direct the pursuit of all post-judgment remedies available by law.

(3) The system coordinator/computer operator is hereby authorized and directed to operate and maintain the computer programs for the administrative adjudication system of the ordinance enforcement department hereby created, on a day-to-day basis, including but not limited to:

a. Input of violation notice information.

b. Establishing hearing dates and notice dates.

c. Record fine and penalty assessment and payments.

d. Issue payment receipts.

e. Issue succeeding notice of hearing dates and/or final determination of liability.

f. Keep accurate records of appearances and nonappearances at administrative hearings, pleas entered, judgments entered, sanctions imposed, if any, fines and penalties assessed and paid.

(4) All hearing room security personnel shall be qualified off-duty, full-time, part-time or auxiliary police officers who are hereby authorized and directed to:

a. Maintain hearing room decorum.

b. Have and execute authority as is granted to courtroom deputies of the circuit court.

c. Perform such other duties or acts as may reasonably be required and as directed by the hearing officer or ordinance enforcement administrator.

(b) The mayor is hereby authorized to appoint persons to hold the positions above set forth. Other than the hearing officer, one person may hold and fulfill the requirements of one (1) or more of the above stated

positions and compensation for each of the above stated positions shall be as approved by the city council.

(Code 1980, § 2-504; Ord. No. 99-63, 11-10-1999; Ord. No. 01-56, 11-19-2001)

## Sec. 2-944. Procedures.

The system of administrative adjudication of any ordinance violation authorized to be adjudicated hereunder, shall afford a party due process of law and the hearings shall be conducted in accordance with the following procedures:

(1) Violation notices of any City Code shall be issued by the persons authorized under this Code and shall contain information and shall be certified and constitute *prima facie* evidence of the violation cited as hereinafter set forth.

(2) All full-time, part-time and auxiliary police officers as well as other specifically authorized individuals of any department of the city shall have the authority to issue violation notices.

(3) Any individual authorized hereby to issue violation notices and who detects any ordinance violation authorized to be adjudicated under this article, is authorized to issue notice of violation thereof and shall make service thereof as is hereinafter set forth.

(4) The violation notice of the City Code shall contain, but shall not be limited to, the following information:

   a.  The name of the party violating the ordinance, if known.

   b.  The date, time and place of the violation (date of issuance).

   c.  The particular ordinance violated.

   d.  The fine and any penalty which may be assessed for the ordinance violation.

   e.  The signature and identification number of the person issuing the notice.

   f.  The date and location of the adjudicating hearing of ordinance violations, and the penalties for failure to appear at the hearing.

   g.  That payment of the indicated fine and any late payment shall operate as a final disposition of the violation.

(Code 1980, § 2-505; Ord. No. 99-63, 11-10-1999; Ord. No. 01-56, 11-19-2001)

## Sec. 2-945. Service.

(a)  Service of any violation notice shall be made by the person issuing such notice by:

(1)  Handing the notice to the person responsible for the ordinance violation;

(2)  Handing the notice to the responsible person or leaving the notice with any person twelve (12) years of age or older at the residence of the responsible person;

(3)  Mailing the notice by first class mail, postage prepaid, to the person responsible for the ordinance violation; or,

(4)  Posting the notice upon the property where the violation is found when the person is the owner or manager of the property.

(b)  The correctness of facts contained in any violation notice shall be verified by the person issuing said notice by:

(1)  Signing his name to the notice at the time of issuance; or

(2)  In the case of a notice produced by a computer device, by signing a single certificate, to be kept by the ordinance enforcement administrator, attesting to the correctness of all notices produced by the device while under his control.

(c)  The original or a facsimile of the violation notice shall be retained by the ordinance enforcement administrator and kept as a record in the ordinary course of business.

(d)  Any violation notice issued, signed and served in accordance herewith, or a copy of the notice, shall be *prima facie* correct and shall be  *prima facie* evidence of the correctness of the facts shown on the notice.

(Code 1980, § 2-506; Ord. No. 99-63, 11-10-1999)

## Sec. 2-946. Administrative hearings.

An administrative hearing to adjudicate any alleged City Code ordinance violation on its merits shall be granted to the person named in the ordinance violation notice. All administrative hearings shall be recorded and shall culminate in a determination of liability or nonliability, made by the hearing officer, who shall consider facts and/or testimony without the application of the formal or technical rules of evidence. Evidence, including hearsay, may be admitted only if it is of a type commonly relied upon by reasonable prudent persons in the conduct of their affairs. The hearing officer shall, upon a determination of liability, assess fines, penalties and costs in accordance with section 2-952 hereof. Persons appearing to contest the alleged violation on its merits may be represented by counsel at their own expense. The burden of proof shall be on the alleged offender to refute the *prima facie*  case set forth in the verified notice of violation.

(Code 1980, § 2-507; Ord. No. 99-63, 11-10-1999)

## Sec. 2-947. Notices.

(a)  Upon failure of the person receiving a notice of a violation of the City Code to appear at the time and date designated for a hearing, the ordinance enforcement administrator shall send, or cause to be sent, notices as provided in subsection (b) of this section, by first class mail, postage prepaid, to the person who received the notice of an ordinance violation. Service of notices sent in accordance herewith shall be complete as of the date of deposit in the United States mail.

(b)  The notices sent pursuant to subsection (a) of this section shall be in the following sequence and contain, but not be limited to, the following information:

(1)  Date and location of violation cited in the violation notice.

(2)  Particular ordinance violated.

(3)  Fine and any penalty that may be assessed for late payment.

(4)  A section titled "Notice of Hearing" which shall clearly set forth that the person receiving a notice of the City Code ordinance violation may appear at an administrative hearing to contest the validity of the violation notice on the date and at the time and place as specified in the notice of hearing.

(5)  Date, time and place of the administrative hearing at which the alleged violation may be contested on its merits.

(6)  Statement that failure to either pay fine and any applicable penalty or failure to appear at the hearing on its merits on the date and at the time and place specified will result in a final determination of liability for the "cited" violation in the amount of the fine and penalty indicated.

(7)  Statement that upon the occurrence of a final determination of liability for the failure, and the exhaustion of, or the failure to exhaust, available administrative or judicial procedures for review, any unpaid fine or penalty will constitute a debt due and owing the city.

(c)  A notice of final determination of liability shall be sent following the conclusion of administrative hearing, as is hereinafter set forth, and shall contain, but not be limited to, the following information and warnings:

(1)  A statement that the unpaid fine and any penalty assessed is a debt due and owing the city;

(2)  A statement of any sanction ordered or costs imposed which costs are debts due and owing the city; and

(3)  A warning that failure to pay the fine and any penalty due and owing the city within the time

specified may result in proceeding with collection procedures in the same manner as a judgment entered by any court of competent jurisdiction.

(Code 1980, § 2-508; Ord. No. 99-63, 11-10-1999)

### Sec. 2-948. Final determination of liability.

A final determination of liability shall occur following the failure to pay the fine or penalty after the hearing officer's determination of liability and the exhaustion of, or the failure to exhaust, any administrative review procedures hereinafter set forth. Where a person fails to appear at the administrative hearing to contest the alleged violation on the date and at the time and place specified in a prior served or mailed notice pursuant to section 2-947(b) hereof, the hearing officer's determination of liability shall become final either upon a denial of a timely petition to set aside that determination or upon the expiration of the period for filing a petition without a filing having been made.

(Code 1980, § 2-509; Ord. No. 99-63, 11-10-1999)

### Sec. 2-949. Petition to set aside determination.

A petition to set aside a final determination of liability may be filed with the ordinance enforcement administrator within twenty-one (21) days of the date of the final determination of liability and payment of twenty-five dollars ($25.00).

(Code 1980, § 2-510; Ord. No. 99-63, 11-10-1999)

### Sec. 2-950. Judicial review.

Any final decision by a hearing officer that a City Code violation does or does not exist shall constitute a final determination for purposes of judicial review under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.).

(Code 1980, § 2-511; Ord. No. 99-63, 11-10-1999)

### Sec. 2-951. Enforcement of judgment.

(a)  Any fine, other sanction, or costs imposed, or part of any fine, other sanction, or costs imposed, remaining unpaid after the exhaustion of or the failure to exhaust judicial review procedures under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.) are a debt due and owing the municipality and may be collected in accordance with applicable law.

(b)  After expiration of the period in which judicial review under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.) may be sought for a final determination of a code violation, unless stayed by a court of competent jurisdiction, the findings, decision, and order of the hearing officer may be enforced in the same manner as a judgment entered by a court of competent jurisdiction.

(c)  In any case in which a hearing officer finds that a defendant has failed to comply with a judgment ordering a defendant to correct a code violation or imposing any fine or other sanction as a result of a code violation, any expenses incurred by the city to enforce the judgment including, but not limited to, attorney's fees, court costs, and costs related to property demolition or foreclosure after they are fixed by the hearing officer, shall be a debt due and owing the municipality and may be collected in accordance with applicable law.

(d)  A lien shall be imposed on the real estate or personal estate, or both, of the defendant in the amount of any debt due and owing the city under this section. The lien may be recorded and enforced in the same manner as a judgment lien pursuant to a judgment of a court of competent jurisdiction. No lien may be enforced under this section until it has been recorded in the manner provided by Article XII of the Code of Civil Procedure (735 ILCS 5/1-101 et seq.) or by the Uniform Commercial Code (810 ILCS 5/1-101et seq.).

(e)  A hearing officer may set aside any judgment entered by default and set a new hearing date upon a petition filed within twenty-one (21) days after the issuance of the order of default if the hearing officer determines that the petitioner's failure to appear at the hearing was for good cause or at any time if the

petitioner establishes that the municipality did not provide proper service of process.

(Code 1980, § 2-512; Ord. No. 99-63, 11-10-1999)

## Sec. 2-952. Schedule of fines/penalties.

For an ordinance violation of the City Code, fines and penalties shall be as established from time to time by the mayor and city council.

(Code 1980, § 2-513; Ord. No. 99-63, 11-10-1999)

# EXHIBIT C

## DIVISION 2. RENTAL DWELLING INSPECTIONS*

---

**\*Editor's note:** Ord. No. 06-49, adopted June 22, 2006, amended division 2 in its entirety to read as herein set out. Former division 2, which consisted of §§ 14-711—14-718, pertained to similar subject matter and derived from the 1980 Code; Ord. No. 87-5, adopted Mar. 26, 1987; Ord. No. 87-16, adopted July 23, 1987; Ord. No. 88-2, adopted Feb. 25, 1988; Ord. No. 89-8, adopted Feb. 9, 1989; Ord. No. 89-40, adopted Nov. 9, 1989; Ord. No. 90-1, adopted Jan. 11, 1990; Ord. No. 94-16, adopted May 12, 1994; and Ord. No. 04-42, adopted June 29, 2004.

---

### Sec. 14-711. Certificate of occupancy requirement.

(a)  No owner, agent or person (hereinafter referred to as "responsible party") in charge of a one-family, two-family or multiple-family dwelling (hereinafter referred to as "rental dwelling"), as those terms are defined in the property maintenance code, shall allow any person to occupy the same as a tenant or lessee or for valuable consideration unless said dwelling or structure shall have been inspected and determined to be in compliance with all of the provisions of the property maintenance code as well as all health and building ordinances as evidenced by a certificate of occupancy issued by the department of inspectional services ("department"). Thereafter, all rental properties shall be inspected annually and an updated certificate of occupancy issued.

(b)  No certificate of occupancy shall be issued unless the applicant[,] owner or operator agrees in his application to an inspection pursuant to this section. Notwithstanding any other provisions of this Code, when the city conducts inspections of a tenant's rental dwelling, the city must obtain the consent of such tenant to conduct the inspection. If a tenant refuses consent, the city may attempt to obtain a warrant pursuant to subsection (d) below.

(c)  Prior to the time that the department is scheduled to conduct the inspection, the department shall deliver to the owner and occupants of the structure written notice that includes the following:

(1)  Date and time of the inspection;

(2)  A statement that the owner or tenant has the right to withhold his consent to the inspection and require the city to attempt to obtain a warrant to conduct the inspection;

(d)  If the owner or occupant does not consent to the attempted inspection, the director of inspectional services ("director") or his designee shall seek in the circuit court of Cook County a warrant in accordance with the appropriate laws of the State of Illinois to allow an inspection. The application for the warrant shall specify the basis upon which the warrant is being sought and shall include a statement that the inspection will be limited to a determination whether there are violations of the city building and zoning ordinances or any applicable housing, fire or property maintenance codes or regulations. The court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:

(1)  Eyewitness account of violation;

(2)  Citizen complaints;

(3)  Tenant complaints;

(4)  Plain view violations;

(5)  Violations apparent from city records;

(6)  Property deterioration;

(7)  Age of property;

(8)  Nature of alleged violation;

(9)  Similar properties in the area;

(10)  Documented violations on similar properties in the area;

(11)  Passage of time since last inspection;

(12)  Previous violations on the property.

(e)  If the annual inspection establishes that the rental dwelling complies with all the provisions of the property maintenance code as well as all other health, zoning, and building ordinances of the city, then the department of inspectional services shall issue a certificate of occupancy for said dwelling or structure. The certificate shall indicate the date of the inspection; that such dwelling or structure complies with the requirements of the property maintenance code as well as other health and building ordinances that apply to the dwelling. One (1) copy of the certificate shall be delivered to or mailed to the owner of the dwelling unit. A record of all certificates shall be kept on file by the department, and copies shall be furnished upon request to any person having a proprietary interest or tenancy interest in the dwelling affected. The director shall submit once a month to the mayor and the city council a list of addresses of those dwellings which have been inspected the previous month with an indication whether or not said dwellings have been issued certificate of occupancy permits. Every certificate of occupancy shall be issued for a period of one (1) year after its date of issuance, unless sooner revoked.

(f)  Inspection fee schedule.

(1)  Fifty dollars ($50.00) yearly.

(2)  Ten dollars ($10.00) per additional unit.

(3)  All inspection fees as herein provided shall be paid prior to the issuance of a certificate of occupancy.

(4)  Each fee set for the above covers the cost of one (1) follow-up inspection to verify compliance. In the event that additional inspections are required because full compliance did not exist at the time of the reinspection, then an additional reinspection fee of fifty dollars ($50.00) plus ten dollars ($10.00) per unit shall be assessed.

(5)  If an owner, agent or tenant has failed to appear for two previously scheduled inspections, an additional inspection fee of fifty dollars ($50.00) plus ten dollars ($10.00) per unit shall be assessed.

(Ord. No. 06-49, § 1, 6-22-2006)


## Sec. 14-712. Notice of violation.

(a)  Whenever the building official determines that any rental dwelling or the premises surrounding fails to meet the requirements set forth in this chapter or in applicable rules and regulations issued pursuant thereto, the building official in accordance with the property maintenance code and the other city health, and building codes shall issue a notice setting forth the alleged failures and advising the responsible party that such failures must be corrected. This notice shall:

(1)  Be in writing.

(2)  Set forth the alleged violations of this chapter or of applicable rules and regulations issued pursuant thereto.

(3)  Describe the rental dwelling where the violations are alleged to exist or to have been committed. Such written notice shall specify an appropriate or acceptable method of correction.

(4)  Specify a specific date for the correction of any violation alleged.

(5)  Be served upon the responsible party of the rental dwelling by the building official, or mailed to the responsible party. If one (1) or more persons to whom such notice is addressed cannot be found after diligent effort to do so, service may be made upon such persons by posting the notice in or about the rental dwelling described in the notice.

(b)  At the end of the period of time allowed for the correction of any violation alleged, which was stated in the inspection notice, the building official shall reinspect the rental property described in the notice.

(c)  If, upon reinspection, the violations are determined by the building official not to have been corrected, the

building official, in turn, shall issue an O.V. (ordinance violation) ticket to initiate legal proceedings to be handled in Calumet City's housing court for the immediate correction of the alleged violations or shall order the rental property vacated within thirty (30) days, or both.

(Ord. No. 06-49, § 1, 6-22-2006)

## Sec. 14-713. Responsibility of tenants.

No tenant shall damage or cause to be damaged any unit or building leased nor shall any damage be caused to the general premises of any building used by the tenants. Each tenant and the families of each tenant shall maintain his rental unit free of any litter, and tenants shall not litter any of the premises or the buildings provided for use by the tenants. The tenants must maintain their responsibilities as outlined in the property maintenance code, subject to O.V. citations.

(Ord. No. 06-49, § 1, 6-22-2006)

## Sec. 14-714. Penalties.

Any responsible party of a rental dwelling who has received an order or notice of an alleged violation of this article shall be subject to a penalty of not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) for each day the alleged violation continues after expiration of the specified reasonable consideration period; provided that no such penalty shall be applicable while reconsideration, hearing or appeal to a court of competent jurisdiction is pending in the matter.

(Ord. No. 06-49, § 1, 6-22-2006)

## Sec. 14-715. Validity and severability.

If any section, subsection, paragraph, sentence, clause, or phrase of this Code shall be declared invalid for any reason whatsoever, this decision shall not affect the remaining portions of this Code, which shall continue in full force and effect, and to this end, the provisions of this Code are hereby declared to be severable.

(Ord. No. 06-49, § 1, 6-22-2006)

## Sec. 14-716. Savings clause.

This Code shall not affect violations of any other ordinance, code or regulation of the jurisdiction existing prior to the effective date hereof, and any such violation shall be governed and shall continue to be punishable to the full extent of the law under the provisions of those ordinances, codes or regulations in effect at the time the violation was committed.

(Ord. No. 06-49, § 1, 6-22-2006)

Secs. 14-717—14-750. Reserved.