IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AYANNA WALKER, for herself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CALUMET CITY, ILLINOIS, <br><br> Defendant. | Case No. 07 C 6148 <br><br> Judge Milton J. Shadur |

**AMENDED VERIFIED CLASS ACTION COMPLAINT FOR TEMPORARY
RESTRAINING ORDER, PRELIMINARY INJUNCTION,
PERMANENT INJUNCTION, DECLARATORY AND OTHER RELIEF**

Plaintiff Ayanna Walker ("Walker"), on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by their attorneys, Grippo & Elden LLC, for their complaint against defendant, Calumet City, Illinois ("City") state as follows:

**NATURE OF THE ACTION**

1. Plaintiffs bring this action for injunctive, declaratory and other relief, pursuant to 42 U.S.C. § 1983, and 28 U.S.C. §§2201 and 2202 to redress the deprivation, under color of law, of rights guaranteed to Plaintiffs, by the United States Constitution and under Illinois law. Plaintiffs seek declarations that certain provisions of Chapter 14 of the Municipal Code of Calumet City, Illinois, (the "Code"), codified through Ordinance No. 06-68, enacted August 24, 2006, are unconstitutional.

2. More particularly, Plaintiffs seek a declaration that Section 14-1 of Article I of Chapter 14 of the Code (the "Point of Sale Inspection Ordinance," attached as Ex. A), is unconstitutional because it (a) unreasonably and unconstitutionally restrains property owners'

138093v1

right to sell their property without due process of law and (b) fails to provide procedural due process.

3. Plaintiffs request immediate declaratory and injunctive relief by which the Court, among other things, would preliminarily and permanently enjoin enforcement of the Point of Sale Inspection Ordinance and declare it unconstitutional.

4. Plaintiffs challenge the constitutionality of the Point of Sale Inspection Ordinance on its face because it takes City owners' property rights, without due process. Plaintiffs have standing to bring this suit as property owners in City. A judgment from this Court will redress the harm being suffered and directly advance and protect the interests of Plaintiffs.

## JURISDICTION AND VENUE

5. Plaintiffs' claims arise under the United States Constitution. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

6. City is subject to personal jurisdiction in this district and venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this district.

## PARTIES

7. Walker owns property in City located at 521-23 Greenbay Avenue. Walker's property contains four dwelling units. Each unit has passed City's annual inspections. The property is listed for sale and subject to the Point of Sale Inspection Ordinance. By virtue of its Point of Sale Ordinance, City has taken and interfered and continues to take and interfere with Walker's right to alienate her property, without due process of law.

8. Defendant Calumet City, Illinois is a unit of local government incorporated under the laws of Illinois. City is located in Cook County, Illinois.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

I. **Summary Of Point Of Sale Inspection Ordinance.**

9. The Point of Sale Inspection Ordinance (Ex. A) and other provisions of the Code provide that property can only be sold if City issues transfer stamps. Code §§ 82-325, 82-328. In all but one instance,[1] the only way for sellers to obtain transfer stamps is to first obtain a final or conditional "Certificate of Compliance" from City and to pay any outstanding water bill (even if disputed). Code §§ 14-1(h); 14-1(i); § 82-327(b). City will issue a Certificate of Compliance only if it decides that property "passed" a point of sale inspection. To "pass" an inspection and obtain a Certificate of Compliance, a property owner must make all repairs (using a licensed contractor) ordered by City after the inspection. *Id.*; *see also id.* at § 14-1(k).

10. The Point of Sale Inspection Ordinance has no due process safeguards of any kind (and no appeal process). A property owner is not provided any opportunity to challenge City's refusal to issue a Certificate of Compliance or the repair order issued by an inspector, before the owner's right to alienate property is taken. Thus, property owners must capitulate to an inspector's demands, even if the repair work is unnecessary from a public health or safety standpoint, if they want to sell their property. In addition, the Point of Sale Inspection Ordinance requires citizens to pay the water bill before City will issue transfer stamps. *Id.* at § 14-1(i). Although the Point of Sale Inspection Ordinance states that an owner can dispute the water bill in a "predeprivation hearing," the ordinance does not explain the due process protections, if any, of such hearing and requires the owner to pay the bill "under protest" while he challenges it. Thus, if a property owner wants to sell his property, he must capitulate and pay (albeit "under protest")

---

[1] The only situation in which a Certificate of Compliance is not required to obtain transfer stamps is when an owner refuses his consent to an inspection and City fails to obtain a warrant to conduct the search. Code §14-1(f).

what City claims it is owed. *Id.* Otherwise, he will be unable to obtain the necessary transfer stamp. *Id.*

11. The Point of Sale Inspection Ordinance does not restrict, in any way, the scope of searches. Rather, City inspectors are permitted to search for *any* violation of City's codes (regardless of whether the violation relates to health or safety issues) and the ordinance does not contain any limitations on the duration or location of inspections (*e.g.*, there is no limitation on inspectors searching bedrooms, closets, desks or other areas where private or personal property may be stored). In sum, City inspectors have unfettered discretion to search for as long as, and for whatever, and wherever they want.

12. Under a similar prior ordinance (which was amended during the pendancy of related litigation filed by the Realtor® Association of West/South Suburban Chicagoland) City repeatedly stopped sales of property (by refusing to issue Certificates of Compliance) until property owners made "cosmetic repairs" unrelated to health, safety, and public welfare such as:

 a. Painting windows, tightening a loose soap dish, replacing a "decorative cover" on a vanity;

 b. Replacing floor tiles, tightening a loose soap dish, painting a bedroom wall, putting a "globe" on a light, painting a bathroom ceiling;

 c. Repairing closet doors, painting door trims, repairing kitchen cabinets; and

 d. "Patch – Paint – Clean – Decorate."

13. A seller of property cannot stop an overly intrusive search or refuse to make cosmetic repairs because the seller needs a "Certificate of Compliance" to obtain a "transfer stamp" to transfer the property. The seller/owner is completely at the mercy of the inspector's unfettered discretion in conducting the search and ordering repairs.

4

138093v1

14.  The Point of Sale Inspection Ordinance permits City to order the "deconversion" of "illegally converted" property. Code §§ 14-1(c)(2), 14-1(g). The Point of Sale Inspection Ordinance contains no due process protection against City improperly ordering the deconversion of *legal nonconforming* property as a precondition of the right to sell the property. There is no hearing at which property owners are permitted to be represented by counsel and to submit evidence that the property is legal. *Id.* Similarly, property owners cannot appeal a decision by City's inspector that the property is illegal. *Id.* There is no right to judicial review. *Id.* Thus, City may prevent the sales of *legal nonconforming* property simply by declaring it illegal. *Id.*

15.  City's Zoning Ordinance § 12.5 (which created a Zoning Appeal Board pursuant to 65 ILCS 5/11-13-3), does not apply to the Point of Sale Inspection Ordinance or its deconversion provisions; rather it is limited to the appeal of *zoning* decisions, *i.e.* the request for a variance. The Zoning Ordinance § 12.5, establishes a Zoning Board of Appeals with jurisdiction to "hear and decide appeals from any order, requirement, decision or determination made by the zoning administrator under this ordinance." *Id.* The zoning administrator has no role in the enforcement of the Point of Sale Inspection Ordinance. Even if the appeals process contained in the Zoning Ordinance applied to decisions made pursuant to the Point of Sale Inspection Ordinance -- which it does not -- that appeals process would, by its terms, apply only <u>after</u> the right to freely alienate private property has been taken and, thus, would not provide adequate and required <u>pre-deprivation</u> due process.

## II. Other Relevant Codes.

16.  City has also enacted a Code Enforcement Ordinance (Ex. B), to prosecute property owners who fail to maintain their property in compliance with City's building and maintenance codes. *Id.* City can also remedy health and safety related code violations through its Rental Dwelling Inspection Ordinance, which permits City to annually inspect multi-unit

dwellings. (Ex. C) Unlike the Point of Sale Inspection Ordinance, neither the Code Enforcement Ordinance nor the Rental Dwelling Inspection Ordinance is tied to the transfer of property. Rather, City may invoke the provisions (including as respects illegal conversions) whenever it believes that there is a code violation that poses a risk to public health and safety.

17. Unlike the Point of Sale Inspection Ordinance, the Code Enforcement Ordinance contains due process protections. For example, under the Code Enforcement Ordinance, a property owner is entitled to an administrative hearing where he is permitted to be represented by counsel, to present testimony and other evidence to challenge City's complaint, and to subpoena and cross-examine City officials regarding the alleged code violation. Ex. B at §§ 2-943, 2-946. Further, a property owner may petition for rehearing of an adverse decision before the enforcement administrator, *Id.* at § 2-949, and appeal any final decision to a Cook County Court. *Id.* at § 2-950. Finally, if a property owner is found guilty of a code violation, he is fined, *id.* at § 2-952, not deprived of his Constitutional right to sell and transfer his property. None of these due process protections are present in the Point of Sale Inspection Ordinance.

### III. Impact Of The Point Of Sale Inspection Ordinance On City Property Owners.

18. As of October 29, 2007, according to the multiple listing service, there were 46 residential real estate listings in City with contracts pending. There are 642 active listings of property in City.

19. Each of the 46 properties under contract are subject to an unconstitutional taking of the right to transfer prior to closing if City is permitted to enforce the Point of Sale Inspection Ordinance. Similarly, the 642 properties currently listed for sale are potentially at risk of unconstitutional taking by City pursuant to the Point of Sale Inspection Ordinance. The unconstitutional taking of the right to alienate property depresses the value of all residential property in City.

## CLASS ACTION ALLEGATIONS

20. Walker brings this action as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of a class consisting of all owners of residential property in City.

21. The class is sufficiently numerous to make bringing all parties before the court impractical.

22. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members, including, but not limited to:

    a. Whether the Point of Sale Inspection Ordinance is unconstitutional because it unreasonably and unconstitutionally restrains property owners' right to sell their property without due process of law; and

    b. Whether the Point of Sale Inspection Ordinance is unconstitutional because it fails to provide procedural due process.

23. Walker is a member of the class, her claims are typical of the claims of the class members, and she will fairly and adequately protect the interests of the class. Walker is a typical residential property owner in City and her interests are coincident with and not antagonistic to those of the other members of the class. Walker has retained counsel able and experienced in class action litigation and other litigation advancing constitutional rights related to the ownership and sale of real property.

24. City has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or declaratory relief with respect to the class as a whole.

25. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated

persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many class members who could not afford individually to litigate constitutional claims such as those asserted herein. This class action likely presents no difficulties in management that would preclude maintenance as a class action. The class is readily ascertainable.

## CAUSES OF ACTION

### COUNT I: THE POINT OF SALE INSPECTION ORDINANCE UNREASONABLY RESTRAINS THE RIGHT OF PROPERTY OWNERS TO TRANSFER THEIR PROPERTY

26. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-25, as though fully set forth herein.

27. Title 42, Section 1983 of the United States Constitution provides as follows:

> Every person who, under the color of an statute, ordinance, regulation, custom, or usage of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

28. City, as a municipal corporation under the laws of Illinois, is a "person" that is subject to suit under 42 U.S.C. § 1983.

29. The Point of Sale Inspection Ordinance unreasonably and unconstitutionally restrains the alienability of property. The Point of Sale Inspection Ordinance provides that property cannot be sold unless City issues a transfer stamp. Code § 14-1(h) and § 82-327(b); Code §§ 82-325, 82-328. With one limited exception (*see* n. 1), the only way to obtain a transfer stamp is to first obtain a "Certificate of Compliance" which, in turn, can only be obtained if an inspector decides that property "passed" a point of sale inspection. *Id*. A property owner can

"pass" a point of sale inspection only if it completes all repairs required by the inspector -- even if those repairs are cosmetic in nature -- by using a licensed contractor. *Id.* at § 14-1(k). Thus, even if property complies with all City codes, a property owner may not transfer his property if City refuses to issue a "Certificate of Compliance." When City fails or refuses to issue a "Certificate of Compliance" a property owner has no right to a hearing to contest the inspector's decision, an administrative appeal or judicial review. *Id.*

30. In addition, the Point of Sale Inspection Ordinance requires a seller to pay the water bill before City will issue transfer stamps. *Id.* at § 14-1(i). Although an owner can dispute the water bill in a "predeprivation hearing," the ordinance does not provide any detail regarding the due process protection of such hearing and requires the owner to pay the disputed bill "under protest" while he challenges the bill if he wants to obtain a transfer stamp. *Id.*

31. Although cities are permitted to adopt ordinances to protect public health and safety, they may not use such ordinances to restrict the free transfer of property. *See* Op. Ill. Att'y Gen. No. 94-024 (Oct. 25, 1994), 1994 WL 601863 ("Municipalities are authorized, under Article 11 of the Municipal Code (65 ILCS 5/11-1-1 *et seq.*) (West 1992)) to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines ... Further, municipalities may impose various fees for other services relating to real property. *In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such code.*") (emphasis added).

32. Plaintiffs have suffered and will continue to suffer immediate and irreparable harm from enforcement of the Point of Sale Inspection Ordinance. The Point of Sale Inspection Ordinance is unconstitutional because it violates the protections in the U.S. Constitution against unreasonable governmental restriction on the right to sell private property. This irreparable harm

to Plaintiffs will substantially outweigh any harm to City if immediate relief is granted. Even if the Point of Sale Inspection Ordinance is enjoined, City can protect public health and safety with the Code Enforcement Ordinance and Rental Dwelling Inspection Ordinance.

33. There is no adequate remedy at law. Money damages are wholly inadequate to remedy the immediate loss of the Constitutional right to alienate property.

**WHEREFORE**, Plaintiffs pray for the following relief:

a. That this action be certified and proceed as a class action and that Walker be certified as the representative of the class and that her counsel be appointed class counsel;

b. A declaration that the Point of Sale Inspection Ordinance is unconstitutional;

c. A temporary restraining order, preliminary and permanent injunction prohibiting City from enforcing the Point of Sale Inspection Ordinance and enjoining City from prohibiting the sale of property or refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of compliance;"

d. An award of reasonable attorneys fees and expenses as part of the costs of this action, pursuant to 42 U.S.C. § 1988; and

e. Such other relief as the Court deems just and proper.

## COUNT II: LACK OF PROCEDURAL DUE PROCESS

34. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-33, as though fully set forth herein.

35. The Point of Sale Inspection Ordinance fails to provide procedural due process. Among other things, the due process clause requires that, at a minimum, a hearing must be provided *before* a property right -- here, the right to transfer property -- can be taken. As

respects point of sale inspections, the Point of Sale Inspection Ordinance has no due process safeguards that allow citizens to challenge the failure to issue a Certificate of Compliance or an inspector's repair order. Property owners are not entitled to a hearing at which they can challenge the finding of a code violation or a repair order. Further, property owners are not provided the right to appeal the refusal to issue a Certificate of Compliance or judicial review of any aspect of City's action or inaction. Thus, property owners must capitulate to City's inspectors' demands, even if the repair work is mistaken, unnecessary from a public health or safety standpoint or otherwise improper, if they want to sell their property. The Point of Sale Inspection Ordinance prohibits the transfer of every residential property unless City consents, but no due process protection attaches. In effect, City has enjoined the transfer of residential property -- without a complaint, evidence, a hearing or any procedural or substantive rules -- until it decides to consent. The home seller has no protection if an inspector conditions City's consent on "repairs" that have no relationship to health or safety. Such a scheme does not comport with due process.

36. As respects deconversions, the Point of Sale Inspection Ordinance does not provide *any* procedural due process protection to ensure that City does not wrongfully deprive property owners of the "valuable property right" to sell and transfer legal nonconforming property. The ordinance does not provide any notice of how City will determine whether property is "legal" or "illegal." Further, property owners are not granted a hearing where they can be represented by counsel, rebut City's positions or submit evidence to show that the property is not an illegal conversion. Further, there is no right to an administrative appeal of a determination that property is "illegal." There is also no right to judicial review.

138093v1

37. Plaintiffs have suffered and will continue to suffer immediate and irreparable harm from enforcement of the Point of Sale Inspection Ordinance, including its deconversion provisions, because the Point of Sale Inspection Ordinance fails to provide procedural due process guaranteed by the U.S. Constitution. This irreparable harm to Plaintiffs will substantially outweigh any harm to City if immediate relief is granted. Even if the Point of Sale Inspection Ordinance is enjoined, City can protect public health and safety with the Code Enforcement Ordinance and Rental Dwelling Inspection Ordinance.

38. There is no adequate remedy at law. Money damages are wholly inadequate to remedy the immediate loss of Constitutional rights.

**WHEREFORE**, Plaintiffs pray for the following relief:

a. That this action be certified and proceed as a class action and that Walker be certified as the representative of the class and that her counsel be appointed class counsel;

b. A declaration that the Point of Sale Inspection Ordinance is unconstitutional under the United States Constitution;

c. A temporary restraining order, preliminary and permanent injunction prohibiting City from enforcing the Point of Sale Inspection Ordinance and enjoining City from prohibiting the sale of property or refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of compliance;"

d. An award of reasonable attorneys fees and expenses as part of the costs of this action, pursuant to 42 U.S.C. § 1988; and

e. Such other relief as the Court deems just and proper.

138093v1

DATED: November 12, 2007	Respectfully submitted,

**AYANNA WALKER AND ALL OTHERS SIMILARLY SITUATED,**

Philip C. Stahl
Patrick T. Nash
Maggie M. Hanel
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
Phone: (312) 704-7700
Fax: (312) 558-1195

By:/s/ Patrick T. Nash
    One of Their Attorneys

13

138093v1

## VERIFICATION

I, Ayanna Walker, verify under penalty of perjury that the foregoing statements set forth in the Amended Verified Class Action Complaint For Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Declaratory and Other Relief are true and correct.

*/s/ Ayanna Walker*
Ayanna Walker

## CERTIFICATE OF SERVICE

  I, Patrick T. Nash, certify that on this 12th day of November, 2007, I served the foregoing **AMENDED VERIFIED CLASS ACTION COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, DECLARATORY AND OTHER RELIEF** to the following by Electronic Mail Transmission via the ECF System upon:

    Mark H. Sterk
    Odelson & Sterk, Ltd.
    3318 West 95th Street
    Evergreen Park, IL  60805

    John B. Murphey
    Rosenthal, Murphey & Coblentz
    30 North LaSalle Street
    Suite 1624
    Chicago, IL  60602


          /s/ Patrick T. Nash
          Patrick T. Nash

138093v1