# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AYANNA WALKER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 07 C 6148 |
| CALUMET CITY, ILLINOIS, | ) Judge Milton I. Shadur |
| Defendant. | ) |

**FILED Oct. 31, 2007**

## MEMORANDUM IN SUPPORT OF AYANNA WALKER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Ayanna Walker ("Walker") moves the Court for entry of temporary restraining order and/or a preliminary injunction enjoining enforcement of Calumet City's ("City") Point of Sale Inspection Ordinance ("Ordinance") (Ex. A). Below, we set forth (I) relevant procedural history of related litigation brought by the Realtor Association of West/South Suburban Chicagoland ("Association"), including this Court's entry of a preliminary injunction regarding the same Ordinance, (II) a detailed explanation of the Ordinance and other ordinances at City's disposal to address health and safety issues, and (III) why Walker is entitled to immediate injunctive relief. Based on the Court's familiarity with the Ordinance and the arguments of the parties, Walker respectfully requests that the Court enter a TRO immediately until such time as the Court has time to more fully consider Walker's request for a preliminary injunction.

**I.   RELEVANT PROCEDURAL HISTORY OF ASSOCIATION'S LAWSUIT**

Association filed a suit against City on April 24, 2006, which challenged the constitutionality of City's then-enacted Point of Sale Inspection Ordinance. After that suit was filed, City amended its Point of Sale Inspection Ordinance to remedy certain deficiencies alleged by Association. The amendment, however, did not remedy all Constitutional defects and, upon

136080v3

Association's motion, the Court entered a preliminary injunction against enforcement of the amended Point of Sale Inspection Ordinance on August 8, 2006. Thereafter, City amended its ordinance again and moved to dissolve the August 8 injunction. The Court granted the motion to dissolve and, after briefing, on December 8, 2006, enjoined the new ordinance (the "December 8 Injunction") (Ex. B). *Importantly, the Ordinance whose enforcement was enjoined by the December 8 Injunction is exactly the same Ordinance which Walker seeks to enjoin enforcement of by this motion.* Thus, the Court has already considered the arguments set forth below and decided that injunctive relief is warranted.

City appealed the entry of the December 8 Injunction. During the pendency of the appeal, this Court granted Walker, a City property owner, leave to join Association in the lawsuit and to file an amended complaint. A new injunction is required, however, because on October 17, 2007, the Seventh Circuit vacated the December 8 Injunction on the ground that Association lacks "prudential" standing and ordered that the "suit" brought by Association be dismissed without prejudice. On October 23, 2007, this Court dismissed the "suit" without prejudice, including the claims asserted by Walker. On October 31, Walker refiled her lawsuit and now seeks the same relief this Court previously awarded pursuant to the December 8 Injunction. Because the Seventh Circuit vacated the December 8 Injunction, all of the unconstitutional wrongs and irreparable harm that caused the Court to issue the December 8 Injunction will again be imposed on Walker and other City property owners. To prevent such irreparable harm, the Court should enter a new injunction in favor of Walker.

II.     **STATEMENT OF FACTS**

    A.     **Walker's Property and Similarly Situated Property**

Walker owns property in City located at 521-23 Greenbay Avenue. Complaint at ¶7. Walker's property contains four dwelling units. Each unit has passed City's annual

2

136080v3

inspections. *Id.* The property is listed for sale and subject to the Ordinance. *Id.* By virtue of its Ordinance, City has taken and interfered and continues to take and interfere with Walker's right to alienate her property without due process. *Id.*

As of October 29, 2007, according to the multiple listing service, there were 46 real estate listings in City with contracts pending. *Id.* at ¶18. There are 642 active listings of property in City. *Id.* Each such property is subject to the Ordinance if not enjoined.

**B.   Key Aspects of Ordinance**

   **1.   Transfer Stamp and Point of Sale Inspection Requirement**

The Ordinance provides that property can only be sold if City issues transfer stamps. Calumet City Municipal Code ("Code") §§ 82-325, 82-328 (Ex. C). In all but one instance[1], the only way for sellers to obtain transfer stamps is to first obtain a final or conditional "Certificate of Compliance" from City and to pay any outstanding water bill (even if disputed). Ex. A at §§ 14-1(h); 14-1(i), Ex. C at § 82-327(b). City will issue a Certificate of Compliance only if it decides that property "passed" a point of sale inspection. To "pass" an inspection and obtain a Certificate of Compliance, a property owner must make all repairs (using a licensed contractor) ordered by City after the inspection. *Id.*; *see also* Ex. A at § 14-1(k).

The Ordinance has no due process safeguards of any kind and no appeal process to challenge City's refusal to issue a Certificate of Compliance or a repair order issued by an inspector. *Id.* Thus, property owners such as Walker must capitulate to an inspector's demands, even if the repair work is unnecessary from a public health or safety standpoint, if they want to sell their property. *Id.* In addition, the Ordinance requires citizens to pay the water bill before City will issue transfer stamps. *Id.* at § 14-1(i). Although the Ordinance states that an owner can

---

[1] The only situation in which a Certificate Of Compliance is not required to obtain transfer stamps is when an owner refuses his consent to an inspection and City fails to obtain a warrant to conduct the search. Ex. A at §14-1(f).

3

136080v3

dispute the water bill in a "predeprivation hearing," the ordinance does not explain the due process protections, if any, of such hearing and requires the owner to pay the bill "under protest" while she challenges it. Thus, if a property owner such as Walker wants to sell her property, she must capitulate and pay (albeit "under protest") what City claims it is owed. *Id.* Otherwise, she will be unable to obtain the necessary transfer stamp. *Id.*

### 2. Lack Of Restriction On The Scope Of Inspection

The Ordinance does not restrict, in any way, the scope of searches. Ex. A. Rather, City inspectors are permitted to search for any violation of City's codes (regardless of whether the violation relates to health or safety issues) and the Ordinance does not contain any limitations on the duration or location of inspections. *Id.* The record shows that, while the original Ordinance was in force, City repeatedly stopped sales of property (by refusing to issue Certificates of Compliance) until property owners made "cosmetic repairs" unrelated to health, safety, and public welfare such as:

- Painting windows, tightening a loose soap dish, replacing a "decorative cover" on a vanity (Ex. D);
- Replacing floor tiles, tightening a loose soap dish, painting a bedroom wall, putting a "globe" on a light, painting a bathroom ceiling (Ex. D);
- Repairing closet doors, painting door trims, repairing kitchen cabinets (Ex. D); and
- "Patch – Paint – Clean – Decorate" (Ex. D).

A seller of property such as Walker cannot refuse to make cosmetic repairs because she needs a "Certificate of Compliance" to obtain a "transfer stamp" to sell her property. Exs. A, C.

### 3. Deconversion Provisions.

The Ordinance permits City to order the "deconversion" of "illegally converted" property. Ex. A at §§ 14-1(c)(2), 14-1(g). The Ordinance contains no due process protection

4

136080v3

against City improperly ordering the deconversion of legal nonconforming property as a precondition of the right to sell the property. Ex. A. For example, "illegally converted" is not defined and there are no guidelines that explain how City determines whether property is "illegal." *Id.* Additionally, there is no hearing at which property owners are permitted to be represented by counsel and to submit evidence that the property is legal. *Id.* Similarly, property owners cannot appeal a decision by City's inspector that the property is illegal. *Id.* There is no right to judicial review. *Id.* Thus, City may prevent the sales of any nonconforming property, such as Walker's property, simply by declaring it illegal. *Id.*

In prior briefing in the litigation brought by Association, City asserted that citizens could appeal an adverse decision pursuant to City's Zoning Ordinance § 12.5 (which created a Zoning Appeal Board pursuant to 65 ILCS 5/11-13-3). The appeals process cited by City below, however, does not apply to the Ordinance or its deconversion provisions; rather it is limited to the appeal of <u>zoning decisions</u>, *i.e.* the request for a variance. Amended Complaint at ¶15; Ex. E. The Zoning Ordinance § 12.5, establishes a Zoning Board of Appeals with jurisdiction to "hear and decide appeals from any order, requirement, decision or determination made by the zoning administrator under this ordinance." *Id.* The zoning administrator has no role in the enforcement of the Ordinance. *Id.*

C.    <u>City's Other Ordinances</u>

City has two other ordinances that allow inspections to address health and safety issues. First, City enacted Code, Article IX, §§ 2-941 et seq. ("Code Enforcement Ordinance"), which allows City to enforce building codes and to prevent violations that create legitimate public health and safety problems (including illegal conversions). Ex. F. Second, City enacted Code, Article X, Division 2, § 14-711 et seq. ("Rental Dwelling Inspection Ordinance") which

allows City to annually inspect multi-family dwellings, such as Walker's property, to ensure compliance with building and maintenance codes. Ex. G.

Importantly, the Code Enforcement Ordinance and the Rental Dwelling Inspection Ordinance, unlike the Ordinance, contain due process protection -- including the right to a hearing and judicial review -- and do not allow City to prevent the sale of private property by simply refusing to allow it. Under the Code Enforcement Ordinance, a property owner is entitled to an administrative hearing where he is permitted to be represented by counsel, to present testimony and other evidence to challenge City's complaint, and to subpoena and cross-examine City officials regarding the alleged code violation. Ex. F at §§ 2-943, 2-946. Further, a property owner may petition for rehearing of an adverse decision before the enforcement administrator, *id.* at § 2-949, and appeal any final decision to a Cook County Court. *Id.* at § 2-950. Finally, if a property owner is found guilty of a code violation, he is fined, *id.* at § 2-952, not deprived of his Constitutional right to sell his property. None of these due process protections are present in the Ordinance.

## III. WALKER IS ENTITLED TO INJUNCTIVE RELIEF

To obtain a preliminary injunction, Walker must demonstrate each of the following: (A) some likelihood of success on the merits; (B) without injunctive relief, Walker will suffer irreparable harm for which there is no adequate remedy at law; (C) the irreparable harm Walker will suffer absent the requested relief will outweigh the irreparable harm City will suffer if the relief is granted (measured over the length of time that the relief will be in force). The more likely it is that Walker will succeed on the merits, the less the balance of irreparable harms need weigh toward its side. *Abbot Lab. v. Mead Johnson & So.*, 971 F.2d 6, 11–12 (7th Cir. 1992); and (D) the public interest will be served if injunctive relief is granted (in terms of the consequences to non-parties); *Jak Prod. Inc. v. Wiza*, 986 F.2d 1080, 1084 (7th Cir. 1993);

*Abbott Lab.*, 971 F.2d at 11–12; *International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988). As the Court held when it issued the December 8 Injunction, Walker can readily satisfy each of these requirements.

### A. Likelihood of Success on the Merits

#### 1. Unreasonable Restraint on Walker's Right to Sell Her Property

The Ordinance unreasonably and unconstitutionally restrains the alienability of Ms. Walker's property. The Ordinance provides that property cannot be sold unless City issues a transfer stamp. Ex. A at § 14-1(h); Ex. C at §§ 82-325, 82-327(b), 82-328. With one limited exception (*see* n. 1, above), the only way for Ms. Walker to obtain a transfer stamp is to first obtain a "Certificate of Compliance" which, in turn, can only be obtained if an inspector decides her property "passed" a point of sale inspection. Ex. A. A property owner can "pass" a point of sale inspection only if it completes all repairs required by the inspector -- even if those repairs are cosmetic in nature -- by using a licensed contractor. *Id.* at § 14-1(k). Thus, even if property complies with all City codes, a property owner may not sell her property if City refuses to issue a "Certificate of Compliance." When City fails or refuses to issue a "Certificate of Compliance" a property owner has no right to a hearing to contest the inspector's decision, an administrative appeal or judicial review. *Id.*

> In its "prudential standing" Opinion, the Seventh Circuit correctly noted (at 4-5):
>
> The challenged ordinance is quite likely to delay the sale of homes in the area serviced by the real estate brokers whose association has brought this suit, to reduce sales prices, and thus to reduce the brokers' commissions . . .
>
> The initial victims of an ordinance impeding the sale of homes are homeowners who would like to sell -- or perhaps all homeowners subject to the ordinance; for as we said, any impairment of the salability ('alienability' in an older legal vocabulary) is one of the rights that, along with such other rights as the right to the exclusive enjoyment of the property, make a fee-simple interest more valuable than other interest in property, such as that of a licensee.

In addition to the Seventh Circuit's statements that the Ordinance impairs sales, the Illinois Attorney General has ruled that, although cities are permitted to adopt ordinances to protect public health and safety, they may not use such ordinances to restrict the free transfer of property. Op. Ill. Att'y Gen. No. 94-024 (Oct. 25, 1994), 1994 WL 601863 ("Municipalities are authorized, under Article 11 of the Municipal Code (65 ILCS 5/11-1-1 et seq.) (West 1992)) to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines ... Further, municipalities may impose various fees for other services relating to real property. *In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such code.*") (emphasis added) (Ex. H). But the Ordinance does exactly what the Illinois Attorney General has said municipalities may not do. *Huggins v. Isenbarger*, 798 F.2d 203, 208-10 (7th Cir. 1986) ("a federal court is not authorized on that account to give the Attorney General's views lesser weight than they would receive if they appeared in a bound volume of legal opinions").

City has in the past argued that restraint on alienation has nothing to do with the constitutionality of a law. City's assertion is plainly wrong. The Supreme Court has frequently emphasized that the term "property" as used in the Constitution "includes the entire 'group of rights inhering in the citizen's [ownership].'" *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 142 (1978) (Renquist, J., dissenting), *quoting, United States v. General Motors Corp.*, 323 U.S. 373 (1945). This group of rights includes the right to "dispose of [property]." *Id.* at 143, *quoting, General Motors Corp.*, 323 U.S. at 377-78. *See also* cases cited *infra* at 10-11. As set forth above, the Seventh Circuit agrees that the right to sell property is a protected right. Thus, by taking the right to sell property, City is violating the Constitution.

The Illinois Supreme Court has also made clear that municipalities may not use ordinances to interfere with the free alienability of property. *Petropoulos v. Chicago*, 5 Ill. 2d 270, 274-75, 125 N.E.2d 522, 525 (Ill. 1955) ("To place a legal restriction on the use of such property to the extent the same is rendered practically unsaleable would be an utter violation of a man's right to alienate property"). The Court should follow this authority and find that the Ordinance unconstitutionally interferes with the free alienability of property.

City previously cited *Butcher v. City of Detroit*, 131 Mich. App. 698, 347 N.W.2d 702 (Mich. App. Ct. 1984) to support its claim that the Ordinance is constitutional. As this Court previously recognized, *Butcher* does not control because the ordinance at issue there is different from City's Ordinance. In contrast to the Ordinance, as respects the transfer of residential property to be occupied by the buyer, the *Butcher* ordinance required a POS inspection and an "inspection report" but did not force the owner to repair all defects as a condition to right to sell property. *Butcher*, 131 Mich.App. at 700-01, 347 N.W.2d at 704, *citing* Detroit City Code Secs. 12-7-2(b), 12-7-8 (Derived from Ord. 123-H, §1, effective June 30, 1976). Thus, the *Butcher* ordinance did not interfere with or delay the sale of property and has no bearing here.

2.   **Lack of Procedural Due Process**

"Due process requires 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999); 196 F.3d at 813, *quoting Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[S]ome kind of hearing is required at some time *before* a person is finally deprived of his property rights." *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 11 (1978) (internal cite omitted) (emphasis added).

The Supreme Court has repeatedly applied this fundamental due process rule – that a hearing is required *before* a property right can be taken away – when the "taking" adversely affects the fundamental right to freely sell residential property. For example,

9

136080v3

*Connecticut v. Doehr*, 501 U.S. 1 (1991) held unconstitutional a Connecticut statute that permitted prejudgment attachment of real estate without a hearing. In reaching its conclusion, the Supreme Court emphasized the significance of an owner's right to freely sell his home without governmental interference:

> [T]he property interests that attachment affects are significant. For a property owner . . . attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property . . . . *Id.* at 11.

The Supreme Court also held that the taking of the right to sell property – even if only temporary – requires due process protection:

> But the Court has never held that only such extreme deprivations trigger due process concern. To the contrary, our cases show that even the temporary or partial impairment to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection. *Id.* at 12 (citation omitted).

Similarly, the Court stated:

> The Fourteenth Amendment draws no bright lines around three-day, 10-day, or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause. *Id.* at 15, *quoting Fuentes v. Shevin*, 407 U.S. 67, 86 (1972).

The Supreme Court held that a *post-deprivation* hearing is not sufficient to comply with due process because a post-deprivation hearing "would not cure the temporary deprivation that an earlier hearing might have prevented." *Id.* at 15.

Similarly, in *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53-54 (1993), the Supreme Court held that, as respects the deprivation of real property such as a home, the requirement for a predeprivation hearing is critically important because, without a hearing, property owners are deprived of "valuable rights of ownership, including the right of sale." In *Daniel Good*, the Court held that a hearing was required before a home could be seized

10

136080v3

pursuant to 21 U.S.C. §881(a)(7) on the ground that the home was used to facilitate a federal drug offense. Relevant to our case, the Supreme Court observed at pp. 53-54:

> [A property owner's] right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance. ... The seizure deprived [the property owner] of valuable rights of ownership, including the right of sale ... All that the seizure left him was the right to bring a claim for the return of title at some unscheduled future hearing. ... The seizure of a home produces a far greater deprivation than the loss of furniture, or even attachment. It gives the Government not only the right to prohibit sale, but also the right to ... modify the property, to condition occupancy ... and to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property.

*See also Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 96 (1977) (emphasizing the value of the right to sell real property when the Court prohibited a township from banning "for sale" signs, based, in part, on the effect of the ban on "one of the most important decisions [residents] have a right to make: where to live and raise their families").

The Ordinance fails to comply with the Supreme Court's edict that, at a minimum, a hearing must be provided *before* a property right can be taken. As respects point of sale inspections, the Ordinance has no due process safeguards that allow citizens to challenge the failure to issue a Certificate of Compliance or an inspector's repair order. Ex. A. Property owners are not entitled to a hearing at which they can challenge a finding of a code violation or a repair order. *Id.* Property owners have no right to appeal the refusal to issue a Certificate of Compliance or judicial review of any aspect of City's action or inaction. *Id.* Property owners must capitulate to City's inspectors' demands, even if the repair work is unnecessary from a public health or safety standpoint, if they want to sell their property. *Id.* The Ordinance prohibits the transfer of every residential property unless City consents, but no due process protection attaches. In effect, City has enjoined the transfer of residential property -- without a complaint, evidence, a hearing or any procedural or substantive rules -- until it decides to

11

136080v3

consent. The home seller has no protection if an inspector conditions City's consent on "repairs" that have no relationship to health or safety. Such a scheme does not comport with due process.[2]

As respects deconversions, the Ordinance does not provide any procedural due process protection to ensure that City does not wrongfully deprive property owners of the "valuable property right" to sell legal nonconforming property. *Village of Oak Park v. Gordon*, 32 Ill. 2d 295, 298, 205 N.E.2d 464, 466 (Ill. 1965). For example, the Ordinance does not explain how City will determine whether property is "legal" or "illegal." Ex. A. Further, property owners are not granted a hearing where they can be represented by counsel, rebut City's positions or submit evidence to show that the property is not an illegal conversion. Further, there is no right to an administrative appeal of a determination that property is "illegal." *Id.; see also supra* at 5 (discussing how the zoning appeal process cited by City by its terms would not apply to a deconversion order). There is also no right to judicial review.

Ironically, City provides a "predeprivation hearing" when an owner disputes the amount owed on a water bill (probably less than $100), but provides no such hearing when City orders the deconversion of, or refuses to issue a Certificate of Compliance to allow the sale of, property worth hundreds of thousands of dollars. Ex. A at §14-H ("predeprivation hearing" consistent with *Memphis Light, Gas & Water* is required regarding any dispute over water bill). Even as respects the water bill, however, the Ordinance fails. Although an owner can dispute the water bill in a "predeprivation hearing," the Ordinance does not provide any detail regarding the due process protection of such hearing and requires the owner to pay the disputed bill "under protest" while he challenges the bill if he wants to obtain a transfer stamp. *Id.*

---

[2] As explained above, the Zoning Board of Appeals does not have jurisdiction to hear appeals arising out of point of sale inspections. However, even if it did, that would not save the Ordinance. At most, the Zoning Board of Appeals applies *post*-deprivation. As the many cases cited above hold, however, due process requires a *pre*-deprivation hearing.

It is also telling that in the Code Enforcement Ordinance (and to a lesser extent, the Rental Dwelling Inspection Ordinance), City provides the due process protections (that should be included in the Ordinance) even though much less is at stake in terms of potential deprivation of property rights. For example, under the Code Enforcement Ordinance, a property owner must be served with a complaint and then is entitled to an administrative hearing where he is permitted to be represented by counsel, to present testimony and other evidence to challenge City's complaint, and to subpoena and cross-examine City officials regarding the alleged code violation. Ex. F at §§ 2-943, 2-946. Further, a property owner may petition for rehearing of an adverse decision before the enforcement administrator, *id.* at § 2-949, and appeal any final decision to a Cook County Court. *Id.* at § 2-950. Finally, if a property owner is found guilty of a code violation, he is fined, *id.* at § 2-952, not deprived of his Constitutional right to sell his property. Because none of these due process protections are present in the Ordinance, it fails to provide adequate procedural due process.

\* \* \*

In sum, as the Court has previously held, Walker has a high likelihood of success on the argument that the Ordinance violates the Constitution because it improperly interferes with the free alienability of property and does not provide procedural due process.

B.  **Without Injunctive Relief, Walker Will Be Denied Her Constitutional Rights -- An Irreparable Harm for Which There is No Adequate Remedy at Law**

The deprivation of a constitutional right is in itself an "irreparable injury" as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, No. 98 C 1932, 1998 U.S. Dist. Lexis 7287 at \*19 (May 8, 1998) ("irreparable harm is presumed to flow from a constitutional violation which is not fully compensable by monetary damages") (Ex. I). There is also no adequate remedy at law for the deprivation of a

13

136080v3

Constitutional right. Based on City's prior conduct, City will continue to interfere with the right to sell property unless the Ordinance is enjoined. For example, during the pendency of Association's lawsuit, City unconstitutionally interfered with the sale of the Forsythe Property, which resulted in this Court finding City had violated the Injunction.

### C. The Irreparable Harm That Will Be Suffered Absent the Requested Relief Outweighs the Irreparable Harm that City May Suffer if Relief is Granted

This Court previously found that the balance of harms "substantially" favored the granting of an injunction. Ex. D at ¶4. That finding is correct. The wrongful denial of an injunction will result in irreparable harm: the deprivation of Walker's Constitutional right to freely sell her property without unreasonable restraint by City without due process.

In contrast, City will not be harmed by the injunction. Even with the injunction in place, City may continue to enforce its safety codes through its Code Enforcement Ordinance and the Rental Dwelling Inspection Ordinance. Those ordinances allow City to eliminate code violations, including those created by illegally converted property, that relate to public health and safety, without encroaching on the right to sell property.

### D. The Public Interest Will Be Served If The Injunction is Granted

The public interest is best served by protecting Walker and other City citizens from City's constitutional violations. It is in the public interest not to allow City to interfere with the right to sell property unless owners comply with its demands, no matter how unreasonable, and without any due process protection. The public is better served by letting the market dictate how, what and when repairs should be made and by whom. Buyers and sellers should be free to negotiate such issues without City precluding sales unless its demands are met. As of October 29, there were 46 real estate listings in City with contracts pending and 642 active listings of property in City. Each owner of such property will have his or her Constitutional rights violated

if the Ordinance is not enjoined. All owners of nonconforming property are at risk that City will declare their property illegal, without due process. Plainly, it is in the public interest to make sure citizens have due process rights, including the right to contest the inspector's repair orders, appeal, and have judicial review before City prohibits a sale or orders that nonconforming property be deconverted.

Finally, the public would not be harmed because, even if the Ordinance is enjoined, City may use the Code Enforcement Ordinance and the Rental Dwelling Inspection Ordinance to address legitimate health and safety issues.

## CONCLUSION

The Court should reaffirm its prior decision and enter an injunction enjoining City's enforcement of the Ordinance.

October 31, 2007

Philip C. Stahl
Patrick T. Nash
Maggie M. Hanel
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700

Respectfully submitted,

AYANNA WALKER

By: _____
One of her Attorneys

15

136080v3

## CERTIFICATE OF SERVICE

I, Patrick T. Nash, certify that on this 31st day of October, 2007, I served the foregoing AYANNA WALKER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION, MEMORANDUM IN SUPPORT OF AYANNA WALKER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION to the following by Electronic Mail before 4:00 p.m. and by U.S. Mail upon:

> Mark H. Sterk
> Odelson & Sterk, Ltd.
> 3318 West 95th Street
> Evergreen Park, Illinois 60805

And by Electronic Mail and Hand Delivery before 4:00 p.m. on:

> John B. Murphey
> Rosenthal, Murphey & Coblentz
> 30 North LaSalle Street
> Suite 1624
> Chicago, IL 60602

_____
Patrick T. Nash

136080v3