Exhibit
E

# APPENDIX B ZONING*

*Editor's note: Appendix B sets out the zoning ordinance, enacted on Jan. 13, 1983, by Ord. No. 83-1, as the same was originally enacted by the city. Amendments will be cited in a history note following the affected section. The editor has incorporated a uniform printing style for purposes of maintaining Code format; however, no substantive changes have been made.

Cross references: Buildings and building regulations, ch. 14; community development, ch. 18; environment, ch. 26; floods, ch. 34; sexually oriented entertainment businesses, § 54-1941 et seq.; mobile home parks, ch. 58; planning, ch. 66; signs, ch. 70; streets, sidewalks and other public places, ch. 78; telecommunications, ch. 86; ordinances related to zoning, app. C.

Sec. I. Title.
Sec. II. Intent and purpose.
Sec. III. Rules and definitions.
Sec. IV. General provisions.
Sec. V. Nonconforming buildings and uses.
Sec. VI. Zoning districts and zoning district map.
Sec. VII. Residence districts.
Sec. VIII. Commercial business district.
Sec. IX. Industrial districts.
Sec. X. Off-street parking and loading.
Sec. XI. Signs.
Sec. XII. Administration.
Sec. XIII. Amendments.
Sec. XIV. Violations; penalty.
Sec. XV. Enactment.

*An Ordinance to Classify, Regulate and Restrict the Location of Trades and Industries and the Location of Buildings Designed for the Specified Industrial, Commercial, Residential and Other Uses and to Regulate and Limit the Height and Bulk of Buildings Hereafter Erected; to Regulate and Determine the Area of Yards, Courts and Other Open Spaces Within and Surrounding Such Buildings and to Establish the Boundaries of Districts for the Said Purposes and Prescribing Penalties for the Violation of Its Provisions, and for Creating a Board of Appeals.*

*Now, Therefore, Be and It Is Hereby Ordained by the City Council of Calumet City, Illinois:*

## Sec. I. Title.

This ordinance shall be known, referred to and recited as "The Zoning Ordinance of the City of Calumet City."

(Code 1980, App. B, § I)

## Sec. II. Intent and purpose.

The prime tool of planning is land use control, most commonly referred to as zoning. The purposes of zoning are many, but foremost among these purposes are:

To promote and protect the public health, safety, morals, comfort and general welfare of the people;

To divide the City of Calumet City into zones or districts restricting and regulating therein

Case 1:07-cv-06148    Document 28-5    Filed 02/12/2008    Page 3 of 25

*Location.* The sign or signs shall front the principal street, a parking area, or in the case of corner building, on that portion of the side street wall within fifty (50) feet of the principal street.

*Projection.* Signs may project into the public way but not beyond a line six (6) inches inside the curbline and the bottom of such signs shall not be less than ten (10) feet above the finished grade of the sidewalk.

Any sign projecting or suspended from a building shall not exceed twelve (12) feet in height and its location and arrangement shall be subject to approval by the zoning administrator. No sign except those suspended from buildings shall be erected or placed between the street line and the building line.

*Height.* No sign shall project higher than thirty (30) feet above curb level.

### 11.1 Permitted signs, manufacturing districts.

The following signs are permitted:

All signs permitted in the business districts shall be permitted in the industrial districts.

One (1) billboard, not to exceed one thousand two hundred (1,200) square feet in area, thirty (30) feet in height and sixty (60) feet in length, including border and trim, per buildable lot in a commercial or industrial district adjacent to an interstate tollway or expressway, but not within five hundred (500) feet of any other billboard. A billboard may be double faced, placed back to back or V-type and be deemed to be one (1) billboard.

(Code 1980, App. B, § XI; Ord. No. 96-30, § 1(Exh. A), 5-23-1996; Ord. No. 00-44, § 1, 8-24-2000)

### Sec. XII. Administration.

#### 12.1 Enforcing officer.

The building commissioner of the City of Calumet City shall be the zoning administrator of the City of Calumet City. Said administrator shall see that the provisions of this ordinance are properly enforced.

*Restrictions on employees.* No official or employee responsible for the enforcing of this ordinance shall engage directly or indirectly in the construction industry or the building professions, or in any type of gainful employment or business that conflicts with official duties or the interests of the business incorporated in this ordinance.

#### 12.2 Zoning permit.

No building or structure shall be erected, reconstructed, enlarged, or moved until a permit shall have been applied for in writing and issued by the building commissioner. Said permit shall be posted in a prominent place on the premises prior to and during the period of erection, reconstruction, enlargement or moving.

Before a permit is issued for the erection, moving, alteration, enlargement or occupancy of any building, or structure or use of premises, the plans and intended use shall indicate conformity in all respects to the provisions of this ordinance.

*Site plan.* Every application for permit submitted to the building commissioner shall be accompanied by a site plan, drawn to scale, showing the zoning lot, required yards, the location of buildings on the lot, accurate dimensions of the lot, and any existing and proposed uses together with

APPENDIX B ZONING*                                                          Page 62 of 86

such other information as may be necessary for the enforcement of this ordinance.

Certain permit applications and zoning petitions may require site development plan approval under subsection 12.9 and landscape plan approval under subsection 12.10 of this ordinance.

*12.3 Interpretation of ordinance.*

In interpreting and applying the provisions of this ordinance, they shall be held to be the minimum requirements for the promotion of health, safety, morals, convenience of the general welfare.

*12.4 Certificate of occupancy.*

A certificate of occupancy to be issued by the building commissioner shall be required for any of the following, except buildings incidental to agricultural operations other than residences:

(a)  Occupancy and use of a building thereafter erected or enlarged;

(b)  Change in use of an existing building;

(c)  Occupancy and use of land to a use of a different classification, except for the raising of crops;

(d)  Change in the use of land to a use of a different classification, except for the raising of crops;

(e)  Any change in the use of a nonconforming use.

No such occupancy, use or change of use, shall take place until a certificate of occupancy therefore shall be issued.

Written application for a certificate of occupancy for a new building or for an existing building which has been enlarged shall be made at the same time as the application for the building permit for such building. Said certificate shall be acted upon within seven (7) days after a written request for the same has been made to the building commissioner after the erection or enlargement of such building or part thereof has been completed in conformance with the provisions of this ordinance.

Pending the issuance of such a certificate, a temporary certificate of occupancy may be issued by the building commissioner for a period of not more than six (6) months during the completion of the construction of the building or of alterations which are required under the terms of any law or ordinance. Such temporary certificate may be renewed, but it shall not be construed in any way to alter the respective rights, during or obligations of the owner or of the city relating to the use or occupancy of the land or building, or any other matter covered by this ordinance, and such temporary certificate shall not be issued except under such restrictions and provisions as will adequately ensure the safety of the occupants.

Written application for a certificate of occupancy for the use of vacant land, or for a change in the use of land or of a building, or for a change in a nonconforming use, as herein provided, shall be made to the building commissioner.

If the proposed use is in conformity with the provisions of this ordinance, the certificate of occupancy therefore shall be issued within seven (7) days after the application for the same has been made.

Each certificate of occupancy shall state that the building or proposed use of a building or land complies with all provisions of this ordinance.

A record of all certificates of occupancy shall be kept on file in the office of the building commissioner and a copy shall be forwarded on request, to any person having proprietary or tenancy interest in the building or land affected.

*12.5 Zoning board of appeals.*

APPENDIX B ZONING*

*Zoning board of appeals established.*

There is hereby established a zoning board of appeals. Said zoning board of appeals shall consist of seven (7) members appointed by the mayor by and with the advice and consent of the city council of the City of Calumet City.

Each member so appointed shall serve for a term of five (5) years. Vacancies shall be filled in the same manner for the unexpired term. Members may be removed by the city council for cause after written charges have been filed and after a public hearing has been held if demanded by the member so charged.

One (1) of the members of said zoning board of appeals at the time of his appointment shall be designated by the mayor with the consent of the city council, as chairman of said zoning board of appeals and shall hold said office as chairman until a successor is appointed. Such chairman, or in his absence, the acting chairman, may administer oaths and compel the attendance of witnesses.

The zoning board of appeals shall have a secretary and may employ a court reporter who shall make and keep a record of all of its meetings and official acts.

The zoning board of appeals in existence at the time of the passage of this ordinance shall be recognized as the zoning board of appeals established under the provisions of this ordinance, and the members previously appointed under the old ordinance shall be recognized as members thereof, and shall serve for such period of time as designated at time of appointment, the time to run from the date of the original appointment under the old ordinance.

*Jurisdiction.*

The zoning board of appeals is hereby vested with the following jurisdiction and authority:

(a) To hear and decide appeals from any order, requirement, decision or determination made by the zoning administrator under this ordinance;

(b) To hear applications for variations from the terms provided in this zoning ordinance in the manner prescribed by, and subject to, the standards established herein, and make recommendations to the city council regarding such applications.

(c) To review and make recommendations to the city council on certain proposed site plans and landscape plans in accord with subsection 12.9 and 12.10 of this ordinance.

*Meetings.*

All meetings of the zoning board of appeals shall be held at the call of the chairman and at such other times as the zoning board of appeals may determine.

All meetings of the zoning board of appeals shall be open to the public.

The zoning board of appeals shall keep minutes of its proceedings, showing the vote of each member upon every question, or absent or failing to vote, indicating such fact, and shall also keep records of its examinations and other official actions. Findings of fact shall be included in the minutes of each case and the reasons for granting or denying such application shall be specified. Every rule, regulations and every order, requirement, decision, or determination of the zoning board of appeals shall immediately be filed in the office of the executive secretary and shall be of public record.

The zoning board of appeals shall adopt its own rules of procedure and may require submission to each record, plats and other information necessary to make its determination. A copy of said rules and procedure, and all recommendations thereto, and shall be filed in the office of the building commissioner.

The minutes of the zoning board of appeals shall be open to public examination at reasonable hours.

Expenses incurred by the zoning board of appeals are to be itemized and shall be borne by Calumet City.

The building commissioner is authorized to require applicants for building permits as a condition for issuance of said permit to provide reasonable aesthetic and sound barriers between contiguous barriers which have different zoning classifications.

*Finality of decisions of the zoning board of appeals.*  Decisions and findings of the zoning board of appeals on appeal from any order, requirement, decision or determination made by the zoning administration shall be final administrative determinations and shall be subject to review by court as by law may be provided.

*12.6 Variations.**

---

*Editor's note:  Section 3 of Ord. No. 00-44 adopted Aug. 24, 2000, states "that all billboards in existence on the effective date of this ordinance are hereby exempt from the requirements of Section 2."

---

*Purpose.*  The zoning board of appeals, after a public hearing, may recommend that the city council vary the regulations of this ordinance in harmony with their general purpose and intent, only in the specific instances hereinafter set forth and only where the board of appeals made findings of fact in accordance with the standards hereinafter prescribed, and further finds that there are practical difficulties or particular hardships in the way of carrying out the strict letter of the regulations of this ordinance.

*Application for variation and notice of hearing.*

An application for a variation shall be filed in writing with the city clerk. The application shall contain such information as the zoning board of appeals may from time to time, by rule, require. The city council shall by motion or resolution refer the same to the zoning board of appeals.

The zoning board of appeals shall publish notice of a public hearing on the application for variation, stating the time and place and the purpose of the hearing. Notice shall be published at least fifteen (15) days but not more than thirty (30) days in a paper of general circulation in Calumet City. Notice of the public hearing may be mailed to the petitioner and the owners of all property deemed by the zoning board of appeals to be affected thereby.

The zoning board of appeals shall, within thirty (30) days after the public hearing or hearings, render its recommendation in writing to the owner or applicant and the city council of its action.

*Standards for variations.*

The zoning board of appeals shall not recommend a variance in the regulations of this ordinance, unless it shall make findings based upon the evidence presented to it in each specific case that each and all the standards for hardships set forth in the Illinois Municipal Code are complied with and specifically that:

(a)  Because of the particular physical surroundings, shape or topographical conditions of the specific property involved, a particular hardship to the owner would result, as distinguished from a mere inconvenience, if a strict letter of

Exhibit F

ARTICLE IX. CODE ENFORCEMENT*                                                Page 1 of 6

# ARTICLE IX. CODE ENFORCEMENT*

*Cross references: Fire code prevention, § 30-161 et seq.

State law references: Administrative adjudication of ordinances, 65 ILCS 5/1-2.1-1 et seq.

## Sec. 2-941. Purpose.

The stated purpose of this article is to provide for the fair and efficient enforcement of the Municipal Code of Calumet City, Illinois, other than those ordinances pertaining to vehicular standing, parking or vehicle compliance regulation (hereafter the "City Code"), as may be allowed by law and directed by ordinance, through an administrative adjudication of violations; and, establishing a schedule of fines and penalties, and authority and procedures for collection of unpaid fines and penalties.

(Code 1960, § 2-501; Ord. No. 99-63, § VI, 11-10-1999)

## Sec. 2-942. Creation.

There is hereby established a department of the city government to be known as the ordinance enforcement department and to have the power to enforce any municipal ordinance as from time to time authorized by the city council, except for (i) any offense enforced pursuant to Article VII.5 of Chapter 17 of this Code; (ii) any offense under the Illinois Vehicle Code (625 ILCS 5/1-100 et seq.); or a similar offense that is a traffic regulation governing the movement of vehicles; and, (iii) except for any reportable offense under 625 ILCS 5/6-204. The establishment of the ordinance enforcement department does not preclude the mayor and city council from using any other method or court with jurisdiction to enforce ordinances of the city.

(Code 1960, § 2-503; Ord. No. 99-63, 11-10-1999)

## Sec. 2-943. Administrative composition.

(a) The ordinance enforcement department shall be composed of a hearing officer, an ordinance enforcement administrator, system coordinator/computer operator and hearing room security personnel, with the power and authority as hereinafter set forth.

(1) The hearing officer is authorized and directed to:

a. The hearing officer, prior to appointment, must be an attorney licensed to practice law for at least three (3) years in the State of Illinois. The hearing officer shall preside over all adjudicatory hearings and shall have the following powers and duties:

1. To administer oaths;

2. To hear testimony and accept evidence that is relevant to the existence of the City Code violation;

3. To issue subpoenas directing witnesses to appear and give relevant testimony at the hearing, upon the request of the parties or their representatives;

4. To preserve and authenticate the record of the hearing and all exhibits and evidence introduced at the hearing;

5. To issue and sign a written finding, decision and order stating whether a City Code violation exists;

ARTICLE IX. CODE ENFORCEMENT*                                          Page 2 of 6

    6.  To impose penalties, sanctions or such other relief consistent with applicable City Code provisions and assessing costs upon finding a party liable for the charged violation, except however, that in no event shall the hearing officer have authority to impose a penalty of incarceration; and,

    7.  To review final determination of liability for an ordinance violation in accordance with the administrative review procedures hereinafter set forth.

  b.  Prior to conducting administrative adjudication proceedings under this article, the hearing officer shall have successfully completed a formal training program which includes the following:

    1.  Instruction on the rules of procedure of the administrative hearings over which the hearing officer shall preside;

    2.  Orientation to each subject area of the code violations that he/she will adjudicate;

    3.  Observation of administrative hearings; and

    4.  Participation in hypothetical cases, including ruling on evidence and issuing final orders.

(2)  The ordinance enforcement administrator is authorized and directed to:

  a.  Operate and manage the ordinance enforcement department.

  b.  Adopt, distribute and process all notices as may be required under this article or as may be reasonably required to carry out the purpose of this article.

  c.  Collect moneys paid as fines and/or penalties assessed after a final determination of liability.

  d.  Certify copies of final determinations of an ordinance violation adjudicated pursuant to this article, and any factual reports verifying the final determination of any violation liability which was issued in accordance with this article.

  e.  Promulgate rules and regulations reasonably required to operate and maintain the administrative adjudication system hereby created.

  f.  Collect unpaid fines and penalties through private collection agencies and direct the pursuit of all post-judgment remedies available by law.

(3)  The system coordinator/computer operator is hereby authorized and directed to operate and maintain the computer programs for the administrative adjudication system of the ordinance enforcement department hereby created, on a day-to-day basis, including but not limited to:

  a.  Input of violation notice information.

  b.  Establishing hearing dates and notice dates.

  c.  Record fine and penalty assessment and payments.

  d.  Issue payment receipts.

  e.  Issue succeeding notice of hearing dates and/or final determination of liability.

  f.  Keep accurate records of appearances and nonappearances at administrative hearings, pleas entered, judgments entered, sanctions imposed, if any, fines and penalties assessed and paid.

(4)  All hearing room security personnel shall be qualified off-duty, full-time, part-time or auxiliary police officers who are hereby authorized and directed to:

  a.  Maintain hearing room decorum.

  b.  Have and execute authority as is granted to courtroom deputies of the circuit court.

  c.  Perform such other duties or acts as may reasonably be required and as directed by the hearing officer or ordinance enforcement administrator.

(b)  The mayor is hereby authorized to appoint persons to hold the positions above set forth. Other than the hearing officer, one person may hold and fulfill the requirements of one (1) or more of the above stated

ARTICLE IX. CODE ENFORCEMENT*

positions and compensation for each of the above stated positions shall be as approved by the city council.

(Code 1980, § 2-504; Ord. No. 99-63, 11-10-1999; Ord. No. 01-56, 11-19-2001)

## Sec. 2-844. Procedures.

The system of administrative adjudication of any ordinance violation authorized to be adjudicated hereunder, shall afford a party due process of law and the hearings shall be conducted in accordance with the following procedures:

(1)  Violation notices of any City Code shall be issued by the persons authorized under this Code and shall contain information and shall be certified and constitute *prima facie* evidence of the violation cited as hereinafter set forth.

(2)  All full-time, part-time and auxiliary police officers as well as other specifically authorized individuals of any department of the city shall have the authority to issue violation notices.

(3)  Any individual authorized hereby to issue violation notices and who detects any ordinance violation authorized to be adjudicated under this article, is authorized to issue notice of violation thereof and shall make service thereof as is hereinafter set forth.

(4)  The violation notice of the City Code shall contain, but shall not be limited to, the following information:

a.  The name of the party violating the ordinance, if known.

b.  The date, time and place of the violation (date of issuance).

c.  The particular ordinance violated.

d.  The fine and any penalty which may be assessed for the ordinance violation.

e.  The signature and identification number of the person issuing the notice.

f.  The date and location of the adjudicating hearing of ordinance violations, and the penalties for failure to appear at the hearing.

g.  That payment of the indicated fine and any late payment shall operate as a final disposition of the violation.

(Code 1980, § 2-505; Ord. No. 99-63, 11-10-1999; Ord. No. 01-56, 11-19-2001)

## Sec. 2-945. Service.

(a)  Service of any violation notice shall be made by the person issuing such notice by:

(1)  Handing the notice to the person responsible for the ordinance violation;

(2)  Handing the notice to the responsible person or leaving the notice with any person twelve (12) years of age or older at the residence of the responsible person;

(3)  Mailing the notice by first class mail, postage prepaid, to the person responsible for the ordinance violation; or,

(4)  Posting the notice upon the property where the violation is found when the person is the owner or manager of the property.

(b)  The correctness of facts contained in any violation notice shall be verified by the person issuing said notice by:

(1)  Signing his name to the notice at the time of issuance; or

(2)  In the case of a notice produced by a computer device, by signing a single certificate, to be kept by the ordinance enforcement administrator, attesting to the correctness of all notices produced by the device while under his control.

ARTICLE IX. CODE ENFORCEMENT*

(c) The original or a facsimile of the violation notice shall be retained by the ordinance enforcement administrator and kept as a record in the ordinary course of business.

(d) Any violation notice issued, signed and served in accordance herewith, or a copy of the notice, shall be *prima facie* correct and shall be *prima facie* evidence of the correctness of the facts shown on the notice.

(Code 1980, § 2-506; Ord. No. 99-63, 11-10-1999)

## Sec. 2-946. Administrative hearings.

An administrative hearing to adjudicate any alleged City Code ordinance violation on its merits shall be granted to the person named in the ordinance violation notice. All administrative hearings shall be recorded and shall culminate in a determination of liability or nonliability, made by the hearing officer, who shall consider facts and/or testimony without the application of the formal or technical rules of evidence. Evidence, including hearsay, may be admitted only if it is of a type commonly relied upon by reasonable prudent persons in the conduct of their affairs. The hearing officer shall, upon a determination of liability, assess fines, penalties and costs in accordance with section 2-952 hereof. Persons appearing to contest the alleged violation on its merits may be represented by counsel at their own expense. The burden of proof shall be on the alleged offender to refute the *prima facie* case set forth in the verified notice of violation.

(Code 1980, § 2-507; Ord. No. 99-63, 11-10-1999)

## Sec. 2-947. Notices.

(a) Upon failure of the person receiving a notice of a violation of the City Code to appear at the time and date designated for a hearing, the ordinance enforcement administrator shall send, or cause to be sent, notices as provided in subsection (b) of this section, by first class mail, postage prepaid, to the person who received the notice of an ordinance violation. Service of notices sent in accordance herewith shall be complete as of the date of deposit in the United States mail.

(b) The notices sent pursuant to subsection (a) of this section shall be in the following sequence and contain, but not be limited to, the following information:

(1) Date and location of violation cited in the violation notice.

(2) Particular ordinance violated.

(3) Fine and any penalty that may be assessed for late payment.

(4) A section titled "Notice of Hearing" which shall clearly set forth that the person receiving a notice of the City Code ordinance violation may appear at an administrative hearing to contest the validity of the violation notice on the date and at the time and place as specified in the notice of hearing.

(5) Date, time and place of the administrative hearing at which the alleged violation may be contested on its merits.

(6) Statement that failure to either pay fine and any applicable penalty or failure to appear at the hearing on its merits on the date and at the time and place specified will result in a final determination of liability for the "cited" violation in the amount of the fine and penalty indicated.

(7) Statement that upon the occurrence of a final determination of liability for the failure, and the exhaustion of, or the failure to exhaust, available administrative or judicial procedures for review, any unpaid fine or penalty will constitute a debt due and owing the city.

(c) A notice of final determination of liability shall be sent following the conclusion of administrative hearing, as is hereinafter set forth, and shall contain, but not be limited to, the following information and warnings:

(1) A statement that the unpaid fine and any penalty assessed is a debt due and owing the city;

(2) A statement of any sanction ordered or costs imposed which costs are debts due and owing the city; and

(3) A warning that failure to pay the fine and any penalty due and owing the city within the time

ARTICLE IX. CODE ENFORCEMENT*

specified may result in proceeding with collection procedures in the same manner as a judgment entered by any court of competent jurisdiction.

(Code 1980, § 2-508; Ord. No. 99-63, 11-10-1999)

### Sec. 2-948. Final determination of liability.

A final determination of liability shall occur following the failure to pay the fine or penalty after the hearing officer's determination of liability and the exhaustion of, or the failure to exhaust, any administrative review procedures hereinafter set forth. Where a person fails to appear at the administrative hearing to contest the alleged violation on the date and at the time and place specified in a prior served or mailed notice pursuant to section 2-947(b) hereof, the hearing officer's determination of liability shall become final either upon a denial of a timely petition to set aside that determination or upon the expiration of the period for filing a petition without a filing having been made.

(Code 1980, § 2-509; Ord. No. 99-63, 11-10-1999)

### Sec. 2-949. Petition to set aside determination.

A petition to set aside a final determination of liability may be filed with the ordinance enforcement administrator within twenty-one (21) days of the date of the final determination of liability and payment of twenty-five dollars ($25.00).

(Code 1980, § 2-510; Ord. No. 99-63, 11-10-1999)

### Sec. 2-950. Judicial review.

Any final decision by a hearing officer that a City Code violation does or does not exist shall constitute a final determination for purposes of judicial review under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.).

(Code 1980, § 2-511; Ord. No. 99-63, 11-10-1999)

### Sec. 2-951. Enforcement of judgment.

(a) Any fine, other sanction, or costs imposed, or part of any fine, other sanction, or costs imposed, remaining unpaid after the exhaustion of or the failure to exhaust judicial review procedures under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.) are a debt due and owing the municipality and may be collected in accordance with applicable law.

(b) After expiration of the period in which judicial review under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.) may be sought for a final determination of a code violation, unless stayed by a court of competent jurisdiction, the findings, decision, and order of the hearing officer may be enforced in the same manner as a judgment entered by a court of competent jurisdiction.

(c) In any case in which a hearing officer finds that a defendant has failed to comply with a judgment ordering a defendant to correct a code violation or imposing any fine or other sanction as a result of a code violation, any expenses incurred by the city to enforce the judgment including, but not limited to, attorney's fees, court costs, and costs related to property demolition or foreclosure after they are fixed by the hearing officer, shall be a debt due and owing the municipality and may be collected in accordance with applicable law.

(d) A lien shall be imposed on the real estate or personal estate, or both, of the defendant in the amount of any debt due and owing the city under this section. The lien may be recorded and enforced in the same manner as a judgment lien pursuant to a judgment of a court of competent jurisdiction. No lien may be enforced under this section until it has been recorded in the manner provided by Article XII of the Code of Civil Procedure (735 ILCS 5/1-101 et seq.) or by the Uniform Commercial Code (810 ILCS 5/1-101et seq.).

(e) A hearing officer may set aside any judgment entered by default and set a new hearing date upon a petition filed within twenty-one (21) days after the issuance of the order of default if the hearing officer determines that the petitioner's failure to appear at the hearing was for good cause or at any time if the

ARTICLE IX. CODE ENFORCEMENT*

petitioner establishes that the municipality did not provide proper service of process.

(Code 1980, § 2-512; Ord. No. 99-63, 11-10-1999)

**Sec. 2-952. Schedule of fines/penalties.**

For an ordinance violation of the City Code, fines and penalties shall be as established from time to time by the mayor and city council.

(Code 1980, § 2-513; Ord. No. 99-63, 11-10-1999)

Exhibit G

DIVISION 2. RENTAL DWELLING INSPECTIONS*                                              Page 1 of 3

## DIVISION 2. RENTAL DWELLING INSPECTIONS*

---

*Editor's note: Ord. No. 06-49, adopted June 22, 2006, amended division 2 in its entirety to read as herein set out. Former division 2, which consisted of §§ 14-711—14-718, pertained to similar subject matter and derived from the 1960 Code; Ord. No. 87-5, adopted Mar. 25, 1987; Ord. No. 87-16, adopted July 23, 1987; Ord. No. 88-2, adopted Feb. 25, 1988; Ord. No. 89-8, adopted Feb. 9, 1989; Ord. No. 89-40, adopted Nov. 9, 1989; Ord. No. 90-1, adopted Jan. 11, 1990; Ord. No. 94-16, adopted May 12, 1994; and Ord. No. 04-42, adopted June 29, 2004.

---

**Sec. 14-711. Certificate of occupancy requirement.**

(a)  No owner, agent or person (hereinafter referred to as "responsible party") in charge of a one-family, two-family or multiple-family dwelling (hereinafter referred to as "rental dwelling"), as those terms are defined in the property maintenance code, shall allow any person to occupy the same as a tenant or lessee or for valuable consideration unless said dwelling or structure shall have been inspected and determined to be in compliance with all of the provisions of the property maintenance code as well as all health and building ordinances as evidenced by a certificate of occupancy issued by the department of inspectional services ("department"). Thereafter, all rental properties shall be inspected annually and an updated certificate of occupancy issued.

(b)  No certificate of occupancy shall be issued unless the applicant[,] owner or operator agrees in his application to an inspection pursuant to this section. Notwithstanding any other provisions of this Code, when the city conducts inspections of a tenant's rental dwelling, the city must obtain the consent of such tenant to conduct the inspection. If a tenant refuses consent, the city may attempt to obtain a warrant pursuant to subsection (d) below.

(c)  Prior to the time that the department is scheduled to conduct the inspection, the department shall deliver to the owner and occupants of the structure written notice that includes the following:

(1)  Date and time of the inspection;

(2)  A statement that the owner or tenant has the right to withhold his consent to the inspection and require the city to attempt to obtain a warrant to conduct the inspection;

(d)  If the owner or occupant does not consent to the attempted inspection, the director of inspectional services ("director") or his designee shall seek in the circuit court of Cook County a warrant in accordance with the appropriate laws of the State of Illinois to allow an inspection. The application for the warrant shall specify the basis upon which the warrant is being sought and shall include a statement that the inspection will be limited to a determination whether there are violations of the city building and zoning ordinances or any applicable housing, fire or property maintenance codes or regulations. The court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:

(1)  Eyewitness account of violation;

(2)  Citizen complaints;

(3)  Tenant complaints;

(4)  Plain view violations;

(5)  Violations apparent from city records;

(6)  Property deterioration;

(7)  Age of property;

(8)  Nature of alleged violation;

(9)  Similar properties in the area;

DIVISION 2. RENTAL DWELLING INSPECTIONS*                    Page 2 of 3

(10)  Documented violations on similar properties in the area;

(11)  Passage of time since last inspection;

(12)  Previous violations on the property.

(e)  If the annual inspection establishes that the rental dwelling complies with all the provisions of the property maintenance code as well as all other health, zoning, and building ordinances of the city, then the department of inspectional services shall issue a certificate of occupancy for said dwelling or structure. The certificate shall indicate the date of the inspection; that such dwelling or structure complies with the requirements of the property maintenance code as well as other health and building ordinances that apply to the dwelling. One (1) copy of the certificate shall be delivered to or mailed to the owner of the dwelling unit. A record of all certificates shall be kept on file by the department, and copies shall be furnished upon request to any person having a proprietary interest or tenancy interest in the dwelling affected. The director shall submit once a month to the mayor and the city council a list of addresses of those dwellings which have been inspected the previous month with an indication whether or not said dwellings have been issued certificate of occupancy permits. Every certificate of occupancy shall be issued for a period of one (1) year after its date of issuance, unless sooner revoked.

(f)  Inspection fee schedule.

(1)  Fifty dollars ($50.00) yearly.

(2)  Ten dollars ($10.00) per additional unit.

(3)  All inspection fees as herein provided shall be paid prior to the issuance of a certificate of occupancy.

(4)  Each fee set for the above covers the cost of one (1) follow-up inspection to verify compliance. In the event that additional inspections are required because full compliance did not exist at the time of the reinspection, then an additional reinspection fee of fifty dollars ($50.00) plus ten dollars ($10.00) per unit shall be assessed.

(5)  If an owner, agent or tenant has failed to appear for two previously scheduled inspections, an additional inspection fee of fifty dollars ($50.00) plus ten dollars ($10.00) per unit shall be assessed.

(Ord. No. 06-49, § 1, 6-22-2006)


Sec. 14-712. Notice of violation.

(a)  Whenever the building official determines that any rental dwelling or the premises surrounding fails to meet the requirements set forth in this chapter or in applicable rules and regulations issued pursuant thereto, the building official in accordance with the property maintenance code and the other city health, and building codes shall issue a notice setting forth the alleged failures and advising the responsible party that such failures must be corrected. This notice shall:

(1)  Be in writing.

(2)  Set forth the alleged violations of this chapter or of applicable rules and regulations issued pursuant thereto.

(3)  Describe the rental dwelling where the violations are alleged to exist or to have been committed. Such written notice shall specify an appropriate or acceptable method of correction.

(4)  Specify a specific date for the correction of any violation alleged.

(5)  Be served upon the responsible party of the rental dwelling by the building official, or mailed to the responsible party. If one (1) or more persons to whom such notice is addressed cannot be found after diligent effort to do so, service may be made upon such persons by posting the notice in or about the rental dwelling described in the notice.

(b)  At the end of the period of time allowed for the correction of any violation alleged, which was stated in the inspection notice, the building official shall reinspect the rental property described in the notice.

(c)  If, upon reinspection, the violations are determined by the building official not to have been corrected, the

DIVISION 2. RENTAL DWELLING INSPECTIONS*                        Page 3 of 3

building official, in turn, shall issue an O.V. (ordinance violation) ticket to initiate legal proceedings to be handled in Calumet City's housing court for the immediate correction of the alleged violations or shall order the rental property vacated within thirty (30) days, or both.

(Ord. No. 05-49, § 1, 6-22-2005)

### Sec. 14-713. Responsibility of tenants.

No tenant shall damage or cause to be damaged any unit or building leased nor shall any damage be caused to the general premises of any building used by the tenants. Each tenant and the families of each tenant shall maintain his rental unit free of any litter, and tenants shall not litter any of the premises or the buildings provided for use by the tenants. The tenants must maintain their responsibilities as outlined in the property maintenance code, subject to O.V. citations.

(Ord. No. 05-49, § 1, 6-22-2005)

### Sec. 14-714. Penalties.

Any responsible party of a rental dwelling who has received an order or notice of an alleged violation of this article shall be subject to a penalty of not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) for each day the alleged violation continues after expiration of the specified reasonable consideration period; provided that no such penalty shall be applicable while reconsideration, hearing or appeal to a court of competent jurisdiction is pending in the matter.

(Ord. No. 05-49, § 1, 6-22-2005)

### Sec. 14-715. Validity and severability.

If any section, subsection, paragraph, sentence, clause, or phrase of this Code shall be declared invalid for any reason whatsoever, this decision shall not affect the remaining portions of this Code, which shall continue in full force and effect, and to this end, the provisions of this Code are hereby declared to be severable.

(Ord. No. 05-49, § 1, 6-22-2005)

### Sec. 14-716. Savings clause.

This Code shall not affect violations of any other ordinance, code or regulation of the jurisdiction existing prior to the effective date hereof, and any such violation shall be governed and shall continue to be punishable to the full extent of the law under the provisions of those ordinances, codes or regulations in effect at the time the violation was committed.

(Ord. No. 05-49, § 1, 6-22-2005)

Secs. 14-717--14-750. Reserved.

Exhibit
H

Page    1

Citation                          Rank(R)  1 of 1                Database
1994 WL 601863 (Ill.A.G.)                                        IL-AG
(Cite as: 1994 WL 601863 (Ill.A.G.))

1994 WL 601863 (Ill.A.G.)

Office of the Attorney General
State of Illinois

File No. 94-024

October 25, 1994

MUNICIPALITIES:

Requirement that Title Insurance Reports Reflect Payment of Document Inspection
Fee

Mr. Frank C. Casillas
Director
Department of Financial Institutions
100 West Randolph Street
James R. Thompson Center, Suite 15-700
Chicago, Illinois 60601

Dear Mr. Casillas

I have your letter wherein you inquire regarding the validity of ordinances
adopted by non-home-rule municipalities which require the inspection of
documents and the payment of fees prior to the transfer of real property lying
within the municipality. Of particular concern to the Department, which
regulates title insurance companies (215 ILCS 155/1 et seq. (West 1992)), is a
provision in the ordinances which mandates that the requirement of inspection
and payment of fees be reflected in title insurance reports. For the reasons
hereinafter stated, it is my opinion that the ordinances in question are not
valid.
In February, 1994, the village of Westchester adopted ordinance no. 94-1387,
which purports to require that any document evidencing the transfer of ownership
of real estate located in the village must be submitted to the village for
inspection and review. Upon payment of a fee of $25, the village will affix a
stamp to the document if the subject property is found to be in compliance with
all village codes in force at the time the document is submitted. The ordinance
further provides that the requirement be reflected on all real estate title
insurance reports conducted precedent to the transfer of ownership, to give
public notice of the mandatory inspection. In April, 1994, the village of River
Grove adopted a similar ordinance. Both Westchester and River Grove are non-
home-rule municipalities.
Non-home-rule municipalities have only those powers which are expressly granted
by statute and the constitution, those powers which are incident to those which
have been expressly granted and those powers which are indispensable to the
accomplishment of the declared objects and purposes of the municipal
corporation. (Pesticide Pub. Pol. v. Village of Wauconda (1987), 117 Ill.2d 107,
111-112.) Consequently, as a threshold issue, it must be determined whether

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

Page    2

1994 WL 601863 (Ill.A.G.)

Westchester and River Grove have the power to adopt the ordinances in question. Only if this question is answered affirmatively will it be necessary to consider whether the villages' power is preempted by State Law relating to title insurers.

Neither village has cited any authority for the adoption of these ordinances. The only purpose suggested within the body of each ordinance, apart from the collection of a $25 fee, is to determine whether the property is in compliance with village codes (Village of Westchester Ordinance No. 94-1387, adopted February 8, 1994, at p. 1) or to determine whether any "outstanding obligation is due to the [v]illage with respect to the property" (Village of River Grove Ordinance No. 1994-05, adopted April 21, 1994, at p. 1). Municipalities are authorized, under Article 11 of the Municipal Code (65 ILCS 5/11-1-1 et seq. (West 1992)), to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines. (E.g., 65 ILCS 5/11-31.1-1 et seq.; 5/11-37-1 et seq.; 5/11-38-4 (West 1992).) Further, municipalities may impose various fees for other services relating to real property. In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such codes.

Although these ordinances do not expressly so state, I assume that the villages will refuse to affix the "document review" stamp to any deed for property which is not in compliance with the village codes (the village of Westchester) or concerning which unpaid obligations may be deemed to be due (the village of River Grove). Thus, even if the deeds are returned to the persons submitting them, if they proceed with the transactions they will violate the application ordinance and be subjected to its penalties. This attempt to make alienability subject to municipal regulation clearly exceeds the villages' powers. Further, non-home-rule municipalities have no authority to impose a tax on the transfer of real property. The authority to impose such a tax is expressly reserved to home rule municipalities (65 ILCS 5/8-11-6a (West 1992)). While the fee imposed by the River Grove and Westchester ordinances is denominated a document inspection fee, rather than a transfer tax, there can be little doubt that it operates as the latter. As previously discussed, the villages' authority to enforce their health and safety codes is entirely unrelated to the transfer of property. Moreover, a document inspection would provide no basis upon which to determine whether the property was in compliance with codes, and the ordinances do not even suggest that the affixing of the required stamp will depend upon an inspection of the property itself. In my opinion, the inspection fee is, in both operation and effect, a prohibited transfer tax.

Because the non-home-rule villages in question have no authority to enact or enforce ordinances restricting the transfer of real property or to impose a fee or tax thereon, it is my opinion that the ordinances are void and unenforceable. Because of this conclusion, it is not necessary to determine whether such ordinances, with respect to their effect on title insurers, are preempted or superseded by State laws requiring the licensure of title insurers.

Respectfully yours,
Roland W. Burris
Attorney General

1994 WL 601863 (Ill.A.G.)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

Page    5

1994 WL 601863 (Ill.A.G.)

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Exhibit
I

Page 1

39 of 72 DOCUMENTS

LIONEL BORDELON, Plaintiff, v. CHICAGO SCHOOL REFORM BOARD OF
TRUSTEES, successor to the Board of Education of the City of Chicago, Defendant.

No. 98 c 1932

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

1999 U.S. Dist. LEXIS 14836

September 3, 1999, Decided
September 7, 1999, Docketed

DISPOSITION: [*1] Defendant's motions to strike
and for summary judgment granted.

COUNSEL: For LIONEL BORDELON, plaintiff: Leon
Bordelon, III, Tuggle & Bordelon, Chicago, IL.

For LIONEL BORDELON, plaintiff: Clarence S. Wil-
son, Jr., Attorney at Law, Chicago, IL.

For LIONEL BORDELON, plaintiff: John Thomas
Moran, John T. Moran & Associates, Chicago, IL.

For CHICAGO SCHOOL REFORM BOARD OF
TRUSTEES, defendant: Marilyn F. Johnson, James Jor-
dan Seaburry, Jr., Chicago School Reform, Board of
Trustees, Chicago, IL.

JUDGES: Robert W. Gettleman, United States District
Judge.

OPINION BY: Robert W. Gettleman

OPINION

MEMORANDUM OPINION AND ORDER

Plaintiff Lionel Bordelon has sued his employer,
Chicago School Reform Board of Trustees, alleging that
defendant deprived him of liberty and property rights
without due process of law when it unilaterally, without
prior notice or hearing, reassigned him from his position
as principal of Kozminski Community Academy ("Koz-
minski") to an administrative position in the Central Of-
fice. On June 3, 1998, this court held that plaintiff had a
property interest in his position as principal, granted
plaintiff's motion for a preliminary injunction, ordered
defendant to reinstate [*2] plaintiff as principal of Koz-

minski, and enjoined defendant from transferring plain-
tiff to any position other than as a principal. Bordelon v.
Chicago School Reform Board of Trustees, 8 F. Supp. 2d
779 (N.D. Ill. 1998). The case then proceeded on plain-
tiff's claims for a permanent injunction and monetary
damages. In January 1999 the Kozminski Local School
Council voted to renew plaintiff's contract as principal
for 1999-2003, thereby mooting plaintiff's need for a
permanent injunction. Defendant has now moved for
summary judgment on plaintiff's claim that defendant's
action violated his liberty interest. In addition, defendant
has moved to strike plaintiff's local rule 12N response
filed in opposition to defendant's motion, for failure to
comply with the local rule. For the reasons set forth be-
low, defendant's motions are granted.

Motion to Strike

In addition to the requirements set out in Fed. R.
Civ. P. 56, Northern District of Illinois Local Rule
12M(3) [1] requires a movant to file a statement of material
facts to which the moving party contends there is no
genuine issue and that entitles it to judgment as a matter
of law. The 12M(3) statement "shall [*3] consist of
short numbered paragraphs, including within each para-
graph specific references to the affidavits, parts of the
record, and other supporting materials relied upon." Lo-
cal Rule 12N(3) requires the opposing party to file a
concise response to the movant's statement, and allows
the opposing party to file a statement of additional facts
that require denial of summary judgment. All denials and
additional facts must cite to an affidavit or other support-
ing materials.

1 During the preparation of this opinion, the
Northern District Of Illinois revised and renum-
bered its Local Rules. Old Rule 12M is now con-
tained in L.R. 56.1(a) and old Rule 12N is con-

1999 U.S. Dist. LEXIS 14836, *

tained in L.R. 56.1(b). For convenience, this opinion will reference the old numbering system.

In the instant case, plaintiff's 12N response is totally noncompliant. It contains, just as defendant describes it, evasive answers, contradictory answers, and legal argument. Indeed, the document contains more legal argument that factual denial. The purpose of the rule [*4] is to aid the court in determining which material facts are not in dispute, in order to determine if summary judgment is appropriate. It is not designed to give the parties additional briefing. Although the court could pick almost any of plaintiff's responses to defendant's 31 statements of uncontested fact, one example is sufficient to demonstrate the character of plaintiff's response:

19. Bordelon was assigned to administrative duties in the Office of Schools and Regions from March 11, 1997, to June 22, 1998. (Exhibit "Q", deposition of Lionel Bordelon, dated 2-26-99, pgs. 8-9 and 15.)

Response: Denied. This honorable court has already held that "Nothing in § 10-23.8(b) [of the Illinois Schools Code] gives defendant the right to transfer plaintiff to a "paper shuffler" position in the central office. Judge Ashman held, and this court agreed, that the two positions are not similar for purposes of the Act." As Miguel Rodriguez stated at his deposition, Mr. Bordelon's "office" at Camp Beverly, was in an "old warehouse" "in open space" with one large room with dividers and Mr. Bordelon's "space" was "on the way to the men's bathroom." (M. Rodriguez dep. pp. 16, 55) [*5] . Plaintiff had no "duties" and was not evaluated. (Vallas dep. p. 53)

This "response" is totally improper. The 12M statement of fact required plaintiff to admit or deny that he was assigned to administrative duties from March 11, 19997 to June 22, 1998, at the central office. The 12M statement sets forth a fact that can be admitted or denied. Plaintiff may have some quarrel with the term "administrative duties" but he must admit that he was reassigned to the Office of Schools and Regions between March 11, 1997, and June 22, 1998, because he so testified in his deposition. Plaintiff may dispute the legality of the reassignment, but he cannot dispute the fact. Indeed, the fact of the reassignment is the basis of plaintiff's entire complaint. Plaintiff's entire 12N response is replete with improper legal argument. Plaintiff cannot now deny facts

that he has already admitted in his deposition by raising legal argument. The materiality, relevance or legal significance of the fact can be challenged in a legal memorandum. But the fact must be admitted or denied in response to the local rule 12M statement of undisputed facts. Accordingly, defendant's motion to strike is granted, and [*6] defendant's Rule 12M statement of uncontested fact is regarded as admitted.

*Motion for Summary Judgment*

The gist of defendant's motion is that plaintiff has not and cannot show any publicized statements that were in any way "stigmatizing" or that plaintiff has suffered any tangible economic injury or loss of employment. "The Constitution does not forbid libel and slander." *Davis v. City of Chicago*, 53 F.3d 801, 804 (7th Cir. 1995). "Defamation alone by a public officer is not a constitutional tort, because the interest that it invades, the interest in reputation, is not deemed liberty or property within the meaning of the due process clauses of the Constitution . . ." *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997) (citations omitted). When, however, the character and circumstances of the defamation are such as to have foreclosed a person's freedom to take advantage of other employment opportunities, that person can bring a suit based on the deprivation of this liberty of employment or occupation. *Id.* (Citing *Paul v. Davis*, 424 U.S. 693, 710, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976)).

Therefore, for plaintiff [*7]  to survive summary judgment, he must present some evidence of damage to his freedom to take advantage of other employment opportunities. He has presented no such evidence and, according to his own testimony, cannot. In his deposition, plaintiff admitted that nobody has refused to hire him as a result of any statements made by defendant. Nor has he even sought any other employment opportunity. Indeed, he has been rehired in his present position for another four year term. Plaintiff has presented no evidence of any "stigmatizing" effect of any allegedly defaming statement. Accordingly, his claim does not rise to a Constitutional level. Defendant's motion for summary judgment is granted.

*Conclusion*

For the reasons set forth above, defendant's motions to strike and for summary judgment are granted. This matter is set for a report on status on September 22, 1999, at 9:00 a.m., at which time the parties shall be prepared to discuss what, if anything, remains of this case.

ENTER: September 3, 1999

Robert W. Gettleman

Page 3

1999 U.S. Dist. LEXIS 14836, *

United States District Judge