IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AYANNA WALKER, *Plaintiff,* | ) ) ) ) Case No. 07 C 6148 |
| v. | ) |
| CALUMET CITY, ILLINOIS, *Defendant.* | ) ) Judge Milton I. Shadur ) ) |

**PLAINTIFF'S STATUS REPORT FOR FEBRUARY 19, 2008 STATUS HEARING**

Ayanna Walker ("Walker") submits the following Status Report in connection with the February 19, 2008 Status Hearing. Below, Walker sets forth issues that she believes the Court should consider and discuss with her and Calumet City ("City") on February 19:

1.  Class Certification Motion. On November 19, 2007, Walker filed her Motion for Class Certification. The Court entered and continued the motion. Walker submits that the Court should set a briefing schedule and hearing on the motion (if City even plans to oppose it). *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974) (holding that court should consider motion for class certification before considering the merits, "[I]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met") (internal citations omitted); *Bieneman v. City of Chicago et al.*, 838 F.2d 962, 964 (7th Cir. 1988) (per curiam).

2.  Proposal for resolution of litigation in light of City's adoption of amended point of sale inspection ordinance ("Amended POS Ordinance"). On February 14, City informed the Court and Walker that City had adopted an Amended POS Ordinance on January 31, 2008. A copy of the Amended POS Ordinance is attached as Exhibit A. Walker requests that, at the February 19 Status Hearing, City reiterate its representation that it will not enforce the Amended

144106v1

POS Ordinance while the Court decides pending motions. If City does not agree, Walker will seek immediate preliminary injunctive relief. If City does agree, Walker is willing to withdraw her renewed motion for injunctive relief (filed February 12) without prejudice, as long as City sends written notice to applicable City employees instructing them to not enforce any aspect of the Amended POS Ordinance until the Court instructs otherwise.

In all events, the Court will need to consider the constitutionality of the Amended POS Ordinance. Walker believes that Court should set a schedule (a) for the parties to conduct limited discovery (see paragraph 3, below), and (b) for briefing on Walker's motion for a preliminary injunction. Walker submits that the Amended POS Ordinance does not cure all of the constitutional defects associated with the earlier iterations of the ordinance and anticipates briefing at least the following issues.

First, the Amended POS Ordinance still conditions the issuance of transfer stamps – which are required to transfer property in City – on a home owner's property "passing" an inspection by City. Thus, the Amended POS Ordinance continues to run afoul of the constitutional prohibition on restricting the free alienability of private property. Op. Ill. Att'y Gen. No. 94-024 (Oct. 25, 1994), 1994 WL 601863 ("Municipalities are authorized, under Article 11 of the Municipal Code (65 ILCS 5/11-1-1 et seq.) (West 1992) to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines...Further, municipalities may impose various fees for other services relating to real property. *In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such code.*") (emphasis added).

Second, the Amended POS Ordinance continues to lack any restrictions on the scope of permissible inspections and on the type of repairs that City can order as a condition to selling

144106v1

property. As the Court is aware, City has historically stopped sales of property until home owners make cosmetic repairs such as replacing soap dishes and painting. Nothing in the Amended POS Ordinance restrains City's powers in any way. Previously (in its January 15, 2008 Status Report) City took the position that the Amended POS Ordinance solved this problem because it now expressly incorporates by reference the International Property Maintenance Code (the "International Code"), citing *Reedy v. Borough of Collingswood*, 2005 WL 1490478 (D.N.J. 2005) in support. Neither the International Code nor *Reedy* support City's position. For example, the International Code contains provisions requiring things such as maintaining property in "good repair." *See* Exhibit B, International Code, §§ 304, 305. City can – as it has in the past -- rely on such provisions to order any kind of cosmetic repair it wants as a condition to the right to sell private property. *Reedy* is inapposite because it did not involve a point of sale inspection ordinance that allowed the government to prevent sales on any basis it desires. Rather, *Reedy* involved a rental dwelling inspection ordinance. *Reedy* simply held that, by referencing a code in an ordinance requiring inspections of rental property, a city provided enough notice to landlords regarding what inspectors might search for during inspections of rental property. That issue, of course, is not raised by Walker.

Third, the Amended POS Ordinance continues to fail to provide any protections for owners of legal nonconforming property. For example, the Amended POS Ordinance continues to fail to identify the process by which City will determine whether property has been "legally" or "illegally" converted. In addition, the Amended POS Ordinance contains no details regarding the process by which property owners will be permitted to sell their legal nonconforming property. For example, when an owner of legal nonconforming property finds a buyer for his property, the buyer's lender almost uniformly asks City to issue a letter that states that, if the

3

property is damaged, it can be re-built as legal nonconforming property as permitted by the Zoning Ordinance. Under the current system, City uniformly refuses to issues such "re-build" letters. As a result of City's conduct, notwithstanding that the Amended POS Ordinance states that only "illegally" converted property must be deconverted, City *in reality*, forever prohibits the sale of legal nonconforming property because lenders will not loan money to buyers in the absence of a rebuild letter. This means that, if an owner of legal nonconforming property wants to sell his property, he is forced to deconvert it, without compensation by City. The Amended POS Ordinance and City's conduct enforcing it, Walker submits, are plainly unconstitutional.

Fourth, the Amended POS Ordinance continues to fail to provide adequate due process to protect home owners. While City has purported to add an appeals process (*see* Exhibit A at §14-1(g)(b), that process is constitutionally flawed. For example, the right to "appeal" is only an "appeal" to other City employees, not to any independent party. Further, the Amended POS Ordinance contains no information regarding how "administrative review officers" will be appointed or what qualifications they must have.

3. <u>Outstanding Discovery.</u> On November 28, 2007, Walker served interrogatories and document requests on City to which City has failed to respond (other than production of the property file for Walker's property). Walker requests that the Court order City to promptly respond to this long overdue discovery. In addition, Walker anticipates serving additional limited discovery prior to briefing including asking for production of all forms to be used by City in connection with the Amended POS Ordinance. *See, e.g.,* Exhibit A at §§14-1(b), (d), (g)(1), (g)(2).

4

Dated: February 15, 2008　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　**AYANNA WALKER**

　　　　　　　　　　　　　　　　By:/s/ Patrick T. Nash
　　　　　　　　　　　　　　　　　　　One of their Attorneys

Philip C. Stahl
Patrick T. Nash
Maggie M. Hanel
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
Phone: (312) 704-7700

144106v1

## CERTIFICATE OF SERVICE

I, Patrick T. Nash, an attorney, hereby certify that on February 15, 2008, I caused the foregoing **PLAINTIFF'S STATUS REPORT FOR FEBRUARY 19, 2008 STATUS HEARING** to be served by Electronic Mail Transmission via the ECF System, and by Electronic Mail upon:

John B. Murphy
ROSENTHAL MURPHEY & COBLENTZ
30 North LaSalle Street
Suite 1624
Chicago, Illinois 60602
jmurphey@mcj.com

Mark H. Sterk
ODELSON & STERK, LTD.
3318 West 95th Street
Evergreen Park, Illinois 60805
msterk@odelsonsterk.com

/s/ Patrick T. Nash

144106v1