# EXHIBIT C

# APPENDIX B ZONING*

**\*Editor's note:** Appendix B sets out the zoning ordinance, enacted on Jan. 13, 1983, by Ord. No. 83-1, as the same was originally enacted by the city. Amendments will be cited in a history note following the affected section. The editor has incorporated a uniform printing style for purposes of maintaining Code format; however, no substantive changes have been made.

**Cross references:** Buildings and building regulations, ch. 14; community development, ch. 18; environment, ch. 26; floods, ch. 34; transitional living residences, § 42-1; sexually oriented entertainment businesses, § 54-1941 et seq.; mobile home parks, ch. 58; planning, ch. 66; signs, ch. 70; streets, sidewalks and other public places, ch. 78; telecommunications, ch. 86; ordinances related to zoning, app. C.

Sec. I. Title.
Sec. II. Intent and purpose.
Sec. III. Rules and definitions.
Sec. IV. General provisions.
Sec. V. Nonconforming buildings and uses.
Sec. VI. Zoning districts and zoning district map.
Sec. VII. Residence districts.
Sec. VIII. Commercial business district.
Sec. IX. Industrial districts.
Sec. X. Off-street parking and loading.
Sec. XI. Reserved.
Sec. XII. Administration.
Sec. XIII. Amendments.
Sec. XIV. Violations; penalty.
Sec. XV. Enactment.

*An Ordinance to Classify, Regulate and Restrict the Location of Trades and Industries and the Location of Buildings Designed for the Specified Industrial, Commercial, Residential and Other Uses and to Regulate and Limit the Height and Bulk of Buildings Hereafter Erected; to Regulate and Determine the Area of Yards, Courts and Other Open Spaces Within and Surrounding Such Buildings and to Establish the Boundaries of Districts for the Said Purposes and Prescribing Penalties for the Violation of its Provisions, and for Creating a Board of Appeals.*

*Now, Therefore, Be and It Is Hereby Ordained by the City Council of Calumet City, Illinois:*

## Sec. I. Title.

This ordinance shall be known, referred to and recited as "The Zoning Ordinance of the City of Calumet City."

(Code 1980, App. B, § I)

## Sec. II. Intent and purpose.

The prime tool of planning is land use control, most commonly referred to as zoning. The purposes of zoning are many, but foremost among these purposes are:

To promote and protect the public health, safety, morals, comfort and general welfare of the people;

To divide the City of Calumet City into zones or districts restricting and regulating therein the location, erection, construction, reconstruction, alteration and use of buildings, structures, and land for residence, business manufacturing and other specified uses;

To provide adequate light, air, privacy and conveniences of access to property;

To protect the character and the stability of the residential, business, and manufacturing areas within the City of Calumet City and to promote the orderly and beneficial development of such areas;

To regulate the intensity of use of lot areas, and to determine the area of open spaces surrounding buildings, necessary to provide adequate light and air, and to protect the public health;

To establish building lines and the location of buildings designed for residential, business and manufacturing, or other uses within such areas;

To fix reasonable standards to which buildings or structures shall conform therein;

To prohibit uses, buildings or structures incompatible with the character of development or intended uses within specified zoning districts;

To prevent additions to or alteration or remodeling of existing buildings or structures in such a way as to avoid the restrictions and limitations imposed hereunder;

To limit congestion in the public streets and protect the public health, safety, convenience and general welfare by providing for the off-street parking of motor vehicles and the loading and unloading of commercial vehicles;

To protect against fire, explosion, noxious fumes and other hazards in the interest of the public health, safety, comfort and general welfare;

To prevent the overcrowding of land and undue concentration of structures, so far as is possible and appropriate in each district, by regulating the use and bulk of buildings in relation to the land surrounding them;

To conserve the taxable value of land and buildings throughout the City of Calumet City;

To provide for the elimination of nonconforming uses of land, buildings and structures which are adversely affecting the character and value of desirable development in each district.

And to define and limit the powers and duties of the administrative officers and bodies as provided herein.

(Code 1980, App. B, § II)


## Sec. III. Rules and definitions.

In the construction of this ordinance, the rules and definitions contained in this section shall be observed and applies, except when the context herein clearly indicated otherwise.

*3.1 Rules.*

The present tense includes the future the present.

The singular number includes the plural and the plural the singular.

The word building includes the word structure.

The word shall is mandatory, and the word may is permissive.

*3.2 Definitions.*

*Abutting:* To have a common property line or district line.

*Accessory:* A use, building, structure, or part of a building or structure which:

(1) Is subordinate to and serves the principal building or structure or principal use;

(2) Is subordinate in area, extent, or purpose to the principal building or structure or principal use served;

(3) Contributes to the comfort, convenience, or necessity of occupants of the principal building or principal use; and

(4) Is located on the same lot as the principal building or structure or principal use served, with the exception of such accessory off-street parking facilities as are permitted to locate elsewhere than on

the same lot as the building or use served.

*Adjacent:*  To lie near or close to; in the neighborhood or vicinity of.

*Adjoining:*  Touching or contiguous, as distinguished from lying near or adjacent.

*Agriculture:*  The use for the pursuit of agriculture of a parcel of land twenty (20) acres or more in area under unified ownership or control and when within the perimeter of such a parcel there is no intervening street or land in other ownership or control. The pursuit of agriculture includes farming, dairying, pasturage, agriculture, horticulture, floriculture, viticulture, and animal and poultry husbandry and accessory uses customarily incidental to normal agricultural activities, but not including the commercial specialization of any of the above uses.

*Airport:*  Any area of land which is used, or intended, for the landing and takeoff of aircraft, and any appurtenant areas which are used or intended for use as airport buildings or other airport structures or rights-of-way, together with all airport buildings and structures located thereon.

*Alley:*  Any right-of-way, with a width of not less than twelve (12) feet or more than twenty-four (24) feet, which affords secondary means of vehicular access to abutting properties. A street shall not be considered an alley.

*Alteration:*  Any change in size, shape, occupancy, or use of a building or structure.

*Animal hospital:*  A building or portion thereof designed or used for the care, observation, or treatment of domestic animals.

*Automobile laundry:*  A building or portion thereof containing facilities for washing more than two (2) motor vehicles, using production-line methods.

*Automobile service station:*  A place where gasoline, stored only in underground tanks, kerosene, lubricating oil or grease, for operation of automobiles, are offered for sale directly to the public, on the premises, and including minor accessories and the servicing of automobiles; but not including major automobile repairs; and including washing of automobiles where no chain conveyor, blower or steam cleaning device is employed. When the dispensing, sale or offering for sale of motor fuels or oil is incidental to the conduct of a public garage, the premises shall be classified as a public garage. Automobile service stations shall not include sale or storage of automobiles or trailers (new or used).

*Automobile wrecking yard:*  See "junk yard."

*Awning:*  A roof-like mechanism, retractable in operation, which project from the wall of a building.

*Basement:*  A story having part, but not more than one-half ( 1/2) of its floor to clear ceiling height below grade. When a basement is used for storage, or garages for use of occupants of the building, or other facilities common for the operation and maintenance of the entire building, it shall not be counted as a story.

*Block:*  A tract of land bounded by streets, or by a combination of streets and public parks, other permanent open areas, or other lines of demarcation. A block may be located in part beyond the boundary lines of the corporate limits of the City of Calumet City.

*Building:*  Any structure designed or built for the support, enclosure, shelter, or protection of persons, animals, chattels, or property of any kind, and which is permanently affixed to the land. When any portion thereof is completely separated from every other portion by a party wall, then such portion shall be deemed to be a separate building.

[*Building commissioner:*  The zoning administrator.]

*Building, completely enclosed:*  A building separated on all sides from the adjoining open spaces by a permanent roof and by exterior walls, pierced only by windows and normal entrance and exit doors, or when adjoining another building or buildings on one (1) or two (2) sides, a roof and such exterior wall adjoining open space and party wall adjoining the other building.

*Building, detached:*  A building surrounded by open space.

*Building, height of:*  The vertical distance from curb level to the highest point of the coping of a flat roof or to the deck line of a mansard roof, or the mean height level between eaves and ridge for gable, hip or gambrel roofs. Chimneys, towers, spires, elevator penthouses, cooling towers, and similar customary accessory structures and equipment, other than signs, shall not be included in calculating building height.

*Building, principal:*  A nonaccessory building in which is conducted the principal use of the lot.

*Building, temporary:*  Any building not designed to be permanently located at the place where it is or where it is intended to be, temporarily placed or affixed.

*Bulk:* The term used to indicate the size and setback of buildings or structures, and the location of same with respect to one another, and includes the following: (a) size and height of buildings; (b) location of exterior walls at all levels in relation to lot lines, streets, or to other buildings; (c) floor area ratio; (d) all open space allocated to buildings; and (e) amount of lot area and lot width provided per dwelling unit.

*Business:* An occupation, employment, or enterprise, which occupies time, attention, labor, and materials, or wherein merchandise is exhibited or sold, or where services are offered.

*Capacity in persons:* The maximum number of persons that can avail themselves of the services or goods of an establishment or use at any one (1) time, with reasonable comfort and safety.

*Carport:* A roofed automobile shelter, with one (1) or more open sides.

*Cellar:* A story having more than one-half ( 1/2) of its floor to clear ceiling height below grade. A cellar is not included in computing the number of stories for the purpose of height measurement.

*Clinic, medical or dental:* A medical center or medical clinic is an establishment where three or more licensed physicians, surgeons or dentists engage in the practice of medicine or dentistry, operating on a group or individual basis with pooled facilities, such as coordinated laboratory, X-ray and allied departments, and the diagnosis and treatment of humans, which need not, but may include a drug prescription counter (not a drug store) for the dispensing of drugs and pharmaceutical products to the patients of said physicians, surgeons and dentists.

*Closed cup flash point:* The lowest temperature at which a combustible liquid under the most favorable condition will give off a flammable vapor which will burn momentarily.

*Club or lodge, private:* A nonprofit association of persons who are bona fide members and where facilities are restricted to members and their guests. Food and alcoholic beverages may be served on its premises provided they are secondary and incidental to the principal use.

*Community residence:* A single dwelling unit occupied on a relatively permanent basis in a family-life environment by a group of unrelated persons with disabilities, plus paid professional support staff provided by a sponsoring agency, either living with the residents on a twenty-four (24) hour basis, or present whenever residents with disabilities are present at the dwelling, and [which] complies with the zoning regulations for the district in which the site is located.

*Conforming building or structure:* Any building or structure which: (a) complies with all the regulations of this ordinance or of any amendment thereto governing bulk of the district in which said building or structure is located; or (b) is designed or intended for a permitted use or conditional permitted use, as herein allowed in the district in which it is located.

*Contiguous:* In actual contact.

*Court:* An open unoccupied space other than a yard on the same lot with a building or group of buildings and which is bounded on two (2) or more sides by such building or buildings.

*Curb level:* The established level of the curb pavement edging, along the front lot line, at a point directly in front of the center line of the building wall facing the front lot line, or if a curb pavement edging does not exist, the established level, at such point, along the center line of the roadway pavement, except in cases of exceptional differences in grade elevations between lot corners or within the area of a lot, as determined by the zoning administrator, the established curb level may be the average elevation of the finished ground grades at the building foundation walls even though such average elevation is higher than such established level of the curb pavement edging, or center line or roadway pavement.

*Disability:* A physical or mental impairment which substantially limits one (1) or more of the person's major life activities, impairs his ability to live independently, or a record of having such an impairment or being regarded as having such an impairment, but such term does not include current use of, nor addiction to, a controlled substance.

*Drive-in establishment:* An establishment or part thereof in which are provided facilities where serving or consuming commodities or both are intended to occur in patron's automobiles parked on the premises, or where commodities are purchased by customers waiting in automobiles for consumption off the premises.

*Dwellings:* A building or portion thereof designed or used exclusively for residential purposes, including single-family, two-family and multiple-family dwellings, but not including mobile homes or other trailers and lodging rooms in hotels, motels or lodging houses.

*Dwelling, attached:* A dwelling joined to two (2) other dwellings by party walls, or vertical cavity walls, and above ground physically unifying horizontal structural elements.

*Dwelling, detached:* A dwelling which is surrounded on all sides by open space on the same lot.

*Dwellings, multiple-family:* A dwelling containing four (4) or more dwelling units.

*Dwellings, single-family:* A dwelling containing one (1) dwelling unit only.

*Dwelling, semidetached:* A dwelling joined to one (1) other dwelling by a party wall, or vertical cavity wall, and above ground physically unifying horizontal structural elements.

*Dwelling, two-family:* A dwelling containing two (2) dwelling units only.

*Dwelling, three-family:* A dwelling containing three (3) dwelling units only, one (1) above the other.

*Dwelling unit:* One (1) or more rooms which are arranged, designed, or used as living quarters for a family, or for a community residence as a single house-keeping unit. A dwelling unit includes bathroom and kitchen facilities in addition to sleeping and living areas.

*Efficiency unit:* A dwelling unit consisting of one (1) principal room, exclusive of bathroom, kitchen, hallway, closets, or dining alcove directly off the principal room.

*Electric distribution center:* A terminal at which electric energy is received from the transmission system and is delivered to the distribution system only.

*Electric substation:* A terminal at which electric energy is received from the transmission system and is delivered to other elements of the transmission system and, generally, to the local distribution system.

*Engineer, city:* The official of the City of Calumet City, Illinois duly appointed and designated as the city engineer.

*Establishment, business:* A building, structure, or land used in whole or in part as a place of business, the ownership or management of which is separate and distinct from the ownership or management of any other place of business located on the same or other lot.

*Fallout shelter:* An accessory building and use which incorporates the fundamentals for fallout protection (shielding mass, ventilation, and space to live) and which is constructed of such materials, in such a manner, as to afford to the occupants substantial protection from radioactive fallout.

*Family:* One (1) person or two (2) or more persons each related to the other by blood, marriage, or legal adoption, or a group of not more than five (5) persons not all so related, together with his or their domestic servants, maintaining a common household in a dwelling unit, but not including sororities, fraternities or similar organizations.

*Fence:* A structure, or tree or shrub hedge which is a barrier and used as a boundary or means of protection or confinement.

*Fence, open:* A fence including gates which has, for each one (1) foot wide segment extending over the entire length and height of the fence, fifty (50) percent of the surface area in open spaces which afford direct views through the fence.

*Fence, solid:* A fence, including gates, which conceals from view from adjoining properties, streets, or alleys activities conducted behind it.

*Flood-crest elevation:* The elevation equal to the flood-crest level of record designated by the city engineer or other governmental officials or body having jurisdiction as applicable to the property for which a zoning certificate is being requested.

*Floodplain area:* That continuous area adjacent to a stream or stream bed, or any storm water retention area and its tributaries, whose elevation is equal to or lower than the flood-crest elevation including also land less than ten (10) acres in area having an elevation higher than flood-crest elevation and which is surrounded by land in a floodplain area, or land, less than five (5) acres in area, having an elevation equal to or higher than flood-crest elevation and bordered on three (3) sides by lane in a floodplain area.

*Floor area, for determining floor area ratio:* The sum of the gross horizontal areas of the several floors including also the basement floor of a building, measured from the exterior faces of the exterior walls, or from the center line of walls separating two buildings. The floor area shall also include the horizontal areas on each floor

devoted to: (a) elevator shafts and stairwells; (b) mechanical equipment, except if located on the roof, when either open or enclosed, i.e. bulkhead, water tanks, and cooling towers; (c) habitable attic space as permitted by the building code of the City of Calumet City, Illinois; (d) interior balconies and mezzanines; (e) enclosed porches; and (f) accessory uses. The floor area of structures used for bulk storage of materials, i.e. grain elevators, petroleum tanks shall also be included in the floor area and such floor area shall be determined on the basis of the height of such structures with one (1) floor for each ten (10) feet of structure height and if such structure measures less than ten (10) feet but not less than five (5) feet over such floor height intervals, it shall be construed to have an additional floor.

The horizontal area in each floor of a building devoted to off-street parking and off-street loading facilities and the horizontal area of a cellar floor shall not be included in the floor area.

*Floor area, for determining off-street parking and off-street loading requirements:* Floor area when prescribed as the basis of measurement for off-street parking spaces and off-street loading spaces for a use shall be the sum of the gross horizontal area of the several floors of the building, excluding the horizontal areas of basement and cellar floors that are devoted exclusively to uses accessory to the operation of the entire building. All horizontal dimensions shall be taken from the exterior of the walls.

Notwithstanding the foregoing, when determining the floor area for off-street parking spaces and off-street loading spaces for enclosed retail shopping malls, there shall also be excluded from the determination of floor area the horizontal areas of (a) all enclosed common areas devoted to the general public, such as (without limitation) pedestrian malls (including service and exit corridors, balconies, mezzanines, and enclosed porches); mall restrooms; and mall elevator shafts, stairwells and escalator areas, and (b) all other enclosed horizontal areas not devoted to retail sales (or uses accessory thereto), such as (without limitation) equipment and mechanical areas; heating, ventilating and air conditioning shafts and ducts; enclosed loading docks; and store elevator shafts, stairwells, and escalator areas.

*Floor area ratio:* The numerical value obtained by dividing the floor area within a building or buildings on a lot by the area of such lot. The floor ratio requirements as designated for each district when multiplied by the lot area in square feet shall determine the maximum permissible floor area for the building or buildings on the lot.

*Free burning:* The rate of combustion described by a material which burns actively and easily supports combustion.

*Frequency:* Signifies the number of oscillations per second in a sound wave and is an index of the pitch of the resulting sound.

*Garage, private:* An accessory building designed and used for the storage of motor vehicles owned and used by the occupants of the principal building to which it is accessory and in which no occupation or business for profit is carried on. Only one (1) of the motor vehicles may be a commercial vehicle which does not exceed two (2) tons capacity. A travel trailer or a boat that, in each case, is owned and used by the occupant of such principal building may be stored in a private garage.

*Garage, public:* A building or portion thereof other than a private or storage garage, designed or used for equipping, servicing, or repairing motor vehicles. Hiring, selling, or storing of motor vehicles may be included.

*Garage, storage:* A building or portion thereof, designed or used exclusively for storage of motor vehicles, and in which motor fuels and oils are not sold, except as herein regulated, and motor vehicles are not equipped, repaired, hired or sold.

*Gross density:* Ratio between total number of dwelling units on a lot and total area in acres.

*Guest, permanent:* A person who occupies or has the right to occupy a lodging house, hotel, apartment hotel, or motel accommodation as his domicile and place of permanent residence.

*Home occupation:* A gainful occupation or profession conducted entirely within a dwelling unit by a member of the family residing in the dwelling unit. No article shall be sold or offered for sale on the premises except such as is produced by the occupation on the premises and no mechanical or electrical equipment shall be installed or maintained other than such as is incidental to domestic use.

*Hotel or motel:* A building in which lodging rooms are provided and offered to the public for compensation and which is open to transient guests, in contradistinction to a lodging house, or a rooming house, and where customary hotel services such as maid, telephone, and secretarial, bellboy, and desk services and the use and upkeep of furniture, and furnishings and laundry of linens are provided. Facilities may include restaurants, cocktail lounges, and meeting rooms. Not more than fifty (50) percent of the accommodations in a hotel may be in dwelling units occupied or intended for occupancy by permanent guests.

*Hotel, apartment:* A hotel in which more than fifty (50) percent but not more than eighty (80) percent of the accommodations are in dwelling units occupied or intended for occupancy by permanent guests.

*Intense burning:* The rate of combustion described by a material that burns with a high degree of activity and is consumed rapidly.

*Institution:* A building occupied by a nonprofit corporation wholly for public or semipublic use.

*Junkyard:* An open area of land and any accessory buildings or structures thereon which are used primarily for buying, selling, exchanging, storing, baling, packing, disassembling, or handling waste or scrap materials, including vehicles, machinery, and equipment not in operable condition or parts thereof, and other metals, paper, rugs, rubber tires and bottles.

*Kennel:* Any premises or portion thereof on which more than three (3) dogs, cats, or other household domestic animals over one (1) year of age are kept, or on which more than two (2) such animals are maintained, boarded, bred, or cared for, in return for remunerations, or are kept for the purpose of sale, except any premise five (5) acres or more in area used for a single-family detached dwelling, agricultural, institutional, or recreational use where more than three (3) such domestic animals owned by the occupant of the principal use are kept, bred, and offered for sale shall not be considered a kennel.

*Laboratory:* See "research laboratory."

*Launderette:* A business that provides coin-operated self-service type washing, drying, dry-cleaning, and ironing facilities, providing that: (a) not more than four (4) persons, including owners, are employed on the premises; and (b) no pick-up or delivery service is maintained.

*Livestock:* Riding horses, ponies, donkeys, sheep, goats, and cattle.

*Loading berth:* A space within the principal building or on the same lot as the principal building providing for the standing or unloading of trucks and with access to a street or alley.

*Lot:* A parcel of land legally described as a distinct portion or piece of land of record.

*Lot area:* The area of a horizontal plane bounded by the front, side and rear lot lines of the lot.

*Lot, corner:* A lot of which at least two (2) adjacent sides abut for their full lengths upon streets, provided that the interior angle at the intersection of such two sides is less than one hundred thirty-five (135) degrees. A lot abutting upon a curved street or streets shall be considered a corner lot if the tangents to the curve at its points of beginning within the lot or at the points of intersection of the side lot lines with the street line intersect at an interior angle of less than one hundred thirty-five (135) degrees. The point of intersection of the street lot lines is the corner. In the case of a corner lot with a curved street line, the corner is that point on the street lot line nearest to the point of intersection of the tangents above described.

*Lot, interior:* A lot that is not a corner lot.

*Lot line adjoining a street:* A side lot line of a corner lot which abuts a street, a rear lot line of a through lot, or a front lot line of any lot.

*Lot line, front:* The boundary of a lot which abuts a street. On a corner lot, the lot line having the shortest length abutting a street shall be the front lot line.

*Lot line, interior:* A lot line which does not abut a street right-of-way line.

*Lot line, rear:* That boundary of a lot which is most distant from and is, or is most nearly, parallel to the front lot line and in the case of an irregular, triangular, or goreshaped lot, a line ten (10) feet in length, within the lot, which is parallel to and at the maximum distance from the front lot line.

*Lot line, side:* Any boundary of a lot which is not a front lot line or a rear lot line.

*Lot lines:* The property lines bounding the lot.

*Lot, reversed corner:* A corner lot, the side lot line adjoining a street of which is substantially a continuation of the front lot line of the first lot to its rear.

*Lot, through:* A lot having a pair of opposite lot lines along two (2) more or less parallel streets, and which is not a corner lot. Both street lines shall be deemed front lot lines for the purpose of conforming with yard, other open area, and accessory building, structure, and use regulations of this ordinance.

*Lot width:* The minimum horizontal distance between the side lot lines of a lot measured at the narrowest width within the buildable area.

*Lots of record:* A single lot which is part of a subdivision, the plat of which has been recorded in the office of the recorder of deeds of Cook County, Illinois; or a single parcel of land, the deed of which has been recorded in the office of the recorder of deeds of Cook County, Illinois.

*Manufacturing establishment:* An establishment, the principal use of which is manufacturing, fabricating, processing, assembly, repairing, storing, cleaning, servicing, or testing of materials, goods, or products.

*Marquee or canopy:* A roof-like structure of a permanent nature which projects from the wall of a building.

*Micron:* A unit of length, equal to one-thousandth part of one millimeter (.001 millimeter).

*Mobile home:* A trailer designed and constructed for dwelling purposes.

*Moderate burning:* Implies a rate of combustion described by material which supports combustion and is consumed slowly as it burns.

*Motor freight terminal:* A building or area in which freight brought by motor truck or railroad is assembled or stored for routing in intra-state or interstate shipment by motor truck.

*Nameplate:* A sign indicating the name and address of a building, or the name of an occupant thereof, and the practice of a permitted occupation therein.

*No-access strip:* A strip of land along the rear lot line, adjoining a thoroughfare right-of-way, of a through lot, and which is designated on a recorded subdivision plat or property deed as land over which motor vehicular travel shall not be permitted.

*Nonconforming building or structure:* Any building or structure lawfully established which: (a) does not comply with all the regulations of this ordinance or of any amendment hereto governing bulk of the district in which such building or structure is located; or (b) is designed or intended for a nonconforming use.

*Nonconforming use:* Any building or structure and the use thereof or the use of land that does not conform with the regulations of this ordinance or any amendment hereto governing use in the district in which it is located but conformed with all of the codes, ordinances, and other legal requirements applicable at the time such building, or structure was erected, enlarged, or altered, and the use thereof or the use of land was established.

*Noxious matter or material:* A material which is capable of causing injury to living organisms by chemical reaction or is capable of causing detrimental effect on the physical or economic well-being of individuals.

*Nursery, child-care, or nursery school:* A building containing facilities for the part-time care of five (5) or more children of pre-elementary school are and may include in addition the dwelling unit of the family residing therein.

*Nursing home:* A building containing facilities for the care and home of aged, chronically ill, infirm, or incurable persons, or a place of rest for those persons suffering bodily disorders, in which three (3) or more persons not members of the family residing on the premises are received, and provided with food, shelter, and care, but not including hospitals, clinics, or similar institutions devoted primarily to the diagnosis and treatment of disease or injury, maternity cases, or mental illness.

*Octave band:* A method of dividing the range of sound frequencies into octaves in order to classify sound according to pitch.

*Odor:* The minimum concentration of odorous matter in the air that can be detected as an odor.

*Off-street parking area or lot:* Land which is improved and used or structure which is designed and used exclusively for the storage of passenger motor vehicles, either for accessory off-street parking spaces or commercial off-street parking spaces when permitted herein by district regulations.

*Open sales lot:* Land used or occupied for the purpose of buying, selling, or renting merchandise stored or displayed out-of-doors prior to sale. Such merchandise includes automobiles, trucks, motor scooters, motorcycles, boats, or similar commodities.

*Parking space:* An area, enclosed in a building or unenclosed, reserved for the parking of one (1) motor vehicle and which is accessible to and from a street or alley.

*Particular matter:* Finely divided solid or liquid matter, other than water, which is released into the

atmosphere.

*Party wall:* An interior wall of adjoining buildings-extending from its footing below grade to the underside of the roof, which divides and is in common use by such adjoining buildings.

*Performance standard:* A criteria established to control smoke and particulate matter, noise, odor, toxic, or noxious matter, vibration, fire and explosion hazards, glare of heat, or radiation hazards generated by or inherent in uses of land or buildings.

*Plan commission:* The plan commission of the City of Calumet City, Illinois.

*Planned unit development:* A parcel or tract of land having an area as herein required in district regulations, initially under unified ownership or control, and which is or is intended to be the site for two (2) or more principal buildings for one (1) or more principal uses, or one (1) principal building for two (2) or more principal uses and within which allowable exceptions in the district regulations are specified.

*Pyrophoric dust:* A dust in a finely divided state that is spontaneously combustible in air.

*Radiation hazards:* The deleterious and harmful effects of all ionizing radiation, which shall include all radiation capable of producing ions in their passage through matter. Such radiations shall include, but are not limited to, electromagnetic radiations such as X-rays, and gamma rays and particulate radiations such as electrons or beta particles, protons, neutrons, and alpha particles.

*Research laboratory:* A building or group of buildings, in which are located facilities for scientific research, investigation, testing, or experimentation, but not facilities for the manufacture or sale of products, except as incidental to the main purpose of the laboratory.

*Reservoir parking spaces:* Those off-street parking spaces allocated for temporary standing of automobiles awaiting entrances to a particular establishment.

*Ringelmann chart:* The chart described in the U.S. Bureau of Mines information Circular 6888, on which are illustrated graduated shades of gray for use in estimating the light-obscuring capacity of smoke-smoke density.

*Ringelmann Number:* The number of the area on the Ringelmann Chart that coincides most nearly with the visual density of emission or the light-obscuring capacity of smoke.

*Roadway:* That portion of a street which is used or intended to be used for the travel of motor vehicles.

*Setback:* The minimum horizontal distance between a street line and the nearest wall of a building, or side of a structure facing such street line, or edge of the area of operation of a principal use when no building or structure is involved.

*Setback, established:* When forty (40) percent or more of the lots fronting on one (1) side of a street within a block are improved, the existing setbacks of such improved lots shall be the established setbacks and the setbacks for the remainder of the lots along such street frontage shall be related, as herein regulated, to the established setbacks, except on any lot fronting a thoroughfare as designated on the official map, the established setbacks shall be the yard line of a yard adjoining a street which is set back not lessthan the required depth as herein regulated, from the established center line of such thoroughfare.

*Sign:* A name, identification, description, illustration, display or device which is affixed to, painted or represented upon a building, structure, or land and which directs attention to a product, place, activity, person, institution, or business. For purpose of definition, a sign structure may be single face or double face. However, a sign shall not include any display of any court, public or official notice, nor shall it include the flag, emblem, insignia of a nation, political unit, school, religious or charitable institution or organization. A sign shall also include a permanent sign located within an enclosed building in such a manner as to be viewed or intended or view primarily from the exterior of the building.

*Sign, advertising:* A structure including a billboard on which is portrayed information which directs attention to a business, commodity, service, or entertainment, or other activity not necessarily related to uses permitted on the premises upon which the sign structure is located.

*Sign, business:* A sign which directs attention to a business, commodity, service, entertainment, or other activity conducted upon the premises upon which such sign is located.

*Sign, flashing:* An illuminated sign on which the artificial light is not maintained constant or stationary in intensity or color at all times when such sign is in use. For the purpose of this ordinance, a revolving sign, or any

advertising device which attracts attention by moving parts, operated by mechanical equipment or movement is caused by natural sources, whether or not illuminated with artificial lighting, shall be considered a flashing sign.

*Sign, ground:* A sign which is supported by one (1) or more uprights or braces in or upon the ground.

*Sign, projecting:* A sign which is affixed to any building wall or structure and extends beyond the building wall or parts thereof or structure.

*Sign, roof:* A sign erected, constructed, and maintained above the roof of any building.

*Sign, wall:* A sign which is affixed to an exterior wall of any building, when such sign shall project not more than twelve (12) inches from the building wall or parts thereof.

*Single-ownership:* A lot in single-ownership is one where the owner does not own adjoining vacant property.

*Smoke:* The visible discharge from a chimney, stack, vent, exhaust, or combustion process which is made up of particulate matter.

*Smoke unit:* The number obtained when the smoke density in the Ringelmann Number is multiplied by the time of emission in minutes. For the purpose of this calculation: (a) a Ringelmann density reading shall be made at least one (1) a minute during the period of observation; (b) each reading is then multiplied by the time in minutes during which it is observed; and (c) the various products are then added together to give the total number of smoke units observed during the entire observation period.

*Sound level:* The intensity of sound of an operation or use as measured in decibels.

*Sound level meter:* An instrument standardized by the American Standards Association for measurement of the intensity of sound.

*Story:* That portion of a building, other than a cellar, included between the surface of any floor and the surface of the floor next above it, or if there be no floor above it, the space between the floor and the ceiling next above it. The floor of a story may have split levels provided that there are not more than four (4) feet differences in elevation between the different levels of the floor. A basement shall be counted as a story and a mezzanine floor shall be counted as a story when it covers over one-third (1/3) the area of the floor next below it, or if the vertical distance from the floor next below it to the floor next above it is twenty-four (24) feet or more.

*Street:* A public or private right-of-way or easement which is designated as a permanent right-of-way or easement for common use as the primary means of vehicular access to properties abutting on it.

*Street frontage:* All of the property fronting on one (1) side of a street between two (2) intersecting streets, or in the case of a dead-end street, all of the property along one (1) side of the street between an intersecting street and the end of such dead-end street.

*Street line:* The street right-of-way line abutting a property line of a lot.

*Structure:* Anything constructed or erected, the use of which requires more or less permanent location on the ground or attached to something having a permanent location on the ground, including, but without limiting, the generality of the foregoing, signs, back stops for tennis courts, and pergolas.

*Structural alteration:* Any change in the supporting members of a building, such as bearing walls, columns, beams or girders, or any substantial change in the roof or in the exterior walls, excepting such repair or replacement as may be required for the safety of the building.

*Three-components measuring system:* Instruments which measure simultaneously earthborne vibrations in horizontal and vertical planes.

*Toxic matter or material:* Those materials which are capable of causing injury to living organisms by chemical means.

*Trailer:* Any vehicle or portable structure constructed so as to permit occupancy thereof for lodging or dwelling purposes or for the use as an accessory building or structure in the conduct of business, trade, or occupation, and which may be used as a conveyance on streets, and highways, by its own or other motive power.

*Use:* The purpose or activity for which the land, and buildings and structures thereon, is designed, arranged, or intended, or for which it is occupied or maintained, and shall include any manner of performance of such activity with respect to the performance of such activity with respect to the performance standards of this ordinance.

*Use, accessory:* See "accessory."

*Use, lawful:* The use of any building, structure, or land that conforms with all of the regulations of this ordinance or any amendment hereto and which conforms with all of the codes, ordinances, and other legal requirements, as existing at the time of the enactment of this ordinance or any amendment thereto, for the structure or land that is being examined.

*Use, permitted:* Any use which is or may be lawfully established in a particular district or districts, provided it conforms with all requirements, regulations, and when applicable, performance standards of this ordinance for the district in which such use is located.

*Use, principal:* The dominant use of land or buildings as distinguished from a subordinate or accessory use.

*Use, special permitted:* A use that has operational, physical, and other characteristics that may be different from those of the predominant permitted uses in a district, but which is a use that compliments or is otherwise compatible with intended overall development with a district. Compliance with special standards not necessarily applicable to other permitted or special permitted uses in the district shall be required for a special permitted use, as herein regulated in this ordinance.

*Vehicle, motor:* Any passenger vehicle, truck, truck-trailer, or semitrailer propelled or drawn by mechanical power.

*Vending machine:* A machine for dispensing merchandise or services designed to be operated by the customer.

*Vibration:* The periodic displacement, measured in inches, of earth designated frequency, cycles per second.

*Yard:* An open area on a lot which is unobstructed from its lowest level to the sky, except as otherwise provided in this ordinance.

*Yard adjoining a street, side:* A yard which is bounded by the front yard line, side yard adjoining a street line, rear yard line and side lot line adjoining a street.

*Yard, front:* A yard which is bounded by the side lot lines, front lot lines, and the front yard line or the established setback line.

*Yard, interior side:* A side yard which adjoins another lot or an alley separating such side yard from another lot.

*Yard line:* A line in a lot that is parallel to the lot line along which the applicable yard extends and which is not nearer to such lot line at any point than the required depth or width of the applicable yard. A building, structure, or other obstruction shall not encroach into the area between the yard line and such adjacent lot line, except for such permitted obstructions in yards as are set forth in this ordinance.

*Yard, rear:* A yard which is bounded by side lot lines, rear lot lines, and the rear yard line.

*Yard, side:* A yard which is bounded by the rear yard line, front yard line, side yard line and side lot line.

*Yard, transitional* means a yard designed with certain screening improvements to serve as a buffer between potentially incompatible land-uses.

*Zoning administrator:* The building commissioner shall be the zoning administrator.

*Zoning board of appeals:* The zoning board of appeals of the City of Calumet City.

*Zoning districts:* The districts into which the City of Calumet City, Illinois, has been divided as set forth on the zoning district map, for the purposes of zoning regulations and requirements.

*Zoning lot:* A single tract of land located within a single block which (at the time of filing for a building permit) is designated by its owner or developer as a tract to be used, developed or built upon as a unit, under single ownership or control. Therefore, a "zoning lot" may or may not coincide with a lot of record.

(Code 1980, App. B, § III; Ord. No. 91-7, §§ 1, 2, 3-14-1991; Ord. No. 93-4, § 1b., 2-25-1993; Ord. No. 96-30, § 1(Exh. A), 5-23-1996)

## Sec. IV. General provisions.

*4.1 Interpretation.*

*Minimum requirements.* The provisions herein shall be held to be the minimum requirements for the promotion of the public health, safety, morals, and welfare.

*Relationship with other laws.* Where the conditions imposed by any provision herein upon the use of land or buildings or upon the bulk of buildings are either more restrictive or less restrictive than comparable conditions imposed by any other provision herein or any other law, ordinance, resolution, rule or regulation of any kind, the regulations which are more restrictive or which impose higher standards or requirements shall govern.

*Effect on existing agreements.* The ordinance is not intended to abrogate any easement, covenant, or any other private agreement provided that where the regulations of the ordinance are more restrictive or impose higher standards or requirements than such easement, covenants, or other private agreements, the requirements herein shall govern.

*4.2 Scope of regulations.*

*Changes in structures or use.* Except as may otherwise be provided in Section V, all buildings erected hereafter, all uses of land or buildings established hereafter, all structural alterations or relocation of existing buildings occurring hereafter, and all enlargements of or additions to existing uses occurring hereafter shall be subject to all regulations herein which are applicable to the zoning districts in which such buildings, uses or land shall be located.

*Nonconforming buildings, structures and uses.* Any lawful building, structure or use existing at the time of the enactment of the zoning ordinance may be continued, even though such building, structure or use does not conform to the provisions herein for the district in which it is located, and whenever a district shall be changed hereafter, the then existing lawful use may be continued, subject to the provisions of Section XIV, nonconforming buildings, structures and uses.

*Building permits.* Where a building permit for a building or structure has been issued in accordance with law prior to the effective date of the ordinance, and provided that construction is begun within ninety (90) days of such effective date and diligently prosecuted to completion, said building or structure may be completed in accordance with the approved plans on the basis of which the building permit was issued, and further may upon completion be occupied under a certificate of occupancy by the use for which originally designated, subject thereafter to the provisions of Section XIV, nonconforming buildings, structures and uses.

*Signs.* It shall be unlawful to place any outdoor advertising sign or display within a residential district classified as R-1 one-family residence district, R-2 two-family and three-family residence district and R-3 multiple family residence district as defined in Section VII of this ordinance except as permitted by sections 23-36 through 23-39 of this Code and section 15-584 of this Code.

*4.3 Use and bulk regulations.*

*Use.* No building, structure or land shall hereafter be used or occupied, and no building or part thereof, or other structure, shall be erected, raised, moved, reconstructed, extended, enlarged or altered except in conformity with the regulations herein specified for the district in which it is located.

*Bulk.* All new buildings and structures shall conform to the building regulations established herein for the district in which each building shall be located, except that parapet walls, chimneys, cooling towers, elevator bulkheads, fire towers, stacks and necessary mechanical appurtenances shall be permitted to exceed the maximum height provisions when erected in accordance with all other ordinances of the City of Calumet City.

*4.4 Lot coverage.*

*Maintenance of yards, courts and other open spaces.* The maintenance of yards, courts and other open spaces and minimum lot area legally required for a building shall be a continuing obligation of the owner of such building is in existence. Furthermore, no legally required yards, courts or other open space or minimum lot area allocated to any building shall, by virtue of change of ownership or for any other reason, be used to satisfy yard, court, other open space or minimum lot area requirements for any other building.

*Division of zoning lots.* No improved zoning lot shall hereafter be divided into two (2) or more zoning lots unless all improved zoning lots resulting from each such division shall conform with all the applicable bulk regulations

of the zoning district in which the property is located.

*Location of required open space.* All yards, courts and other open spaces allocated to a building or dwelling group shall be located on the same zoning lot as such building or dwelling group.

*Required yards for existing buildings.* No yards now or hereafter provided for a building existing on the effective date of the zoning ordinance shall subsequently be reduced below, or further reduced below if already less than, the minimum yard requirements of the ordinance for equivalent new construction.

*Permitted accessory buildings, structures and uses.* The following accessory buildings, structures, and uses are permitted and may be obstructions in yards and courts as follows:

Note:

F   Denotes permitted obstruction in front yards and side yards adjoining streets

S   Denotes permitted obstruction in interior side yards

R   Denotes permitted obstruction in rear yards

C   Denotes permitted obstruction in open courts

TABLE INSET:

| | | F | S | R | C |
|---|---|---|---|---|---|
| (a) | Awnings or canopies, which may project not more than three (3) feet into a required yard or court. | F | S | R | C |
| (b) | Arbors or trellises, and where trellises are attached to the principal building they may also project into front yards, side yards, and courts. | | | R | C |
| (c) | Air conditioning equipment shelters. | | | R | C |
| (d) | Architectural entrance structures on a lot not less than two (2) acres in area or at entrance roadways into subdivisions containing one hundred (100) or more lots. | F | S | R | |
| (e) | Balconies. | | | R | C |
| (f) | Bay windows, projecting not more than three (3) feet into a yard. | F | | R | |
| (g) | Chimneys, attached, projecting not more than twenty-four (24) inches into a yard or court. | F | S | R | C |
| (h) | Eaves and gutters on principal buildings or attached accessory buildings, projecting not more than four (4) feet into a front and rear yard not more than twenty-four (24) inches into a side yard or court. | F | S | R | C |
| (i) | Fallout shelters, attached or detached, when conforming also with other codes and ordinances of the city. | | | R | |
| (j) | Fences, open, not more than six (6) feet in height, except in business and manufacturing districts, and those enclosing the property of schools, and other public and quasi-public uses. | F | S | R | |
| (k) | Fences, solid, not more than seven (7) feet in height in business districts, not more than eight (8) feet in manufacturing districts, and residence districts, solid fences not more than six (6) feet in height. | | S | R | |
| (l) | Fire escapes, open or enclosed, or fire towers may project into a required front yard or side yard adjoining a street not more than five (5) feet and into a required interior side yard or court not more than three and one half (3 1/2) feet. | F | S | R | C |

| | | F | S | R | C |
|---|---|---|---|---|---|
| (m) | Flagpoles. | F | S | R | C |
| (n) | Garages or carports, attached or detached. | | | R | |
| (o) | Growing of farm and garden crops in the open. | | | R | |
| (p) | Lawn furniture, such as benches, sun dials, bird baths, and similar architectural features. | F | S | R | C |
| (q) | Open off-street loading spaces. | | S | R | C |
| (r) | Open off-street parking spaces which shall be located not less than three (3) feet from a lot line, or not less than ten (10) feet from a building wall in courts, or greater distance if required herein for a specific use, and in the manufacturing districts and all business districts, except a B-1 district, open off-street parking spaces may be in a required front yard or side yard adjoining a street as hereinafter regulated. | | | | |
| (s) | Ornamental light standards. | F | S | R | C |
| (t) | Playground and laundry-drying equipment. | | | R | C |
| (u) | Playhouses and open-sided summer houses. | | | R | |
| (v) | Sheds and storage buildings for garden equipment and household items as accessory to dwellings and buildings and structures customarily incidental to the pursuit of agriculture. | | | R | |
| (w) | Signs and nameplates as herein regulated. | F | S | R | C |
| (x) | Sills, belt courses, cornices, and ornamental features of the principal building, projecting not more than eighteen (18) inches into a yard or court. | F | S | R | C |
| (y) | Steps, open, necessary for access to and from the dwelling or an accessory building, steps as access to the lot from the street, and in gardens or terraces, provided there are no more than eight (8) steps for access to and from a principal or accessory building. | F | S | R | C |
| (z) | Swimming pools, private, when conforming also with other codes or ordinances of the city. | | | R | |
| (aa) | Terraces, patios, and outdoor fireplaces. | | | R | |
| (bb) | Tennis courts, private. | | | R | |
| (cc) | Trees, shrubs, and flowers. | F | S | R | C |
| (dd) | Other accessory buildings, structures, and uses as herein permitted in district regulations as accessory to a specific permitted use. | | | | |
| (ee) | On corner lots within that part of a yard, court, or other open area located within a radius of twenty-five (25) feet from the point of intersection of the two (2) street right-of-way lines forming the lot corner, no buildings, structures, or shrubs as herein permitted as obstructions in front or side yards adjoining a street shall be erected, altered, or planted which have a height more than thirty (30) inches above the ground grade in this area, and trees planted | | | | |

| in such areas shall be maintained in a manner that trees shall not have branches lower than eight (8) feet above the ground grade elevation in this area. | | | | |
|---|---|---|---|---|

*Vision clearance, corner lots.* No building or structure hereafter erected and no planting or other obstruction to the vision of drivers of motor vehicles shall be located:

(1) In any residential districts, exceeding a height of three (3) feet above the street grade within twelve (12) feet of the intersecting right-of-way lines bordering corner lots; and

(2) In any business or manufacturing district, within eight (8) feet of the intersecting right-of-way lines bordering a corner lot, provided that this regulation shall not apply to that part of a building above the first floor.

### 4.5 Lot area and dimension.

*Contiguous parcels.* When two (2) or more parcels of land, each of which lacks adequate area and dimension to qualify for a permitted use under the requirements of the use district in which they are located, are contiguous and are held in one (1) ownership, they shall be used as one (1) zoning lot for such use.

*Lots of parcels of land of record.* Any single lot or parcel of land, held in one (1) ownership, which was of record at the time of adoption of the ordinance, that does not meet the requirements for minimum lot width and area, may be utilized for a permitted use, provided that yards, courts or useable open space are not less than seventy-five (75) percent of the minimum required dimensions and areas.

### 4.6 Access to public street.

Except as otherwise provided for herein for planned developments, every principal building or structure shall be constructed or erected upon a lot or parcel of land which abuts upon a public street unless a permanent easement of access to a public street was of record prior to the adoption of the ordinance.

### 4.7 Number of buildings on a zoning lot.

Except in the case of a planned development, not more than one (1) principal detached residential building shall be located on a residential zoning lot, nor shall a principal detached residential building be located on the same zoning lot with any other principal building.

### 4.8 Rezoning of public and semipublic areas.

An area indicated on the zoning map as a public park, recreation area, public school site, cemetery, or other similar open space, shall not be used for any other purpose than that designated; and when the use of the area is discontinued, it shall automatically be zoned to the most restricted adjoining district until appropriate zoning is authorized by the city council within three (3) months after the date of application filed for rezoning.

### 4.9 Accessory buildings.

*Location.* When a side yard is required, no part of an accessory building shall be located closer than three (3) feet to the side lot line along such side yard. When a rear yard is required, no part of an accessory building shall be located closer than three (3) feet to the rear lot line or to those portions of the side lot lines abutting such required rear yard, except where there is an accessory building with doors opening on to an alley such building shall not be located closer than five (5) feet to the rear lot line. In a residential district, no detached accessory building shall be closer than ten (10) feet to the principal building.

*Time of construction.* No accessory building or structure shall be constructed on any lot prior to the start of construction of the principal building to which it is accessory.

*Height of accessory buildings in required rear yards.* No accessory building or portion thereof located in a required rear yard shall exceed thirteen (13) feet in height.

*On reversed corner lots.* On a reversed corner lot in a residential district and with fifteen (15) feet of an

adjacent property to the rear in a residential district, no accessory building or portion thereof located in a required rear yard shall be closer to the side lot line abutting the street than a distance equal to sixty (60) percent of the least depth which would be required hereunder for the front yard on such adjacent property to the rear. Further, in the above instance, no such accessory building shall be located within five (5) feet of any part of a rear lot line which coincides with a side lot line or portion thereof of property in a residential district.

*4.10 Performance standards.*

The performance standards for the M-1 manufacturing district shall also apply to all residential, business and office research districts.

*4.11 Existing special uses.*

Where a use is classified as a special use and exists as a permitted use at the date of the adoption of the ordinance, it shall be considered a legal use, without further action of the city council, the zoning administrator or the board of appeals.

*4.12 Uses not specifically permitted in districts.*

When a use is not specifically listed in the sections devoted to permitted uses, it shall be assumed that such uses are hereby expressly prohibited unless by application and authorization as provided for under Special Uses, it is determined that said use is similar to and not more objectionable than uses listed. Such uses may then be permitted.

*4.13 Satellite receiving antenna.*

An accessory structure whose purpose is to receive communication or other signals from orbiting satellites or other extraterrestrial sources, and which consist of three (3) main components: the antenna itself (often called a dish); a lot-noise amplifier (LNA) and a receiver. The antenna and the LNA are located outdoors and are connected by coaxial cable to the receiver, which is placed indoors. The height of the antenna shall be measured vertically from the highest point of the signal-receiving apparatus, when positioned for operation, to the bottom of the base which supports the antenna.

*4.14 Satellite receiving antenna construction.*

(a) Before proceeding with the construction, alteration or repair of a satellite receiving antenna in the city, a permit for the same shall be first obtained by the owner or his agent from the City of Calumet City.

(b) All satellite receiving antennas shall comply with BOCA and FCC requirements.

(c) The construction and installation of all satellite receiving antennas shall conform to applicable city building code and electrical code regulations and requirements.

(d) Electro-magnetic interference. Each satellite receiving antenna shall be filtered and/or shielded so as to prevent the emission of radio-frequency energy that would cause any harmful interference with the radio and/or television broadcasting or reception on adjacent properties. In the event that harmful interference is caused subsequent to the granting of a building permit, the owner of the dish antenna shall promptly take steps to eliminate the harmful interference in accordance with all applicable regulations.

(e) Each satellite receiving antenna shall serve only the building located upon the zoning lot on which said satellite receiving antenna is constructed pursuant to this section.

(f) Satellite receiving antennas shall be constructed of noncombustible and corrosive-resistant material.

(g) Satellite receiving antennas shall be constructed and erected in a secure and a wind-resistant manner. The antenna shall be wind-resistant enough to withstand eighty-five (85) mile per hour winds normally and seventy (70) mile per hour winds when combined with ice, without sustaining damage.

(h) The satellite receiving antenna must be adequately grounded for protection against a direct strike of lightning.

(i)   Roof-mounted satellites shall have a certification from a structural engineer regarding the location stating that the structure is capable of handling the antenna and that said antenna does not provide any additional stress which the structure cannot bear.

*4.15 Residential Districts.*

A satellite receiving antenna may be located in any residential district provided that the same:

(a)   Shall be neutral in color and bear no advertising emblem or information other than the name of the manufacturer in letters not to exceed two (2) inches in height;

(b)   Shall be compatible with the appearance and character of the neighborhood;

(c)   Shall be limited to one (1) per lot;

(d)   Shall not exceed eight (8) feet in diameter;

(e)   Shall not be roof-mounted;

(f)   Shall be located only in a rear yard a minimum of ten (10) feet from any lot line;

(g)   Maximum height of device not to exceed ten (10) feet;

(h)   Permit fee and inspection required;

(i)   Drawings submitted to building commissioner for approval before installation;

(j)   Letter of consent from owner of property.

*4.16 Business districts.*

A satellite receiving antenna may be located in any business district provided that the same:

(a)   Shall be neutral in color and bear no advertising emblem or information other than the name of the manufacturer in letters not to exceed two (2) inches in height;

(b)   Shall be compatible with the appearance of the neighborhood;

(c)   Shall be limited to one (1) per lot or per building, whichever is less;

(d)   Shall not exceed twelve (12) feet in diameter;

(e)   If roof-mounted, shall be to a maximum height of thirty (30) feet. Additional requirements shall apply to roof-mounted satellite receiving antennas;

(f)   If not located directly on the ground, shall not be constructed any closer to the ground than ten (10) feet and shall not be visible between ground level and ten (10) feet above ground level from any street adjoining the lot;

(g)   Ground-mounted; not to be located between a building and front lot line. The full impact of satellite receiving antennas shall be reduced by screening. If the subject parcel adjoins a residential district, all antennas shall be placed a minimum of ten (10) feet away from any lot line and effectively screened by a fence, wall or dense screening hedge to a maximum height of six (6) feet. Said fence, wall or hedge shall be located on or near the lot line bounding the residential district and shall otherwise comply with the applicable zoning requirements governing its location, shall be located only in a rear yard a minimum of ten (10) feet from any lot line;

(h)   Permit fee and inspection required;

(i)   Drawings submitted to building commissioner for approval before installation;

(j)   Letter of consent from owner of property.

*4.17 Industrial and office research districts.*

A satellite receiving antenna may be located in any industrial district provided that the same:

(a)   Shall be neutral in color and bear no advertising emblem or information other than the name of the

manufacturer in letters not to exceed two (2) inches in height;

(b)   Shall be compatible with the appearance of the neighborhood;

(c)   Shall be limited to one (1) per lot or per building, whichever is less;

(d)   Shall not exceed twelve (12) feet in diameter;

(e)   If roof-mounted, shall be to a maximum height of thirty (30) feet. Additional requirements shall apply to roof-mounted satellite receiving antennas;

(f)   Shall not be visible between ground level and ten (10) feet above ground level from any street adjoining the lot;

(g)   Ground-mounted; not to be located between a building and a front lot line. The full impact of satellite receiving antennas shall be reduced by screening. If the subject parcel adjoins a residential district, all antennas shall be placed a minimum of ten (10) feet from any lot line and effectively screened by a fence, wall, or dense screening hedge to a maximum height of six (6) feet. Said fence, wall or hedge shall be located on or near the lot line bounding the residential district and shall otherwise comply with the applicable zoning requirements governing its location, shall be located in a rear yard a minimum of ten (10) feet from any lot line;

(h)   Permit fee and inspection required;

(i)   Drawings submitted to building commissioner for approval before installation;

(j)   Letter of consent from owner of property.

*4.18 Application.*

Any person desiring to erect a satellite receiving antenna shall apply in writing to the city clerk's office upon a form furnished by said office. A permit fee of twenty-five dollars ($25.00) shall be paid.

(Code 1980, App. B, § IV; Ord. No. 84-15, § 1, 4-26-1984; Ord. No. 85-32, § 1, 9-26-1985; Ord. No. 89-5, § 1, 1-26-1989; Ord. No. 96-30, § 1(Exh. A), 5-23-1996; Ord. No. 99-33, § 1, 6-10-1999)

## Sec. V. Nonconforming buildings and uses.

*5.1 Continuance of use.*

Any lawfully established use of a building or land, on the effective date of the ordinance or of amendments thereto, that does not conform to the use of regulations for the district in which it is located, shall be deemed to be a legal nonconforming use and may be continued, except as otherwise provided herein.

Any legal, nonconforming building or structure may be continued in use provided there is no physical change other than necessary maintenance and repair, as otherwise permitted herein.

Any building for which a permit has been lawfully granted prior to the effective date of the ordinance, or of amendments thereto, may be completed in accordance with the approved plans; provided construction is started within ninety (90) days and diligently prosecuted to completion. Such building shall thereafter be deemed a lawfully established building.

*5.2 Discontinuance of use.*

Whenever any part of a building, structure or land occupied by a nonconforming use is changed to or replaced by a use conforming to the provisions of the ordinance, such premises shall not thereafter be used or occupied by a nonconforming use, even though the building may have been originally designed and constructed for the prior nonconforming use.

Whenever a nonconforming use of a building or structure or part thereof has been discontinued for a period of twelve (12) consecutive months, or whenever there is evident a clear intent on the part of the owner to abandon a nonconforming use, such use shall not after being discontinued or abandoned, be reestablished, and the use of the premises thereafter shall be in conformity with the regulations of the district.

Where no enclosed building is involved, discontinuance of a nonconforming use for a period of twelve (12) months shall constitute abandonment and shall not thereafter be used in a nonconforming manner.

A nonconforming use not authorized by the provisions of the zoning ordinance in effect at the time the amendatory ordinance becomes effective, shall be discontinued and not reestablished except when the provisions of the amendatory ordinance find the use to be conforming to the district in which it is then located.

*5.3 Change of nonconforming use.*

The nonconforming use of any building, structure or portion thereof, which is designed or intended for a use not permitted in the district in which it is located, may be changed to another nonconforming use thereof but only if such other use is permitted by a special use permit as authorized in the administration section.

A nonconforming structure that was erected, converted or structurally altered in violation of the provisions of the ordinance which this ordinance amends shall not be validated by the adoption of this ordinance, and such violations or any violations of this ordinance may be ordered removed or corrected by the proper officials at any time.

*5.4 Repairs and alterations.*

Normal maintenance of a building or other structure containing a nonconforming use is permitted, including necessary nonstructural repairs and incidental alterations which do not extend or intensify the nonconforming use.

No structural alteration shall be made in a building or other structure containing a nonconforming use, except in the following situations:

(a) When the alteration is required by law.

(b) When the alteration will actually result in eliminating the nonconforming use.

(c) When a building in a residential district containing residential nonconforming uses may be altered in any way to improve livability, provided no structural alteration shall be made which would increase the number of dwelling units or the bulk of the building.

*5.5 Damage and destruction.*

If a building or other structure containing a nonconforming use is damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value at that time, the building or other structure can be rebuilt or used thereafter only for a conforming use and in compliance with the provisions of the district in which it is located. In the event the damage or destruction is less than fifty (50) percent of its replacement value, based upon prevailing costs, the building may then be restored to its original condition and the occupancy or use of such building may be continued which existed at the time of such partial destruction.

In either event, restoration or repair of the building or other structure must be started within a period of six (6) months from the date of damage or destruction, and diligently prosecuted to completion.

*5.6 Additions and enlargements.*

A nonconforming building may be enlarged or extended only if the entire building is hereafter devoted to a conforming use, and is made to conform to all the regulations of the district in which it is located.

No building partially occupied by a nonconforming use shall be altered in such a way as to permit the enlargement or expansion of the space occupied by such nonconforming use.

No nonconforming use may be enlarged or extended in such a way as to occupy any required useable open space, or any land beyond the boundaries of the zoning lot as it existing on the effective date of the ordinance, or to displace any conforming use in the same building or on the same parcel.

A building or structure which in nonconforming with respect to yards, floor area ratio, or any other element of bulk regulated herein shall not be altered or expanded in any manner which would increase the degree or extent of its nonconformity with respect to the bulk regulations for the district in which it is located.

*5.7 Exempted buildings, structures and uses.*

Wherever a lawfully existing building or other structure otherwise conforms to the use regulations herein but is nonconforming only in the particular manner hereinafter specified, the building and use thereof shall be exempt from the requirements of sections 5.4 and 5.5.

In any residential district where a dwelling is nonconforming only as to the number of dwelling units it contains, provided no such building shall be altered in any way so as to increase the number of dwelling units therein.

In any residential district, where a use permitted in the B-1 district occupies ground floor space within a multiple-family dwelling located on a corner lot.

In any business or manufacturing district, where the use is less distant from a residential district than that specified in the regulations for the district in which it is located.

In any district, where an established building, structure or use is nonconforming with respect to the standards prescribed herein for any of the following:

      (a)   Floor area ratio;

      (b)   Yards, front, side, rear, or transitional;

      (c)   Off-street parking or loading;

      (d)   Building height;

      (e)   Gross floor area.

*5.8 Conversion to special use.*

Any nonconforming use may be made a special use by the granting of a special permit, as authorized in the administrative section.

(Code 1980, App. B, § V; Ord. No. 94-23, § 1, 5-26-1994)


## Sec. VI. Zoning districts and zoning district map.

*6.1 Classes of districts.*

In order to classify, regulate and restrict the location of trades, industries and the location of buildings designed for specified uses, to regulate and limit the height and bulk of buildings hereafter erected or structurally altered, to regulate and limit the intensity of the use of the lot areas, and to regulate and determine the areas of yards, courts and other open spaces within and surrounding such buildings, the City of Calumet City, Illinois, is hereby divided into ten (10) classes of districts:

    R-1 One-family residence district

    R-2 Two-family and three-family residence district

    R-3 Multiple-family residence district

    B Commercial business district

    B-2 Service business commercial district

    B-3 Community commercial business district

    M-1 Light industrial district

    M-2 Heavy industrial district

    OR Office research district

        Public land use

and the location and boundaries of which are shown on the map and notations thereon titled "The Zoning Map of Calumet City," which said map is on file in the office of the building commission of Calumet City, and together with all notations, references, and other information shown thereon, are a part of this ordinance and have the same force and

effect as if said map and all the notations, references and other information thereon were all fully set forth and described herein.

Except as hereinafter provided:

(1)  No building shall hereafter be erected or altered, nor shall any building or premises be used for any purpose other than is permitted in the district in which such building or premises is located.

(2)  No building shall be erected or altered to exceed in height the limit herein established for the district in which such building is located.

(3)  No building shall be erected or altered except in conformity with the area regulations of the district in which the building is located.

(4)  The minimum yards and other open space, including lot area required by the ordinance for each and every building existing at the time of passage of this ordinance, or for any building hereafter erected shall not be encroached upon or considered as yard or open space requirements for any other building.

*6.2 District boundaries.*

When uncertainty exists with respect to the boundaries of the various districts as shown on the zoning map, the following rules shall apply:

District boundary lines are either the center lines of railroads, highways, streets, alleys or easements, or the boundary lines of sections, quartersections, divisions of sections, tracts or lots, or such lines extended otherwise indicated.

In areas not subdivided into lots and blocks, wherever a district is indicated as a strip adjacent to and paralleling a street or highway, the depth of such strips shall be in accordance with the dimensions shown on the map from section, quarter-section, or division lines, or center lines of streets, highways or railroad rights-of-way unless otherwise indicated.

Where a lot held in one (1) ownership and of record on the effective date of the ordinance is divided by a district boundary line, the entire lot shall be construed to be within the less restricted district, provided that this construction shall not apply if it increases the less restricted frontage of the lot by more than twenty-five (25) feet.

*6.3 Zoning of streets, alleys, public ways, waterways and railroad right-of-way.*

All streets, alleys, public ways, waterways and railroad rights-of-way, not otherwise specifically designated, shall be deemed to be in the same zone as the property immediately abutting on such alleys, streets, public ways and railroad rights-of-way or waterways. Where the center line of a street, alley, public way, waterway or a railroad right-of-way serves as a district boundary, the zoning of such areas, unless otherwise specifically designated, shall be deemed to be the same as that of the abutting property up to such center line.

*6.4 Zoning of annexed land.*

All property annexed to the City of Calumet City shall be considered automatically zoned as R-1, unless concurrently with the annexation thereof there shall be adopted after statutory hearing, a zoning ordinance zoning the property for such purposes as is prescribed by the amendatory ordinance. Such amendatory ordinance may be adopted as prescribed by statute after annexing as well as concurrently with annexation.

(Code 1980, App. B, § VI; Ord. No. 96-30, § 1(Exh. A), 5-23-1996)

## Sec. VII. Residence districts.

*7.1 R-1 one-family residence district.*

*Permitted uses.*  The following uses are permitted:

One-family detached dwellings and permitted accessory uses.

Parks, forest preserves and recreational areas, when publicly owned and operated.

Home occupations.

Temporary buildings for construction purposes for a period not to exceed the completion date of such construction.

Signs, subject to the provisions of Section XI.

Schools, public, denominational-elementary and high, including playgrounds and athletic fields auxiliary thereto.

Accessory uses, including off-street parking facilities in accordance with the provisions of Section XII.

Colleges and universities, including dormitories, fraternities, sororities, and other accessory buildings necessary for operation, but not including business colleges or trade schools when operated for profit.

Rest homes, nursing homes, hospitals and sanitariums, for human beings only.

Institutions for the aged and for children.

Public service uses:

> Municipal administration buildings;
>
> Filtration plant, pumping station, water reservoir;
>
> Sewage treatment plant;
>
> Police and fire stations;
>
> Public libraries;
>
> Telephone exchange;
>
> Electric substations;
>
> Other similar public service uses.

Radio and television towers, commercial.

Schools, day or nursery, public or private.

Planned developments, under single ownership or control, in which incidental business or recreational facilities for the convenience of the occupants may be furnished, provided the property proposed for development shall have a gross area of at least twenty (20) acres. For such developments, the city council may vary the regulations herein, provided such variations are consistent with the general purpose and intent of the ordinance and will result in better site planning and thus be of greater benefit bothto the occupants of the development and to the community.

Cemeteries, including crematories and mausoleums in conjunction therewith.

Off-street open parking area, provided there is a need for this facility in the interest of public necessity and convenience and that no appropriate site is available in nearby business or manufacturing districts.

Community residences. The sponsoring agency must obtain an administrative occupancy permit prior to establishing a community residence. No dwelling unit shall be occupied as a community residence until a certificate of occupancy has been issued by the building commissioner. No certificate of occupancy shall be issued for a community residence unless:

> (1) The community residence is located at least one thousand (1,000) feet from any existing community residence, as measured from lot line to lot line; and

> (2) The applicant demonstrates that it has either obtained or is eligible for state or local licensing or certification to operate the proposed community residence, or that the proposed community residence is licensed or certified or eligible for licensing or certification.

The building commissioner may revoke a certificate of occupancy for a community residence if its license or certification, or the operator's license or certification to operate community residences, is revoked. A certificate of occupancy is not transferable to another operator or to another location.

*Off-street automobile parking facilities.* Automobile parking facilities shall be provided as required or permitted in section 10.4.

*Height of buildings:*

One-family detached dwellings: Thirty (30) feet,

Church: Seventy-five (75) feet for towers or steeples, but not more than forty-five (45) feet for the main structure.

*Lot size.*

(1)  Every one-family detached dwelling hereafter erected shall be located on a lot having an area of not less than five thousand seven hundred fifty (5,750) square feet, and a width at the established building line of not less than fifty (50) feet.

(2)  All nonresidential principal uses of buildings as permitted herein shall be located on a tract of land having an area of not less than seven thousand five hundred (7,500) square feet with a minimum width of seventy-five (75) feet at the building line.

(3)  Minimum lot sizes for special uses shall be prescribed and conditions stipulated at the time a special use permit is authorized, but in no case shall any such lot have an area less than seven thousand five hundred (7,500) square feet and a width of seventy-five (75) feet at the established building line.

*Yard areas.* No building shall be erected or enlarged unless the following yards are provided and maintained in connection with such building, structure or enlargement:

(1)  Front yard. A front yard of not less than twenty-five (25) feet.

(2)  Side yards. A side yard on each side of the principal building of not less than ten (10) percent of the lot width with a minimum of three (3) feet, except where a side yard adjoins a street, the minimum width on the street side shall be increased to ten (10) feet. A principal use which does not provide a vehicular front access drive shall have a side yard on one (1) side of not less than ten (10) feet in width.

(3)  Rear yard. A rear yard not less than forty (40) feet.

*Maximum floor area ratio.* The maximum floor area ratios in this district shall be as follows:

One-family residences: 0.5.

Permitted nonresidential uses: 1.0.

Special uses: To be specified as part of the special use permit but shall not exceed 2.0.

*Dwelling standards:*

(1)  Every single family detached dwelling of one (1) story hereafter erected in any R-1 district shall contain an area of not less than one thousand three hundred fifty (1,350) square feet of habitable space measured from exterior wall to exterior wall as described in the adopted BOCA codes of Calumet City.

(2)  Every single family detached dwelling of more than one (1) story hereafter erected in any R-1 district shall contain an area of not less than one thousand six hundred fifty (1,650) square feet of habitable space measured from exterior wall to exterior wall as described in the adopted BOCA codes of Calumet City.

(3)  Architectural appearance: In order to enhance the values of property throughout the city and to protect and to stabilize the general appearance of residential structures, landscapes and open areas, the following appearance codes shall be included in the requirements for all new residential construction:

a.  The project shall enhance both the site on which it is located and the sites surrounding the project.

b.  No project shall adversely affect the current market values of any existing property in the neighborhood.

c.  No project shall adversely affect the environment.

d.   Architectural design is not restricted. Evaluation by the appearance of a project shall be based on quality of its design and relationship to the surroundings.

e.   Buildings shall have good scale and be in harmony with existing permanent neighboring development.

f.   Materials shall have good architectural character and should be selected for harmony of the building with adjoining buildings.

g.   No more than three (3) different types of exterior wall materials shall be used. Materials shall be suitable to the type of building and design for which they are used.

h.   All sides of the structure shall receive design consideration. A facade unrelated to the rest of the building is not in keeping with acceptable design.

i.   Monotony of design in any construction shall be avoided. Variation of detail, form and siding shall be used to provide visual interest.

(4)   Relationship of building to site:

a.   The site shall be planned to accomplish a desirable aesthetic transition with the streetscape and to provide for adequate off street parking.

b.   The site in R-1 districts shall include the off street parking in the form of a paved drive meeting the standard requirements.

c.   The off street parking shall not remove the acceptable open land space requirement established.

(5)   Landscape and site treatment:

a.   Where natural or existing topographic patterns contribute to the beauty and utility of the site, they shall be preserved as well as developed.

b.   Each site shall be addressed by a landscape plan which shall include the use of sod (front), sod/seeding (rear and side) or a decorative means to cover exposed soil of all open spaces in order to promote drainage, prevent soil erosion and for dust abatement.

c.   Each site will include the planting of at least one (1) tree in order to promote energy conservation, to enhance the environment, for sound absorption and to contribute to good appearance.

*Lot coverage.* No building with its accessory building shall occupy in excess of fifty (50) percent of an interior lot nor in excess of sixty (60) percent of a corner lot.

*Special uses.* The following uses may be allowed if their site locations and proposed development plans are first approved as provided in the Administrative Section:

Churches, rectories, seminaries, convents, monasteries and similar religious institutions, including dormitories and other accessory uses required for operation.

Community residences that fail to meet all requirements for an administrative occupancy permit, excluding community residences denied a required local or state license.


*7.2 R-2 two-family and three-family residence.*

*Permitted uses.* The following uses are permitted:

Any use permitted in the R-1 one-family residence district.

Two-family dwellings.

Three-family dwellings.

*Special uses.* Any use which may be allowed as a special use in the R-1 one-family residence district, in accordance with the provisions of the administrative section.

*Automobile parking facilities.* Automobile parking facilities shall be provided as required or permitted in section

10.4.

*Height of buildings.* Same as R-1.

*Lot size.*

(1)  For dwellings hereafter erected, the same regulations shall apply as are required for one-family dwellings in the R-1 one-family residence district.

(2)  Every two-family dwelling hereafter erected shall be on a zoning lot having a minimum area of not less than six thousand (6,000) square feet and a minimum width of not less than fifty (50) feet at the building line, provided that where a lot has less width than herein required and was recorded under separate ownership from adjoining lots prior to the date of adoption of this ordinance, such lot may be occupied by a two-family dwelling, but in no case shall the lot area per dwelling unit be less than three thousand (3,000) square feet.

(3)  Every three-family dwelling hereafter erected shall be on a zoning lot having a minimum area of not less than seven thousand five hundred (7,500) square feet and a minimum width of not less than seventy-five (75) feet at the building line, provided that where a lot has less width than herein required and was recorded under separate ownership adjoining lots prior to the date of adoption of this ordinance, such lot may be occupied by a three-family dwelling, but in no case shall the lot area per dwelling unit be less than two thousand five hundred (2,500) square feet.

(4)  All nonresidential principal uses of buildings as permitted herein shall be located on a tract of land having an area of not less than seven thousand five hundred (7,500) square feet with a minimum width of seventy-five (75) feet at the established building line.

(5)  Minimum lot sizes for special uses shall be prescribed and conditions stipulated at the time a special use permit is authorized, but in no case shall any such lot have an area less than seven thousand five hundred (7,500) square feet and a width of seventy-five (75) feet at the established building line.

*Yard areas.* No building shall be erected or enlarged unless the following yards are provided and maintained:

(1)  Front yard. A front yard of not less than twenty-five (25) feet shall be provided and maintained.

(2)  Side yards. A side yard on each side of the principal building of not less than ten (10) percent of the lot width, except where a side yard adjoins a street, the minimum width on the street side shall be not less than ten (10) feet. In no case shall a side yard be less than five (5) feet.

(3)  Rear yard. A rear yard of not less than forty (40) feet.

*Dwelling standards.* One-family and two-family dwellings hereafter erected in the R-2 residence district shall conform to the floor areas as required for one-family dwellings in the R-1 residence district for each dwelling unit.

*Lot coverage.* Same as R-1. Three-family dwellings hereafter erected shall have a total ground floor area of not less than one thousand four hundred (1,400) square feet, measured as provided in R-1.

*Dwelling standards.*

(1)  For one-family dwellings hereafter erected in this R-4 general residence district, the same floor area shall be required as in the R-2 one-family residence district.

(2)  For two-family dwelling structures hereafter erected, the same floor areas shall be required as in the R-3 two-family residence district.


## 7.3 R-3 multiple-family residence district.

*Permitted uses.* No building or land shall be used and no building shall hereafter be erected, structurally altered, or enlarged unless otherwise provided herein except for the following uses:

Multiple-family dwellings and apartments.

One-family row dwellings (party) walls.

Apartment hotels.

Hotels in which incidental business may be conducted only as a service for the persons living therein,

provided there is no entrance to such places of business except from the inside of the building and provided that no sign advertising such business shall be visible from outside the business.

*Special uses.* The following uses may be allowed if their site locations and proposed development plans are first approved as provided in the administrative section:

Boarding-houses and lodging houses.

Fraternity or sorority houses.

Hospitals (but not including animal hospitals), convalescent homes, rest homes and nursing homes.

Medical and dental offices and group medical centers.

Philanthropic or eleemosynary uses or institutions.

Private clubs or lodges, except those the chief activity of which is a service normally carried on as a business.

*Automobile parking and loading facilities.* Automobile parking and loading facilities shall be provided as required or permitted in section 10.4.

*Lot area per dwelling.*

(1) For every building hereafter erected or structurally altered containing four (4) or more units, the following minimum lot areas per dwelling unit shall be provided:

Apartment with three (3) or more bedrooms: Two thousand (2,000) square feet.

Apartment with one (1) or two (2) bedrooms: One thousand five hundred (1,500) square feet.

Efficiency apartments: Eight hundred (800) square feet.

When open space is provided and maintained on the zoning lot in excess of that required by the regulations in this R-5 district, the number of dwelling units may be increased in accordance with the following schedule: For each one thousand (1,000) square feet of lot area devoted to open space one (1) additional one (1) bedroom or efficiency dwelling unit shall be permitted; for each one thousand five hundred (1,500) square feet of open space one (1), two (2) bedroom dwelling unit; for each two thousand (2,000) square feet of open space one (1) dwelling unit of three (3) or more bedrooms. When such open space is provided the maximum floor area ratio may be increased by an amount necessary to accommodate the added dwelling units and necessary off-street parking when such parking is provided within the principal building.

No existing use shall be converted in such a way as to conflict with or further conflict with, the foregoing requirements.

(2) Further, no residential building shall be established hereafter on a lot which is less than six thousand (6,000) square feet in area and fifty (50) feet in width at the established building line.

(3) For nonresidential principal uses permitted in this district, the lot area shall be not less than ten thousand (10,000) square feet with a width at the established building line of not less than seventy-five (75) feet.

(4) Minimum lot sizes for special uses shall be prescribed by the zoning board of appeals, with the approval of the city council, at the time a special use permit is authorized, but in no case shall any such lot size be less than ten thousand (10,000) square feet in area nor less than seventy-five (75) feet in width.

*Yard areas.* No building shall be erected or enlarged unless the following yards are provided and maintained:

(1) Front yard. For each building on a zoning lot, a front yard shall be provided of not less than twenty-five (25) feet. For buildings exceeding twenty-five (25) feet in height, the minimum front yard shall be increased by one (1) foot for each two (2) feet or fraction thereof by which the building height exceeds twenty-five (25) feet, but in no case shall a front yard or more than forty (40) feet be required. Required front yards shall be unobstructed from ground level to sky, except as otherwise provided inSection IV.

(2) Side yards. For each building on a zoning lot, side yards shall be provided as follows:

a. For multiple-family dwellings, the side yard on each side of each residential building shall be

a minimum of five (5) feet in width plus an additional two (2) feet in width for each additional story above two (2) stories in height. On corner lots there shall be maintained a side yard of not less than ten (10) feet on the side adjacent to the street which intersects the street upon which the building maintains frontage, and in the case of a reversed corner lot there shall be maintained a setback from the side street of not less than fifty (50) percent of the front yard required on the lots in the rear of such corner lots, but such setback need not exceed fifteen (15) feet. No accessory building on said reversed corner lot shall project beyond the front yard required on the adjacent lot to the rear, nor be located nearer than five (5) feet to the side lot line of said adjacent lots.

b.   For lots improved with a nonresidential building, there shall be a side yard of not less than twelve (12) feet on each side of the main structure and a combined total of side yards of not less than thirty (30) feet.

c.   For special uses side yards shall be established in the ordinance permitting the special use but in no case shall the side yards be less than that required for nonresidential use in "b" above.

(3)   Rear yard. There shall be a rear yard of not less than thirty (30) feet.

*Lot coverage.*  No building with its accessory building shall occupy in excess of fifty (50) percent of the area of an interior lot not in excess of sixty (60) percent of the area of a corner lot.

(Code 1980, App. B, § VII; Ord. No. 85-37, §§ 1, 2, 10-24-1985; Ord. No. 90-36, § 1, 7-26-1990; Ord. No. 91-7, §§ 3, 4, 3-14-1991; Ord. No. 93-11, § 1, 4-8-1993)

## Sec. VIII. Commercial business district.

*8.1. B Commercial business district.*

*Permitted uses.*  The following is a list of uses permitted in the commercial business district, provided they are operated entirely within a building, except for off-street parking or loading facilities:

Air conditioning and heating sales and service.

Antique shops.

Art, dancing, vocational, professional and business schools.

Art galleries and studios.

Art needle work and hand weaving.

Auto and truck accessories store.

Automobile laundries.

Automobile sales, including accessories.

Banks and financial institutions.

Bakery shops, including the baking and processing of food products when prepared for retail use on the premises only.

Barber shops and beauty parlors.

Book and stationery stores.

Candy and ice cream shops.

Camera, photographic supply, developing and processing shops for retail sales.

Cameras and other photographic equipment and supplies.

Carpet, rug and linoleum stores.

China and glassware stores.

Christmas tree sales.

Clothing stores.

Coin and philatelic stores.

Collection agency.

Currency exchanges.

Custom dressmaking, millinery or tailoring when conducted for retail sale on the premises only.

Dentures.

Department stores.

Drug stores.

Electrical and plumbing parts and supplies distributor (wholesale).

Electrical appliance stores and repairs, but not including appliance assembly or manufacturing.

Electrical television and radio sales (wholesale).

Employment agency.

Festivals (with council approval), per day.

Florist shops and conservatories for retail trade on the premises only.

Funeral parlor or mortuary.

Furniture stores.

Furrier, when conducted for retail trade on the premises only.

Gift shops.

Grocery stores.

Hardware stores.

Haberdasheries.

Health clubs.

Hobby and craft stores.

Interior decorating shops, including upholstering and making of draperies, slip covers and other similar articles, when conducted as a part of the retail operations and secondary to the main use.

Jewelry and watch repair shops.

Key and/or bicycle repair shop.

Laundries, automatic, self-service types, or hand.

Leather goods and luggage stores.

Locksmith.

Millinery shops.

Musical instrument sales and repair, retail trade only.

Nursery for children.

Office supply, equipment and furniture store.

Offices, business and professional, including medical clinics.

Off-street parking and loading facilities, as permitted or required in accordance with the provisions of section.

Oil lubricating facilities for motor vehicles.

Optical sales, glasses, frames and lenses.

Orthopedic and medical appliance store, but not including the assembly or manufacture of such articles.

Photography studios, including the development of film and pictures when done as a part of the retail business on the premises.

Picture framing, when conducted for retail trade on the premises only.

Plumbing and heating showrooms and shops.

Printing and newspaper publishing, including engraving and photo-engraving.

Private clubs and lodges of fraternal and religious organizations when not operated for profit.

Private police protection and/or detective agencies.

Public utility collection offices.

Restaurants.

Retail tire and accessories.

Savings and loan associations.

Sewing machine sales and service.

Shoe and hat stores, and repairing when done as a part of the retail business.

Signs, as permitted and regulated in section.

Sporting goods stores.

Telegraph offices.

Telephone and business answering service.

Television parts and supplies distributors.

Theater (indoor) within zoning lots of fifty (50) acres or more.

Tobacco stores.

Toy stores.

Trailer sales.

Travel bureau and transportation ticket offices.

*Special uses.* Retail businesses not specifically listed above when found to have economic compatibility with established uses on adjoining property shall meet the requirements of section 12.7.

*Conditions of use.* All uses permitted in this district shall be retail establishments dealing directly with consumers and shall be subject to the following conditions:

The sale of food stuffs or articles intended for human consumption shall be conducted wholly within an enclosed building equipped with adequate sanitary facilities.

There shall be no manufacture, processing or treatment of products other than those which are clearly incidental and essential to the retail business conducted on the same premises.

Such uses, operations or products shall not be objectionable due to odor, dust, smoke, noise, vibration or other similar causes.

That any exterior sign displayed shall pertain only to a use conducted within the building.

*Transitional yards.* Where a B-1 district adjoins a residential district, transitional yards shall be provided in accordance with the following regulations:

When lots in a local business district front on the street and at least eighty (80) percent of the frontage directly across the street between two (2) consecutive intersecting streets is in a residential district, the front yard regulations for the residential district shall apply to the said lots in the business district.

In a district where a side lot line coincides with a side or rear lot line of property in an adjacent residential district, a yard shall be provided along with side lot line. Such yard shall be equal in dimension to the minimum side yard which would be required under this ordinance for a residential use on the adjacent property in the residence district.

In a local business district where a rear lot line coincides with a rear lot line of property in an adjacent residential district, a yard shall be provided along such rear lot line. Such yard shall be twenty (20) feet in depth.

In a business district, where the extension of a front or side lot line coincides with the front lot line of an adjacent lot located in a residential district, a yard equal in depth to the minimum front yard required by this ordinance on such adjacent lot in the residential district shall be provided along such front or side lot line for a distance of at least twenty-five (25) feet, including the width of any intervening alley, from such lot in the residential district.

Transitional yards shall be unobstructed from lowest level to sky except as allowed in section.

*Maximum floor area and coverage.* The floor area shall not exceed more than sixty (60) percent of a zoning lot shall be covered by a building or buildings.

*Off-street parking and loading.* Off-street parking and loading shall be as permitted or required in section.

*Rear yard.* There shall be a rear yard having a depth of not less than ten (10) feet.

*8.2 B-2 service commercial business district.*

(1) *Description and intent of district.* The B-2 district is intended to provide a mix of retail and general business uses within the city. The type of general business uses permitted includes those uses deemed compatible with retail uses. The district is intended for application on smaller development sites.

(2) *Permitted uses.* The following uses are permitted uses in the B-2 district:

Air conditioning, plumbing and heating sales and service.

Auto and truck parts and accessory stores (new parts sales).

Appliance store.

Banks and financial institutions.

Banquet hall.

Bakery (on-site sales only).

Barbershop and hair salon.

Books and periodicals.

Bicycle sales and repair.

Camera and photo equipment store.

Catering service.

Car care center (brakes, muffler, lube, tire, detailing and accessories in a completely enclosed building).

Christmas tree sales.

Clinic.

Currency exchanges.

Dry cleaners.

Electrical and plumbing parts and supplies distribution.

Employment agency.

Exterminator and pest control.

Florists shops.

Garden supply.

Gift shop.

Hardware store.

Health and fitness club.

Heating and plumbing sales and service.

Higher education facilities and classrooms for business and professional schools.

Household electrical appliance sales and repair (excluding sales and manufacturing).

Home improvement center.

Laundromat, automatic coin operated.

Locksmith.

Mortuaries and funeral parlors.

Music or dance studio.

Office, service and business.

Office supply store.

Orthopedic and medical supply store.

Photocopy and retail printing services.

Photography studio.

Plumbing showroom and shop.

Physical therapy facilities, medical.

Post office and express mail agencies.

Printing and publishing services.

Radio and television stations and studios.

Restaurant.

Savings and loan.

Sewing machine sales and repair.

Shoe repair.

Small animal grooming establishment.

Taxi service company.

Taxi stand.

Taxidermists.

Telegraph office.

Television sales and service.

Truck and trailer rental agency.

Accessory uses.

(3) *Special uses.* The following special uses may be authorized in conformance with subsection 12.7 of this ordinance:

Automobile laundry.

Bus station.

Child care center and preschool.

Churches.

Cultural institutions including art galleries and museums.

Drive-in and drive-through facilities.

Gasoline fuel station and food mart.

Institutional uses.

Kennel (wholly enclosed).

Parks and recreation facilities.

Planned development.

Public utilities, facilities and services.

Self-service storage facilities.

Veterinary hospital.

Accessory uses.

(4)  *Lot size requirements.*

(a)  The lot area of each zoning lot shall not be less than twelve thousand (12,000) square feet.

(b)  The minimum lot width of each zoning lot shall not be less than seventy-five (75) feet.

(5)  *Yard requirements.*  The following yards shall be maintained in the B-2 district:

TABLE INSET:

|  | Building  (1) | Parking |
|---|---|---|
| Front | 10 ft. | 6 ft. |
| Side | 5 ft. | 5 ft. |
| Rear | 5 ft.  (2) | 5 ft. |
| Transitional | 6 ft.  (2) | 6 ft. |

1  In a B-2 district where the extension of a front or side lot line coincides with the front or side lot line of an adjacent lot located in a residentially zoned district, a yard equal to the depth of the minimum front yard required by this ordinance, on such adjacent lot in the residential district, shall be provided along such front or side lot line in the B-2 district.

2  Where a zoning lot adjoins an improved alley which also lies across and adjoins residentially zoned land, the yard may be reduced to zero for the placement of the principal structure only.

(6)  *Maximum lot coverage.*  The total lot area occupied by any principal buildings and accessory buildings, together with all impervious surfaces, shall not exceed ninety (90) percent.

(7)  *Maximum floor area.*  The maximum allowable floor area ratio in the B-2 district is .8.

(8)  *Maximum building height.*  No building or structure shall be erected or altered to exceed a height of thirty-five (35) feet.

(9)  *District standards.*

(a)  All on-site utility lines, but excluding high tension power lines, shall be located underground.

(b)  At the discretion of the approving authority as part of any site plan approval, blanket cross-easements for vehicle access may be obtained generally parallel to the interior of front property lines. These easements are intended to provide for effective motor vehicle access, minimizing access to public streets. Easements will not be required where a frontage road system is in place or a

coordinated access system is provided through a planned development.

(c) All business, service, storage, and display of goods and services shall be conducted within a completely enclosed structure, except:

    1. Off-street parking and loading;

    2. Recreational uses;

    3. Accessory uses;

    4. Uses allowed as part of a special use permit.

(d) All development shall meet the performance standards requirements of subsection 9.1 M-1 light industrial district.

(10) *Related regulations and requirements.* Other pertinent regulations contained within this ordinance that shall be observed, include, but are not limited to:

(a) Section IV [XII], subsection 12.9, State Street—State Line Road Redevelopment Area site development plan review.

(b) Section IV [XII], subsection 12.10, Landscape plan approval.

(c) Section X, Off-street parking and loading.

(d) Section XI, Signs.

*8.3 B-3 community commercial business district.*

(1) *Description and intent of district.* The B-3 district is intended to serve immediate neighborhoods and the community with a range of retail goods and services. The district is intended to be smaller in overall scale, and situated at select arterial and collector street locations.

(2) *Permitted uses.* The following uses are permitted uses in the B-3 district:

Apparel.

Appliance stores.

Arts and crafts stores.

Art and office supply.

Automobile accessory store.

Bakery (on-site retail sales only).

Banks and other financial institutions.

Barbershop and hair salon.

Books and periodical store.

Brokerage office.

Carpet, rug and linoleum store.

Consumer electronics store.

Delicatessen.

Drugs and cosmetic store.

Employment agency.

Florist shop.

Food store and food mart.

Gift shop.

Grocery store.

Hardware store.

Health and fitness club.

Hobby shop.

Housewares and kitchen supply.

Interior decorating.

Jewelry store.

Laundromat, automatic, coin operated.

Locksmith shop.

Music store.

Office, service and business.

Office supply store.

Optical sales and service.

Paint and wall paper store.

Pet store.

Photocopying and retail printing services.

Picture framing shop.

Planned development.

Post office.

Restaurant.

Secretarial services.

Shopping center.

Sporting goods and bicycle shop.

Telegraph and telephone answering service.

Television sales and service.

Taxi stand.

Toy store.

Variety store.

Video and music sales and rental store.

Accessory uses.

(3)   *Special uses.* The following special uses may be authorized in conformance with subsection 12.7 of this ordinance:

Automobile laundry.

Child day care center and preschool.

Churches.

Clinics.

Cultural institutions including art galleries and museums.

Drive-in and drive-through facilities.

Gasoline fuel station and food mart.

Institutional uses.

Library.

Parks and recreation.

Planned development.

Public utilities, facilities and services.

Accessory uses.

(4) *Lot size requirements.*

(a) The lot area of each zoning lot shall not be less than twenty thousand (20,000) square feet.

(b) The minimum lot width of each zoning lot shall not be less than one hundred fifty (150) feet.

(5) *Yard requirements.* The following yards shall be maintained in the B-3 district:

TABLE INSET:

|  | Building (1) | Parking |
|---|---|---|
| Front | 10 ft. | 6 ft. |
| Side | 5 ft. | 5 ft. |
| Rear | 5 ft. | 5 ft. |
| Transitional | 10 ft. | 6 ft. |

(1) In a B-3 district where the extension of a front or side lot line coincides with the front or side lot line of an adjacent lot located in a residentially zoned district, a yard equal to the depth of the minimum front yard required by this ordinance, on such adjacent lot in the residential district, shall be provided along such front or side lot line in the B-3 district.

(6) *Maximum lot coverage.* The total lot area occupied by any principal buildings and accessory buildings, together with all impervious surfaces, shall not exceed ninety (90) percent.

(7) *Maximum floor area.* The maximum allowable floor area ration in the B-3 district is .5.

(8) *Maximum building height.* No building or structure shall be erected or altered to exceed a height of thirty-five (35) feet.

(9) *District standards.*

(a) All on-site utility lines, but excluding high tension power lines, shall be located under ground.

(b) At the discretion of the approval authority as part of any site plan approval, blanket cross-easements for vehicle access may be obtained generally parallel to the interior of front property lines. These easements are intended to provide for effective motor vehicle access, minimum access to public streets. Easements will not be required where a frontage road system is in place or a coordinated access system is provided through a planned development.

(c) All business, service, storage, and display of goods and services shall be conducted within a completely enclosed structure, except:

1. Off-street parking and loading;

2. Recreational uses;

3. Accessory uses;

4. Uses allowed as part of a special use permit.

(d) All development shall meet the performance standards requirements of subsection 9.1 M-1 light industrial district.

(10) *Related regulations and requirements.* Other pertinent regulations contained within this ordinance that shall be observed, include, but are not limited to:

(a)  Section IV [XII], subsection 12.9 State Street—State Line Road Redevelopment Area site development plan review.

(b)  Section IV [XII], subsection 12.10, Landscape plan approval.

(c)  Section X, Off-street parking and loading.

(d)  Section XI, Signs.

(Code 1980, App. B, § VIII; Ord. No. 83-10, § 2, 3-24-1983; Ord. No. 83-18, § 1, 8-11-1983; Ord. No. 86-8, § 1, 3-27-1986; Ord. No. 87-23, § 1, 11-12-1987; Ord. No. 88-17, §§ 1, 3, 7-14-1988; Ord. No. 90-36, § 2, 7-26-1990; Ord. No. 93-4, § 1a., 2-25-1993; Ord. No. 96-30, § 1(Exh. A), 5-23-1996)

## Sec. IX. Industrial districts.

*9.1 M-1 light industry district.*

   *Conditions of use.*  All permitted uses are subject to the following conditions:

      Any production, processing, cleaning, servicing, testing, repair or storage of goods, materials, or products shall conform with the performance standards set forth below.

      All business, production, servicing and processing shall take place within completely enclosed buildings unless otherwise, specified. Within one hundred and fifty (150) feet of a residence district, all storage shall be in completely enclosed buildings or structures, and storage located elsewhere in this district may be open to the sky but shall be enclosed by solid walls or fences (including solid doors or gates thereto) at least eight (8) feet high, but in no case lower in height than the enclosed storage and suitably landscaped.

      However, open off-street loading facilities and open off-street parking of motor vehicles under one and one-half (1 1/2) tons capacity may be enclosed throughout the district, except for such screening of parking and loading facilities as may be required under the provisions of Section X.

      Uses established on the effective date of this ordinance and, by its provisions, are rendered nonconforming, shall be permitted to continue, subject to the provisions of section.

      Uses established after the effective date of this ordinance shall conform fully to the performance standards hereinafter set forth for the district.

   *Permitted uses.*  The following uses are permitted:

   Retail and services uses, as follows:

      Animal pounds and shelters.

      Automobile service stations where the retail sale of gasoline and oil for motor vehicles, including minor services customarily incidental thereto, may be conducted out-of-doors. Lubricating and washing facilities, including auto laundries, are permitted only if in a completely enclosed building.

      Battery and tire service stations.

      Beverages, nonalcoholic, bottling and distributing.

      Contractor or construction shops, such as building, cement, electrical, refrigeration, air conditioning, masonry, painting, plumbing, roofing, heating and ventilating.

      Fuel sales, with storage of fuel oils, gasoline and other flammable products limited to one hundred twenty thousand (120,000) gallons per tank, with the total storage on a zoning lot not to exceed five hundred thousand (500,000) gallons.

      Garages and parking lots, other than accessory, and subject of the provisions of Section X.

      Greenhouses.

      Ice sales, linen, towel, diaper and other similar supply services.

Riding academies and stables, horse.

Production, processing, cleaning, testing or repair, limited to the following uses and products:

Advertising displays.

Apparel and other products manufactured from textiles.

Automobile painting, upholstering, repairing, reconditioning, and body and fender repairing, when done within the confines of a structure.

Awnings, venetian blinds.

Bakeries.

Beverages, nonalcoholic.

Blacksmith shops.

Books, hand binding and tooling.

Bottling works.

Brushes and brooms.

Building equipment, building materials, lumber, coal, sand and gravel yards, and yards for contracting equipment of public agencies, or public utilities, or materials or equipment of similar nature.

Canning and preserving.

Canvas and canvas products.

Carpet and rug cleaning.

Carting, express hauling or storage yard.

Cement block manufacture.

Ceramic products, such as pottery and small glazed tile.

Cleaning and dyeing establishments.

Clothing.

Cosmetics and toiletries.

Creameries and dairies.

Drugs.

Electric appliances such as lighting fixtures, irons, fans, toasters and electric toys.

Electrical equipment assembly, such as home radio and television receivers and home movie equipment, but not including electrical machinery.

Electrical supplies, manufacturing and assembly of, such as wire and cable assembly, switches, lamps, insulation and dry cell batteries.

Food products, processing and combining of (except meat and fish), baking, boiling, canning, cooking, dehydrating, freezing, frying, grinding, mixing and pressing.

Fur goods, not including tanning and dyeing.

Glass products, from previously manufactured glass.

Hair, felt, and feather products (except washing, curing and dyeing).

Hat bodies of fur and wool felt.

Hosiery.

House trailers.

Ice, dry and natural.

Ink mixing and packaging and inked ribbons.

Insecticides.

Jewelry.

Laboratories, medical, dental, research, experimental and testing, provided there is no danger from fire or explosion nor offensive noise, vibration, smoke, dust, odors, heat, glare or other objectionable influences.

Laundries.

Leather products, including shoes and machine belting.

Luggage.

Machine shops for tool, die and pattern making.

Meat products.

Metal finishing, plating, grinding, sharpening, polishing, cleaning, rustproofing, and heat treatment.

Metal stamping and extrusion of small products, such as costume jewelry, pins and needles, razor blades, bottle caps, buttons and kitchen utensils.

Musical instruments.

Orthopedic and medical appliances, such as artificial limbs, braces, supports, and stretchers.

Paper products, small, such as envelopes and stationery, bags, boxes, tubes and wallpaper printing.

Perfumes and cosmetics.

Pharmaceutical products, compounding only.

Plastic products, but not including the processing of the raw materials.

Poultry and rabbits, slaughtering.

Precision instruments, such as optical, medical and drafting.

Products from finished materials, plastic, bone, cork, feather, felt, fibre, fur, glass, hair, horn, leather, paper, precious and semiprecious stones, rubber, shell or yarn.

Public utility electric substations and distribution centers, gas regulation centers and underground gas holder stations.

Repair of household or office machinery or equipment.

Rubber products, small, and synthetic treated fabrics (excluding all rubber and synthetic processing), such as washers, gloves, footwear, bathing caps and atomizers.

Silverware, plate and sterling.

Soap, and detergents, packaging only.

Soldering and welding.

Sporting and athletic equipment, such as balls, baskets, cues, gloves, bats, racquets and rods.

Statuary, mannequins, figurines, and religious and church art goods, excluding foundry operations.

Storage and sale of trailers, farm implements and other similar equipment on an open lot.

Storage of flammable liquids, fats or oil in tanks each of fifty thousand (50,000) gallons or less capacity, but only after the locations and protective measures have been approved by local governing officials.

Textiles, spinning, weaving, manufacturing, dyeing, printing, knit goods, yarn thread and cordage, but not including textile bleaching.

Tobacco curing and manufacturing, and tobacco products.

Tool and die shops.

Tools and hardware, such as bolts, nuts and screws, door-knobs, drills, hand tools and cutlery, hinges, house hardware, locks, non-ferrous metal castings and plumbing appliances.

Toys.

Truck, tractor, trailer or bus storage yard, but not including a truck or motor freight terminal which shall be treated under the subsection, Special Uses.

Umbrellas.

Upholstering (bulk), including mattress manufacturing, rebuilding and renovating.

Vehicles, children's, such as bicycles, scooters, wagons and baby carriages.

Watches.

Wood products, such as furniture, boxes, crates, baskets and pencils and cooperage works.

Any other manufacturing establishments that can be operated in compliance with the performance standards of subsection "performance standards," without creating objectionable noise, odor, dust, smoke, gas, fumes or vapor; and that is a use compatible with the use and occupancy of adjoining properties.

Wholesale and warehousing, local cartage and express facilities (but not including motor freight terminals).

Public and community service uses, as follows:

Bus terminals, bus garages, bus lots, street railway terminal, or street car houses.

Electric substations.

Fire stations.

Municipal or privately owned recreation buildings or community centers.

Parks and recreation areas.

Police stations.

Sanitary land fill.

Sewage treatment plants.

Telephone exchanges.

Water filtration plants.

Water pumping stations.

Water reservoirs.

Residential uses, as follows:

Dwelling units for watchmen and their families when located on the premises where they are employed in such capacity.

Miscellaneous uses, as follows:

Accessory uses.

Radio and television towers.

Temporary buildings for construction purposes, for a period not to exceed the duration of such construction.

*Off-street parking and loading,* as permitted or required in Section X.

*Special uses.* The following uses may be allowed by special use permit in accordance with the provisions of the administrative section:

Any use which may be allowed as a special use in the B-1 through B-4 business districts.

Planned developments, industrial.

Motor freight terminals.

Stadiums, auditoriums and arenas.

Any use permitted in the M-2 general manufacturing district, provided the performance standards of subsection, "Performance standards," can be met in their entirety.

*Yard areas.* No building or structure shall hereafter be erected or structurally altered unless the following yards are provided and maintained in connection with such building:

(1)  Front yard. On every zoning lot a front yard of not less than twenty-five (25) feet in depth shall be provided. However, where lots within the same block and comprising forty (40) percent of the frontage on the same street are already developed on the effective date of this ordinance with front yards with an average depth of less than twenty-five (25) feet, then such average depth shall be the required front yard depth for such frontage in said block.

(2)  Side yards. On every zoning lot a side yard shall be provided along each side lot line. Each side yard shall be not less in width than ten (10) percent of the lot width, but need not exceed twenty (20) feet in width.

(3)  Rear yard. On every zoning lot a rear yard shall be provided and maintained of not less than twenty (20) feet in depth, except that the inner ten (10) feet may be used for off-street parking.

*Performance standards.* Any use established hereafter in any M-1 manufacturing district shall be so operated as to comply with the performance standards set forth as follows:

*Noise.* Sound levels shall be measured with a sound level meter and associated octave band filter manufactured according to standards prescribed by the American Standards Association. Measurements shall be made using the flat network of the sound level meter. Impulsive type noises shall be subject to the performance standard hereinafter prescribed provided that such noises shall be capable of being accurately measured with such equipment. Noises capable of being so measured, for the purpose of this ordinance, shall be those noises which cause rapid fluctuations of the needle of the sound level meter with a variation of no more than plus or minus two (2) decibels. Noises incapable of being so measured, such as those of an irregular and intermittent nature, shall be controlled so as not to become a nuisance to adjacent uses.

At no point either on the boundary of a residence district or a business district or at one hundred twenty-five (125) feet from the nearest property line of a plant or operation, whichever distance is greater, shall the sound pressure level of an individual operation or plant (other than the operation of motor vehicles and other transportation facilities) exceed the decibel levels at the designated octave bands shown hereafter for the districts indicated:

TABLE INSET:

| Octave Band Cycles Per Second | Maximum Permitted Sound Level in Decibels Along Boundaries or 125 Feet From Plant Or Operation Property Line | |
|---|---|---|
| | Residence Districts | Business Districts |
| 0 to 75 | 67 | 73 |
| 75 to 150 | 62 | 68 |
| 150 to 300 | 58 | 64 |
| 300 to 600 | 54 | 60 |
| | | |

| 600 to 1,200 | 49 | 55 |
| 1,200 to 2,400 | 45 | 51 |
| 2,400 to 4,800 | 41 | 47 |
| Over 4,800 | 37 | 43 |

*Smoke and particulate matter.* No stack shall emit more than ten (10) smoke units during any one (1) hour, nor shall smoke of a density in excess of Ringelmann No. 2 be emitted, provided that during a single one (1) hour period in each twenty-four (24) hour day, each stack may emit up to twenty (20) smoke units when blowing soot or cleaning fires, and during such cleaning of fires, smoke of a density of Ringelmann No. 3 may be emitted, but not for longer than four (4) minutes each period.

No emission of smoke or particulate matter shall exceed a density of Ringelmann No. 3, except for a plume consisting entirely of condensed steam. For the purposes of grading the density of emission, the Ringelmann Chart published and used by the United States Bureau of Mines shall be employed.

The rate of emission of particulate matter from all sources within the boundaries of any lot shall not exceed a net figure of one (1) pound per acre of lot area during any one (1) hour.

Dust and other forms of air pollution borne by air and wind from such sources as storage area, yards, roads, etc., within lot boundaries shall be kept to a minimum by appropriate landscaping, paving, oiling, or other acceptable means. The emission of particulate matter from such sources shall conform with the requirements of the preceding paragraph.

In addition to the performance standards specified herein, the emission of smoke and particulate matter in such manner or quantity as to be detrimental to or endanger the public health, safety, comfort or welfare is hereby declared to be a public nuisance.

*Odorous matter.* The emission of odorous matter from any property in such concentrations as to be readily detectable at any point along the boundaries of said property or in such concentrations as to create a public nuisance or hazard beyond such boundaries is prohibited.

*Vibration.* Any process or equipment which produces intense earth-shaking vibration, such as are created by heavy drop forges or heavy hydraulic surges, shall be set back at least five hundred (500) feet from the property boundaries on all sides, except for a property line adjoining an M-2 district, where such setback shall not be mandatory. However, in no case shall any such vibrations be allowed to create a public nuisance or hazard beyond the property boundaries.

*Toxic or noxious matter.* No use on any property shall discharge across the boundaries of said property toxic or noxious matter in such concentrations as to be detrimental to or endanger the public health, safety, comfort or welfare, or cause injury or damage to other property or business.

*Glare or heat.* Any operation producing intense glare or heat shall be performed within a completely enclosed building and effectively screened in such a manner as not to create a public nuisance or hazard along property boundaries.

*Fire and explosive hazards.* Fire and explosive hazards shall be controlled as follows:

Activities involving the storage or manufacture of materials or products which decompose by detonation are not permitted in the M-1 districts.

The storage, utilization or manufacture of materials or products ranging from free or active burning to intensive burning, as determined by the zoning administrator, is permitted under the following conditions:

(1)  All storage, utilization or manufacture of such materials or products shall be within completely enclosed buildings or structures having incombustible exterior walls; and

(2)  All such buildings or structures shall be set back at least forty (40) feet from property boundaries, or in lieu thereof, shall be protected throughout by an automatic sprinkler system complying with standards for installation prescribed by the National Fire Protection Association.

Materials or products which produce flammable or explosive vapors or gases under ordinary weather temperatures shall not be permitted in this district, with the exception of the following, which shall be permitted:

(1)   Materials required for emergency or standby equipment;

(2)   Materials used in secondary processes which are auxiliary to a principal operation, such as paint-spraying of finished products; and

(3)   Flammable liquids and oils stored, sold and used in conjunction with the operation of an automobile service station and customarily required or used in such operations.

*9.2 M-2 heavy industry district.*

*Condition of use.* All permitted uses are subject to the following conditions:

All production, processing, cleaning, servicing, testing, repair or storage of goods, materials or products shall conform with the performance standards set forth in subsection, Performance standards.

Within one hundred fifty (150) feet of a residence district, all business production, servicing, processing and storage shall take place or be within completely enclosed buildings, except that storage of materials may be open to the sky provided the storage area is enclosed with a solid wall or fence at least eight (8) feet high.

However, within such one hundred fifty (150) feet of a residence district, off-street loading facilities and off-street parking of motor vehicles under one and one-half (1 1/2) tons capacity may be enclosed, except for such screening of parking and loading facilities as may be required under the provisions of Section X.

*Permitted uses.* The following uses are permitted:

Any use permitted in the M-1 districts.

Any production, processing, cleaning, servicing, testing or repair or storage of materials, goods or products which conform to the performance standards established for this district.

Any sexually oriented entertainment business.

Any wholesale or retail business involving the viewing, sale or rental of sexually oriented materials, including but not limited to videotapes, videodiscs, motion pictures, books, magazines, posters, photographs, and sexual devices or paraphernalia.

*Special uses.* Any use which may be allowed as a special use in the M-1 district may be allowed as a special use in this M-2 district.

*Amortization of pre-existing regulated use.* Any nonconforming building, structure, lot or regulated use which existing lawfully at the time of the adoption of Article IX and Article X of Chapter 15 of the Municipal Code of the City of Calumet City, Cook County, Illinois, which shall become nonconforming upon the adoption of those articles may be amortized as hereinafter provided.

a.   Upon written notice from the department of inspectional services to the owners or interests therein, that any building, structure, lot or regulated use is nonconforming under the subdivision and zoning ordinance of the City of Calumet City, the owners or interests therein shall, within three (3) months from the date of such notice, apply to the department of inspectional services for a certificate of nonconformance and amortization schedule.

b.   Failure to apply for a certificate of nonconformance and amortization schedule within three (3) months of the notice provided for above will require the amortization of the nonconformance within six (6) months of the notice provided for above.

c.   Nonconformances that have obtained a certificate of nonconformance and amortization schedule from the department of inspectional services shall be discontinued within one (1) year of the notice provided for above.

*Yard areas.* All yard areas shall be the same as required or permitted in the M-1 limited manufacturing district.

*Maximum floor area ratio.* The maximum floor area ratio shall not exceed 3.0.

*Performance standards.* Any use established hereafter in an M-2 general manufacturing district shall be so operated as to comply with the performance standards set forth as follows:

*Noise.* The performance standards governing noise in the M-1 district shall apply.

*Smoke and particulate matter.* No stack shall emit more than twenty (20) smoke units during any one (1) hour, nor shall smoke of a density in excess of Ringelmann No. 2 be emitted provided that during fire cleaning periods each stack may emit four (4) minutes of smoke up to thirty (30) smoke units, twice for blowing soot and twice for cleaning fires, and during such cleaning for fires, smoke of a density of Ringelmann No. 3 may be emitted.

No emission of smoke or particulate matter shall exceed a density of Ringelmann No. 3, except for a plume consisting entirely of condensed steam. For the purpose of grading the density of emissions, the Ringelmann Chart published and used by the United States Bureau of Mines shall be employed.

The rate of emission of particulate matter from all sources within the boundaries of any lot shall not exceed a net figure of three (3) pounds per acre of lot area during any one (1) hour.

Dust and other forms of air pollution borne by the wind from such sources as storage areas, yards, roads, etc., within lot boundaries shall be kept to a minimum by appropriate landscaping, paving, oiling, or other acceptable means. The emission of particulate matter from such sources shall conform with the requirements of the preceding paragraph.

In addition to the performance standards specified herein, the emission of smoke or particulate matter in such manner or quantity as to be detrimental to or endanger the public health, safety, comfort or welfare is hereby declared to be a public nuisance.

*Odorous matter.* The emission of odorous matter from any property in such concentrations as to be readily detectable at any point along the boundaries of said property when diluted in the ratio of one (1) volume of odorous air to four (4) or more volumes of clean air, or in such concentrations as to produce a public nuisance or hazard beyond the property boundaries is prohibited.

*Vibration.* Any process or equipment which produces intense earth-shaking vibrations, such as are created by heavy drop forges or heavy hydraulic surges, shall be set back at least five hundred (500) feet from the property boundaries on all sides. However, in no case shall such vibrations be allowed to create a public nuisance or hazard beyond the property boundaries.

*Toxic or noxious matter.* No use on any property shall discharge across the boundaries of said property toxic or noxious matter in such concentrations as to be detrimental to or endanger the public health, safety, comfort, or welfare, or cause injury or damage to other property or business.

*Glare or heat.* Any operation producing intense glare or heat shall be performed within an enclosure and effectively screened in such a manner as not to create a public nuisance or hazard along property boundaries.

*Fire and explosive hazards.* Fire and explosive hazards shall be controlled as follows:

Activities involving the storage or manufacture of materials or products which decompose by detonation are not permitted in the M-2 districts unless licensed by the city. However, in no case shall such materials or products be stored or manufactured within two hundred (200) feet of the boundary of any other district.

The storage, utilization and/or manufacture of materials or products ranging from incombustible to moderate burning, as determined by the zoning administrator, is permitted.

The storage, utilization or manufacture of materials or products ranging from free to active burning, to intense burning, as determined by the zoning administrator, is permitted, provided that within forty (40) feet of the boundary of a residence or business district the following restrictions shall apply:

(1) All storage, utilization or manufacture of such materials, or products, shall be within completely enclosed buildings or structures having incombustible walls; and

(2) All such buildings or structures shall be protected throughout by an automatic

sprinkler system complying with standards for installation by the National Fire Protection Association.

Materials or products which produce flammable or explosive vapors or gasses under ordinary weather temperature shall not be permitted in this district, with the exception of the following, which are permitted:

(1)   Materials required for emergency or standby equipment;

(2)   Materials used in secondary processes which are auxiliary to a principal operation, such as paint spraying of finished products;

(3)   Flammable liquids and oils stored, sold and used in conjunction with the operation of an automobile service station and customarily required or used in such operation.

## 9.3 OR office research district.

(1)   *Description and intent of district.*  The OR district is intended to allow for a mix of office uses, research and testing facilities and restricted manufacturing, warehousing and distribution in high-quality, well designed, low- to medium-density settings.

(2)   *Permitted uses.*  The following uses are permitted in the OR district.

Banks and other financial institutions.

Business schools.

Display or catalog showroom.

Dry cleaning and/or laundry facilities.

Glass products production.

Laboratories, research and testing.

Linen supply.

Lithography.

Offices, business, professional, medical arts.

Paper products assembly.

Plastic products assembly.

Wholesale establishments.

Mail order houses.

Self-service storage facility.

Warehousing and distribution, excluding motor freight terminals.

Health and athletic clubs.

Precision instruments manufacturing.

Electronic component manufacturing and assembly.

Printing and publishing services.

Radio and television studios.

Research and development testing facilities.

Show rooms and sales area accessory to principal uses and within the principal structure not occupying more than ten (10) percent of the gross floor area.

Woodworking and wood products.

Commercial uses within the principal structure occupying not more than ten (10) percent of the gross floor area and limited to the following uses: Beauty/barber shop, food store florist, gift shop, photocopy

shop, and letter and parcel services.

Accessory uses.

(3)  *Special uses.*  The following special uses may be authorized in conformance with subsection 12.7 of this ordinance.

Animal hospital and clinic.

Child day care center and preschool.

Planned development.

Public utilities, facilities and services.

Restaurant, sit down only.

Park and recreation uses.

Parking lot or structure.

Institutional uses.

Accessory uses.

(4)  *Lot size requirements.*

(a)  The lot area of each zoning lot shall not be less than twenty-five thousand (25,000) square feet.

(b)  The minimum lot width of each zoning lot shall not be less than one hundred (100) feet.

(5)  *Yard requirements.*  The following yards shall be maintained in the OR district:

TABLE INSET:

|  | Building | Parking |
|---|---|---|
| Front | 30 ft. | 15 ft. |
| Side | 20 ft. | 10 ft. |
| Rear | 30 ft. | 15 ft. |
| Transitional | 30 ft. | 30 ft. |

(6)  *Maximum lot coverage.*  The total lot area occupied by any principal buildings and accessory buildings, together with all impervious surfaces, shall not exceed seventy-five (75) percent.

(7)  *Maximum floor area.*  The maximum allowable floor area ratio in the OR district is .7.

(8)  *Maximum building height.*  No building or structure shall be erected or altered to exceed a height of forty-five (45) feet.

(9)  *District standards.*

(a)  The minimum gross land area of any office research zoning district shall be ten (10) acres.

(b)  All on-site utility lines, but excluding high tension power lines, shall be located underground.

(c)  All business storage, and display of goods and services shall be conducted within a completely enclosed structure, except:

1.  Off-street parking and loading;

2.  Recreational uses;

3.  Accessory uses;

4.  Uses allowed as part of a special use permit.

(d)  All development shall meet the performance standards requirements of subsection 9.1, M-1 light industrial district.

(10)  *Related regulations and requirements.*  Other pertinent regulations contained within this ordinance that

shall be observed, include, but are not limited to:

(a) Section IV [XII], subsection 12.9, State Street--State Line Road Redevelopment Area site development plan review;

(b) Section IV [XII], subsection 12.10, Landscape plan approval;

(c) Section X, Off-street parking and loading;

(d) Section XI, Signs.

(Code 1980, App. B, § IX; Ord. No. 88-17, § 2, 7-14-1988; Ord. No. 96-30, § 1(Exh. A), 5-23-1996; Ord. No. 96-73, §§ 1, 2, 11-14-1996)


## Sec. X. Off-street parking and loading.

*10.1 General provisions, parking and loading.*

*Scope of regulations.*  The off-street parking and loading provisions herein shall apply as follows:

For all buildings and structures erected and all uses of land established after the effective date of this ordinance, accessory parking and loading facilities shall be provided as required by the regulations of the district in which such building or uses are located.

When the intensity of use of any building, structure, or premises shall be increased through addition of dwelling units, gross floor area, seating capacity, or other units of measurement specified herein for required parking or loading facilities, parking and loading facilities as required herein shall be provided for such increase in intensity of use.

However, no building or structure lawfully erected or use lawfully established prior to the effective date of this ordinance shall be required to provide such additional parking or loading facilities unless and until the aggregate increase in units of measurement shall equal not less than fifteen (15) percent of the units of measurement existing upon the effective date of this ordinance, in which event parking or loading facilities as required herein shall be provided for the total increase.

Whenever the existing use of a building or structure shall hereafter be changed to a new use, parking or loading facilities shall be provided as required for such new use. However, if the said building or structure was erected prior to the effective date of this ordinance, additional parking or loading facilities are mandatory only in the amount by which the requirements for the new use would exceed those for the existing use if the latter were subject to the parking and loading provisions herein.

*Existing parking and loading facilities.*  Accessory off-street parking or loading facilities which are located on the same lot as the building or use served and which were in existence on the effective date of this ordinance or were provided voluntarily after such effective date shall not thereafter be reduced below, or if already less than, shall not further be reduced below, the requirements of this ordinance for a similar new building or use.

*Permissive parking and loading facilities.*  Nothing in this ordinance shall be deemed to prevent the voluntary establishment of off-street parking or loading facilities to serve any existing use of land or buildings provided that all regulations herein governing the location, design, improvement and operation of such facilities are adhered to.

*Damage and destruction.*  For any conforming or legally nonconforming building or use which is in existence on the effective date of this ordinance, which subsequent thereto is damaged or destroyed by fire, collapse, explosion or other cause, and which is reconstructed, reestablished or repealed, off-street parking or loading facilities need not be provided, except that parking or loading facilities equivalent to any maintained at the time of such damage or destruction shall be restored or continued in operation. However, in no case shall it be necessary to restore or maintain parking or loading facilities in excess of those required by this ordinance for equivalent new uses or construction.

*Control of off-site parking facilities.*  When required parking facilities are provided on land other than the zoning lot on which the building or use served by such facilities is located, they shall be and remain in the same possession or ownership as the zoning lot occupied by the building or use to which the parking facilities are accessory. No such off-site parking facilities shall be authorized and no occupancy permit shall be issued where the plans call for parking other than on the same zoning lot until and unless the zoning board of appeals has reviewed the plans and heard the

applicant and made findings that the common ownership or possession of the zoning lot and the site of the parking facilities are reasonably certain to continue and that the off-site parking facilities will be maintained at all times during the life of the proposed use or building.

*Submission of plot plan.* Any application for a building permit, or for a certificate of occupancy where no building permit is required, shall include therewith a plot plan, drawn to scale and fully dimensioned, showing any parking or loading facilities to be provided in compliance with this ordinance. Provided however, any permit application or zoning petition requiring site plan approval under Subsection 12.9 and landscape plan approval under subsection 12.10, shall govern the preparation of off-street parking and loading area plans.

### 10.2 Additional regulations, parking.

*Use of parking facilities.* Off-street parking facilities accessory to residential use and developed in any residential district in accordance with the requirements of this section shall be used solely for the parking of passenger automobiles or not more than one (1) truck of not more than one and one-half (1 1/2) tons capacity used by occupants of the dwelling structures to which such facilities accessory to residential structures are used for the storage of commercial vehicles or for the parking of automobiles belonging to the employees, owners, tenants, visitors, or customers of business or manufacturing establishments.

*Joint parking facilities.* Off-street parking facilities for different buildings, structures or uses, or for mixed uses, may be provided collectively in any zoning district in which separate parking facilities for each constituent use would be permitted, provided that the total number of spaces so located together shall not be less than the sum of the separate requirements for each use.

*Computation.* When determination of the number of off-street parking spaces required herein results in a requirement of a fractional space, any fraction of one-half ( 1/2) or less may be disregarded while a fraction in excess of one-half ( 1/2) shall be counted as one (1) parking space.

*Size.* A required off-street parking space shall be at least nine (9) feet in width and at least twenty (20) feet in length exclusive of access drives or aisles, ramps, columns or work areas. Such space shall have a vertical clearance of at least seven (7) feet.

*Access.* Each required off-street parking space shall open directly upon an aisle or driveway of such width and design as to provide safe and efficient means of vehicular access to such parking space. All off-street parking facilities shall be designed with appropriate means of vehicular access to a street or alley in a manner which will least interfere with traffic movements.

*In yards.* Off-street parking spaces in required yards shall conform to the following:

*Front yards.*

(1)   No parking is permitted in a required front yard except the interior one-half ( 1/2) of the front yard in an M-1, M-2, or M-3 district.

(2)   Parking is allowed in a front yard on a private driveway serving single-family and two-family dwellings but such parking shall not be considered as satisfying the off-street parking requirements for such uses as set forth in the ordinance.

*Side yards.*

(1)   Parking is not permitted in any required side yard, further no open off-street parking serving a residential use in a nonrequired side yard shall be located nearer than ten (10) feet to a principal building.

*Rear yard.* In any rear yard with the following exceptions and requirements.

(1)   In the M-1, M-2, and M-3 districts when a rear yard is adjacent to an R district there shall be no parking in the twenty (20) feet adjacent thereto.

(2)   In any R district no open off-street parking space shall be located nearer than ten (10) feet to a principal building.

*Design and maintenance.*

*Open and enclosed parking spaces.* Accessory parking spaces located by the use served may be open to the sky or enclosed in a building. Accessory parking spaces located in a residence district

elsewhere than on the same lot occupied by the use served shall be open to the sky except when otherwise allowed as a special use.

*Surfacing.* All open off-street parking areas shall be improved with a compacted macadam base, not less than four (4) inches thick, surfaced with asphaltic concrete or constructed to some comparable specification.

*Screening and landscaping.* All open automobile parking areas containing more than four (4) parking spaces shall be effectively screened on each side adjoining or fronting on any property situated in residence district or any institutional premises by a wall, fence or densely planted compact hedge not less than five (5) feet nor more than seven (7) feet in height. Such required screening shall conform with the front and side yard setback requirements of the district in which the parking is located. Provided however, any permit application or zoning petition requiring site plan approval under subsection 12.9 and landscape plan approval under subsection 12.10, shall govern the type and location of parking lot screening.

*Lighting.* Any lighting used to illuminate off-street parking areas shall be directed away from residential properties in such a way as not to create a nuisance.

*Repair and service.* No motor vehicles repair work or sale of gasoline and motor oil of any kind shall be permitted in conjunction with accessory off-street parking facilities provided in a residence district, except as may be permitted under planned development.

### 10.3 Location of accessory off-street parking facilities.

The location of off-street parking spaces in relation to the use served shall be as prescribed hereinafter. All distances specified shall be walking distance between such parking spaces and a main entrance to the use served.

*For uses in a residence district.* Parking spaces accessory to dwellings shall be located on the same zoning lot as the use served.

*For uses in business and manufacturing district.* All required parking spaces shall be within one thousand (1,000) feet of the use served, except for spaces accessory to dwelling units (except those located in a transient hotel) which shall be within three hundred (300) feet of the use served. However, no parking spaces accessory to a use in a business or manufacturing district shall be located in a residence district, except that private, free, off-street parking accessory to such uses and municipal parking lots may be allowed by special use permit in accordance with the administrative section in any R-4, R-5, or R-6 district within two hundred (200) feet of and adjacent to any business or industrial district.

### 10.4 Schedule of parking requirements.

For the following uses, accessory off-street parking spaces shall be provided as required hereinafter. Parking spaces required on an employee basis shall be based on the maximum number of employees on duty or residing, or both, on the premises at any one (1) time. Stacked parking is prohibited.

*Residential uses,* as follows:

Two-family, three-family and multiple-family dwellings: Two parking spaces for each family dwelling unit.

Hotels or motels: One (1) parking space for each dwelling unit and one (1) parking space for each lodging room shall be provided, plus accessory uses such as restaurants, meeting room, retail shops shall provide off-street parking as specified herein for each use.

Lodging houses: One (1) parking space shall be provided for each lodging room, plus one (1) space for the owner or manager.

Private clubs and lodges: One (1) parking space shall be provided for each lodging room, plus parking spaces equal in number to twenty-five (25) percent of the capacity in persons (exclusive of lodging room capacity) of such club or lodge.

*Retail and service uses,* as follows:

Retail stores and banks: One (1) parking space shall be provided for each two hundred (200)

square feet of floor area. Drive-in banks or other similar drive-in establishments shall provide ten (10) stacking spaces per teller or customer service window.

Automobile service stations: Three (3) parking spaces shall be provided for employees.

Automobile laundry: Thirty (30) stacking spaces shall be provided for each wash rack, plus one (1) parking space for each employee.

Bowling alleys: Four (4) parking spaces shall be provided for each alley, plus such additional spaces as may be required herein for affiliated uses, bars, restaurants and the like.

Establishments dispensing food or beverages for consumption on the premises: One (1) parking space shall be provided for each two hundred (200) square feet of floor area.

Motor vehicle sales and machinery sales: One (1) parking space shall be provided for each six hundred (600) square feet of floor area.

Furniture and appliance stores, household equipment or furniture repair shops: One (1) parking space shall be provided for each six hundred (600) square feet of floor area.

Theaters (indoor): One (1) parking space shall be provided for each three (3) seats except for theaters (indoor) located within a zoning lot of fifty (50) acres or more in which a retail shopping mall is located, the parking requirement shall be the same as the requirement for retail stores, that is one (1) parking space shall be provided for each two hundred (200) square feet of flood area.

Undertaking establishments, funeral parlors: Ten (10) parking spaces shall be provided for each chapel or parlor, plus one (1) parking space for each funeral vehicle kept on the premises.

Offices, business, professional and governmental: One (1) parking space shall be provided for each three hundred (300) square feet of floor area.

Wholesale establishments (but not including warehouses and storage building other than accessory): One (1) parking space shall be provided for each six hundred (600) square feet of floor area in excess of four thousand (4,000) square feet.

Establishments engaged in manufacture, assembly production, processing, cleaning, servicing, testing or repair of materials, goods, or products: One (1) parking space shall be provided for each two (2) employees, plus one (1) parking space for each vehicle used in the conduct of the enterprise and guest parking equal to one (1) space for each one thousand (1,000) square feet of floor area.

Warehouses and storage buildings: One (1) parking space shall be provided for each employee, plus one (1) parking space for each vehicle used in the conduct of the enterprise, and guest parking equal to one (1) space for each four thousand (4,000) square feet of floor space.

*Community service uses,* as follows:

Church, school, college and other institutional auditoriums: One (1) parking space shall be provided for each three (3) auditorium seats. Adequate space shall also be provided for buses used in connection with the activity of the institution, and all loading and unloading of passengers shall take place upon the premises.

Colleges, universities and business, professional and trade schools: One (1) parking space shall be provided for each employee, and one (1) parking space shall be provided for each four (4) students based on the maximum number of students attending classes on the premises at any one (1) time during any twenty-four-hour period.

Clinics, health centers and similar uses: One (1) parking space shall be provided for each employee and doctor, plus one (1) space for each two hundred (200) square feet of floor space.

Hospitals: One (1) parking space shall be provided for each two (2) hospital beds, plus one (1) parking space for each employee, plus one (1) parking space for each doctor assigned to the staff.

Libraries, art galleries and museums, public: One (1) parking space shall be provided for each one thousand (1,000) square feet of gross floor space.

Municipally or privately owned recreation buildings or community centers: One (1) parking space shall be provided for each two (2) employees, plus spaces adequate in number to serve the public.

Public utility and public service uses: One (1) parking space shall be provided for each employee, plus spaces adequate in number, as determined by the department of planning, to serve the public.

*Schools, private or public;* as follows:

(1) Nursing school: One (1) parking space for each employee, plus three (3) spaces for visitors and one (1) space for each bus or other vehicle used in the conduct of the school.

(2) Elementary or junior high school: One (1) parking space for each employee, plus one (1) space for each ten (10) students based upon thirty (30) students per classroom and one (1) space for each vehicle used in the conduct of the school.

(3) High schools: One (1) parking space for each employee, plus one (1) space for each five (5) students and one (1) space for each vehicle used in the conduct of the school.

*Place of assembly,* as follows:

Stadiums, arenas, auditoriums (other than church, college or institutional school), convention halls, dance halls, exhibition halls, skating rinks and other similar places of assembly. Parking spaces equal in number to thirty-three (33) percent of the capacity in persons shall be provided.

*Miscellaneous uses,* as follows:

Fraternities, sororities and dormitories: One (1) parking space shall be provided for each three (3) active members, plus one (1) parking space for each employee.

Institutions for the care of the insane or feeble-minded: One (1) parking space shall be provided for each employee and doctor, plus one (1) parking space for each three (3) beds.

Private clubs and lodges (without sleeping facilities for guests): Parking spaces equal in number to twenty-five (25) percent of the capacity in persons shall be provided.

Rest homes or nursing homes: One (1) parking space shall be provided for each four (4) beds, plus one (1) parking space for each employee, plus one (1) parking space for each doctor assigned to the staff.

Sanitariums, convalescent homes or institutions for the aged or for children: One (1) parking space shall be provided for each four (4) beds, plus one (1) parking space for each employee, plus one (1) parking space for each doctor assigned to the staff.

Theaters, automobile drive-in: Reservoir parking space equal to ten (10) percent of the vehicle capacity of such theaters shall be provided.

For the following uses, parking spaces shall be provided in adequate number, as determined by the plan commission, to serve persons employed or residing on the premises as well as the visiting public:

(1) Airports or aircraft landing fields; heliports;

(2) Convents and monasteries;

(3) Crematories and mausoleums;

(4) Fraternal or religious institutions;

(5) Outdoor amusement establishments, fairgrounds, permanent carnivals, kiddie parks and other similar amusement centers;

(6) Penal and correctional institutions;

(7) Rectories and parish houses;

(8) Swimming pools.

Mixed uses: When two (2) or more uses are located on the same zoning lot or within the same building, parking spaces equal in number to the sums of the separate requirements for each such use shall be provided. No parking space or portion thereof shall serve as a required space for more than one (1) use unless otherwise authorized by variation.

Other uses: For uses not listed heretofore in this schedule of parking requirements, parking spaces shall be provided on the same basis as required for the most similar listed use or as determined by the plan commission.

*10.5 Additional regulations, off-street loading.*

*Location.* All required loading berths shall be located on the same zoning lot as the use served. No loading berth for vehicles over two (2) tons' capacity shall be closer than fifty (50) feet to any property in a residence district unless completely enclosed by building walls or a uniformly painted solid fence or wall, or any combination thereof, not less than six (6) feet in height. No permitted or required loading berth shall be located within twenty-five (25) feet of the nearest point of intersection of any two (2) streets.

*Size.* Unless otherwise specified, a required loading berth shall be at least ten (10) feet in width by at least twenty-five (25) feet in length, exclusive of aisles and maneuvering space, and shall have a vertical clearance of at least fourteen (14) feet.

*Access.* Each required off-street loading berth shall be designed with appropriate means of vehicular access to a street or alley in a manner which will least interfere with traffic movements.

*Surfacing.* All open off-street loading berths shall be improved with a compacted macadam base, not less than seven (7) inches thick, surfaced with not less than two (2) inches of asphaltic concrete or some comparable all weather dustless material.

*Repair and service.*

No motor vehicles repair work or service of any kind shall be permitted in conjunction with loading facilities provided in any residence or business districts.

Space allocated to any off-street loading shall not while so allocated be used to satisfy the space requirements for any off-street parking facilities or portions thereof.

*Schedule of loading requirements.* For the uses listed in the following table, off-street loading berths shall be provided on the basis of the gross floor of the building or portions thereof devoted to such uses in the amounts shown herein.

_____

### SCHEDULE OF LOADING REQUIREMENTS

TABLE INSET:

| | Use | Gross Floor Area In Square Feet | Required Number and Minimum Horizontal Dimensions of Berths |
|---|---|---|---|
| a. | Hospital, sanitariums, and other institutional uses. | 10,000 to 200,000 | 1--(10 ft. × 25 ft.) |
| b. | Hotels, clubs and lodges, except as set forth in Item e. | For each additional 200,000 or fraction thereof | 1 additional--(10 ft. × 25 ft.) |
| c. | Hotels, clubs and lodges, when containing any of the following: Retail shops, convention halls, or business or | 10,000 to 20,000 20,000 to 150,000 For each additional 150,000 | 1--(10 ft. × 25 ft.) 1--(10 ft. × 50 ft.) 1 additional--(10 ft. × |

|   |   |   |   |
|---|---|---|---|
|   | professional offices (other than accessory) | or fraction thereof | 50 ft.) |
| d. | Retail stores. | 5,000 to 10,000 | 1--(10 ft. × 25 ft.) |
| e. | Establishments dispensing food or beverages for consumption on the premises. | 10,000 to 25,000<br><br>25,000 to 40,000 | 2--(10 ft. × 25 ft. ea.)<br>2--(10 ft. × 50 ft. ea.) |
| f. | Motor vehicle and machinery sales. | 40,000 to 100,000 | 3--(10 ft. × 50 ft. ea.) |
| g. | Wholesale establishments (but not including warehouse and storage buildings other than accessory). | For each additional 200,000 or fraction thereof | 1 additional--(10 ft. × 50 ft.) |
| h. | Auditoriums, convention halls exhibition halls, sports arenas, stadiums. | 10,000 to 20,000<br>20,000 to 100,000 | 1--(10 ft. × 25 ft.)<br>1--(10 ft. × 50 ft.) |
| i. | Bowling alleys. | For each additional 100,000 or fraction thereof | 1 additional--(10 ft. × 50 ft.) |
| j. | Banks and offices, business, professional and governmental. | 10,000 to 100,000<br>For each additional 100,000 or fraction thereof to 500,000<br>For each additional 500,000 or fraction thereof | 1--(10 ft. × 25 ft.)<br>1 additional--(10 ft. × 25 ft.)<br><br><br>1 additional--(10 ft. × 25 ft.) |
| k. | Establishments engaged in production, processing, cleaning, servicing, testing, or repair of materials, goods or products. | 5,000 to 10,000<br>10,000 to 40,000<br>40,000 to 100,000 | 1--(10 ft. × 25 ft.)<br>1--(10 ft. × 50 ft.)<br>2--(10 ft. × 50 ft. ea.) |
| l. | Warehouses and storage buildings. | For each additional 100,000 or fraction thereof | 1 additional--(10 ft. × 50 ft.) |
| m. | Theaters | 8,000 to 25,000<br>For each additional 50,000 or fraction thereof | 1--(10 ft. × 25 ft.)<br>1 additional--(10 ft. × 25 ft.) |
| n. | Undertaking establishments and funeral parlors | 8,000 to 100,000<br>For each additional 100,000 or fraction thereof | 1--(10 ft. × 25 ft.)<br>1 additional--(10 ft. × 25 ft.) |

(Code 1980, App. B, § X; Ord. No. 93-4, § 1c., 2-25-1993; Ord. No. 96-30, § 1(Exh. A), 5-23-1996)

## Sec. XI. Reserved.

**Editor's note:** Section 2 of Ord. No. 07-21, adopted Apr. 17, 2007, deleted § XI in its entirety. Former § XI pertained

to signs and derived from the 1980 Code; Ord. No. 96-30, adopted May 23, 1996; and Ord. No. 00-44, adopted Aug. 24, 2000.

## Sec. XII. Administration.

*12.1 Enforcing officer.*

The building commissioner of the City of Calumet City shall be the zoning administrator of the City of Calumet City. Said administrator shall see that the provisions of this ordinance are properly enforced.

Restrictions on employees. No official or employee responsible for the enforcing of this ordinance shall engage directly or indirectly in the construction industry or the building professions, or in any type of gainful employment or business that conflicts with official duties or the interests of the business incorporated in this ordinance.

*12.2 Zoning permit.*

No building or structure shall be erected, reconstructed, enlarged, or moved until a permit shall have been applied for in writing and issued by the building commissioner. Said permit shall be posted in a prominent place on the premises prior to and during the period of erection, reconstruction, enlargement or moving.

Before a permit is issued for the erection, moving, alteration, enlargement or occupancy of any building, or structure or use of premises, the plans and intended use shall indicate conformity in all respects to the provisions of this ordinance.

*Site plan.* Every application for permit submitted to the building commissioner shall be accompanied by a site plan, drawn to scale, showing the zoning lot, required yards, the location of buildings on the lot, accurate dimensions of the lot, and any existing and proposed uses together with such other information as may be necessary for the enforcement of this ordinance.

Certain permit applications and zoning petitions may require site development plan approval under subsection 12.9 and landscape plan approval under subsection 12.10 of this ordinance.

*12.3 Interpretation of ordinance.*

In interpreting and applying the provisions of this ordinance, they shall be held to be the minimum requirements for the promotion of health, safety, morals, convenience of the general welfare.

*12.4 Certificate of occupancy.*

A certificate of occupancy to be issued by the building commissioner shall be required for any of the following, except buildings incidental to agricultural operations other than residences:

- (a) Occupancy and use of a building thereafter erected or enlarged;
- (b) Change in use of an existing building;
- (c) Occupancy and use of land to a use of a different classification, except for the raising of crops;
- (d) Change in the use of land to a use of a different classification, except for the raising of crops;
- (e) Any change in the use of a nonconforming use.

No such occupancy, use or change of use, shall take place until a certificate of occupancy therefore shall be issued.

Written application for a certificate of occupancy for a new building or for an existing building which has been enlarged shall be made at the same time as the application for the building permit for such building. Said certificate shall be acted upon within seven (7) days after a written request for the same has been made to the building commissioner after the erection or enlargement of such building or part thereof has been completed in conformance with the provisions of this ordinance.

Pending the issuance of such a certificate, a temporary certificate of occupancy may be issued by the building commissioner for a period of not more than six (6) months during the completion of the construction of the building or

of alterations which are required under the terms of any law or ordinance. Such temporary certificate may be renewed, but it shall not be construed in any way to alter the respective rights, during or obligations of the owner or of the city relating to the use or occupancy of the land or building, or any other matter covered by this ordinance, and such temporary certificate shall not be issued except under such restrictions and provisions as will adequately ensure the safety of the occupants.

Written application for a certificate of occupancy for the use of vacant land, or for a change in the use of land or of a building, or for a change in a nonconforming use, as herein provided, shall be made to the building commissioner.

If the proposed use is in conformity with the provisions of this ordinance, the certificate of occupancy therefore shall be issued within seven (7) days after the application for the same has been made.

Each certificate of occupancy shall state that the building or proposed use of a building or land complies with all provisions of this ordinance.

A record of all certificates of occupancy shall be kept on file in the office of the building commissioner and a copy shall be forwarded on request, to any person having proprietary or tenancy interest in the building or land affected.

*12.5 Zoning board of appeals.*

*Zoning board of appeals established.*

There is hereby established a zoning board of appeals. Said zoning board of appeals shall consist of seven (7) members appointed by the mayor by and with the advice and consent of the city council of the City of Calumet City.

Each member so appointed shall serve for a term of five (5) years. Vacancies shall be filled in the same manner for the unexpired term. Members may be removed by the city council for cause after written charges have been filed and after a public hearing has been held if demanded by the member so charged.

One (1) of the members of said zoning board of appeals at the time of his appointment shall be designated by the mayor with the consent of the city council, as chairman of said zoning board of appeals and shall hold said office as chairman until a successor is appointed. Such chairman, or in his absence, the acting chairman, may administer oaths and compel the attendance of witnesses.

The zoning board of appeals shall have a secretary and may employ a court reporter who shall make and keep a record of all of its meetings and official acts.

The zoning board of appeals in existence at the time of the passage of this ordinance shall be recognized as the zoning board of appeals established under the provisions of this ordinance, and the members previously appointed under the old ordinance shall be recognized as members thereof, and shall serve for such period of time as designated at time of appointment, the time to run from the date of the original appointment under the old ordinance.

*Jurisdiction.*

The zoning board of appeals is hereby vested with the following jurisdiction and authority:

(a) To hear and decide appeals from any order, requirement, decision or determination made by the zoning administrator under this ordinance;

(b) To hear applications for variations from the terms provided in this zoning ordinance in the manner prescribed by, and subject to, the standards established herein, and make recommendations to the city council regarding such applications.

(c) To review and make recommendations to the city council on certain proposed site plans and landscape plans in accord with subsection 12.9 and 12.10 of this ordinance.

*Meetings.*

All meetings of the zoning board of appeals shall be held at the call of the chairman and at such other times as the zoning board of appeals may determine.

All meetings of the zoning board of appeals shall be open to the public.

The zoning board of appeals shall keep minutes of its proceedings, showing the vote of each member upon every question, or absent or failing to vote, indicating such fact, and shall also keep records of its examinations and other official actions. Findings of fact shall be included in the minutes of each case and the reasons for granting or denying such application shall be specified. Every rule, regulations and every order, requirement, decision, or determination of the zoning board of appeals shall immediately be filed in the office of the executive secretary and shall be of public record.

The zoning board of appeals shall adopt its own rules of procedure and may require submission to each record, plats and other information necessary to make its determination. A copy of said rules and procedure, and all recommendations thereto, and shall be filed in the office of the building commissioner.

The minutes of the zoning board of appeals shall be open to public examination at reasonable hours.

Expenses incurred by the zoning board of appeals are to be itemized and shall be borne by Calumet City.

The building commissioner is authorized to require applicants for building permits as a condition for issuance of said permit to provide reasonable aesthetic and sound barriers between contiguous barriers which have different zoning classifications.

*Finality of decisions of the zoning board of appeals.* Decisions and findings of the zoning board of appeals on appeal from any order, requirement, decision or determination made by the zoning administration shall be final administrative determinations and shall be subject to review by court as by law may be provided.

*12.6 Variations.* *

---

**\*Editor's note:** Section 3 of Ord. No. 00-44 adopted Aug. 24, 2000, states "that all billboards in existence on the effective date of this ordinance are hereby exempt from the requirements of Section 2."

---

*Purpose.* The zoning board of appeals, after a public hearing, may recommend that the city council vary the regulations of this ordinance in harmony with their general purpose and intent, only in the specific instances hereinafter set forth and only where the board of appeals made findings of fact in accordance with the standards hereinafter prescribed, and further finds that there are practical difficulties or particular hardships in the way of carrying out the strict letter of the regulations of this ordinance.

*Application for variation and notice of hearing.*

An application for a variation shall be filed in writing with the city clerk. The application shall contain such information as the zoning board of appeals may from time to time, by rule, require. The city council shall by motion or resolution refer the same to the zoning board of appeals.

The zoning board of appeals shall publish notice of a public hearing on the application for variation, stating the time and place and the purpose of the hearing. Notice shall be published at least fifteen (15) days but not more than thirty (30) days in a paper of general circulation in Calumet City. Notice of the public hearing may be mailed to the petitioner and the owners of all property deemed by the zoning board of appeals to be affected thereby.

The zoning board of appeals shall, within thirty (30) days after the public hearing or hearings, render its recommendation in writing to the owner or applicant and the city council of its action.

*Standards for variations.*

The zoning board of appeals shall not recommend a variance in the regulations of this ordinance, unless it shall make findings based upon the evidence presented to it in each specific case that each and all the standards for hardships set forth in the Illinois Municipal Code are complied with and specifically that:

(a) Because of the particular physical surroundings, shape or topographical conditions of the specific property involved, a particular hardship to the owner would result, as distinguished from

a mere inconvenience, if a strict letter of regulations were carried out.

(b) The conditions upon which the petition for a variation is based are unique to the property for which the variance is sought and are not applicable, generally, to other property within the same zoning classification.

(c) The alleged difficulty or hardship is caused by the ordinance and has not been created by any person presently having an interest in the property.

(d) The granting of the variation will not be detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located.

(e) The proposed variation will not impair an adequate supply of light and air to adjacent property, or substantially increase the congestion in the public streets, or increase the danger of fire, or endanger the public safety, or substantially diminish or impair property values within the neighborhood.

The zoning board of appeals may impose such conditions and restrictions upon the premises benefitted by a variation as may be necessary to comply with the standards established in this subsection, to reduce or minimize the effect of such variation upon other property in the neighborhood and to better carry out the general intent of this ordinance.

*Authorized variation.*

Variations from the regulations of this ordinance shall be recommended by the zoning board of appeals only in accordance with the standards established in the above subsection, and may be granted only in the following instances and in not others:

(a) To permit any yard or setback less than the yard to setback required by the applicable regulations, but by not more than twenty-five (25) percent.

(b) To permit the use of a lot or lots for a use otherwise prohibited solely because of insufficient area or width of the lot or lots but in no event shall the respective area and width of the lot or lots be less than eighty (80) percent of the required area and width. The percentage set forth in this subparagraph is not to be reduced by any other percentage for minimum lot width and area set forth in this ordinance.

(c) To permit the same off-street parking facility to qualify as required facilities for two (2) or more uses, provided the substantial use of such facility by each use does not take place at approximately the same hours of the same days of the week.

(d) To reduce the applicable off-street parking or loading facilities required by not more than one (1) parking space or loading space, or twenty (20) percent of the applicable regulations, whichever number is greater.

(e) To increase by not more than twenty-five (25) percent the maximum distance that required parking spaces are permitted to be located from the use served.

(f) To increase by not more than twenty (20) percent the gross area of any sign.

(g) To increase by not more than ten (10) percent the maximum gross floor area of any use so limited by the applicable regulations.

(h) To exceed any of the authorized variations allowed under this section, when a lot of record or a zoning lot, vacant or legally used on the effective date of this ordinance, is by reason of the exercise of the right of eminent domain by any authorized governmental body or by reason of the conveyance under threat of an eminent domain proceeding reduced in size so that the remainder of said lot of record or zoning lot or structure on said lot does not conform with one (1) or more of the regulations of the district in which said lot of record or zoning lot or structure is located.

The concurring vote of four (4) members of the zoning board of appeals shall be necessary to recommend a variation.

*12.7 Special uses.*

*Purpose.* The development and execution of a zoning ordinance is based upon the division of the city into

districts, within which districts the use of land and buildings and the bulk and location of building and structures in relation to the land are substantially uniform. It is recognized, however, that there are uses which because of their unique characteristics, cannot be properly classified in any particular district or districts without consideration, in each case of the impact of those uses upon neighboring land and of the public need for the particular user at the particular location. Such special uses fall into two (2) categories.

    (a)  Uses publicly operated or traditionally affected with a public interest;

    (b)  Uses entirely private in character but of such an unusual nature that their operation may give rise to unique problems with respect to their impact upon neighboring property or public facilities.

*Initiation of special uses.* Any person owning or having an interest in the subject property may file an application to use such land for one (1) or more of the special uses provided for in this ordinance in the zoning district in which the land is situated.

*Application for special use.* An application for a special use or expansion of a special use shall be filed with the city clerk and shall be accompanied by a site development plan and landscape plan in accord with subsections 12.9 and 12.10 of this ordinance.

*Hearing on application.* Upon receipt of the application referred to above, the zoning board of appeals shall hold at least one (1) public hearing. At least fifteen (15) days in advance of such hearings, but not more than thirty (30) days, notice of time, place and purpose of such hearing shall be published in a newspaper of general circulation in Calumet City.

*Authorization.* For each application for a special use, the zoning board of appeals shall report to the city council its findings and recommendations, including the stipulations of additional conditions and guarantees that such conditions will be complied with when they are deemed necessary for the protection of the public interest. The city council may grant or deny any application for a special use, provided, however, that in the event of written protest against any proposed special use, signed and acknowledged by the owners of twenty (20) percent of the frontage adjacent thereto, or across an alley, or directly opposite therefrom, such special use shall not be granted except by the favorable vote of two-thirds ( 2/3)of all the members of the city council.

*Standards.* No special use shall be recommended by the zoning board of appeals unless said zoning board of appeals shall find:

    (a)  That the establishment, maintenance or operation of the special use will not be unreasonably detrimental to or endanger the public health, safety, morals, comfort or general welfare;

    (b)  That the special use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood;

    (c)  That the establishment of the special use will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district;

    (d)  That adequate utilities, access roads, drainage and/or other necessary facilities have been or are being provided;

    (e)  That adequate measures have been or will be taken to provide ingress or egress so designed as to minimize traffic congestion in the public streets;

    (f)  That the special use shall in all other respects conform to the applicable regulations of the district in which it is located, except as such regulations may in each instance be modified by the city council pursuant to the recommendations of the zoning board of appeals.

*Conditions and guarantees.* Prior to granting any special use, the mayor and city council shall stipulate such conditions and restrictions upon the establishment, location, construction, maintenance and operation of a special use as deemed necessary for the protection of the public interest and to secure compliance with the standards and requirements specified herein, or as may be from time to time required. In all cases in which special uses are granted, the mayor and city council shall require such evidence and guarantees as it maydeem necessary as proof that the conditions stipulated in connection therewith are being, and will be, complied with.

*Effect of denial of a special use.* After a public hearing, no application for a special use which has been denied wholly or in part by the mayor and city council shall be resubmitted for a period of one (1) year from the date of said order of denial, except on the grounds of substantial new evidence or proof of changed conditions found to be valid by the zoning board of appeals, the mayor and city council.

*Termination of special use permit.* If work on the proposed development has not begun within six (6) months from the date of the authorization order of the mayor and city council, the authorization shall become null and void and all rights thereunder shall lapse. Upon written application, filed prior to the termination of the six (6) months time limit, the mayor and the city council may authorize a single extension of the time limit for a further period of not more than one (1) year.

## 12.8 Planned development.

*Purpose.* To encourage the most orderly development of properties through advance planning and thus assure adequate standards for the development of residential neighborhoods; provide regulations to encourage a variety of dwelling types; assure adequate open space; protect residential areas from undue traffic congestion; protect residential areas from the intrusion of business, industrial and other land uses that may create an adverse effect upon the living environment; and thus promote the general welfare of the community.

*Provisions.* The basic provisions and requirements concerning planned developments are as follows: The subdivision, development and use of land as an integral unit, combining more than one (1) primary land use and which may provide for single-family residential, multiple-family residential, education, business, commercial, industrial, recreational, park and common open areas, may be described as planned development.

(a) In its establishment and authorization as a special use, in addition to the foregoing provisions, the following procedures, requirements, restrictions, standards, and conditions shall be observed.

(b) The planned development may be excepted from the provision of the subdivision regulations and of the zoning ordinance of Calumet City to the extent specified in this ordinance and in the final authorization of the planned development.

*Procedure.*

(a) A pre-application conference shall be held with the building department. At such conference the applicant shall provide information as to the location of the proposed planned development, the uses, and approximate area of use category; a list of any and all exceptions to the subdivision and zoning ordinances of Calumet City; and any other information necessary to clearly explain the planned development to the building department.

(1) The building department shall review and consider the proposed as to its compatibility with the comprehensive plan and the goals and policies for planning of Calumet City and advise the applicant on the information, documents, exhibits, drawings, and any limitations on the proposal that should be included in the application to the city for a special use permit for planned development.

(b) The applicant shall request the special use permit, by letter addressed to the Calumet City Zoning Board, to be placed on the agenda of the zoning board for a preliminary discussion of the proposed planned development, and the zoning board shall consider the proposed planned development at such meeting, which may be continued from time to time. The applicant shall present such exhibits and written information as may be necessary to fully acquaint the plan commission with the proposed development which shallinclude, but not necessarily be limited to the following:

(1) A tentative sketch plan, which may be in freehand sketch form, showing the location and extent of the types of land uses proposed.

(2) The existing topography at five (5) foot contour intervals which may be taken from U.S.G.S. information.

(3) Existing streets surrounding the subject property.

(4) Existing utilities including storm drainage facilities.

(5) The following shall be provided by either graphic exhibits or written statement:

The density of residential uses and the number of dwelling units by type;

The ancillary and nonresidential uses to be provided in a residential planned development;

The off-street parking and other service facilities proposed;

The exceptions or variations to the Calumet City zoning or subdivision requirements being requested as part of the planned development application.

(c)  Within thirty (30) days after final adjournment of the meeting, the plan commission shall submit to the mayor and city council a report in writing containing its recommendations.

(d)  The formal petition for a planned development shall be addressed to the mayor and city council and shall be filed with the city clerk; twenty (20) copies of the petition shall be filed with the secretary of the plan commission; attached to each copy shall be copies of the supporting documents and exhibits hereinafter provided for.

(e)  A filing fee in an amount of two dollars ($2.00) per dwelling unit or ten dollars ($10.00) per gross acres, whichever is greater, shall be paid to the city clerk at the time of such filing.

(f)  The city clerk shall set a hearing date which shall be not less than thirty (30) or more than sixty (60) days after the filing of the petition, and shall cause notice of the hearing to be published at least once, not more than thirty (30) days nor less than fifteen (15) days before said hearing date in one (1) or more newspapers of general circulation in Calumet City.

(g)  The city clerk shall forward a copy of the petition to the mayor and to each member of the zoning board of appeals.

(h)  The petition shall be heard by the zoning board of appeals and reviewed by the planning commission and the report of both committees shall be submitted to the mayor and the city council. The report of the findings and recommendations shall be accompanied by such plats, exhibits and agreements as shall have been presented by the petitioner, each identified for reference by letter or number together with any suggested changes therein.

(i)  The mayor and city council may grant a special use for a planned development which shall be by specific ordinance and which shall contain or to which shall be appended all terms and conditions of the special use permit, including covenants and agreements, guarantees, performance bonds, plats and the like.

*Content of petition.*  The formal petition shall contain, in addition to all other requirements, the following:

(a)  A site plan of the planned development. This plan will be at a scale of not less than one inch equals one hundred feet (1" = 100') which shall show all proposed streets (public and private), street classifications, rights-of-way, pavement width of street and driveways, all principal and accessory buildings and their use, lot sizes, building lines, easements for utility services, off-street parking, service areas, open space, recreation facilities and any other information necessary to clearly show the proposed elements of the planned development.

(b)  Preliminary architectural plans for all residential buildings shall be submitted in sufficient detail to show the basic planning, the number of units per building and the number of bedrooms per dwelling unit.

Preliminary architectural plans are not required for business of other nonresidential buildings at the time of this application but must be submitted to the plan commission for its approval prior to filing an application for a building permit.

(c)  A topographic survey with two (2) foot contour intervals and boundary survey of the subject area, prepared and certified by a registered Illinois surveyor.

(d)  A rendered plan of the planned development area showing in contrasting colors or by other means the respective location of all categories of land use.

(e)  A map of Calumet City, Illinois showing the location of the planned development site and its relation to the existing roads and streets and use districts within the immediately adjacent and surrounding area.

(f)  Preliminary plans and outline specifications of the following improvements:

(1)  Roads, streets and alleys, including classifications, width of right-of-way, widths of paved surfaces and construction details.

(2)  Sidewalks, including widths of paved surfaces and construction details.

(3)  Sanitary and storm sewer system.

(4)  Water supply system.

(5)  Street lighting and public area lighting system.

(6)  Recommended installations for electric, gas and telephone facilities and distribution.

(7)  Sequence of phases or stages of development of the planned development.

(8)  A general landscape planting plan shall be prepared by a landscape architect and shall meet the approval of the plan commission.

(g)  Estimates of cost of installation of all proposed improvements, confirmed by a registered Illinois engineer.

(h)  Petitioner's proposed covenants, restrictions and conditions to be established as a part of the planned development.

*Construction of improvements.* The petitioner shall construct and install the required improvements and must post in accordance with the Calumet City Subdivision Control Ordinance.

*Street classifications.* Street classifications, definitions, and specifications, shall be in accord with the regulations pertaining to same as established in the subdivision regulations and the comprehensive plan of Calumet City, Illinois, as may be amended from time to time, as may be modified by the special use permit.

*Standards.* No planned development shall be authorized by the city council unless the plan commission shall find and recommend, in addition to those standards established herein for special uses, that the following standards will be met:

(a)  General.

(1)  The uses permitted by such exceptions as may be requested or recommended are necessary or desirable and appropriate to the purpose of the development.

(2)  The uses permitted in such development are not of such nature or so located as to exercise an undue detrimental influence or effect upon the surrounding neighborhood.

(3)  That any industrial park areas established in the planned development conform to all requirements therefore as set forth elsewhere in this ordinance.

(4)  That all minimum requirements pertaining to commercial, residential, institutional, or other uses established in the planned development shall be subject to the requirements for each individual classification as established elsewhere in this ordinance, except as may be specifically varied in the ordinance granting and establishing a planned development use.

(5)  When private streets and common driveways are made a part of the planned development or private common open space or recreation facilities are provided, the applicant shall submit as part of the application, the method and arrangement whereby these private facilities shall be operated and maintained. Such arrangements for operating and maintaining private facilities shall be subject to the approval of the mayor and city council.

(b)  Residential.

(1)  Residential density for a planned development shall not be greater than that specified in each use district for planned developments, nor shall any lot to be used for residential purposes be less in area or dimension than that required by the district regulations applicable to the district in which the planned development is located as specified in said district for planned developments. The plan commission may recommend and the mayor and city council may grant a reduction in such lot area and dimension, but not more than twenty (20) percent when the planned development provides common open space equal to not less than ten (10) percent of the gross area of the planned development.

(2)  Business uses may be included as part of a planned residential development when the plan commission finds that such business uses are beneficial to the overall planned development and will not be injurious to adjacent or neighboring properties. Such business uses shall not be greater in area than ten (10) percent of the planned development.

(3)  The open areas provided in the part of the planned development containing only residential structures shall be preserved over the life of the planned development for use only by the residents of the planned development or dedicated to Calumet City, Illinois for school, park playground or other public uses by an instrument or guarantee acceptable to the mayor and city council.

(4)  For that part of a planned development devoted to residential uses, the plan commission may recommend and the mayor and city council may approve, access to a dwelling by a driveway or pedestrian walk easement, and spacing between buildings of lesser widths or depths than required by district regulations for the district in which the planned development is located, provided:

That adequate provisions are made which perpetuate during the period of the special use, access easements and off-street parking spaces for use by the residents of the dwellings served;

The spacing between buildings shall be approved by the plan commission and shall be consistent with the application of recognized site planning principles for securing a unified development, and due consideration is given to the openness normally afforded by intervening streets and alleys. Minimum side yards between principal buildings within a part of a planned development where subsequent transfer of ownership is contemplated, shall be equivalent to side yards as would be required between buildings by district regulations for the district in which it is located; and

The yards for principal buildings along the periphery of the development shall be not less in width or depth than required for permitted uses in the district regulations applicable to the districts in which the planned development is located, and the plan is developed to afford adequate protection to neighboring properties as recommended by the zoning board and approved by the mayor and city council.

(c)  Variations of minimum requirements.

(1)  Residential. Wherever the applicant proposes to provide and set out, by platting, deed, dedication, restriction, or covenant, any land or space separate from single-family or multiple-family residential districts, to be used for parks, playgrounds, commons, greenways, or open areas, the zoning board, may consider and recommend to the mayor and the city council, and the mayor and city council may vary the applicable minimum requirements of the subdivision regulations and the zoning ordinance which may include but necessarily be limited to the following:

Rear yard.

Side yard.

Lot area.

Bulk.

Intensity of use.

Street width.

Sidewalks.

Public utilities.

Off-street parking.

(2)  Business.

Business uses shall be as prescribed by the zoning board.

All business and storage of materials shall be conducted or stored within a completely enclosed building.

Not more than thirty (30) percent of the lot area shall be covered by buildings or structures.

At least ten (10) percent of the lot shall be provided for landscape and open space purposes.

Off-street parking shall be provided and maintained on the same lot based upon three (3) square feet of parking space for each square foot of gross floor area unless the building commissioner recommends and the mayor and city council approves additional off-street parking space.

Service and loading and unloading facilities shall be provided as recommended and approved by the building commissioner.

No building shall be located nearer than fifty (50) feet to any street line.

Business developments shall be adequately screened by fencing or landscaping or both along the boundaries of adjacent residential, public open space, schools, churches, or other similar uses. The screen planting shall be prepared by a landscape architect and shall meet the approval of the building commissioner.

Outside lighting shall be so designed and placed so as to not be disturbing to adjacent residential areas.

Signs shall comply with the regulations of the business uses permitted in this ordinance.

*12.9 State Street—State Line Road Redevelopment Area site development plan review.*

(1)  Authority. The city council and the city council committee on development, subject to the procedures provided herein, have the authority to approve or disapprove site development plans required to be submitted for approval under this section.

(2)  Purpose. Site plan review and approval is required to ensure that the use and development of land within the State Street—State Line Road Redevelopment Project Area is undertaken in an orderly and proper manner which furthers the public health, safety and welfare and makes adequate provision to ensure the available of appropriate public and private services and amenities and for minimizing the adverse effects of such development.

The design, orientation and location of open spaces, buildings, structures and signs visible from public streets, places and ways has a material and substantial relationship to property values and the taxable values of property in the city and the cost of the municipal services provided thereto. Further, many neighborhoods in other urban and suburban communities have deteriorated in the past by reason of the lack of planning, neglect of proper maintenance standards and the erection of buildings and structures unsuitable to and incompatible with the character of the neighborhood or area, resulting in a reduction in property values.

Therefore, it is the policy of the city that these regulations be adopted to arrest and prevent deterioration of the function, character and appearance of the State Street and State Line Road Redevelopment Area; provide a favorable environment for residents and businesses; and preserve and enhance the general public welfare.

(3)  Approved plan, when required.

Site plan approval shall be required for any nonresidential development within the State Street—State Line Road Redevelopment Area, as illustrated in Figure 1, and under the following intended situations:

(a)  Any new principal structure intended and designed for nonresidential occupancy (or complete redevelopment of any site for nonresidential use) or the use of land for nonresidential purposes.

**GRAPHIC LINK:Figure 1, State Street - State Line Road Redevelopment Area**

(b)  Where an existing principal structure erected prior to the date of adoption of these site plan requirements is proposed to be expended, for which the sum total of gross floor area expansion(s) since the date of these requirements are equal to or greater than thirty-five (35) percent of the total gross floor area of said structure.

(c)  Any new or modified building and/or site improvements for a zoning lot which has previously received site plan approval under this ordinance. Reapproval of the plan is required for components of the plan which depart from the approved site plan. The extent of changes to be incorporated in the

submittal for reapproval shall be determined by the building commissioner.

(d) A site plan shall not be required as a result of a change of use, except where such change of use results in increased off-street parking requirements which are not currently met on the site.

(e) A site plan shall be required along with any application for a special use permit or a special use permit amendment for any nonresidential development.

(f) These requirements exclude the legal reconstruction of legally nonconforming buildings, when such buildings and related improvements are substantially restored consistent with their prior condition.

Site plan review is not required as part of planned development approval (subsection 12.8), but may apply to development of individual sites following approval of a special use planned unit development, as controlled by the ordinance granting planned development approval.

(4) Initiation. Plan approval shall be initiated by the owner of the property, or the owner's agent, for which plan approval is sought.

(5) Procedure for initiation.

(a) The owner of the property for which a zoning map amendment or a special use permit is sought (requiring site plan approval under subsection (3) above) shall file an application for site plan approval along with such application for an amendment or special use permit.

(b) The owner of the property for which a building permit is sought (requiring site plan approval under section (3), above) and which development has not been approved under the requirements of this section, shall file an application for site plan approval along with an application for such building or zoning permit.

(c) The owner of the property, or a duly authorized representative of the owner, shall file an application for site plan approval with the building commissioner, or his/her designee. It shall be accompanied by a nonrefundable fee established from time to time by the city council and shall contain the following information:

1. Name, address and telephone number of the applicant including the name and address of each person or entity owning an interest in the applicant or owner and the extent of such ownership interest unless any of such entities is a corporation or a partnership, in which case only those persons owning an interest in excess of ten (10) percent in such corporation or partnership need be identified by name, address and extent of interest. For purposes of this section, the term ownership interest shall include any legal or equitable interest held at the time of the application in the real property which is the subject of the application. The application shall include the signature of the owner(s).

2. A site plan containing the information required by subsection (6), below.

(6) Contents of a site plan application. The application shall include the following information and material for sites and development projects which have not received site plan approval under this ordinance or prior to the adoption of this ordinance. For those sites and development projects which have received site plan approval subsequent to the adoption of this ordinance (excluding P.U.D.s) which require reapproval as a result of a change in planned conditions, the building commissioner is authorized to waive requirements in this section which are not affected by or do not apply to the proposed change:

(a) Site plan application.

1. A completed application form provided by the building department.

2. Each application associated with a map zoning amendment or special use permit shall provide nineteen (19) copies of all full-size documents and drawings. For applications associated with an application for a building permit or zoning permit approval, twelve (12) copies of all full-sized documents and drawings shall be submitted. For all graphic and plan drawings, a scale of not less than one (1) inch equals one hundred (100) feet shall be used. In no event shall individual sheets or drawings exceed thirty (30) inches by forty-two (42) inches. In addition, one (1) set of reduced copies sized at eleven (11) inches by seventeen (17) inches shall be submitted.

3. The names and addresses of the persons responsible for preparing the plan.

4. The present zoning of the site and adjoining property.

5. Any other information that may reasonably be required by the city council, city council committee on development, or the zoning board of appeals, as the case may be, which may include, but is not limited to, the following:

    a. A traffic study.

    b. In the case of a map amendment or special use, an analysis of the need and demand for the proposed use and the impact of the proposed use on the value of adjoining and nearby properties.

    c. A fiscal impact analysis.

(b) An existing conditions map shall show the location, dimensions, size and height of the following, as applicable:

1. Sidewalks, streets, alleys, easements and utilities, including street lighting and underground conduits for street lighting.

2. Buildings and structures.

3. Septic fields, wells and public sewer and water systems.

4. Driveways, entrances, exits and parking areas.

5. Water mains and fire hydrants.

6. Natural and artificial watercourses and bodies of water and wetlands.

7. Limits of floodplains, if any.

8. Areas that can reasonably be expected to or which do contain soils or materials contaminated with any toxic or hazardous materials.

9. Underground storage tanks, if any.

10. The topography of existing ground and paved areas. Topography is to be shown by dashed lines illustrating one (1) foot standard contour intervals and by spot elevations where necessary to indicate flat areas.

11. General alignment and lengths of all streets and all property lines.

12. All building restriction lines, highway setback lines, easements, covenants, reservations and rights-of-way.

13. Date, scale and north point.

(c) A site plan shall be prepared to show the general location, dimensions, size and height of the following regarding the proposed development:

1. For a site plan which includes any existing structures or other improvements, an indication of those improvements that are to remain and those which will be removed.

2. Sidewalks, streets, alleys, easements and utilities, including any street lighting.

3. Buildings and structures with entrances and exits identified.

4. A general utility plan for water and for sewage disposal.

5. Slopes, terraces and retaining walls.

6. Driveways, entrances, exits, parking areas and sidewalks.

7. Water mains and fire hydrants.

8. Natural and artificial watercourses and bodies of water and wetlands.

9. Distances between buildings.

10. Calculations of the following, as applicable:

    a. Square footage of nonresidential structures/uses;

    b. Number of parking spaces;

    c. Number of loading spaces;

    d. Total land area;

    e. Total landscaped area;

    f. Total open space;

    g. Total impervious surface.

11. Tentative plans for collecting and depositing storm water and the method of treatment of natural and artificial watercourses, including a delineation of proposed limits of floodplains, if any.

12. A general indication of proposed grading, surface drainage, terraces, retaining wall heights, grades on paved areas and ground floor elevations of proposed buildings and structures.

13. A landscape plan showing the location, names and area coverage of trees, shrubs and ground cover to be planted in accordance with subsection 12.10.

14. Plans to remediate, remove, or control on site any contaminated soils, materials, underground storage tanks, etc.

15. Plans for minimizing or mitigating the impact on existing wetlands, if any.

16. Proposed locations and methods of enclosing refuse disposal systems.

17. A light plan indicating all exterior building-mounted and freestanding lights and structures including overall height, type of lamp, luminaries.

18. General exterior building elevation of all proposed structures and exterior elevations of existing buildings when existing buildings are proposed to be structurally altered.

(7) Agreement of owner. All documents and information submitted as part of an application for site plan approval constitute a statement by the applicant that he or she intends and agrees to be bound to develop in accord with such information upon approval.

(8) Notice requirements. Site plans do not require any form of public notice; however, a site plan application concurrently filed with an application for a zoning map amendment or an application for a special use permit shall state that site plan approval is sought as part of the public notice in addition to the requested map and/or special use permit amendment.

(9) Procedure for decisions. Plans which are filed with an application for a zoning map amendment or with an application for a special use permit shall be processed as a part of the amendment or special use petition. All other site plans shall be approved under the following procedure.

    (a) Action by city council committee on development. Within sixty (60) days of the date that the site plan application was filed, the item shall appear on the agenda of the city council committee on development. The city council committee on development shall approve or deny the site plan. Approval shall be made upon action by a majority vote of those committee members present.

(10) Standards for plans. In reaching a decision to approve or disapprove a site plan, the following factors listed below, as applicable to a given plan, should be considered.

    (a) The application shall comply with the provisions of this ordinance and other ordinances of the city and of any other applicable laws.

    (b) Reasonable provision shall be made to ensure that development will be served by essential public facilities and services such as highways, streets, parking spaces, police and fire protection, drainage structures, refuse disposal, water and sewers.

    (c) Any building or structure shall be reasonably accessible to fire, police, emergency and service vehicles. When deemed necessary for access, emergency vehicle easements shall be provided. The access for fire, police and emergency vehicles shall be unobstructed at all times.

(d)  Streets and sidewalks shall, insofar as reasonably practicable, provide access and good traffic circulation to and from adjacent lands, existing streets and sidewalks.

(e)  Provision shall be made to ensure that adequate access roads or entrance or exit drives will be provided and will be designed and improved so as to prevent traffic hazards or problems and to minimize traffic congestion in public streets.

(f)  Plans have demonstrated the ability to provide for the adequate collection and disposition of all on- and off-site storm water and natural water, including but not limited to on-site drainage retention facilities.

(g)  Adequate provision shall be made to clean, control and otherwise alleviate contamination or environmental hazards on land when the site is in an area found by the city to be contaminated by a toxic substance or otherwise to contain environmental hazards which are detrimental to the public health, safety and welfare.

(h)  Adequate provision shall be made to avoid glare of vehicular and stationary lights that would affect the established character of the neighborhood, and to the extend such lights will be visible across from any property line, the performance standards for illumination shall be met.

(i)  Adequate provision shall be made to ensure that the location, lighting and type of signs and the relationship of signs to traffic control is appropriate for the site and will not have an adverse affect on any adjacent properties.

(11)  Conditions on plans. The city council, or city council committee on development, as appropriate, in consideration of any site plan, may impose certain conditions in granting plan approval to minimize any negative impacts or minimize any adverse impacts due to the development.

(12)  Modifications of plans. Changes to site plans require reconsideration and reapproval by the city council or the city council committee on development, as provided in this subsection.

(13)  Lapse of approval. Unless the city council, or the city council committee on development, as appropriate, provides otherwise, or unless the city council has extended the term of site plan approval, plan approval shall automatically lapse one (1) year after the date of approval of the plan, unless a building permit has been issued and construction commenced.

*12.10 Landscape plan approval.*

(1)  Purpose. The landscaping, screening and site design requirements specified herein are intended to foster aesthetically pleasing and functional development. The regulations are intended to increase the compatibility between adjacent land uses and accessory structures and uses within and between developments within the State Street–State Line Road subarea. The requirements serve to minimize impacts from noise, dust, debris and motor vehicle headlight glare to surrounding land use areas.

(2)  Landscape plans, when required. Landscaped plans shall be required for all developments requiring site plan approval (under subsection (9) above) for land located within the State Street–State Line Road Redevelopment Area, as illustrated in Figure 1.

The procedure for landscape plan approval shall follow the procedure for site plan approval. When required, landscape plans shall be prepared in accordance with the requirements of this subsection.

(3)  Submission requirements. Each application association with a map zoning amendment or special use permit shall provide nineteen (19) copies of all full-sized documents and drawings. For applications associated with an application for a building permit or zoning permit approval, twelve (12) copies of all full-sized documents and document and drawings shall be submitted. For all graphic and plan drawings, a scale of not less than one (1) inch equals one hundred (100) feet shall be used. Preferably, the scale of landscape plans shall be the same as the accompanying site plan. In no event, however, shall individual sheets or drawings exceed thirty (30) inches by forty-two (42) inches. In addition, one (1) reduced set of plans to eleven (11) inches by seventeen (17) inches shall be submitted.

(4)  Requirements for a landscaping plan. A landscape plan shall include the following elements:

(a)  A completed application form and appropriate fee.

(b)  Consistent with the site development plan, the locations and dimensions of all existing and/or

proposed parking lots, drives, roadways, and rights-of-way, sidewalks, bicycle paths, free-standing signs, refuse disposal areas, bicycle parking areas, free-standing electrical equipment, free-standing signs, building-mounted, heating, ventilating and air circulation equipment, and all fences.

(c)   Species, planting size and location of proposed plant material required under this subsection.

(d)   Illustrations indicating the proposed locations and methods for screening for refuse disposal areas.

(e)   The location of all off-street loading areas, including an indication whether loading docks will be enclosed and methods of proposed screening.

(f)   The location and placement of sprinkler heads of any proposed irrigation system.

(g)   The following calculation, in square feet, displayed on the landscape plan:

    1.   Total site area;

    2.   Total area devoted to off-street parking (including access drives);

    3.   Total area devoted to impervious surfaces;

    4.   Total landscaped area;

    5.   Total parking lot landscaped area;

    6.   Total internal landscaping.

(h)   Any other plan documentation requirements, including elevations, cross-sections and other plan details as deemed necessary by the building commissioner.

(4.1)   Requirements for interior parking lot landscaping.

(a)   Applicability. Parking lot landscaping shall apply to all nonresidential development within all residential zoning districts and shall meet the requirements of this section. Interior parking lot landscaping shall apply to developments requiring eight (8) or more off-street parking spaces.

(b)   Interior parking lot landscaping.

    1.   Coverage. Not less than five (5) percent of the interior of a parking lot shall be devoted to landscaping. The "interior" of a parking lot shall mean the area encompassed between the backs-of-curbs or edge of pavement encompassing the drives and parking area serving the site. Perimeter landscaping islands penetrating the parking area may count toward the five (5) percent minimum landscaping requirement, provided all other requirements are met. Transitional yards shall not count toward parking lot landscaping.

    2.   Landscape areas. Interior parking lot landscaping is intended to be distributed throughout the parking lot. The design should facilitate pedestrian access through the site and seek to separate vehicle traffic from pedestrian traffic.

    3.   Landscaping material.

        a.   Type. The primary landscaping materials used in parking lots shall be shade trees which provide for shade. Ornamental trees, shrubbery and other live planting material may be used to supplement shade trees.

        b.   Quantity. One (1) large to medium shade tree shall be provided for each one hundred eighty (180) square feet of landscaped area.

        c.   Ground cover. A minimum of seventy-five (75) percent of each interior parking lot landscaping area shall be composed of live landscape material.

(5)   Requirements for perimeter parking lot landscaping.

(a)   Applicability. Perimeter parking lot landscaping shall be required except where parking lots are adjacent to a required transitional yard. Perimeter parking lot landscaping shall apply to all off-street parking areas regardless of size.

(b)   Landscaping.

    1.   Planting material.

Across from or adjoining a nonresidential property. Where a parking lot is located across a dedicated public right-of-way from or adjoins property zoned for a nonresidential use, or is designated for nonresidential use in the State Street--State Line Road Implementation Plan, landscaping shall be provided across fifty (50) percent of the street frontage to a minimum of three (3) feet in height. Such landscaping shall consist of shrubbery.

Across from a residential property. Where a parking lot is located across a dedicated public right-of-way from property zoned for a residential district, or is designated for a residential use in the State Street--State Line Road Implementation Plan, landscaping shall be provided across one hundred (100) percent of the parking lot perimeter facing the public street (except for intersecting drives, signs and other obstructions to landscaping) to a minimum of three (3) feet in height. Such landscaping shall consist of shrubbery.

2.  Ground cover. Except where occupied by planting beds, all perimeter parking lot landscaped areas located in a front yard shall be seeded or sodded.

(6)  Requirements for transitional yards.

(a)  *Applicability.* Transitional yards are intended to provide a physical separation between potentially incompatible land uses. In all cases where a transitional yard is required, the requirements of this section shall substitute for any parking lot screening requirement along the portion of any affected yard.

Screening is required within the transitional yard(s) of a nonresidential development where the nonresidential development directly adjoins a residential district or land designated for residential use in the State Street--State Line Road Implementation Plan. This requirement does not apply to a nonresidential development which lies across public street right-of-way of land zoned or designated in the State Street--State Line Road Implementation Plan for residential use. This requirement does apply to a nonresidential development which lies across public alley right-of-way of land zoned or designated in the State Street--State Line Road Implementation Plan for residential use.

(b)  Screening requirements in the B, B-2, and B-3 zoning districts. A screen shall consist of a solid fence, wall, or landscaping, or a combination thereof to provide a year-round solid visual screen at a minimum height of six (6) feet. Building walls of principal structures may substitute for fencing and/or landscaping, provided such walls are greater than six (6) feet in height, are located within five (5) of the property line along the transition yard, and when combined with any other screening materials, establish a continuous screen along the entire width of the yard.

Where landscaping is utilized as screening in a transitional yard, the minimum dimension of any planting area shall be five (5) feet for shrubs and seven (7) feet for trees.

(c)  Screening requirements in the OR, M-1 and M-2 districts

(1)  Screening and berming.

a.  Screening. Screening shall consist of solid fences, decorative walls, or landscaping or any combination thereof, and shall be used to provide a year-round solid visual screen to a minimum height of six (6) feet.

b.  Berming. Transition yards may include earth berms. The design of berms is encouraged to provide a change in topographical orientation ad undulation. Side slopes are preferred at a ratio of four to one (4:1), although a maximum side slope of three to one (3:1) is permitted. Plantings placed on top of berms are restricted to species compatible with the terrain.

(7)  Tree preservation. For landscape plans which propose to preserve existing trees, the methods which are to be used to preserve those trees shall be clearly specified in the landscape plan. If, in the opinion of the building commissioner, the necessary precautions, as specified in the tree preservation plan for the development, were not undertaken before or during construction to ensure the preservation of those trees, the land development permit for the parcel shall not be issued or, if previously issued, may be revoked until such time as these precautions have been complied with. The following precautions shall be taken in connection with new development proximate to existing trees:

(a)  Grading and construction equipment. All grading and construction equipment shall not encroach

upon the trees' drip lines.

(b)   Materials detrimental to trees. Crushed limestone and other materials detrimental to trees shall not be dumped within the drip line of any trees nor at any higher location where drainage toward the tree could conceivably affect the health of the tree.

(c)   Installation of snow fencing. Snow fencing shall be installed at the periphery of the trees' drip lines.

(8)   Screening and landscaping requirements for building appurtenances and related elements.

(a)   Exterior electrical and utility equipment. All ground-mounted electrical and utility-related connection and service boxes shall be effectively screened with shrubbery or other forms of living plant material to a minimum of fifty (50) percent opacity at the time of planting. Alternative methods of screening may be approved by the building commissioner where it is found that the size or positioning of the equipment to be screened presents unique conditions or difficulty in accomplishing the intent of this paragraph. This provision is not intended to apply to individual service pedestals less than twelve (12) inches by twelve (12) inches.

(b)   Free-standing signs. All free-standing sign locations shall provide for landscaping around the base of the sign a minimum of two (2) feet from any portion of the base of the sign. Landscaping shall include shrubbery or annual flowering plant material or other plant material.

(9)   Minimum planting requirements.

(a)   Minimum planting sizes shall be as follows:

1.   Large deciduous shade trees--Three (3) inches caliper as measured six (6) inches above ground.

2.   Medium deciduous shade trees--Two and one-half (2.5) inches caliper as measured six (6) inches above ground.

3.   Small deciduous and ornamental trees--Eight (8) feet in height, with the exception of true dwarf species.

4.   Evergreens--Six (6) feet in height.

5.   Shrubs--Twenty-four (24) inches.

6.   Ground cover plants, whether in the form of crowns, plugs or containers, shall be planted in numbers appropriate by species to provide fifty (50) percent surface coverage after one (1) growing season.

(b)   Methods of determining planting sizes shall be as follows: This section outlines acceptable specifications for shade trees and flowering trees.

1.   Shade and flowering trees. In size grading baled and burlapped trees, caliper size shall take precedence over tree height. For purposes of simplicity, only one (1) size per "grade" will be listed. That size will be the minimum size allowable for that grade and shall include plants from that size up to but not including the next larger grade size. (Example: Acer rubrum, two (2) inch caliper. This could include Acer rubrum calipering two (2) inches up to but not including two and one-half (2 1/2) inches in caliper, measured six (6) inches above the ground line.)

The caliper of the trunk shall be taken six (6) inches above the ground up to and including four (4) inch caliper size, and twelve (12) inches above the ground for larger sizes. Seldom are tree trunks perfectly round. Therefore, caliper measurement may be taken with "slot" type caliper, "pincer" type caliper, or diameter tape.

2.   Conifers and evergreens. For purposes of simplicity, only one (1) size per "grade" will be used. That size will be the minimum size allowable for the grade, and the grade shall include plants from that size up to but not including the next larger grade size. (Example: Taxus media "Brownii" fifteen (15) inches. This could include Taxus media "Brownii" fifteen (15) inches in height up to but not including eighteen (18) inches and having a minimum spread of twelve (12) inches.)

The following height measurement units shall apply: Three-inch intervals up to eighteen (18) inches in height. Six-inch intervals from eighteen (18) inches to four (4) feet one (1) foot

intervals greater than four (4) feet.

3. Deciduous shrubs. This section outlines acceptable specifications for deciduous shrubs, dwarf and semi-dwarf shrubs and strong growing shrubs.

For purposes of simplicity, only one (1) size per "grade" will be used. That size will be the minimum size allowable for that grade, and the grade shall include plants from that size up to but not including the next larger grade size. (Example: Forsythia, two (2) feet. This could include Forsythia plants with not less than three (3) two 920 foot canes up to but not including four (4) three-foot canes.)

Dwarf and semi-dwarf shrubs. Determine height in inches up to twenty-four (24) inches; above twenty-four (24) inches determine height in feet. Grade in three-inch series to eighteen (18) inches, six-inch series eighteen (18) to twenty-four (24) inches. (example 12 in.; 15 in.; 18 in.; 2 ft.; 2 1/2 ft.)

Strong growing shrubs. Determine height in six-inch series up to twenty-four (24) inches tall (example: 12 in., 18 in.); over twenty-four (24) inches, measure in single feet up to six (6) feet tall; over six (6) feet; measure in two (2) foot increments. (Example: 5 ft., 6 ft., 8 ft., 10 ft.)

(c) Ground cover specifications. All open areas of the development which are not paved, sodded or otherwise landscaped shall have a new lawn established through seeding.

(10) Plant material, prohibited plant varieties.

(a) The following plants are restricted from use in any areas covered by this ordinance.

TABLE INSET:

| Common Name | Scientific Name |
| --- | --- |
| **Large Trees** | |
| **Weeping Willow** | **Salix alba** |
| **Poplars (except Cottonless Cottonwood)** | **Populus alba and others** |
| **Box Elder** | **Acer negundo** |
| **Tree of Heaven** | **Ailanthus altissima** |
| **Chinese Elm** | **Ulmus siberica** |
| **Female Ginkgo** | **Ginkgo bibola female** |
| **Mulberry** | **Morus alba and others** |
| **Black Locust** | **Robinia pseudoacacia** |
| **Sycamore** | **Platanus occidentalis** |
| **Seedling Form Soft (Silver) Maple** | **Acer Saccharinum** |
| **(improved forms are allowed)** | |
| | |
| **Medium Trees** | |
| **All fruit trees** | |
| **Russian Olive** | **Elaeagnus angustifolia** |
| **Shrubs** | |
| **Common Buchthorn** | **Rhamnus cathartica** |
| **Fall Honeysuckle** | **Lonicera maacki** |
| | **podocarpa** |
| **Tatatian Honeysuckle** | **Lonicera tatarica** |

(11) Landscaping maintenance. Trees, shrubs, and other landscaping materials depicted on landscaping plans approved by the city shall be considered to be elements of the project in the same manner as parking, building materials and other details. The developer, its successor and/or subsequent owners and their agents shall be responsible for maintenance of landscaping on the property on a continuing basis for the life of the

development. Plant materials which exhibit evidence of insect pests, disease and/or damage shall be appropriately treated, and dead plants promptly removed and replaced within the next planting season after installation. All landscaping will be subject to periodic inspection by the building commissioner, or his or her designee. Should landscaping not be installed, maintained and replaced as needed to comply with the approved plan, the owner and its agent or agents shall be considered in violation of the terms of the certificate of occupancy. The building commissioner is empowered to enforce the terms of this article.

(a)  As a condition to issuance of a certificate of occupancy, a cash escrow or irrevocable letter of credit in the amount of twenty-five (25) percent of the initial landscaping costs shall be posted to ensure the needed replacement of materials and the continued maintenance of the same for a period of two (2) years after initial installation. Said cash escrow or irrevocable letter of credit may be forfeited if the necessary maintenance and replacement has not been performed in a satisfactory manner within the two (2) year period. Further, should it be determined that the landscaping as approved on the landscaping plan is not being maintained as specified beyond the initial two (2) year maintenance period, resubmission of the approved plan and the posting of an additional maintenance escrow may be required by the city.

(12)  Administrative relief. A written application for administrative relief of [from] the requirements of subsections (4), (5) and (6) may be filed with the building commissioner as part of an application for landscape plan approval. Nineteen (19) copies of the application and all supporting documentation shall be submitted. Such application shall be submitted with the landscape plan and demonstrate the following:

(a)  The strict application of the regulation in question is unreasonable given the development proposal or the measures proposed by the applicant, or, that the property has extraordinary or exceptional physical conflicts that do not generally exist in nearby properties in the same zoning district and such conditions will not allow a reasonable use of the property in absence of relief.

(b)  Dependent upon the approval process under which the application for relief is sought, the approving authority shall make the final decision upon whether any relief from these requirements may be approved.

(c)  In granting any administrative relief, the city council, or city council committee on development, may require alternative improvements, or stipulate such conditions as appropriate.

(13)  Effect of approval; plan revisions. An application may be made following the initial submission of a landscape plan to propose alternatives or changes to the approved plan or any plans pending approval, or as may be requested by the city. Any alterations or changes to a plan document upon resubmission to the building commissioner shall include plan copies required under subsection (3), above together with a written statement indicating all changes made and a revision block on the face of the plan(s) indicating each date of revision.

All plan changes shall be represented on the face of the plan(s) by notation encompassing the area of change and with reference to the written statement of changes. Except where changes are noted, the content of the plan is presumed to be that of the last plan accepted by the building commissioner. The building commissioner may reject any plan changes where insufficient documentation of the location and nature of the change(s) lends the proposed revisions uninterpretable.

Any proposed changes to a landscape plan following final action on the plan shall constitute a new application subject to the procedures and requirements of this subsection.

(Code 1980, App. B, § XII; Ord. No 96-30, § 1(Exh. A), 5-23-1996; Ord. No. 00-44, § 2, 8-24-2000)

 **Cross references:** Administration, ch. 2.


# Sec. XIII. Amendments.

The zoning board of appeals of Calumet City, which has been duly created by the mayor and city council, shall have the authority, responsibility and duties as set forth herein.

*13.1 Jurisdiction.*

To hear and report findings and recommendations to the mayor and city council on all applications for

amendments and special use permits in the manner prescribed by standards and other regulations set forth herein;

To initiate, direct and review, from time to time, studies of the provisions of the ordinance, and to make reports of its recommendations to the mayor and the city council not less frequently than once each year; and

To hear and decide all matters upon which it is required to pass under this ordinance.

## 13.2 Meetings and rules.

All meetings of the zoning board of appeals shall be held at the call of the chairman and at such time as the zoning board of appeals may determine. In all official proceedings, the chairman, or in his absence, the acting chairman of the zoning board of appeals, shall have the power to administer oaths and compel by subpoena the attendance and testimony of witnesses and the production of books and papers. The zoning board of appeals shall keep minutes of its proceedings, showing the vote of each member upon each question, or if absent or failing to vote, indicating such fact, and shall also keep records of its hearings and other official actions. A copy of every rule or regulation, every appearance, variation and every recommendation, order, requirement, decision or determination of the zoning board of appeals shall be filed immediately in the office of the city and shall be a public record. The zoning board of appeals shall adopt its own rules and procedures, not in conflict with this ordinance or with applicable Illinois Statutes. All hearings shall be open to the public.

## 13.3 Initiation of amendment.

Amendments may be proposed by the mayor or the city council, the zoning board of appeals, or any property owner.

## 13.4 Processing application for amendment.

*[Filing application.]* An application for an amendment shall be filed with the city clerk. The application shall be accompanied by such plans and data and other such information, as specified by the zoning board of appeals, and shall include a statement in writing by the applicant and adequate evidence showing that the proposed amendments will conform to the standards set forth herein. The application shall be accompanied by a site development plan and landscape plan in accord with subsections 12.9 and 12.10 of this ordinance. Copies of such application shall be forwarded by the city council to the zoning board of appeals with the request to hold a public hearing.

*Notices.* In addition to the notice requirements otherwise provided for in this ordinance, an applicant for amendment shall serve written notice not less than fifteen (15) days before the date set for hearing either in person or by registered or certified mail, return receipt requested, on the owners, as recorded in the office of the recorder of deeds or the registrator of titles of the county in which the property is located and as appears from the authentic tax records of such county, of all property within three hundred (300) feet in each direction of the location for which the amendment is requested; provided the number of feet occupied by all public roads, streets, alleys and other public ways shall be excluded in computing the three hundred (300) feet requirement. The notice herein required shall contain the address of the location for which the amendment is requested, a brief statement of the nature of the requested amendment, the name and address of the legal and beneficial owner of the property for which the amendment is requested, a statement that the applicant has filed an application for amendment and the date, time and place set for hearing on said application. If, after a bona fide effort to determine such address by the applicant for amendment, the owner of the property on which the notice is served cannot be found at his last known address, or the mailed notice is returned because the owner cannot be found at the last known address, the notice requirements of this ordinance shall be deemed satisfied. In addition to serving the notice herein required, at the time of hearing on the application, the applicant shall furnish to the board of appeals a complete list containing the names and last known addresses of the owners of the property required to be served, the method of service and the names and last known addresses of the persons so served. The applicant shall also furnish a written statement certifying that he has complied with the requirements of this ordinance. The board of appeals shall hear no application for amendment unless the applicant for said amendment furnishes the list and certificate herein required.

*Publication.* The zoning board of appeals shall cause a notice of time, place and purpose of such hearing to be published in a newspaper of general circulation within the City of Calumet City not more than thirty (30) days nor less than fifteen (15) days in advance of such hearing.

*Hearing on application.* Upon receipt in proper form of the application and statement referred to above, the zoning board of appeals shall hold at least one (1) public hearing on the proposed amendment. However, the zoning

board of appeals may continue from time to time the hearing without further notice being published.

*Findings of fact and recommendation of the zoning board of appeals.* Within forty-five (45) days after the close of the hearing on a proposed amendment, the zoning board of appeals shall make written findings of fact and shall submit same, together with its recommendations to the mayor and city council. Where the purpose and effect of the proposed amendment is to change the zoning classification of particular property, the zoning board of appeals shall make findings based upon the evidence presented to it in each specific case with respect to the following matters:

(1)  Existing uses of property within the general area of the property in question;

(2)  The zoning classification of property within the general area of the property in question;

(3)  The suitability of the property in question to the uses permitted under the existing zoning classification; and

(4)  The trend of development, if any, in the general area of the property in question, including changes, if any, which have taken place since the day the property in question was placed in its present zoning classification.

*13.5 Decisions.*

Action by the zoning board of appeals:

(1)  The zoning board of appeals may hear a request for any change in zoning and may recommend a zoning classification more restrictive than that requested.

(2)  A concurring vote of a majority of those members present at the meeting with a minimum of three (3) concurring votes shall be required to recommend granting or denying an application for an amendment.

(3)  The report to the city council shall contain number present and number of votes for or against the motion.

Action by the mayor and city council:

(1)  The mayor and city council, upon receiving the recommendations of the zoning board of appeals, may grant or deny any proposed amendment in accordance with applicable Illinois Statutes, or may refer it back to the zoning board of appeals for further consideration.

(2)  In the event of written protest against any proposed special use, signed and acknowledged by the owners of twenty (20) percent of the frontage adjacent thereto, or across an alley, or directly opposite therefrom, such special use shall not be granted except by the favorable vote of two-thirds ( 2/3) of all the members of the city council.

(3)  If an application for a proposed amendment is not acted upon finally by the city council within six (6) months of the date upon which such application is received by the mayor and city council, it shall be deemed to have been denied.

(Code 1980, App. B, § XIII; Ord. No. 96-30, § 1(Exh. A), 5-23-1996)

## Sec. XIV. Violations: penalty.

Any person, firm or corporation who violates, disobeys, omits, neglects or refuses to comply with or who resists the enforcement of any of the provisions of this ordinance shall be fined not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00) for each offense. Each day that a violation is permitted to exist shall constitute a separate offense.

*14.1 Validity.*

If any section, paragraph, subdivision, clause, sentence or provision of this ordinance shall be adjudged by any court of competent jurisdiction to be invalid, such judgement shall not affect, impair, invalidate or nullify the remainder of this ordinance, but the effect thereof shall be confined to the section, paragraph, subdivision, clause, sentence or provision immediately involved in the controversy in which judgment or decree shall be rendered.

*14.2 Repeal of conflicting ordinances.*

All ordinances or parts of ordinances in conflict herewith are hereby repealed.

(Code 1980, App. B, § XIV)


## Sec. XV. Enactment.

This ordinance shall be in full force and effect from and after its passage, approval and publication in pamphlet form, as provided by law.

(Code 1980, App. B, § XV)

PASSED this 13th day of January, A.D. 1983.

_____   _____

City Clerk

 

_____

Mayor

ATTEST:

APPROVED by me this 14th day of January, A.D. 1983.

_____   _____

City Clerk


**//Calumet City, Illinois/MUNICIPAL CODE CALUMET CITY, ILLINOIS Codified through Ord. No. 07-72, enacted June 14, 2007. (Supplement No. 7)/APPENDIX B ZONING***