**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AYANNA WALKER, | ) | |
| Plaintiff, | ) | Case No. 07C 6148 |
| vs. | ) | |
| | ) | Judge Milton I. Shadur |
| CALUMET CITY, ILLINOIS, | ) | Magistrate Judge Valdez |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**I.    Introduction**

The parties have briefed the constitutionality of earlier iterations of the Ordinance.  The

Ordinance under review is attached to the current Complaint as **Exhibit A**.  Counts I and II claim

that the Ordinance is "facially unconstitutional."  2d Am. Cplt. ¶1.  Count I (¶¶30-37) alleges that

the Ordinance is unconstitutional because it violates unidentified sections of the Constitution

protecting "against unreasonable governmental restriction on the right to sell private property."

The "restraint on alienation" Count is a broadside attack on the Ordinance.

Count II, "Lack of Procedural Due Process," claims that the Ordinance fails to provide

appropriate pre-deprivation hearings and grants "unfettered discretion" to City building

inspectors "to order repairs unrelated to conditions that affect health or safety or the public

good."  ¶39.

Count III is something of a hybrid.  Plaintiff alleges that the Ordinance prohibits owners

of legal nonconforming properties from selling them "unless they immediately deconvert [the

property] or conform it to the current zoning classification." ¶46. Plaintiff also attacks an

ordinance provision that is present not only in the Calumet City Ordinance, but in just about

every other zoning ordinance in Illinois, which requires deconversion of nonconforming property

if the property is destroyed (defined as damaged by more than 50% of replacement value).[1] Although ¶48 seems to cast this as an "as applied" challenge, plaintiff is not speaking in terms of the Ordinance "as applied" to her, but as applied generally throughout the City. This Court will recall that plaintiff is an absentee landlord. The Subject Property is a legal nonconforming use. She has been notified that she is free to sell the property for multi-family purposes. Therefore, plaintiff lacks standing to claim that the Ordinance "unreasonably restrains the rights of owners of legal nonconforming property from selling that property as legal nonconforming."

In addition to plaintiff's unspecified claim of a violation of an unidentified federal constitutional provision (¶48), Count III also asks this Court to declare that a home rule municipality's zoning ordinance violates the general zoning authorization found in the Illinois Municipal Code. 65 ILCS 5/11-13-1. Because Count III is really a facial challenge to the 50% Rule, deciding this Count is appropriate in a Motion to Dismiss. For the reasons set forth below, the Ordinance is constitutional and the Complaint should be dismissed.

## II.    <u>Summary of the Ordinance</u>

We summarize the Ordinance in detail below.

*(a) Department Created; Definition*; *General Requirement*. This subsection defines the term "point of sale inspection" and provides that a point of sale inspection shall be required relative to the transfer of real estate "except as exempted herein."

*(b) Notice of Proposed Transfer of Real Property Required.* This subsection requires an owner of property to provide a notice of proposed transfer of real property.

*(c) Compliance Inspection; Pertinent Code Requirements.* Under this subsection, when the owner submits the notice, the form also constitutes the City's request to conduct a

---

[1] We will call t his requirement the "50% Rule."

2

Compliance Inspection.  This subsection gives notice to the owners that the inspection will be specifically limited to making sure the structure complies with the various codes the City has adopted, including various property maintenance codes.  The City has adopted the "2000 International Property Maintenance Code."  This Code is Complaint **Exhibit B.**  This subsection also limits the City's deconversion authority to those properties which have been "illegally converted," defined to mean structures which violate the zoning ordinance and are not legal nonconforming uses.

*(d) The Proposed Compliance Inspection.*  This subsection obligates the City to conduct a proposed Compliance Inspection within 28 days of notice, and notify the seller of his right to refuse consent to the Compliance Inspection.  The City must also advise owners of tenants' rights to contest inspections.

*(e) Refusal to Consent; Warrant Procedures.*  This subsection requires the City to seek a warrant in the Circuit Court of Cook County within 10 days after the owner's nonconsent in order to conduct a search.

*(f) Uninspected Property; Transfer Stamps.*  If an owner declines consent and if either the City does not seek a warrant within 10 days or the court denies the warrant, then the owner may obtain his transfer stamps without a Compliance Inspection.

*(g) Inspection Procedures; Fast Track Due Process.*  This subsection deals with the actual processing of an inspection upon either consent or a warrant.  This subsection obligates the City to give the owner the results of the inspection within 3 business days after the inspection.  This means that at the latest, the owner will be on notice as to the repairs/deconversion process within 31 days after the owner initiates the notice of transfer process.

3

If the owner disputes the inspector's determination of needed repairs, the Ordinance now provides for fast track administrative review of that determination. The owner may object and an administrative hearing will be provided within five business days. A second layer of review is available by way of appeal to the City's Zoning Board of Appeals. See subsection G(ii) and (iii).

*(h) Follow Up Repairs; Reinspection.*   This subsection provides that an owner issued a notice of repairs as provided in subsection (g), shall proceed to make such repairs. Upon completion of the repairs and notice to the City, the City will conduct a reinspection within 3 business days thereafter.

*(i) Payment of Current Water Bill; Predeprivation Hearing.*   This subsection provides for payment of the current water bill prior to the issuance of transfer stamps. The City must offer a predeprivation due process hearing prior to closing if the owner disputes such obligation, within 3 business days of such a request. If the owner disputes the City's determination as to liability, the owner is allowed to pay the bill under protest and pursue civil remedies to recover any claimed overcharge.

*(j) Conditional Certificate of Compliance; Procedures.*   This subsection allows for the transfer of property even if the repairs have not been completed before closing. An amount equal to the estimated cost of repair is posted with the City, and the buyer is given up to 180 days to complete the repairs. Upon the buyer's failure to complete repairs, the City must seek a court order to require the repairs.

*City Code Section 82-327(b).*   Section 82-327(b) now provides that the City must issue transfer tax stamps not only upon the issuance of a Certificate of Compliance but also when no inspection takes place because of the combination of (i) no consent and (ii) no warrant. This section maintains the requirement that transfer stamps will not issue unless the current water bill

4

is paid.  However, this section also cross-references the procedural due process rights set forth in §14-1(i).e.

### A.    Example Of How The Amended Ordinance Operates

Let's assume that on May 1, 2008, the Johnsons sell their house in Calumet City.  They contact a realtor and put the house on the market on May 5th.  They know they are going to have to do some work on the house for two reasons: first because the Ordinance may require it; and second, because the typical form real estate contract grants the buyer pre-closing inspection rights.  There is nothing to prevent Mr. Johnson from going to City Hall on May 5, 2007 to start the inspection process.  The Ordinance does not require that the seller have a sales contract in hand as a condition precedent to requesting the inspection. Subsection 14-1(b) is triggered whenever an owner "proposes to engage in a transfer of real property . . ."

Mr. Johnson comes to City Hall on May 5th and authorizes the inspection. Under the Ordinance, that inspection <u>must</u> take place within 28 days (June 2, 2008) and the inspection report <u>must</u> be furnished to Mr. Johnson by June 5.[2]  Assuming Johnson completes the punchlist items by June 19, 2008, the reinspection must be completed within the next 3 days.  Therefore, the notice, inspection and reinspection process will be completed within 45 days at the outside.[3]

In the meantime, Mr. Johnson and his realtor are trying to sell the house.  If they have a buyer and have signed a contract, the normal pre-closing activities are taking place during this same month and a half.  The buyer is doing his own inspection and obtaining a home loan.  The seller or his attorney is ordering a survey and title commitment.

---

[2] For purposes of this hypothetical, we are not taking weekends into consideration; weekends may stretch the inspection chronology by a few days.
[3] We emphasize that these are outside dates. The City has no motivation to wait until the very last day under the ordinance to initiate an inspection.

If Johnson chooses not to consent to the inspection, the burden is on the City to seek and obtain an administrative search warrant. If the City chooses not to seek the warrant, or if the local judge refuses to issue one, the transfer takes place without an inspection. If the City obtains a warrant, the City must proceed with diligence to inspect the property and identify code violations.

Assume the closing is to take place in December, 2008, but the house has code violations like missing gutters and downspouts. This type of work cannot be done in winter. Under Subsection (j), the cost of these repairs is secured, a conditional certificate of compliance is issued, the sale is closed, and the buyer has an additional 180 days to make the necessary repairs.

The Ordinance does not impose unreasonable time constraints on a seller's ability to close on the sale of his property. The time the process is anticipated to take dovetails with the normal passage of time between contract and closing.

The Ordinance specifically identifies the Code provisions with which structures must be in compliance. See Subsection (c)(1). As discussed above, one of the Chapter 14 codes is found in Article X of the Calumet City Code of Ordinances. This Article, "Property Maintenance Code," specifically adopts the International Property Maintenance Code subject to certain specific amendments and revisions. These codes have specific and objective requirements for property maintenance. See Complaint, Ex. B.

### B.    Administrative and Judicial Due Process

Administrative decisions under the Ordinance are subject to multiple layers of review. The Ordinance gives owner the right to appeal required repair determinations (g), water payment due determinations (i) and notice of deconversion (subsection g(iii).). Sections 111-1 through 111.8 of the Property Maintenance Code provide that a determination by a building official is

subject to appeal to the Zoning Board of Appeals. A full public hearing is provided (Section 111.4-111.6) as well as the right to judicial review (111.7). An appeal stays enforcement.

This due process protection is also institutionalized by statute. Section 11-13-3 of the Illinois Zoning Code, 65 ILCS 5/11-13-3 calls upon municipalities to create a zoning board of appeals. Section 11-13-3 ("The city council of cities … having a population of less than 500,000 may provide for the appointment of a board of appeals …"). Section 11-13-3(c). Calumet City has implemented this authority. Section 12.5 of the Zoning Ordinance.

Among the responsibilities of the ZBA is to "hear and decide appeals from and review any order requirement, decision or determination made by an administrative official charged with the enforcement of any ordinance adopted under this Division 13." Sec. 11-13-3(f). Ordinance Section 12.5(a) similarly vests the Calumet City ZBA with the authority to "hear and decide appeals from any order, requirement, decision or determination made by the zoning administrator under this ordinance …"

Section 11-13-12 of the Illinois Municipal Code establishes appeal rights. An appeal "may be taken by any person aggrieved or by any officer, department board or bureau of the municipality." Once an appeal is filed, the ZBA fixes a time for a hearing, gives the parties notice, and conducts a hearing where "any party may appear in person or by agent or by attorney." The decision of the ZBA is subject to administrative review. 65 ILCS 5/11-13-13; Ordinance Section 12.5 ("finality of decisions of the zoning board of appeals.").

The ZBA/administrative review process is specifically available if a municipal administrative official determines that the use of a building as a multi-family residence is not a legal nonconforming use. Taylor v. Zoning Board of Appeals of the City of Evanston, et al., 375 Ill.App.3d 585, (1st Dist. 2007) (specifically so holding, and summarizing the law of legal

nonconforming use in Illinois).  If a property owner invokes her appeal rights, she receives the benefit of an automatic stay.  See 65 ILCS 5/11-13-12 ("An appeal stays all proceedings in furtherance of the action appealed from unless the [zoning] officer … certifies … a stay would … cause imminent peril to life or property").  Even then, either the ZBA or the Circuit Court of Cook County has the authority to overturn the administrative certification that a stay is not appropriate.

## III.    The Ordinance Is Constitutional On Its Face

### A.    History of Point of Sale Inspection Ordinances

Before examining the merits, it is important to remember one real world reality, and two limiting legal principles informing this Court's judgment. First, the Realtors case recognizes that point of sale inspection ordinances are common. They aim to prevent the surreptitious conversion of single family homes to multi-family dwellings, and to retard the physical deterioration of the housing stock …  Point of sale ordinances like this one are common building and zoning code enforcement measures and are aimed at maintaining the quality of municipal housing stocks." Main Street Organization of Realtors v. Calumet City, 505 F.3d 742, at 743-4 (Opinion of the Court) and 750 (Judge Sykes, concurring). A decision striking down our Ordinance will have significant national implications.

Second, this is a facial challenge involving neither First Amendment rights nor the suspect classifications.  The Court's review of the Ordinance must be deferential.  For example, plaintiff's vagueness challenge must be rejected unless she can "demonstrate that the law is impermissibly vague in all of its applications." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982).  "Economic regulation" such as this "is subject to a less

strict vagueness test," Id. at 489, because "the consequences of imprecision are qualitatively less severe" with an enactment involving "civil rather than criminal penalties." Id.

In determining the overall constitutionality of an ordinance, it is not for the court to question its wisdom; the court considers "only whether the ordinance is wholly arbitrary," meaning that a law has no rational relationship to a legitimate state interest. Vaden v. Village of Maywood, 809 F.2d 361, 363 (7th Cir. 1987); Greater Chicago Combine and Center v. City of Chicago, 431 F.3d 1065, 1072 (7th Cir. 2005).

Finally – and with particular reference to Count I—we must always be mindful of what this Court has emphasized dozens of times. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' The first step in any such claim is to identify the specific constitutional right allegedly infringed.'" Nielson v. Village of Lake in the Hills, 948 F.Supp. 786, 792, citing Albright v. Oliver, 510 U.S. 266, 271 (1994). Section 1983 "provides a remedy for deprivations of *specific* constitutional rights, not generalized allegations of constitutional deprivations." Trautvetter v. Quick, 916 F.2d 1140, 1148 (7th Cir. 1990).

Many cities throughout the country have adopted point of sale housing inspection ordinances. In Dome Realty v. City of Paterson, 83 N.J. 212, 416 A.2d 334 (N.J. 1980), the ordinance required "substantial compliance with the standards of habitability contained in its housing code before a new tenant may take possession of rented residential premises." 416 A.2d 330, 7-8. The New Jersey Supreme Court upheld the constitutionality of the ordinance.

The constitutionality of Detroit's ordinance was upheld in Butcher v. City of Detroit, 156 Mich.App. 165, 401 N.W.2d 260 (Mich.Ct.App. 1986), *cert. denied*, 482 U.S. 905 (1987). The Detroit ordinance "requires a valid certificate of approval or a valid inspection report from [the

city] before a person may sell a one or two family residential structure in the city." 156 Mich.App. at 168. The ordinance was rationally related to the legitimate governmental purpose of addressing fraud and dealing with the problem of housing deterioration.  The ordinance was a rational "way of ensuring that a buyer has more recourse on buying a house less valuable than anticipated, than merely stoically accepting the saw 'caveat emptor.'  Moreover, the ordinance helps combat housing deterioration." 156 Mich.App. at 170.  See also, City of Vincennes v. Emmons, 842 N.E.2d 155, 158 (Ind. 2006) at n.6 (collecting cases).

The cases all agree that it is rational for a municipal legislative body to use the impending sale of real estate as a trigger for requiring properties to be brought into compliance with building and zoning codes. A municipality has the authority to adopt building, housing and zoning codes, and can rationally determine that these codes are best enforced when property ownership is changing hands. See, Anderson, American Law of Zoning, §19.3 (because illegal alterations frequently occur literally behind closed doors, municipalities "undertake to plug the gap through the use of occupancy permits").

**B.      Count I: The Point of Sale Inspection Ordinance Does Not Amount To An Unreasonable Restraint On "The Right Of Property Owners To Transfer Their Property."**

Count I alleges that the Ordinance "is unconstitutional because it violates the [unidentified] protections in the U.S. Constitution against unreasonable governmental restriction on the right to sell private property." ¶36.  It is true that the Ordinance regulates (whether we use the term regulate, restrict or restrain, it is all the same) the right of an individual in Calumet City to sell her property.  Like the State of Illinois and Cook County, Calumet City requires sellers to pay a tax before they can convey real estate.  Plaintiff does not challenge that restraint, so we can

assume that plaintiff concedes that the City has the right to restrain the sale of property.  Plaintiff also recognizes that a municipality can enact and enforce building codes.

If the City can (i) restrain the sale of property by way of a tax, and (ii) regulate the condition of structures, then (iii) isn't it rational to use the tax regulation as a means of facilitating compliance with other regulations?  When property ownership is transitioning, privacy interests are diminishing, and the parties may be negotiating these repairs themselves.  One "particular advantage of point of sale inspection over other types of inspection is that it is conducted at  time when money is available…"  <u>Delman v. City of Cleveland Heights</u>, 41 Oh. St.3d 1, 534 N.E.2d 835 (1989).

Paragraphs 33-36 set forth the various assertions as to why the Ordinance is unconstitutional.  Paragraph 33 relies on repeated misstatement of the Ordinance. Contrary to Plaintiff's contention, the scope of search and types of repair the City may require are limited.  See subsection (c)(1), specifying provisions for compliance) and subsection (e) (limiting warranted inspections "to a determination whether there are violations of the code provisions identified").

Next, paragraph 33 complains that the Ordinance requires the use of a "licensed contractor" to do repairs. That reading of the Ordinance is empty-headed.  The Ordinance does not prevent do-it-yourself work by the homeowner. It provides only that <u>if</u> a property owner contracts for repairs, the work has to be done by a licensed contractor.  The Ordinance does not prevent plaintiff from scraping her own gutters or replacing her defective switch plates.

Next, plaintiff speculates that even if a property is in compliance, the City may nevertheless ignore the Ordinance and refuse to issue a Certificate of Compliance.  That fear has

nothing to do with the facial validity of the Ordinance; it merely raises state law mandamus issues.

The next two concerns, relating to no "meaningful right to a hearing" are belied by the terms of the Ordinance. The concerns about inspections, repairs and reinspections taking "an unreasonably long period of time" are also not true. As shown by the Johnson hypothetical, the timing of these compliance measures works with the contract-to-deed cycle of a real estate transaction.[4]

Paragraph 34 complains that the Ordinance does not provide detail regarding the water bill hearing. The absence of such detail does not go to the facial validity of the Ordinance; Memphis Light, Gas & Water v. Kraft, 436 U.S. 1, 11-12 (1978) tells us that all due process requires is the opportunity for a "presentation to a designated employee of a customer's complaint that he is being overcharged," in the setting of an "informal consultation with designated personnel empowered to correct a mistaken determination." Plaintiff then wraps up her challenge by (i) forgetting that Calumet City is home rule and (ii) invoking a letter opinion from former Illinois Attorney General Roland Burris, dealing with a question of statutory authority. This, then, is the stuff of Count I.

There is no stand-alone constitutional right to prevent "unreasonable governmental restriction on the right to sell private property." Plaintiff's Count I is a hodgepodge designed to end-run the twin realities that (i) from a constitutional standpoint a facial challenge to a law such as this is subject to limited and deferential judicial review; and (ii) the Ordinance handily survives such review. Count I can only be analyzed under a rational basis analysis, whether cast

---

[4] The Court should keep in mind that because an inspection is good for six months, an owner contemplating sale can get this done before she has a signed contract to sell her property.

as a substantive due process or equal protection challenge.  National Paint & Coatings Assn. v. City of Chicago, 45 F.3d 1124, 1129 (7th Cir. 1995); New Burnham Prairie Homes v. Village of Burnham, 910 F.2d 1474, 1480-81 (7th Cir. 1990).

That the right asserted by Plaintiff is not based on the Constitution is illustrated by the Iowa Supreme Court's recent decision in Ames Rental Property Association v. City of Ames, 736 N.W.2d 255 (Ia. 2007).  Ames passed an ordinance prohibiting rental of residential property to more than three unrelated persons, certainly a significant restraint on alienation of property.[5] The Court took the case as an equal protection challenge and analyzed the ordinance in the manner we suggest.  The Court cited Anderson v. Provo City, 108 P.3d 701 (Utah 2005), which held under the common law of Utah, even assuming the ordinance placed "an indirect restraint on alienation of property," it was "reasonably necessary to protect Provo City's justifiable and legitimate interest …"   Anderson, in turn, distinguished a Connecticut Supreme Court case, Gangemi v. Zoning Board of Appeals of Town of Fairfield, 255 Conn. 143, 763 A.2d 1011 (Conn. 2001), which held that a decision to prohibit the rental of beachfront property "violates the public policy" against "restraints against alienation of property," because the restriction did not "serve a legal and useful purpose."  763 A.2d at 1014-15.  This precedent-tracing shows that the "public policy" issues are matter of state, not federal law.

The Supreme Court has never constitutionalized plaintiff's "restraint on alienation" theory, referring to it only as "an ancient doctrine disfavoring restraints and alienation of property."  Asgrow Seed Company v. Winterboer, 513 U.S. 179, 188 (1995) at n.3.  Since at least 1926, the Supreme Court has held that municipal land use regulations do not violate the U.

---

[5] The home of Iowa State of University, Ames passed the ordinance "to stem the flow of students into residential areas" and the resultant "Animal House" problems.

S. Constitution unless they are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." Euclid v. Ambler Realty, 272 U.S. 365, 395 (1926); Lingle v. Chevron U.S.A., 544 U.S. 528, 541 (2005) (recognizing vitality of the Euclid formulation).

The City believes that putting all of these elements together yields the conclusion that as a federal constitutional matter, Count I must be analyzed under the deferential rational basis standard. Maintaining the quality of the housing stock, preventing urban (or in our case, suburban) decline, are quintessentially legitimate public purposes. Utilizing the municipal transfer tax as a vehicle for obtaining code compliance is a rational means for a local government to further those legitimate goals. The ordinance neither shocks the conscience, nor violates a separate constitutional provision. Farrar v. Grochowiak, 205 WL 1126540 (N.D. Ill. 2005) (collecting cases at *9). The flaws alleged in Count I are either misreads of the Ordinance or potential as-applied issues which do not undercut the facial validity of the Ordinance. Whatever the former Illinois Attorney was referring to in his letter opinion, it has nothing to do with federal constitutional law.

Accordingly, Count I should be dismissed.

### C.    Count II: The Ordinance Does Not Violate Procedural Due Process

Before discussing process issues, it is important to identify the property interests at stake. In the case of the code compliance requirements, the property interest at stake is money—the cost of repairs. If the transfer tax on a $200,000 home is $1,600 and there are $500 in identified repairs, the seller must pay an additional $500 "tax" to sell her house.[6] The property interest at stake is a variable based on the condition of the house. In the deconversion case, the property

---

[6] This hypothetical cost assumes contracted as opposed to do-it-yourself repair work.

interest at stake is arguably more significant because deconversion permanently deprives the owner of the ability to rent out a portion of the property. The loss of this stick in the bundle is of long term significance to the owner because of the impact on market value.

Because Count II (¶¶38-41) lumps various procedural due process claims together, we will separate them for analytical purposes.[7]

### 1.    <u>Vagueness/Unfettered Discretion</u>

Plaintiff complains that the City's codes are vague because they use terms such as "good repair." ¶¶12; 39. Plaintiff also claims that the Ordinance gives an inspector "unfettered discretion to order repairs unrelated to conditions that affect health or safety or the public good." These allegations do not make out a procedural due process claim.

It is for the legislature to determine what building code provisions are reasonable and further the public health, safety and welfare. Plaintiff may think that "replacing floor tiles, tightening a loose soap dish, painting a bedroom wall, putting a globe on a light, painting a bathroom ceiling, repairing closet doors, painting door trims, [and] repairing kitchen cabinets" are merely "cosmetic repairs unrelated to public health and safety." Cplt. ¶13. A legislative determination that making sure these "little" repairs are made will have a cumulative positive impact on the housing stock is not an irrational legislative judgment. It is commonly referred to as the "broken window" theory advanced by former New York Mayor Giuliani. James Q. Wilson, "Broken Windows: The Police and Neighborhood Safety,"

---

[7] The Complaint is in error when it repeatedly alleges that the right to transfer property is being taken away by the Ordinance. The Ordinance simply conditions that right on having the property conform to law.

www.theatlantic.com/doc/198203/ broken-windows. The Ordinance is not invalid on its face merely because this plaintiff contends that some code requirements are cosmetic or petty.[8]

Plaintiff's "unfettered discretion" argument is likewise without merit. A law is unconstitutionally vague if its prohibitions are not clearly defined, meaning that a law must give a person of ordinary intelligence a reasonable opportunity to know what it is prohibited and must contain explicit standards to avoid arbitrary and discriminatory enforcement. Native American Arts v. Bundy-Howard, Inc., 168 F.Supp.2d 905, 909 (N.D. Ill. 2001). A "constitutionally tolerable" law depends on a "congeries of factors"; economic regulations such as these are subject to "a less stringent vagueness test" which would be tolerant of "some imprecision." Id.

The codes which are incorporated by reference into the Ordinance are anything but vague. See Cplt. Ex. B. Focusing on the Section 304 and Section 305 provisions, the International Property Maintenance Code is extremely dense. Plaintiff focuses on Section 304.1, providing that an exterior of a structure must be maintained "in good repair, structurally sound and sanitary, so as to not pose a threat to the public health, safety or welfare," and 305.1 which provides that the interior must be maintained "in good repair, structurally sound and in sanitary condition."

These provisions are not vague. People with common intelligence can understand what it means to keep a house in good repair. Perhaps the better way to read 304.01 and 305.01 is that they are introductory requirements fleshed out by the subsequent provisions. In either event, scuttling 304.1 and 305.1 would not result in a wholesale invalidation of the entire Ordinance. Picking those two nits from the coating of the law is the solution.

---

[8] Obviously, to the extent a required repair is cosmetic or petty, the cost of compliance will be petty, thereby substantially diminishing the property interest at stake.

Numerous cases have held that ordinances and statutes require properties to be maintained "in good repair" are not unconstitutionally vague. Freeman United Coal Mining v. Federal Mine Safety, 108 F.3d 358, 362 (CADC 1997); People v. Beecher, 153 Misc.2d 247, 580 N.Y.S.2d 980 (N.Y. Just. Ct. 1992); City of Cleveland Heights v. G.&C. Properties, 1974 WL 184833 (Oh.App. 1974); People v. Balmer, 17 Cal.Rptr. 612 (Cal. Super. 1961) ("the words clean, sanitary and good repair are not so vague and indefinite as to make the administrative code sections unconstitutional.").

Were that not enough, a recent District Court case has held that identical code provisions are not unconstitutional. In Reedy v. Borough of Collingswood, 2005 WL 1490478, the court found that identical provisions of the Property Maintenance Code are not unconstitutionally vague. See *8-9 ("the court is not persuaded that the above provisions contain language that is so ambiguous and technical so as to deprive the ordinary citizen in Collingswood of constitutional required notice."

Accordingly, Count II's void for vagueness challenge should be rejected.[9]

## 2.    Code Compliance Procedural Due Process

The Ordinance provides multiple layers of procedural due process to an individual who disputes the administrative determination of either needed repairs or payment for water services owed. Subsection (g)(2) provides fast track review of a repair decision by "an independent hearing officer." The Illinois Municipal Code and other provisions of the City Code make that final administrative determination appealable to the Zoning Board of Appeals. This process destroys the procedural challenge to the repair requirements. As we discuss above, plaintiff's

_____

[9] Rejecting the vagueness challenge also disposes of the "unfettered discretion" argument. Unfettered discretion is more appropriately used in the First Amendment/prior restraint context. Brandt v. Village of Winnetka, 2007 WL 844676 (N.D. Ill. 2007), a case with which the undersigned is familiar.

corollary claims that repairs will take too long because the Ordinance mandates the use of contractors is a manufactured misreading of the Ordinance. Subsection (h), "Follow up Repairs; Reinspections," says that "a party issued a notice of repairs"—the owner—"shall proceed to make such repairs." Subsection (k) provides only that any contractors who perform the repairs "shall be licensed by the City." The homeowners of Calumet City may rest assured that their time spent watching "This Old House" has not been in vain. They are free to fix their own screens and tighten their own soap dishes.

### 3.     Determination of Illegal Nonconforming Uses

Section (c)(2) operates only against illegal conversions, meaning properties which are in violation of zoning limitations and do not qualify as legal nonconforming uses. The administrative determination of illegal use is appealable to the Zoning Board of Appeals, Section (g)(3), in conformance with preexisting Illinois law. 65 ILCS 5/11-13-12 ("an appeal [to the ZBA] stays all proceedings"; Taylor v. Zoning Board of Appeals of the City of Evanston, 375 Ill.App.3d 585 (1st Dist. 2007). Once again, a simple examination of the Ordinance resolves the paragraph 41 facial challenge to the Ordinance.

### D.     Count III: The Ordinance Does Not "Force the Deconversion or Modification of Legal Nonconforming Property as a Condition of the Right to Sell Such Property"

Plaintiff is now aware that her property is a legal nonconforming use. Therefore, the Ordinance does not apply to her or her property. Her ability to challenge the deconversion provisions of the Ordinance is moot. She has no standing to represent the interests of any other property owner in the City with respect to this matter. Nevertheless, because the class action allegations remain open, we will address Count III.

Understanding Count III requires an analysis of Complaint paragraphs 15, 17-19, and 44-8. The due process allegations set forth in paragraph 15 are wrong for the reasons discussed above. Section 5.5 of the City's zoning ordinance provides that if to a building is damaged in excess of 50% of the building's replacement value, the structure can be rebuilt "only for a conforming use" within the applicable zoning district. Paragraph 17 claims that the City somehow relies on this provision to "effectively force legal nonconforming property to comply with the current zoning classification or the City's order to deconvert." Even in pre <u>Bell Atlantic</u> days, this allegation gives the City no notice of the nature of plaintiff's claim.

Paragraph 18 then says that when an owner of a legal nonconforming use finds a buyer, the lender "almost uniformly" asks the City to issue a letter saying that if the "legal nonconforming property is damaged, it can be rebuilt as a legal nonconforming property consistent with the zoning code." The obvious answer to this allegation is that the City is under no legal obligation to issue such notice. The lender can read the zoning ordinance as well as the City. Second, if a property is legal nonconforming and is thereafter destroyed by fire, the property cannot be used in violation of current zoning restrictions.[10]

What, then, is the Count III claim? Paragraph 45 recites the provision of the Illinois zoning statute granting municipalities the authority to gradually eliminate nonconforming uses. It appears that the constitutional challenge in paragraph 46 consists of (i) the "50% Rule" is invalid; and (ii) the City's refusal "to issue rebuild letters [that state legal nonconforming property can be built as such even if destroyed] that buyers' lenders uniformly require" is also

---

[10] For example, if a property is legal nonconforming four unit dwelling located in a single-family zoning district, if that building is destroyed by fire, it can only be rebuilt for single-family zoning purposes.

illegal.[11]    Paragraph 48 (as is plaintiff's wont) says that the 50% Rule and the City's conduct in refusing to issue rebuild letters violate the phantom protections in the Constitution "against unreasonable governmental restriction on the right to sell private property." These claims are without merit.

To the extent plaintiff is challenging the 50% Rule, she is barking up the wrong constitutional tree. In Smith v. Town of Normal, 238 Ill.App.3d 944, 178 Ill.Dec. 933 (4th Dist. 1992), the Illinois Appellate Court rejected a constitutional challenge to a virtually identical ordinance ("[P]rohibiting certain types of repair or extensive repair on structures devoted to a nonconforming use is a reasonable method for eliminating such nonconforming uses over time [which] is a rational relationship to the public interests in protecting landowners in general neighborhoods from incompatible and detrimental land use."). The requirement upheld in Town of Normal is, well, normal. See, "Zoning: Right to Repair or Reconstruct Buildings Operating as Nonconforming Use After Damage or Destruction by Fire or Other Casualty," 57 ALR 3rd 419; "Alteration, Extension, Reconstruction or Repair of Nonconforming Structure Devoted to Nonconforming Use as Violation of Zoning Ordinance," 63 ALR 4th 275 (1988); Village of Glencoe Zoning Ordinance, 6-102 H (accessed through Village of Glencoe official web page, www.goglencoe.com.

If (as we read Count III) plaintiff is seeking an extraordinary mandatory preliminary injunction requiring the City to tell lenders that a nonconforming use may continue even if the building is 100% destroyed by fire, that notice would violate the Ordinance. The Ordinance is common and constitutional.

---

[11] Although this Court is bound to accept well pleaded allegations, to accept the contention that no one has been able to sell a nonconforming "granny flat" in Calumet City because of the no rebuilt letter policy, would mean that there is a huge and unbelievable inventory of such properties being held back from the market.

Count III entitles plaintiff to no relief.

## IV.    CONCLUSION

The City believes this case is now fitting for disposition by way of ruling in its favor, finding the Ordinance is constitutional on its face.

Respectfully submitted,

City of Calumet City

By: _____/s/ John B. Murphey_____

JOHN B. MURPHEY
ARDC #1992635
Rosenthal, Murphey & Coblentz
30 North LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel. (312) 541-1070
Fax (312) 541-9191