**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AYANNA WALKER, | ) | |
| Plaintiff, | ) | Case No. 07C 6148 |
| vs. | ) | |
| | ) | Judge Milton I. Shadur |
| CALUMET CITY, ILLINOIS, | ) | Magistrate Judge Valdez |
| Defendant. | ) | |

**CALUMET CITY'S MEMORANDUM ON
MOOTNESS AND CLASS CERTIFICATION ISSUES**

**I.     Introduction**

**Three preliminary observations**:

If this case has taught us anything, it is that there is a need to proceed cautiously and conservatively when making the Article III determinations of standing and mootness. It would be a shame if this Court were to make a merits determination only to have it sent back a second time because of a Court of Appeals' determination Walker lacks standing to challenge the Ordinance. Doubts about Walker's standing counsel against this Court making such determination.

Second, contrary to the assertions of Walker's attorney at the last status hearing, this is not a case where the City is attempting to pick off putative class representatives in order to stave off an inevitable adverse decision. This is a facial challenge and we have filed a comprehensive Motion to Dismiss and Supporting Memorandum. We are confident that the Ordinance as fine-tuned over the past 18 months readily survives Constitutional scrutiny. But we cannot change the facts relating to the status of Walker's property ownership in relation to her ability to be a class representative.

Third, there is a compelling irony which may be lost on Walker, but which this Court should appreciate. Walker claims the Ordinance's point of sale inspection requirements are confiscatory; an unconstitutional albatross driving down the ability to sell real estate. The regulations are hopelessly vague, Walker contends. They do not give her fair notice as to what repairs she needs to make in order to obtain a certificate of compliance. Yet miraculously Walker was able to navigate these unconstitutional waters and obtain her Rental Dwelling Annual Certificate of Occupancy under Section 14-711 of the City Code (**Exhibit 1**). The rental inspection requirements are much the same as the point of sale inspection requirements. It takes no great leap of logic to conclude that if the City's regulatory structure does not unreasonably restrain the alienation of leasehold interests, that same regulatory structure cannot be an unconstitutional restraint on the alienation of the fee interest. In a way obviously not intended, Walker is the poster child for the Ordinance's constitutionality.

## II.     The Present Status Of Walker And Her Property

As set forth in the attachment to the Williams' affidavit, Walker lives in Dyer, Indiana and rents out a four-unit building at 521-23 Green Bay. She requested an annual multi-family rental inspection on October 19, 2007. The inspections yielded a number of defects, such as repair needed to downspouts, repair of storm windows, reconnect carbon monoxide detector, repair a damaged hot water heater, etc. On February 14, 2008, all four units of the Subject Property were approved for occupancy for rental purposes. See Inspection Report, p. 1. Under Section 14-711(e) of the City Code, the certificate of occupancy is valid for one year. Therefore, as of February 2008, the Subject Property was in compliance all City Codes and was certified as a legal nonconforming use.

When the City Attorneys became aware they notified counsel for plaintiff (**Exhibit 2**). There was no need for a redundant point of sale inspection in light of the extensive work done on the premises and the recent certification of compliance. Except for the payment of the transfer tax Walker is free to sell her property, unaffected by the terms of the Ordinance under challenge in this case.

**III.    Because Walker's Individual Claims Are Now Moot, She No Longer Has Standing To Challenge The Ordinance And Can No Longer Serve As Class Representative**

In this lawsuit Walker is challenging both the point of sale code compliance requirements (Counts I and II) and the provisions of the Ordinance relating to legal nonconforming uses (Count III). We discuss Count III first.

As we point out in our Motion to Dismiss and Supporting Memorandum, Walker's challenge to the nonconforming use provisions of the Ordinance is less than clear. To the extent she is claiming the Ordinance is applied "to force the deconversion or modification of legal nonconforming property as a condition of the right to sell such property." (See Count III's caption), Walker is home free because her property has been recertified as a legal nonconforming use and can be sold by Walker free of any deconversion requirement.

The Second Amended Complaint also seeks extraordinary mandatory injunctive relief; that the City be ordered to issue "rebuild letters" to lenders. To the extent "rebuild letters" simply certify to lenders that the property is a legal nonconforming use, Walker already has her "rebuild letter" in the form of the certification of legal nonconforming use status. As this Court noted at the status hearing, to the extent count III is inferentially challenging the "50% Rule" that nonconforming status is lost if a property is destroyed by fire to an extent greater than 50% of value, such a claim is a frivolous nonstarter from a constitutional standpoint.

Insofar as any reasonable interpretation of Count III is concerned, any claim Walker might have had is moot. The City is not forcing the deconversion of her legal nonconforming use as a condition of the right to sell her property. She lacks standing to bring a Count III claim.

Similar considerations apply with respect to the code compliance challenges set forth in Counts I-II. By virtue of Walker having obtained a complete structural bill of health in her capacity as owner of rental property, the City has administratively waived any requirement that she undergo a redundant inspection in connection with the contemporaneous sale of the same property. Walker's ability to "alienate" her property is therefore not restrained by the Ordinance. Nor is this right subject to the "unfettered discretion" of a City building official.[1] Because of the concurrent inspection/certification process which has taken place by virtue of her status as absentee landlord, any claim Walker might have to challenge the constitutionality of the code compliance provisions is now moot.

In a normal world of real rather than straw plaintiffs, one would expect that Walker would be delighted that the property which she has had up for sale for several months (according to the representations of her counsel) can be sold free of the Ordinance's restraints and with a certification of legal nonconformity in hand. Of course, Walker is not the real plaintiff in this case. The question then becomes what is the impact of the mooting of the putative class representative's claim on class action certification. This is a question part apart from whether the amended class as defined satisfies Rule 23.

---

[1] It certainly appears from the Walker property inspection history that rather than focusing on amorphous, or petty violation claims, the Walker inspections dealt with real world, objective structural issues such as defective hot water heaters, problematic carbon monoxide detectors, and broken storm windows. These matters are hardly the stuff of a due process vagueness challenge.

### IV. Because Her Claims Became Moot Prior To Class Certification, Walker Is Not A Proper Class Representative

If the claim of a putative class representative becomes moot before certification, what is the impact on the proposed certification? That question was most recently answered by the Seventh Circuit in <u>Wiesmuller v. Kosobucki</u>, 513 F.3d 784, 786 (7th Cir. 2008). If "the named plaintiff's claim becomes moot before the class is certified, the suit must be dismissed because no one besides the plaintiff has a legally protected interest in the litigation," citing <u>Board of School Commissioners v. Jacobs</u>, 420 U.S. 128 (1975), <u>Bertrand ex rel. Bertrand v. Maram</u>, 495 F.3d 452, 456 (7th Cir. 2007). This principle is a logical corollary to cases such as <u>O'Shea v. Littleton</u>, 414 U.S. 488, 494, that there must be a live case or controversy between the class representative and the defendant.

As <u>Wiesmuller</u> notes, until a class action has been certified there are no other plaintiffs. When plaintiff's claim becomes moot pre-certification, there is no longer a live case or controversy, and anything done by the court beyond that point would be an inappropriate advisory opinion. Therefore, if as in this case, "the claim of the class representative becomes moot in advance of certification, the case may come to a halt even if a properly certified class action would survive the mootness of the representative claims." <u>Glidden v. Chromalloy American Corporation</u>, 808 F.2d 621, 626 (7th Cir. 1986).

A far different situation would be presented if this were a case of the City attempting to avoid either class certification or merits adjudication. If, for example, the City were to waive Ordinance enforcement as to every new representative plaintiff's property without any inspection, serious problems would be presented.[2] But that is not the case. Because she is an absentee owner of rental property, Walker submitted herself to the identical regulatory

---

[2] Among other things the City would be impeaching or undercutting the values the Ordinance stands for.

mechanisms she is now challenging. Her property has been certified as Code compliant (a certification good for a year) and a legal nonconforming 4-unit dwelling. The City's judgment to waive the redundant inspection is a reasonable administrative and interpretative judgment. To be sure, we have an unusual situation here where presumably unknown to any of the lawyers, plaintiff has worked her way through the regulatory process, thereby mooting her claim.

Under these circumstances, the City respectfully submits that the Court determine that plaintiff's claim is moot. This mootness means not simply that she cannot be a class representative. It also means that the case must be dismissed. This combination of circumstances has rendered Walker a bad choice as representative plaintiff.

One alternative way of handling this matter would be for the Court to take advantage of the procedural "wiggle room" it has pursuant to Wiesmuller and Cowen v. Bank United of Texas, 70 F.3d 937, 941-42 (7th Cir. 1995), and rule on our Motion to Dismiss prior to making a class action certification decision. "Class actions are expensive to defend," Cowen at 941, and a facial challenge to the law lends itself to adjudication by way of a motion to dismiss. But even that approach is risky in light of Walker's status and the posture of this case. The parties cannot stipulate to the existence of a case or controversy in light of the "'independent obligation' of federal courts to insure the existence of a case or controversy." CAMP Legal Defense Fund v. City of Atlanta, 451 F.3d 1257, 1271 (11th Cir. 2006).

The inescapable fact is that Walker's claims are moot because her property is in compliance with applicable Code provisions and her property is a legal nonconforming use. Insofar as the Second Amended Compliant is concerned, she may not proceed as a class plaintiff and the case should be dismissed.

**V.     In The Alternative, The Proposed Class Is Inappropriate**

In the alternative, the City opposes the proposed class certification. At the outset, we wish to make it clear that the City has "conceded" nothing. The direction of this Court was for this pleading to serve as the City's response to an amended motion for certification. Since we had not seen the motion, there is no way the City could concede to anything. The Court should disregard the repeated references to concessions.

The amended motion for class certifications disregards this Court's earlier caution that since Walker's property is a legal nonconforming use there is no way she could be a proper class representative for Count III purposes. Instead, Walker proposes a singular class consisting of "[A]ll owners of residential property in [the] City who are attempting to sell or transfer property subject to City's point of sale inspection ordinance ("POS Inspection Ordinance"). Our arguments in support of the mootness determination obviously carry equal weight in terms of the typicality and adequacy of representation elements.[3] There are several definitional problems here which makes the proposed definition unreasonable. In particular:

A.    It is fair to assume that the majority of homeowners in Calumet City own appropriately zoned single-family homes. The vast majority of the class (as well as Walker) would have no interest in or standing to challenge the legal nonconforming use provisions of the Ordinance in Count III.

B.    The definition itself is hopelessly vague. What does "attempting to sell or transfer property" mean? Does it mean someone who actually has his property publicly listed for sale

---

[3] "Adequacy of representation" requires a court to look at both the adequacy of the named plaintiff in protecting the interest of the class members and also the adequacy of plaintiff's named counsel. Retired Chicago Police Association v. City of Chicago, 7 F.3d 584, 598 (7th Cir. 1993). When we were speaking of adequacy of representation at the prior status we were (obviously in our view) referring only to plaintiff's counsel.

either by owner or through a broker, or does it include people who are getting their home ready to sell?

  C. A determination of whether property is subject to the Inspection Ordinance requires an individual determination of the circumstances of the sale, which inevitably involves inquiry into individual intent. Under Section (b) of the Ordinance, "Notice of Transfer of Real Property Required," the inspection requirements kick in only for those transactions which are "subject to taxation" under the City's real estate transfer tax ordinance. Under Section 82-323(a), there are several categories of exempt transactions (transactions which secure debt, exchanges of property, transfers by City employees who move to a new house in the City, etc.). Therefore, in order to determine whether a party is a member of the proposed class it would require an individual determination as to intent.

  D. There are significantly different dynamics between owner occupied homes and rental dwellings owned by an absentee landlord such as Walker. Homeowners who have lived in the community for many years may have a much different view of the Ordinance than an absentee landlord.

  E. Of course, the proposed class changes daily.

All of these problems point to the fact that the proposed class is not reasonably definite and ascertainable. Wright and Miller, <u>Federal Practice and Procedure</u>, Sec. 1760.

As discussed above, Walker is not now an adequate representative because she no longer has claims which are typical of those of the proposed class. Walker has passed her inspection, she has received legal nonconforming certification. The typicality problems we pointed out in our earlier filings have only intensified.

Walker unfortunately declined this Court's invitation to reconsider an attempt to have her serve as a proposed class representative with respect to Count III. Counts I and II are logically related to one another because they both deal with the Code compliance aspects of the Ordinance. The Count III legal nonconforming use challenge (raises completely different considerations. The Subject Property is protected from deconversion. A party who has legal nonconforming use status and who is on the verge of selling her property cannot be viewed as an adequate representative of this subclass. Indeed, as we view the mandatory injunctive relief being sought by Count III, that relief would apply to all owners of property regardless of whether an owner of legal nonconforming property is presently attempting to sell.[4] Therefore, the proposed class does not even approximately correspond to Walker's Count III theory of liability.

All in all, the proposed class fails to satisfy 23(a) and fails to adequately "define the class claims [and] issues" as required by 23(c)(1)(B).

## VI.    Conclusion

The change in circumstances arising out of Walker's satisfaction of the parallel rental regulatory requirements have mooted her claims. This mootness occurred prior to the filing of the amended motion to certify. Seventh Circuit precedent compels the dismissal of this action now, prior to class certification.

There is perhaps one other alternative, but it is one that still carries the risk of appellate rejection on Article III grounds. That alternative would be to enter and continue the Motion for Class Certification, utilize the wiggle room permitted by the cases, and decide our Motion to Dismiss. As discussed above, facial challenges present purely legal issues. We all understand that the Realtors' Association is the real party in interest and that Walker is a straw plaintiff. We

---

[4] Although Count III prayer for relief (c) uses the trite double negative ("a … permanent injunction prohibiting City from refusing to issue rebuild letters"), Walker is seeking mandatory injunctive relief.

presume the Association is seeking class action certification primarily as a mootness avoidance mechanism.

If the Court rejects our argument, it could conclude one of two things in favor of plaintiffs. First, the Court could decide that Walker's claim is not moot and a class action suit should be certified. In the alterative, the Court could determine that Walker's claim is moot, but that mootness does not prevent certification of some class so as to allow this facial challenge to proceed. The City would respectfully disagree with either proposition, but if the Court decides in this manner, then the City requests that this Court stay any of the collateral expense associated with a class action (particularly notice) pending constitutional adjudication of the Motion to Dismiss. We fear, however, that even this approach presents such Article III problems that it may result in yet another appellate decision which fails to resolve the merits.

On balance, the City believes the appropriate course is for this Court to dismiss Walker's action as moot based on her pre-certification compliance with the parallel regulatory requirements of the rental inspection ordinance.

                                              City of Calumet City
                                              By:    /s/ John B. Murphey

JOHN B. MURPHEY/ARDC #1992635       MARK STERK/ARDC #3125540
Rosenthal, Murphey & Coblentz       Odelson & Sterk, Ltd.
30 North LaSalle Street, Suite 1624       3318 West 95th Street
Chicago, Illinois 60602       Evergreen Park, Illinois 60805
Tel. (312) 541-1070       Tel. (708) 424-5678
Fax (312) 541-9191       Fax (708) 424-5829

G:\rmcj\calumet city\walker\Memo Mootness and Class Cert.doc

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 22, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of said filing to all parties listed below:

Philip C. Stahl
Maggie M. Hanel
Patrick Thomas Nash
Grippo & Elden
111 South Wacker Drive
Chicago, Illinois 60606

Mark H. Sterk
Michael Joseph Hayes, Jr.
Robert Wilder
Richard F. Bruen, Jr.
Odelson & Sterk
3318 W. 95th St.
Evergreen Park, Ill. 60805

    /s/    Douglas M. Doty
ROSENTHAL, MURPHEY & COBLENTZ
Attorneys for Calumet City
30 North LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel. (312) 541-1070
Fax: (312) 541-9191