# EXHIBIT A

C4

# FILED

JAN 2 5 2008
Jan 25 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **HUSSEIN H. MANN and**<br>**DEBRA HOUSTON-MANN,** )<br> )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>**CALUMET CITY, ILLINOIS,** )<br> )<br>Defendant. ) | **08CV 555**<br>**JUDGE COAR**<br>**MAGISTRATE JUDGE DENLOW** |

### VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, DECLARATORY AND OTHER RELIEF

Plaintiffs, HUSSEIN H. MANN and DEBRA HOUSTON-MANN (the "Property Owners"), by their attorneys, MARCIA B. GEVERS & ASSOCIATES, for their complaint against Defendant, Calumet City, Illinois (the "City") state as follows:

### NATURE OF THE ACTION

1.      The Property Owners bring this action of injunctive, declaratory and other relief, pursuant to 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202 to redress the deprivation, under color of law, of rights guaranteed to them and the citizens of the City by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 6 and 15 of the Constitution of the State of Illinois.  The Property Owners seek declarations that certain provisions of Chapter 14 of the Municipal Code of Calumet City, Illinois, codified through Ordinance No. 05-52, enacted July 28, 2005 (the "Code"), are unconstitutional.

2.      More particularly, the Property owners seek a declaration that Section 14-1

of Article I of Chapter 14 of the Code, entitled the "Point of Sale Inspection Requirement" (the "Point of Sale Inspection Ordinance"), is unconstitutional because it coerces sellers of property in the City to allow the City to conduct limitless, standardless and warrantless administrative searches of their property. The Point of Sale Inspection Ordinance provides that the City will not issue "transfer stamps" – which are required to sell property – unless a seller of property obtains a "certificate of compliance." The only way for a seller to obtain a "certificate of compliance" is to allow the City to conduct a warrantless, standardless and limitless search of the property. The Point of Sale Inspection Ordinance violates the U.S. Constitution, including the Fourth Amendment, because, among other reasons, it (I) has no procedure for sellers of property to insist on the City obtaining a warrant to enter private residences, (ii) places no restrictions on the scope of searches conducted pursuant to the ordinance, and (iii) does not provide for obtaining the consent of the tenants living in non-owner occupied leased dwelling units.

3.     The Property Owners also seek a declaration that the provisions of the Point of Sale Inspection Ordinance that require sellers of lawfully-owned, multi-family residences to "deconvert" them into structures with fewer income-producing rental units (the "Deconversion Provisions") are unconstitutional, including under the Fifth Amendment to the United State Constitution. The Deconversion Provisions purport to allow the City to require owners of property who purchased multi-family residences or who lawfully and with the knowledge and approval of the City expanded their properties in compliance with then-existing zoning ordinances, at the point-of-sale, to make costly modifications to bring their properties into conformance with current, subsequently-enacted zoning ordinances. The Deconversion Provisions conflict with the City's zoning code which expressly allows for

2

legal "nonconforming" uses of properties that were once complaint with the zoning ordinances but, with the subsequent enactment of amended zoning ordinances, are now not in compliance. The Deconversion Provisions, when applied by the City, result in a taking of property without just compensation in violation of the Fifth Amendment to the United State Constitution.

4.    In addition, the Property Owners seek a declaration that the Deconversion Provisions are unlawful restraints by the City on property owners' rights to sell their property. Owners who cannot afford the costly deconversion repairs required by the City are essentially prohibited from exercising their rights to sell their private properties. Aware of this fact, the City has, on information and belief, attempted to purchase multi-family residences from owners who had first attempted to list their properties on the open market, but were ordered by the City to make costly renovations and deconvert them. Because the City's own actions position it as the only viable buyer of the properties, the City's offers are far below market value. In addition, when the City offers to purchase these properties, the need for deconversion is suddenly no longer an impediment to the transfer. Thus, the Property Owners also seek a declaration that the City's conduct, including enforcement of the Deconversion Provisions, constitutes a taking of property without just compensation in violation of the Fifth Amendment to the United States Constitution and a deprivation of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

5.    The Property Owners also seek a declaration that the Deconversion Provisions violate the Equal Protection provisions of the United States Constitution. The City's unlawful practice of ordering deconversions is executed only against owners who

3

intend *to sell* their properties. Similarly-situated owners not selling their properties are allowed to continue their nonconforming uses. The City has not enacted or announced a comprehensive plan with public notice for the deconversion of nonconforming multi-family residences, but has instead coerced owners into deconverting their properties on an ad-hoc basis at the point-of-sale. Such conduct violates the Equal Protection provisions of the United States Constitution.

6.      Finally, the Property Owners seek a declaration that Section 14-711 of Division 2 of Article X of Chapter 14 of the Code (the "Rental Dwelling Inspection Ordinance") violates the United State Constitution. The Rental Dwelling Inspection Ordinance requires annual inspections of rental property but violates the Constitution because it does not include any provisions requiring the City to obtain the consent of tenants to conduct searches of their residences. Thus, the Rental Dwelling Inspection Ordinance violates the Fourth Amendment to the United States Constitution.

7.      The Property Owners request immediate declaratory and injunctive relief by which the Court, among other things, would declare the Point of Sale Inspection Ordinance, including the Deconversion Provisions, and the Rental Dwelling Inspection Ordinance unconstitutional.

8.      The Property Owners challenge the legality of those provisions of the Code as applied to themselves and the real property interests of City property owners. The Property Owners have standing to bring suit because they directly suffered harm caused by the unconstitutional provisions of the Point of Sale Inspection Ordinance. A judgment from this Court will redress the harm being suffered and directly advance and protect the interests of the Property owners and other citizens of the City.

4

## JURISDICTION AND VENUE

9.      The Property Owners' claims arise under the Fourth, Fifth and Fourteenth Amendments, and other provisions of, the United States Constitution. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

10.     The City is subject to personal jurisdiction in this district and venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this district.

11.     The Property Owners are residents of Calumet City, Illinois. The Property Owners are homeowners of property located at 514 Forsyth, Calumet City, Illinois (the "Property").

12.     Defendant Calumet City, Illinois (the "City") is a unit of local government incorporated under the laws of Illinois. The City is located in Cook County, Illinois.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

1.      **Relevant Provisions of the Code.**

   A.     **The Point of Sale Inspection Ordinance, Including the Deconversion Provisions, and Related Code Provisions.**

13.     In the following paragraphs, the Property Owners provide the relevant provisions of the Point of Sale Inspection Ordinance, including the Deconversion Provisions, and other related Code provisions. A copy of the Point of Sale Inspection Ordinance, including the Deconversion Provisions, is attached behind Tab A.

14.     Section 14-1(a) of the Code states that "[a] point of sale inspection shall be required relative to any transfer of any interest in property, which is subject to this section..."

5

15.    Section 14-1(b) of the Code states: "At the point of sale of any one-family, two-family, multiple-family dwelling or unit or structure...the seller shall apply for a certificate of compliance to the department of inspectional services in order to comply with the following requirements:"

* * *

(2)    All structures shall be in a good state of repair as to general building maintenance...including any nonconforming use structures and in full compliance with city building and zoning ordinances, including any property maintenance codes adopted by the city.

(3)    All units, whether single-family and/or multiple-family units...shall be in compliance with all current building codes, housing codes and fire code requirements and regulations....

* * *

(7)    Any structure containing one or more residential units not conforming to its original use, including those approved for occupancy on the yearly inspection date and registered with the housing department, that contains a nonconforming use shall be returned to the proper use compatible with the city zoning code.

(8)    The director of inspectional services or his designee may, where appropriate, based upon the age of the structure, subject to inspection and based upon a recognition that the structure was in conformity with the existing Code requirements at the time of construction, waive compliance, in part or in its entirety as heretofore described, with the exception that life safety, fire and public safety, electrical, plumbing and property maintenance code requirements and shall not be waived and a certificate of compliance in all respects shall not issue unless the buyer, as per subsection (b)(5) of this section, complies with the requirement for upgrading relative to fire, public safety and health requirements pursuant to existing zoning and/or building code requirements at the time of the request for a point-of-sale inspection.

6

(9)    Subject to subsections (b)(3) and (b)(8) of this section, it is intended that inspection requirements conform to all applicable Code and zoning requirements of the city, including, but not limited to, Code requirements as provided in subsection (b)(2).

(10)    A certificate of compliance issued to the seller shall be valid for one hundred eighty (180) days from the date of issuance.

16.    Section 14-1(c) of the Code states: "Transfer stamps, as required by sections 82-321 et seq. of the Calumet City Municipal Code, shall not be issued by the clerk until a point of sale inspection has been completed and a certificate of compliance...is issued."

17.    Section 82-327(b) of the Code contains a similar provision:

The city clerk shall issue no stamps for the transfer of any dwelling, structure, commercial or industrial building unless the grantor/seller presents a "certificate of compliance" or other certificate indicating compliance with appropriate city ordinances and/or codes signed by an authorized signatory of the department of inspectional services.

18.    Pursuant to Section 82-325 of the Code, transfer stamps, which evidence the payment of a tax due upon transfer of real estate, must be "affixed to the fact [sic] of the deed or instrument transferring the beneficial interest." Section 82-328 of the Code states that deeds cannot be recorded without a transfer stamp:

No deed conveying real property within the corporate limits of the city shall be entitled to recordation by the recorder of deeds or the registrar of titles of the county, unless such deed shall bear either a city real estate transfer tax stamp or an exemption mark from the city clerk.

**B.    The Rental Dwelling Inspection Ordinance.**

19.    In the following paragraphs, the Realtor Association sets the relevant provisions of the Rental Dwelling Inspection Ordinance, a copy of which is attached behind Tab B.

20.    Section 14-711 of the Code states:

(a)    No owner, agent or person (hereinafter referred to as responsible party) in charge of a one-family, two-family or multiple-family dwelling (hereinafter referred to as rental dwelling), as those terms are defined in the property maintenance code, shall allow any person to occupy the same as a tenant or lessee or for valuable consideration unless said dwelling or structure shall have been inspected and determined to be in compliance with all of the provisions of the property maintenance code as well as all health and building ordinances as evidenced by a certificate of occupancy issued by the building official as of March 1, 1989.  Thereafter, all rental properties shall be inspected annually and an updated certificate of occupancy issued.

(b)    The responsible party authorized to rent a rental dwelling shall, upon notice from the building department and agreeable to both parties, allow the building official to inspect said dwelling....

\*    \*    \*

*Inspection Fee Schedule*

\*    \*    \*

(4)    In the event a responsible party fails to allow the housing official to inspect said dwellings, after notice from the housing department, at a time and date agreeable to both parties, said responsible party shall pay a fifty dollar ($50.00) fee. ...

II.    **The Point of Sale Inspection Ordinance Coerces Sellers of Property to Allow the City to Conduct Warrantless, Standardless and Limitless Searches of Private Residences in Violation of the Fourth Amendment.**

21.    If a property owner in the City wants to sell his property, pursuant to the Point of Sale Inspection Ordinance, he *must* allow the City to conduct a *warrantless, limitless* and *standardless* search of his property.  That is the only way the seller will be able to obtain the "transfer stamps" necessary to sell the property.

22.    The Point of Sale Inspection Ordinance does not contain any provisions that

8

allow an owner of property to require the City to obtain a search warrant to conduct the point of sale inspection. The absence of a warrant procedure renders the Point of Sale Inspection Ordinance unconstitutional.

23.    Further, the Point of Sale Inspection Ordinance contains no limitations on the scope of an allowable inspection. For instance, the Point of Sale Inspection Ordinance allows the City inspector to search for *any* violation of the City's code (regardless of whether the violation is related to the health, safety or welfare of the citizens of the City) and the ordinance does not contain *any* limitations on where or for how long the inspector may search (*e.g.*, there is no limitation on the inspector searching private areas of a citizen's bedroom). As a result, the inspector has unfettered discretion to inspect the property and to prevent sales of property for reasons having no bearing on the health, welfare or safety of the citizens of the City. The discretion given to the inspectors is impermissible under the Fourth Amendment and the Illinois Constitution.

24.    The Point of Sale Inspection Ordinance also contains no provision that requires the City to obtain the consent of tenants in multi-unit dwellings to allow searches of their private residences. Indeed, pursuant to Section 14-572, the Code states that: "[f]or the purposes of enforcing the provisions *of this chapter*, the building commissioner *is hereby authorized to enter, examine and survey at all reasonable times all dwelling units."* (Emphasis added.) Thus, the City has granted unto itself the right to search tenant (and owner occupied) dwellings without even seeking or obtaining their consent. Once inside, the City has unfettered access to do as it pleases because the Point of Sale Inspection Ordinance contains no limitations on the scope of permissible searches. Such a scheme

9

plainly violates the Constitution.

III.    **The Deconversion Provisions Have the Effect of Unlawfully Depriving Legal Nonconforming Property Owners of Their Justifiably Expected Property Rights at the Point-of-Sale; When Implemented the Deconversion Provisions Result in a Taking of Property Without Just Compensation in Violation of the Fifth Amendment.**

25.     The Deconversion Provisions purport to allow the City to require deconversions of legal nonconforming multi-family residences regardless of (i) the structure's condition or (ii) whether the City was aware of and had approved of such properties by performing annual inspections on the residences for a fee.

26.     The Deconversion Provisions, which have nothing to do with property inspections for the purpose of ensuring safety and "good repair," have the effect of (i) depriving property sellers of their justifiably expected rights under the zoning ordinance – rights they enjoyed before they intended to sell their properties, and (ii) decreasing the owners' property values through overburdensome and unconstitutional regulation.

27.     Section 14-1(b)(2) of the Code states in relevant part that: "All structures shall be in a good state of repair as to general building maintenance...*including nonconforming use structures, and in full compliance* with the city building *and zoning ordinances.*" (Emphasis added).

28.     Similarly, Section 14-1(b)(7) provides that "Any structure containing one or more residential units not conforming to its original use, including those approved for occupancy on the yearly inspection date and registered with the housing department, that contains a nonconforming use shall be returned to the proper use compatible with the city zoning code." This section provides that, despite the fact that the City may have known

10

of and regularly inspected and taxed a nonconforming multi-family residence, it must still be deconverted to its "original use."

29.    Section 14-1(b)(8) gives the City the discretion to permit a legal nonconforming building to be sold without deconversion. However, the Code contains no guidelines which govern how the City exercises that discretion. The Code also does not provide for appeals if the City elects to not allow the sale of a legal nonconforming building without deconversion. Moreover, as explained below, the City has regularly required deconversion instead of allowing the as-is sales of legal nonconforming buildings.

30.    The Code's treatment of nonconforming uses at the point-of-sale sharply contrasts with the provisions of the City's Zoning Ordinance. The Zoning Ordinance defines a "nonconforming use" as:

> Any building or structure and the use thereof or the use of land that does not conform with the regulations of this ordinance or any amendment hereto...but conformed with all of the codes, ordinances, and other legal requirements applicable at the time such building, or structure was erected, enlarged, or altered, and the use thereof or the use of land was established.

Zoning Ordinance, § III, ¶3.2.

31.    Section IV, ¶4.2 "Scope of regulations" provides that lawful nonconforming uses existing before the enactment of the Zoning Ordinance may continue:

> Nonconforming buildings, structures, and uses. Any lawful building, structure or use existing at the time of the enactment of the zoning ordinance may be continued, even though such building, structure or use does not conform to the provisions herein for the district in which it is located, and whenever a district shall be changed hereafter, the then existing lawful use may be continued, subject to the provisions of Section XIV, nonconforming buildings, structures, and uses.

Id. at § IV, ¶ 4.2.

11

32.    The Zoning Ordinance nowhere provides for the elimination of nonconforming uses upon the sale of properties.

33.    Notwithstanding the Zoning Ordinance, on information and belief, the City has used the Deconversion Provisions to prevent owners of legal nonconforming property from selling their property (by refusing to issue transfer stamps) unless they deconvert the property to comply with current zoning rules without providing compensation to the property owners. In some instances, property owners have made necessary deconversion changes which invariable has led to a reduction in the market value of the property (*i.e.*, a fully leased four-unit building is worth more on the market than that same building with only two units). In such situations, the City has not compensated the property owners for the reduced market value of their property which resulted form the City's conduct.

34.    In other instances, on information and belief, the City has effectively but unconstitutionally prohibited property owners from selling their property by refusing to issue real estate transfer stamps when they cannot afford the deconversion repairs. Such conduct results in a taking of property without just compensation and a deprivation of property without due process of law. In doing so, the City has caused many transactions that would have closed, but for the City's insistence on deconversion, to not close, resulting in damage to the Realtor Association, its Members, and buyers and sellers of property in the City.

35.    Finally, on some occasions, on information and belief, the City has told property owners that, in lieu of deconversion, the property owner could sell the property to the City at an amount much lower than the market value of the property as it exists in its legal nonconforming state. On information and belief, the City engaged in such conduct

12

in connection with the property located at 107 155th Place discussed below.

36.    The Property Owners planned to sell their property located at 514 Forsythe, Calumet City, Illinois, as a legal nonconforming property and had scheduled the real estate closing on October 30, 2006. The property was purchased eight years ago from a Calumet City official. The previous owner owned and operated the property as a multiple-family dwelling. At the time of purchase, the Property Owners were not informed that the property was not legal nonconforming or that it would have to be deconverted.

37.    Although the City had, on prior occasions, confirmed that the property was legal nonconforming, the City refused to issue the certificate of occupancy stating that the buyer could not occupy the property until the property was deconverted. The City warned the buyer of the property that if the buyer closed on the property, the City would eventually demand deconversion of the property. Without the certificate of occupancy, the buyer did not want to close on the property on October 30, 2006.

38.    Although the City agreed to issue a certificate of occupancy prior to deconversion later, the buyer refused to go forward with the purchase because of the City's threats regarding deconversion of the property. Also, the buyer could no longer afford to close on the sale as a result of the delay by the City.

39.    As a result of the City's actions, the Property Owners have suffered emotional and financial hardship. The Property Owners had packed all of their belongings and put money down on a new place to live. The Property Owners borrowed money for repairs on their home, that they planned to pay off with the proceeds from the closing. The Property Owners cannot sell their home due to the deconversion ordinance, which they were unaware of when they purchased the property. The failed sale has caused the Property

13

Owners severe financial, mental, physical and emotional stress. Lost costs include wages, the negotiated settlement amount for the property's second mortgage, the cost of work and inspections required for closing and the security deposit for the intended new home. Foreclosure is likely as the Property Owners are behind on their mortgage payments. As a result of the City's conduct, the Property Owners were directly and adversely affected.

40.     To further illustrate the City's unlawful conduct, the Property Owners provide the following examples where the City has unconstitutionally required property owners to deconvert their property before they were allowed to sell:

a.      On information and belief, elderly owners of a four dwelling property located at 107 155th Place in the City sought to sell their property in August of 2005, and retained a realtor to assist them. The owners purchased their property 35 years ago and, with the approval of, and pursuant to a permit issued by, the City converted the building from a two unit building to the current four unit building. The building has been subject to and passed rental inspections every year since the owners purchased it. When the property owners sought to sell the property, the City informed them that they would have to deconvert the building from four units to two units. As a result of the City's conduct, the owners have been unable to either sell the property or make the necessary deconversion, and they have been directly and adversely affected.

b.      On information and belief, the owner of a seven flat building located at 247 153rd Place in the City was listed for sale. All known records show that the building is legal nonconforming and that all units had passed inspection in preceding years. The City required the seller to deconvert the building to a

14

four flat. The owner could not afford the deconversion and, as a result, the property was transferred to the mortgagee in lieu of foreclosure, without compensation by the City to the owner.

41.      Every legal nonconforming building in the City is subject to the City's unconstitutional and improper conduct once it is put on the market for sale.

**IV.    The Rental Inspection Ordinance Violates the Fourth Amendment Because It Does Not Require the City to Obtain the Consent of Tenants to Search Leased Property.**

42.      The Rental Inspection Ordinance states that "all rental properties shall be inspected annually." The City requires that "the *responsible party authorized to rent a rental dwelling* shall, upon notice from the building department and agreeable to both parties, allow the building official to inspect said dwelling." Article X, § 14-711(b) (emphasis added). Therefore, the Code allows for the City to obtain entry into tenants' personal residences *if their landlord consents to the entry*. The Rental Inspection Ordinance contains no provision requiring the City to obtain the consent of tenants to inspect their leased property.

43.      Further, the Rental Inspection Ordinance states that any "responsible party" that does not allow the City access to rental dwellings is subject to a fine. Section 14-718(b) states that "[a]ny person violating this section shall be subject to a penalty of not more than one hundred dollars ($100.00) for the first violation and a penalty of not more than five hundred dollars ($500.00) for each violation thereafter." Id. at § 14-718(b). Thus, not only are landlords and their agents coerced into allowing the City to violate tenants' constitutional rights, they are fined if they fail to do so.

15

## CAUSES OF ACTION

### COUNT I: THE POINT OF SALE INSPECTION ORDINANCE IS INVALID UNDER THE FOURTH AMENDMENT AND ILLINOIS CONSTITUTION

44.     The Property Owners repeat and reallege the allegations set forth in

Paragraphs 1-5, 7-18, and 21-41 as though fully set forth herein.

45.     Title 42, Section 1983 of the United States Constitution provides as follows:

> Every person who, under the color of an statute, ordinance, regulation, custom, or usage of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other property proceeding for redress.

46.     The City, as a municipal corporation under the laws of Illinois, is a "person"

that is subject to suit under 42 U.S.C. § 1983.

47.     The Fourth Amendment of the United State Constitution, made applicable to

the states and their municipal subdivisions by the Fourteenth Amendment, and Article I,

§ 6 of the Illinois State Constitution, protects against unreasonable searches.

48.     The Point of Sale Inspection Ordinance is invalid under the Fourth

Amendment because it (i) coerces property owners to allow warrantless, standardless and

limitless searches of the property because they are prohibited from selling their property

until they allow such a search, (ii) does not contain a procedure for requiring the City to

obtain a warrant for entry into private residences in the event a property owner or occupant

refuses to consent to a search, (iii) does not require the City to obtain consent from tenants

to search their dwelling, and (iv) contains no limitations on the scope of the City's entrance

into the private residences of its citizens.

16

49.    The Property Owners and other City property owners and tenants have suffered and will continue to suffer immediate and irreparable harm from the application of the Point of Sale Inspection Ordinance.  Their freedom against unreasonable searches has been and will continue to be substantially impaired if the City's wrongful conduct is not enjoined.  This irreparable harm to the Property Owners and City property owners and tenants will substantially outweigh any harm to the City if immediate relief is granted.

50.    There is no adequate remedy at law.  Money damages are wholly inadequate to remedy the immediate loss of Fourth Amendment rights.

**WHEREFORE**, the Property Owners pray for the following relief:

a.    A declaration that the Point of Sale Inspection Ordinance is unconstitutional;

b.    A temporary restraining order and preliminary and permanent injunction prohibiting the City from performing point-of-sale inspections pursuant to the Point of Sale Inspection Ordinance and enjoining the City from prohibiting the sale of property or refusing to issue transfer stamps in the absence of a point-of-sale inspection and/or issuance of a "certificate of compliance;"

c.    A monetary award for damages suffered by Property Owners as described herein;

d.    An award of reasonable attorney's fees and expenses as part of the costs of this action, pursuant to 42 U.S.C. § 1988; and

e.    Such other relief as the Court deems just and proper.

## COUNT II: THE DECONVERSION PROVISIONS
## VIOLATE THE FIFTH AMENDMENT AND THE ILLINOIS CONSTITUTION

51.    The Property Owners repeat and reallege the allegations set forth in

17

Paragraphs 1-5, 7-18 and 21-41 as though fully set forth herein.

52.    The Fifth Amendment to the United State Constitution guarantees that a person's private property shall not "be taken for public use, without just compensation."

53.    The Fifth Amendment of the United States Constitution, made applicable to the states and their municipal subdivisions by the Fourteenth Amendment, and Article I, § 15 of the Illinois State Constitution, guarantees that the City may not take private property through onerous regulation without just compensation.

54.    The Deconversion Provisions, together with the City ordinance requiring real estate transfer stamps to convey real property, allow for the City to perform regulatory takings without providing just compensation to legal nonconforming owners of multi-family residences.

55.    The Property Owners lawfully purchased and/or expanded their multi-family residences and have justifiable expectations to their value and the income they produce. Subsequent to purchasing their properties, the City's zoning ordinances were amended and the properties became legal nonconforming uses.

56.    The Deconversion Provisions provide for the unconstitutional regulatory taking of the owners' valuable rights in their nonconforming properties.

57.    By placing their nonconforming properties on the market, the owners subject themselves to the capriciousness of the City which, among other things, may unconstitutionally (i) require them to make costly repairs as a prerequisite to the City's approval of the sales, and/or (ii) order the deconversion of their properties, thereby greatly diminishing their value, and/or (iii) prevent them from selling their property if they cannot afford the deconversion, all without any compensation from the City.

18

58.    The Code leaves owners without any administrative recourse or forum to challenge the City's actions. Further, there are no administrative procedures available for owners to seek just compensation. In addition, seeking administrative redress for the City's unlawful takings would be futile, given that the City itself has, on occasion, attempted to purchase the properties it ordered for deconversion for amounts substantially below market value.

59.    The Property Owners and other City property owners have suffered and will continue to suffer immediate and irreparable harm from the application of the Deconversion Provisions. The Deconversion Provisions are unconstitutional because they violate the prohibitions set forth in the Fifth Amendment to the United States Constitution and Article I, § 15 of the Illinois State Constitution against governmental taking of property without just compensation.    The Deconversion Provisions are also unconstitutional under the Fourteenth Amendment to the United States Constitution which prohibits the deprivation of property without due process of law. This irreparable harm to the Property Owners and other City property owners will substantially outweigh any harm to the City if immediate relief is granted.

60.    There is no adequate remedy at law. Money damages are wholly inadequate to remedy the immediate loss of Fifth Amendment rights.

**WHEREFORE**, the Property Owners pray for the following relief:

a.    A declaration that the Deconversion Provisions are unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 15 of the Illinois State Constitution;

b.    A temporary restraining order and preliminary and permanent injunction

prohibiting the City from implementing the Deconversion Provisions and from attempting to coerce property owners to sell their property to the City at values below market value in exchange for the City not requiring deconversion;

c.    A monetary award for damages suffered by Property Owners as described herein;

d.    An award of reasonable attorney's fees and expenses as part of the costs of this action, pursuant to 42 U.S.C. § 1988; and

e.    Such other relief as the Court deems just and proper.

### COUNT III: THE DECONVERSION PROVISIONS ARE UNREASONABLE RESTRAINTS ON PROPERTY OWNERS' RIGHT TO SELL THEIR PROPERTY

61.    The Property Owners repeat and reallege the allegations set forth in Paragraphs 1-5, 7-18, and 21-41 as though fully set forth herein.

62.    The City, by implementing the Deconversion Provisions and enforcing the ordinance requiring real estate transfer stamps to convey property, effectively and unconstitutionally prohibits property owners from selling their property if they cannot afford the deconversion. Thus, the Deconversion Provisions not only result in a taking without just compensation, they are also an unconstitutional restraint on property owners' right to sell their property which results in the deprivation of property without due process of law in violation of the Fourteenth Amendment.

63.    The Property Owners and other City property owners have suffered and will continue to suffer immediate and irreparable harm from the application of the Deconversion

20

Provisions. The Deconversion Provisions are unconstitutional because they violate the protections in the United States Constitution and the Illinois State Constitution against unreasonable governmental restriction on the right to sell private property. This irreparable harm to the Property Owners and other City property owners will substantially outweigh any harm to the City if immediate relief is granted.

64.    There is no adequate remedy at law. Money damages are wholly inadequate to remedy the immediate loss of the right to sell property.

**WHEREFORE**, the Property Owners pray for the following relief:

a.    A declaration that the Deconversion Provisions are unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 15 of the Illinois State Constitution;

b.    A temporary restraining order and preliminary and permanent injunction prohibiting the City from implementing the Deconversion Provisions;

c.    A monetary award for damages suffered by Property Owners as described herein;

d.    An award of reasonable attorney's fees and expenses as part of the costs of this action, pursuant to 42 U.S.C. § 1988; and

e.    Such other relief as the Court deems just and proper.

**COUNT IV: THE CODE VIOLATES CONSTITUTIONAL
EQUAL PROTECTION, BASED UPON THE
FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

65.    The Property Owners repeat and reallege the allegations set forth in Paragraphs 1-5, 7-18, and 21-41 as though fully set forth herein.

21

66.    The Fourteenth Amendment to the United States Constitution guarantees
that all citizens are entitled to "equal protection of the laws."

67.    A person's rights under the Fourteenth Amendment are applied to the states
and their municipal subdivisions by the Fourteenth Amendment, and Article I, § 2 of the
Illinois State Constitution guarantees that the City must provide "equal protection of the
laws" to all persons.

68.    Legal nonconforming property owners have valuable property rights which
entitle them, among other things, to (I) earn rental income, and (ii) through sale of the
property recover the value of their property, including the benefits of the nonconforming
uses.

69.    The City's unlawful conduct has created two separate and unequal classes
of nonconforming property owners: those who attempt to sell their properties and those
who do not.

70.    There is no rational basis or reason for the City to deprive nonconforming
owners who want to sell their properties the same property rights the City affords to
nonconforming owners who do not intend to sell their properties.

71.    The Property Owners and other City property owners who desire to sell their
property have suffered and will continue to suffer immediate and irreparable harm from
application of the Deconversion Provisions.  This irreparable harm will substantially
outweigh any harm to the City if immediate relief is granted.

72.    There is no adequate remedy at law.  Monetary damages are wholly
inadequate to redress the harm caused by the City when it implements the Deconversion
Provisions.

22

**WHEREFORE**, the Property Owners pray for the following relief:

a.    A declaration that the Deconversion Provisions are unconstitutional under the Fourteenth Amendment to the United State Constitution and Article I, § 2 of the Illinois State Constitution.

b.    A temporary restraining order and preliminary and permanent injunction prohibiting the City from applying its Code unevenly between nonconforming owners attempting to sell their properties and nonconforming owners who are not attempting to sell their properties;

c.    A monetary award for damages suffered by Property Owners as described herein;

d.    An award of reasonable attorney's fees and expenses as part of the costs of this action, pursuant to 42 U.S.C. § 1988; and

e.    Such other relief as the Court deems just and proper.

## COUNT V: THE RENTAL DWELLING INSPECTION ORDINANCE VIOLATES THE FOURTH AMENDMENT AND THE ILLINOIS STATE CONSTITUTION

73.    The Property Owners repeat and reallege the allegations set forth in Paragraphs 1, 6-12, 19-20 and 42-43 as though fully set forth herein.

74.    The Rental Dwelling Inspection Ordinance violates the Fourth Amendment and Illinois State Constitution because it does not require the City to obtain the consent of tenants before conducting searches of their property.

75.    The Realtor Association, its members and City property owners and tenants have suffered and will continue to suffer immediate and irreparable harm from the application of the Rental Dwelling Inspection Ordinance. The Rental Dwelling Inspection

23

Ordinance is unconstitutional because it violates the prohibitions set forth in the Fourth Amendment to the United States Constitution and Article I, § 6 of the Illinois State Constitution against unreasonable searches. This irreparable harm to the Property Owners and other City property owners and tenants will substantially outweigh any harm to the City if immediate relief is granted.

76.    There is no adequate remedy at law. Monetary damages are wholly inadequate to remedy the immediate loss of Fourth Amendment rights.

**WHEREFORE**, the Property Owners pray for the following relief:

a.    A declaration that the Rental Dwelling Inspection Ordinance is unconstitutional under the Fourth Amendment to the United States Constitution and Article I, § 6 of the Illinois State Constitution;

b.    A temporary restraining order and preliminary and permanent injunction prohibiting the City from conducting inspections pursuant to the Rental Dwelling Inspection Ordinance;

c.    A monetary award for damages suffered by Property owners as described herein;

d.    An award of reasonable attorney's fees and expenses as part of the costs of this action, pursuant to 42 U.S.C. § 1988; and

e.    Such other relief as the Court deems just and proper.

24

DATED: November 18, 2008

Respectfully submitted,

HUSSEIN H. MANN and
DEBRA HOUSTON-MANN

By: _____

Their Attorney

Marcia B. Gevers
MARCIA B. GEVERS & ASSOCIATES
19710 Governors Highway, Suite 8
Flossmoor, IL 60422
Ph:    (708) 957-2700
Fax:   (708) 957-2720
Attorney No.:

25

## VERIFICATION

We, Hussein H. Mann and Debra Houston-Mann, verify under penalty of perjury that
the foregoing statements set forth in the Verified Complaint for Temporary Restraining
Order, Preliminary Injunction, Permanent Injunction, Declaratory and Other Relief are true
and correct.

_(signature)_
Hussein H. Mann

_(signature)_
Debra Houston-Mann

Marcia B. Gevers
MARCIA B. GEVERS & ASSOCIATES
19710 Governors Highway, Suite 8
Flossmoor, IL 60422
Ph:    (708) 957-2700
Fax:   (708) 957-2720
Attorney No.:

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.1.3
### Eastern Division

Hussein H Mann, et al.

                Plaintiff,

v.

                                        Case No.: 1:08−cv−00555
                                        Honorable David H. Coar

Calumet City, Illinois

                Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, March 26, 2008:

      MINUTE entry before Judge Honorable David H. Coar: Motion hearing held on 3/26/2008 regarding motion to intervene [21]. MOTION by Intervenor Parties Mainstreet Organization Of Realtors, Ayanna Walker for leave to intervene [21] is granted. A motion to stay will be filed and noticed for presentment. Mailed notice(pm, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.1.3
### Eastern Division

Hussein H Mann, et al.

                    Plaintiff,

v.                                         Case No.: 1:08−cv−00555

                                         Honorable David H. Coar

Calumet City, Illinois

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, March 31, 2008:

       MINUTE entry before Judge Honorable David H. Coar: Motion hearing held on 3/31/2008 regarding motion to stay [23]. MOTION by Intervenor Parties Mainstreet Organization Of Realtors, Ayanna Walker to stay [23] is granted. This action is stayed pending Judge Shadur's ruling in case #07 C 6148 Walker v. Calumet City, IL − "on whether to Preliminarily enjoin City's Point of Sale Inspection Ordinance". Mailed notice(pm, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.