IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AYANNA WALKER,  )<br>  )<br>      Plaintiff,  )<br>v.  )<br>  )<br>CALUMET CITY, ILLINOIS,  )<br>  )<br>      Defendant.  )<br>  ) | Case No. 07C 6148<br><br>Judge Milton Shadur<br>Magistrate Judge Valdez |

**PLAINTIFF'S REPLY
IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin
Mark A. Semisch
GRIPPO & ELDEN LLC
111 S. Wacker Drive
Chicago, IL 60606
Phone: (312)704-7700
Fax:    (312)558-1195

165525-4

When this Court determined that Ayanna Walker's ("Walker's") claims were moot and entered its Final Order of Dismissal (Ex. A), it necessarily determined that Walker obtained all the relief sought in her complaint. Otherwise, Walker's claims could not have been moot. (*See* Ex. B, Mem. Supp. Permanent Relief ¶ 2 (citing *Lowe v. Duckworth*, 663 F.2d 42 (7th Cir. 1981) (case should be dismissed as moot only "[w]hen all the relief sought has been obtained"); *NLRB v. Pfizer, Inc.*, 763 F.2d 887, 888 n. 1 (7th Cir. 1985) (case is not moot if award does not give litigant all the relief he sought)).) Indeed, this Court responded affirmatively to the proposition made by Walker's counsel that "Walker is in the same position she would have been in had she won." (Ex. C, May 15, 2008 Hearing Tr. 11:11–15.) Because Walker obtained the relief she sought and because that relief is memorialized in the Final Order of Dismissal, Walker is the "prevailing party" and she is entitled to recover her attorney's fees.

Part I below explains that Walker's case resulted in a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001). It also shows that City's main arguments—summarized in its bullet points on page one of its response—misstate the relief Walker sought, the relief this Court granted, and the events leading up to the Final Order of Dismissal. Part II shows that awarding Walker attorney's fees comports with the purpose of § 1988 and prevents City from making an end run around this Court's rulings that there is a "substantial likelihood" that the Ordinance is unconstitutional. Finally, Part III summarizes the nature and amount of fees that Walker seeks to recover.

I. **Walker's Case Resulted in a Judicially Sanctioned Change in Her Legal Relationship with City.**

Walker satisfies the *Buckhannon* test because she received "the relief [she] sought," *Palmetto Props., Inc. v. County of DuPage*, 375 F.3d 542, 551 (7th Cir. 2005), and because this

Court gave its "judicial imprimatur," *id.* at 550 (quoting *Buckhannon* 532 U.S. at 605), when it memorialized Walker's relief in its Final Order of Dismissal. Part A summarizes the relief sought and obtained by Walker in her lawsuit. Part B shows that the Final Order of Dismissal satisfies the "judicial imprimatur" test.

A. **Walker Received the Relief She Sought**

1. **Non-Enforcement of Ordinance**

Walker came to this Court asking it to "enjoin enforcement of the Point of Sale Inspection Ordinance." (2d Am. Compl., Docket No. 33, ¶ 3.) Walker argued that, as long as she remained subject to the Ordinance, City could unreasonably restrain her right to transfer her property, deprive her of procedural due process, and unconstitutionally restrict her right to sell her legal nonconforming property. (*Id.* at ¶¶ 30–49.) Walker also argued that City could "wrongfully deprive [her] of the 'valuable property right' to sell and transfer legal nonconforming property" by subjecting her to an inspection under the Ordinance and by preventing her from selling her property unless she made cosmetic repairs. (*Id.* at ¶ 41.)

Walker obtained this relief. The Final Order of Dismissal states, "City will not otherwise enforce its Point of Sale Inspection Ordinance (other than the payment of the transfer tax itself) as to the Subject Property." (Ex. A ¶ 3(b).) Thus, pursuant to the Final Order of Dismissal, City is *forever* barred from requiring a point-of-sale inspection of Walker's property before its sale and is thus *forever* barred from requiring her to make repairs to her property as a condition of the right to sell it. This is precisely the relief Walker sought.

City ignores or intentionally misreads the Final Order of Dismissal when it responds that Walker failed "to enjoin the point-of-sale provisions," because she "remains subject to certain requirements of the Ordinance, *i.e.*, payment of real estate transfer taxes and transfer of tax stamp to a prospective buyer." (Resp. at 7–8.) City's argument also raises a red herring. Walker

never asserted that City cannot tax the transfer of property. Walker's position—and the position of the Realtor Association—has always been that the only condition precedent to the issuance of transfer stamps should be payment of the tax. Thus, it is of no consequence to this motion that the Final Order of Dismissal makes clear a point that Walker has always conceded—to obtain transfer stamps upon sale of her property, she must first pay the transfer tax. Walker obtained the relief she sought—nonenforcement of the portions of the Ordinance that she challenged.

### 2. Elimination of Procedures By Which City Could Declare that Walker's Property was "Illegally" Converted

Walker complained that, because the Ordinance lacks procedural due process, City could prevent the sale of her legal nonconforming property simply be declaring it to be "illegal" nonconforming. (2d Am. Cmpl. ¶¶ 15, 41.) She asked this Court to order City not to enforce the Ordinance so that she would be free to sell her legal nonconforming property. (*Id.* at ¶¶ 37, 43, 49.) Walker also argued in Count III that City's refusal to confirm that her property was legal nonconforming unconstitutionally prevented her from selling her property as legal nonconforming because lenders would not lend money to prospective buyers without such assurance. (*Id.* at 44–49.) Again, she asked the Court to require City to confirm that her property was legal nonconforming. (*Id.* at 49.)

Walker obtained all of this relief too. The Final Order of Dismissal not only prevents enforcement of the Ordinance against Walker's property (*see* Part I.A.1, above), but also provides written confirmation that her property is legal nonconforming. The Final Order of Dismissal states:

> City has certified that the Subject Property is legal nonconforming use under City's Zoning Ordinance, a status which runs with the land, and is subject to loss or elimination only for the reasons set forth in Section V of the Calumet City Zoning Ordinance, "Nonconforming Buildings and Uses," as that Ordinance currently exists. . . . The City through its attorney shall cause a copy of this Order to be recorded in the Office of the Cook County Recorder of Deeds . . . .

165525-4                                     3

(Ex. A ¶ 3(d), 6.)

City responds to this point only by arguing that its actions were "voluntary" and not taken in response to Walker's complaint. This specious argument is addressed in Part I.B.2 below.

> 3. **Walker Established that the Ordinance Is Completely Unnecessary for City to Enforce its Building Codes and Address Public Health and Safety Issues in Connection with Multi-Family Dwellings**

One of the main arguments asserted by Walker—both in her complaint and in her motion for a preliminary injunction—was that City's Ordinance is completely unnecessary for City to ensure compliance with its Building Codes because it can legitimately address all such issues through its much less intrusive Rental Dwelling Inspection Ordinance and Code Enforcement Ordinance, neither of which impair the right to sell property. (2d Am. Compl. ¶¶ 20, 21, 36, 48.)

Walker prevailed on this argument too because City unequivocally and explicitly conceded it. City opposed Walker's position until it took its action to moot Walker's claim. Now, the entire basis of City's argument is that Walker's claims were moot because "Walker voluntarily submitted herself to the identical [inspection] processes set forth in the City's Rental Inspection Ordinance." (Resp. at 2.) City's concession is incorporated into the Final Order of Dismissal:

> [B]ecause Walker has already submitted the property . . . to an annual inspection under the City's Rental Dwelling Inspection Ordinance, and has corrected all identified Code violations in accordance with the terms thereof, Walker does not need to pass a redundant point of sale inspection in order for her to sell the Subject Property.

(Ex. A ¶ 3(a).)

The relief obtained by Walker—judicial recognition that the Point of Sale Inspection Ordinance is unnecessary for multi-family dwellings that are subject to, and pass, an annual inspection under the Rental Dwelling Inspection Ordinance—represents a huge success not only

for Walker, but also for thousands of owners of all multi-family dwellings in City. The relief obtained by Walker will inure to the benefit of all such owners of multi-family dwellings in City because City will be prevented by judicial estoppel from taking a contrary position in other pending or future litigation challenging the Ordinance, because doing so "would create the perception that either the first or the second court was misled." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). According to MLS data, over the last three years, an average of sixty-two multi-family units have sold each year in City. Through Walker's efforts, City is precluded from requiring point-of-sale inspections for multi-family dwellings that are subject to, and pass, annual inspections under the Rental Dwelling Inspection Ordinance.

### 4. City's Other Arguments Are Misleading and Without Merit

City makes additional arguments that Walker did not prevail in her action. Each is without merit. First, City misrepresents the relief Walker sought when it argues that Walker failed "to turn Illinois land use law on its head by asking this Court to rule that the ordinances requiring the elimination of nonconforming use in the case of premises destruction is unconstitutional." (Resp. at 1.) Walker never made such a claim. Instead she complained that City's refusal to confirm in writing that her property was legal nonconforming (*e.g.*, by issuing rebuild letters) unconstitutionally interfered with her right to sell legal nonconforming property. But, as explained above, Walker obtained the relief she sought because the Final Order of Dismissal – that the Court required City to record with the Recorder of Deeds – provides the written confirmation of the legal-nonconforming status of Walker's property that City refused to provide before Walker filed suit.

Second, City argues that Walker failed "to certify a class action." (Resp. at 1.) This is undisputed and irrelevant. The only reason this Court did not rule on the motion—which would have been granted, *see MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 747 (7th

Cir. 2007) ("[A]ll the homeowners in Calumet City can be joined in a class action . . . .")— is because City mooted Walker's claim by deciding not to enforce the Ordinance against Walker. In any event, as set forth in Part III, Walker does not seek attorney's fees for her class certification motion.

Third, City brazenly also argues that Walker is "the poster child for the validity of the Ordinance" and on at least five separate occasions blatantly lies to this Court by stating that Walker "conceded to the validity of the Ordinance." (Resp. 2.) (*See also id.* at 4 ("Walker voluntarily complied with the Ordinance . . . ."); *id.* at 5 ("Walker complied with the requirements of the Ordinance."); *id.* at 5 ("Walker's compliance . . . ."); *id.* at 9 ("Walker complied with the requirements of the Ordinance.")). City's arguments are sanctionable. City knows that Walker *never* conceded the validity of the Ordinance and that she did not "comply" with the Ordinance. Indeed, Walker never contracted to sell her property and thus never applied to City for an inspection under the Ordinance. That Walker complied with a *different* ordinance that was not challenged in her suit—*i.e.*, the Rental Dwelling Inspection Ordinance—in no way concedes the validity of the Ordinance. Indeed, as explained above in Part I.A.3, Walker's compliance with the Rental Dwelling Inspection Ordinance and City's subsequent concession that, as a result of that compliance, an additional point-of-sale inspection was not required shows that Walker prevailed on one of her main arguments. The events in this case, far from establishing the validity of the Ordinance, show that it is unreasonable and unnecessary.

Fourth, City argues that Walker "failed" in her attempt to invalidate the Ordinance. To the contrary, Walker succeeded in "invalidating" the Ordinance as it applies to her property because City is *forever barred* from enforcing the inspection requirement against her property. (Ex. A ¶ 3(b).) Moreover, City made a tactical decision not to enforce the Ordinance against

Walker, thus mooting her claim before this Court could rule on Walker's motion for a preliminary injunction, by which she sought to invalidate the Ordinance. City saw that "the movie would end the same way" because this Court had *twice* enjoined enforcement of prior, substantially similar versions of the Ordinance in the Realtor Association case and decided to try its defense before a different judge. City should not be rewarded for its tactical decision that prevented this Court from granting the relief that Walker sought.

Fifth, City asserts that Walker failed because she "fought tooth-and-nail against dismissal of this action on mootness grounds." (Resp. 1.) City again misstates what actually happened. What Walker fought "tooth and nail" was entry of a dismissal order proposed by City that did not provide all of the relief that she sought in her complaint. After the Court issued its oral ruling on mootness, City originally proposed a very short order that stated only: "The Court determines that Walker's claims against the City are moot. Accordingly the Court dismisses this action without prejudice." Ex. D. Walker objected to City's proposed order because it did not include permanent relief, which was required in light of the Court's ruling. (*Id.* at ¶ 3.) Because City would not agree to the permanent relief, Walker filed a brief with the Court which explained that because the Ordinance remained on the books, "it is critical that City's concessions be contained in an order because, absent an order, nothing would prevent City from revoking its concessions after Walker's claims are dismissed." (Ex. B (citing *Horina v. City of Granite City, Ill.*, No. 05-cv-0079, 2005 U.S. Dist. LEXIS 36386, at *11–12 (S.D. Ill. Aug. 29, 2005) ("defendant cannot moot a claim simply by voluntarily ceasing behavior when it is free to resume that behavior at any time")(Ex. E); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) (a current policy, adopted after the commencement of the lawsuit, that was not implemented by statute or regulation and could be changed again, is a voluntary cessation of the challenged

conduct that does not eliminate the controversy)).) In addition, Walker argued that, absent permanent relief, if City acted inconsistently with its concessions, Walker would have no means to obtain prompt relief. (Ex. B ¶ 5.) Importantly, and as reflected in the Final Order of Dismissal, this Court agreed with Walker's arguments and entered a form of the permanent relief sought by Walker (*e.g.*, by reciting City's concessions and by subjecting City to contempt proceedings should City act inconsistently with its concessions).

\* \* \*

In sum, Walker's successes cannot reasonably be disputed. Walker did not leave the courtroom "empty handed" as City contends. (Resp. 5.) To the contrary, as this Court agreed, "Walker is in the same position she would have been in had she won." (Ex. C at 11:11–15.) As a result of her suit and the Court's entry of the Final Order of Dismissal: (1) City is forever prohibited from enforcing the challenged aspects of the Ordinance against Walker's property; (2) City provided the assurance that Walker's property is legal nonconforming necessary for her to sell it as legal nonconforming; and (3) Walker established that the Ordinance is unnecessary in connection with the sale of multi-family dwellings. Walker thus achieved a "change in the legal relationship of the parties." *Buckhannon*, 532 U.S. at 605. As explained next, the relief obtained was granted "judicial imprimatur" by virtue of this Court's Final Order of Dismissal such that Walker is the "prevailing party" entitled to recover her attorney's fees and expenses.

**B.**　**This Court Gave Judicial Imprimatur in Its Final Order of Dismissal**

A "prevailing party" for purposes of § 1988 must show that her lawsuit was more than a "catalyst" that "achieved the desired result because [it] brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 600. She must also show "judicial imprimatur," *id.* at 605, through "a judgment on the merits, consent decree, or *other* judicially-sanctioned change." *Gautreaux v. Chi. Hous. Auth.*, No. 66 C 1459, 2005 WL 1910849, at \*1 (N.D. Ill. Aug.

9, 2005)(Ex. F), *aff'd*, 491 F.3d 649 (7th Cir. 2007) (citing *Buckhannon*, 532 U.S. at 605–06) (emphasis added). Judicial imprimatur sufficient to provide the basis of an award of attorney's fees includes, for example, a dismissal order memorializing the defendant's decision to withdraw enforcement proceedings, *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n of Ill.*, No. 00 C 7363, 2001 WL 893840, at *3 (N.D. Ill. Aug. 7, 2001)(Shadur, J.)(Ex. G), a dismissal order memorializing a settlement agreement, *Cruz v. Globe Realty Mgmt. Co.*, No. 03 C 9298, 2005 WL 3455846, at *6 (N.D. Ill. Dec. 13, 2005)(Ex. H), a partial summary judgment that never became final or enforceable before the case was dismissed for mootness, *Palmetto*, 375 F.3d at 551, and a mooted preliminary injunction. *Young v. City of Chicago*, 202 F.3d 1000, 1000–01 (7th Cir. 2000); *see also Roberson v. Giuliani*, 346 F.3d 75, 81 (2d Cir. 2003) ("We therefore join the majority of courts to have considered the issue since *Buckhannon* in concluding that judicial action *other* than a judgment on the merits or a consent decree can support an award of attorney's fees, so long as such action carries with it sufficient judicial imprimatur.") (emphasis added).

1. **The Final Order of Dismissal Constitutes Judicial Imprimatur**

This Court gave its imprimatur when, after contested proceedings, it issued the Final Order of Dismissal, which: (i) set forth the permanent relief Walker obtained, (ii) forever bound City to its concessions that it would not enforce the challenged provisions of the Ordinance against Walker's property, (iii) forever recognized City's concession that the Ordinance is unnecessary and redundant in connection with the sale of multi-family dwellings, (iv) provided written and judicial confirmation that Walker's property is legal nonconforming, and (v) required City to record the order (which eliminated the cloud on the legal status of her property that existed prior to entry of the order). Before entry of the order, Walker was unprotected from City

breaking its promise to not enforce the Ordinance against her. Entry of the order resulted in judicially sanctioned changes to the legal relationship of the parties, as shown by (i) – (v), above.

Contrary to City's argument, the facts of *Buckhannon* are not "equally applicable here." (Resp. 7.) In *Buckhannon*, the Court found that the plaintiff "lack[ed] the necessary judicial imprimatur" where the defendant amended an ordinance through the legislative process without any judicial involvement. 532 U.S. at 601, 605. Here, by contrast, City did not amend its Ordinance. Rather, City became prohibited from enforcing the Ordinance against Walker by a judicial order that (1) provides mandatory relief; (2) establishes the legal status of the subject property; (3) is entitled "Order"; and (4) bears the signature of the District Court judge, not the parties' counsel. Further, the Court stated on the record that City could be held in contempt should it deviate from the Final Order of Dismissal. That is all that is required for judicial imprimatur. For example, in *Johnny's Icehouse, Inc.*, 2001 WL 893840, at *3, this Court awarded attorney's fees under § 1988 where its prior order formalized and memorialized a defendant's decision to not take certain further action against a plaintiff because such order "legally altered the relationship between the parties." *Id.* The Court noted that its order "subjected what would otherwise have been a merely private agreement to judicial oversight and enforcement . . . and did so in response to [the plaintiff's] concerns that a purely voluntary undertaking on [the defendant's] part would not alone provide adequate protection in the future." *Id; see also Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 161, 165 (3d Cir. 2002) (finding settlement, which was "memorialized in the District Court's order," conferred "prevailing party" status under § 1988 and *Buckhannon*). Judicial orders, unlike the legislative amendments in *Buckhannon*, constitute judicial imprimatur. *See, e.g., Cruz*, 2005 WL 3455846, at *6.

### 2. City's Arguments to the Contrary are Without Merit

Each of City's arguments against a finding of judicial imprimatur is without merit. First, City argues that its actions were "voluntary" and "wholly unrelated to Walker's complaint." (Resp. 3, 6.) But had Walker not filed a complaint, City would not have decided not to enforce the Ordinance against her and would not have provided written confirmation that her property is legal nonconforming. (To our knowledge, City has not taken such action with respect to any other "legal nonconforming" "rental dwelling.") Further, while City may have made a "voluntary" tactical decision to moot Walker's claims before the Court ruled on Walker's motion for preliminary injunction, City's decision not to enforce the Ordinance against Walker "is most persuasively construed as involuntary— indeed exhibiting judicial imprimatur," because this Court had made substantive determinations on the constitutionality of the Ordinance when it twice issued injunctions against its enforcement in the Realtor Association case. *Palmetto*, 375 F.3d at 550. As Walker pointed out, and as City never contested, even though City amended its Ordinance, the key unconstitutional aspect of the Ordinance—that a City property owner cannot sell property until City says it can—has remained unchanged. City saw the "same end of the movie" and mooted Walker's claim to prevent the Court from issuing another injunction. In light of those events, in no way can City's conduct be considered "voluntary" under *Buckhannon*. *Palmetto*, 375 F.3d at 550 (finding judicial imprimatur when defendant took action "only *after* that determination ha[d] been made and presumably *because of it*"; distinguishing *Buckhannon* because the defendant in that case repealed its law and mooted the case "*before* the district court made *any* substantive rulings") (emphases in original).

Moreover, even if City's initial decision not to enforce the Ordinance against Walker and its decision to declare her property legal nonconforming could be considered "voluntary," the

165525-4

11

fact that the Court granted Walker permanent relief in the Final Order of Dismissal, against City's objection (*see* Ex. I), provides sufficient judicial imprimatur to satisfy *Buckhannon*.

Second, City asserts that "[t]his Court never ordered the City to file the certification with the Recorder of Deeds." This assertion likewise contradicts this Court's Final Order of Dismissal which states, "The *City* through its attorney *shall cause* a copy of this Order *to be recorded* in the Office of the Cook County Recorder of Deeds . . . ." (*Id.* at ¶ 6.) Requiring recordation, of course, changed the legal relationship of the parties. Before entry of the order, City was free to renege on its concessions. Entry of the order forever bound City to them and provided Walker with the recognized protection of the *recording* of her property's *legal status* so that third parties could rely on it. Hence Walker's successes constitute "the relief sought," *Palmetto*, 375 F.3d at 551, and a "change in the legal relationship of the parties," *Buckhannon*.

Third, City argues that the Final Order of Dismissal was not entered "at Walker's insistence because of her concerns that a purely voluntary undertaking on Calumet City's part would not provide adequate protection in the future." As explained above in Part I.A.4 and in Exhibit B, City's argument is wrong. The Final Order of Dismissal was entered at Walker's insistence, over City's objection, after contested proceedings. This Court agreed with Walker's concerns and provided its imprimatur by entering a form of order that provided Walker with: (a) judicial protection against City reneging on its promises and concessions, and (b) recognition of the legal status of her property, recorded with the Recorder of Deeds.

II.     **Awarding Attorney's Fees Comports with the Purpose of the Attorney's Fee Provision of § 1988.**

Section 1988 "reflects a strong public policy of encouraging prosecution of civil rights actions by private attorneys general." *Hairline Creations, Inc. v. Kefalas*, 664 F.2d 652, 660 (7th Cir. 1981) (citation omitted); *accord Buckhannon*, 532 U.S. at 605 (2001) (Ginsburg, J.,

concurring) (citation omitted) (finding that the "central purpose" of statutes awarding attorney's fees to prevailing parties is "to promote vigorous enforcement of the laws by private plaintiffs"). Walker brought this suit as a "private attorney general" and received the relief she sought. Awarding Walker attorney's fees is not only correct under *Buckhannon*, but it would also serve the important goal of encouraging necessary litigation to challenge unconstitutional ordinances.

Failure to award attorney's fees, on the other hand, would reward City for its tactical maneuvers and provide City a roadmap to continue to prevent judicial determination of the constitutionality of the Ordinance that this Court twice previously found is highly likely unconstitutional. Absent an award of fees, City could moot other cases brought by City's citizens by deciding not to enforce the Ordinance against named plaintiffs, while continuing to enforce it against everyone else with no adverse consequence. Unlike in *Buckhannon*, 532 U.S. at 601, City has not amended the Ordinance and therefore can enforce it against those not courageous enough to bring suit. Awarding attorney's fees to Walker prevents City's end run around this Court's rulings that the Ordinance is highly likely unconstitutional and provides the protection necessary to encourage others to bring suit against City's unconstitutional Ordinance.

### III.  The Attorney's Fees and Expenses Sought by Walker.

We now turn to the attorney's fees and expenses that Walker seeks to recover. As the Court is aware, City's Ordinance was first challenged by the Realtor Association. This Court twice enjoined the Ordinance in the Realtor Association litigation. After oral argument in the Seventh Circuit, Walker expressed her desire to sue City and challenge the Ordinance. Various Realtor Associations agreed to pay Walker's attorney's fees and expenses because Walker could not afford to do so herself. That the Realtor Associations paid Walker's attorney's fees, however, does not prevent Walker from recovering attorney's fees under 42 U.S.C. § 1988. *Am. Council of the Blind of Colo., Inc. v. Romer*, 962 F.2d 1501, 1503–04 (10th Cir. 1992), *vacated*,

506 U.S. 1075 (1993), *reaff'd*, 992 F.2d 249 (10th Cir. 1993) (holding that the fact that fees were paid by a third-party who controlled the litigation "should not be used as an independent basis on which to deny the Plaintiffs their deserved fees"). Walker's attorneys charged the Realtor Associations their standard hourly rates, and provided a 13% discount. These hourly rates are "presumptively appropriate." *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003).

Walker incurred approximately $300,000 in her prosecution of her case (and the Realtor Association incurred substantially more than that in the prosecution of its suit). Importantly, Walker does *not* seek 100% of her fees and seeks no fees incurred by the Realtor Association in the prosecution of its claims. Rather, Walker seeks only those attorney's fees and expenses related directly to success against City. In connection with time billed through the end of July, Walker seeks $160,459.50 in attorney's fees and $7,044.11 in expenses, plus interest.[1] *See Lippo v. Mobil Oil Corp.*, 692 F. Supp. 826 (N.D. Ill. 1988). Ex. J is a chart breaking down the fees by attorney, law clerk, and paralegal. The details regarding the work performed by Walker's counsel, including specific time entries, are set forth in Ex. K hereto. Generally, Walker seeks fees incurred with respect to: (1) preparing Walker's complaints; (2) communications with and between counsel; (3) preparing briefs associated with Walker's requests for injunctive relief; (4) preparing for and attending court hearings; (5) reviewing and analyzing City's document production, including Walker's property file; (6) analyzing and opposing City's initial motion to dismiss (which the Court did not decide); (7) conducting legal and factual research and analysis; (8) preparing briefs related to the entry of an order granting Walker permanent relief; and (9) preparing briefs associated with Walker's motion for attorney's fees.

---

[1] This amount will increase if the Court awards Walker her fees incurred in filing her motion for attorney's fees because Walker's counsel spent time on that motion in August. *Leffler v. Meer*, 60 F.3d 369, 372 (7th Cir. 1995).

Walker does not seek fees incurred in connection with tasks that did not contribute directly to her success, notably: (1) class certification; (2) written discovery; (3) reassignment, intervention, and stays of related litigation; (4) preparation of a written response to City's motion to dismiss after it mooted Walker's claim; or (5) preparation of her motion for leave to file an amended complaint to add a new plaintiff (after City mooted her claim). Walker also does not seek fees for time spent by more than one attorney attending court hearings. Finally, Walker does not seek fees associated with whether the Ordinance is unconstitutionally vague, an issue the Court did not need to consider in connection with Walker's requests for relief.

In addition, Walker seeks $7,044.11 in costs. The details of the costs requested are set forth in Ex. L. The costs requested are reasonable and represent only a fraction of what Walker could seek. With respect to research-related charges, Walker seeks only 33% of such costs. Similarly, Walker seeks only 33% of the costs associated with duplicating, courier, and facsimile services. The 67% discount reflects the fact that at the same time Walker was litigating this case, her counsel was also challenging the Ordinance in the Seventh Circuit and the Supreme Court.

## CONCLUSION

For the foregoing reasons, Walker asks this Court to award her attorney's fees.

Dated: August 28, 2008

Respectfully Submitted,

AYANNA WALKER

/s/ Patrick T. Nash
One of Its Attorneys

Philip C. Stahl
Patrick T. Nash
GRIPPO & ELDEN LLC
111 S. Wacker Drive
Chicago, IL 60606
Phone: (312) 704-7700
Fax:   (312) 558-1195

165525-4                                     15

## CERTIFICATE OF SERVICE

I, Patrick T. Nash, certify that on this 28th day of August, 2008, I served the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES** to the following by Electronic Mail Transmission via the ECF System:

>Mark H. Sterk
>Odelson & Sterk, Ltd.
>3318 West 95th Street
>Evergreen Park, Illinois 60805
>
>John B. Murphey
>ROSENTHAL, MURPHEY & COBLENTZ
>30 North LaSalle Street
>Suite 1624
>Chicago, IL 60602

>/s/ Patrick T. Nash

165525-4