EXHIBIT A



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AYANNA WALKER,                    )
                          Plaintiff,    )    Case No. 07C 6148

vs.                                                )
                                        )    Judge Milton I. Shadur

CALUMET CITY, ILLINOIS            )    Magistrate Judge Valdez
                     Defendant.   )

## FINAL ORDER OF DISMISSAL

This matter comes before the Court on (1) the Motion of plaintiff Ayanna Walker ("Walker") for Leave to File Amended Complaint to Add a New Plaintiff and for Extension of Time to File Briefs Regarding Mootness, Class Certification and Motion to Dismiss, and (2) Walker's Motion to Reassign Related Case Under Local Rule 40.4. The Court has also reviewed defendant City of Calumet City's ("City") memorandum on mootness and class certification issues. The Court is also aware of the pendency of <u>Mann, et al v. Calumet City</u>, No. 08 C 555 which is currently pending before Judge Coar. It is hereby ORDERED:

1. For the reasons set forth in Paragraph 3 below, Walker's Motion for Leave to File Amended Complaint to Add a New Plaintiff and for Extension of Time to File Briefs Regarding Mootness, Class Certification and Motion to Dismiss is denied.

2. For the reasons set forth in Paragraph 3 below, Walker's Motion to Reassign Related Case Under Local Rule 40.4 is denied. The related case, <u>Mann, et al v. Calumet City</u>, No. 08 C 555, shall remain pending before Judge Coar.

3. The Court bases its decision that Walker's claim are moot on the following representations made by City: (a) because Walker has already submitted the property located at 521-23 Greenbay Avenue (the "Subject Property") to an annual inspection under the City's Rental Dwelling Inspection Ordinance, and has corrected all identified Code violations in accordance with the terms thereof, Walker does not need to pass a redundant point-of-sale inspection in order for her to sell the Subject Property; (b) City will not otherwise enforce its Point of Sale Inspection Ordinance

150592v2

(other than the payment of the transfer tax itself) as to the Subject Property; (c) City will issue transfer stamps and/or a Certificate of Compliance upon payment of the transfer tax in connection with the transfer of the Subject Property;and (d) City has certified that the Subject Property is a legal nonconforming use under City's Zoning Ordinance, a status which runs with the land,and is subject to loss or elimination only for the reasons set forth in Section V of the Calumet City Zoning Ordinance, "Nonconforming Buildings and Uses," as that Ordinance currently exists.

4. Based on the representations made by City, as summarized in Paragraph 3, the Court finds that Walker's claims in this action are moot.

5. Nothing in this Order should be viewed as limiting the rights of any other City homeowner to seek intervention in the Mann action and/or to file a new lawsuit challenging the constitutionality of City's Point of Sale Inspection Ordinance or its alleged failure to issue re-build letters and/or confirmations that property is legal nonconforming in connection with the sale of legal nonconforming property. In addition, entry of this Order is without prejudice to Walker's right to file a motion to recover her attorney's fees and costs pursuant to 42 U.S.C. §1988 or City's right to oppose any such motion.

6. The City through its attorney shall cause a copy of this Order to be recorded in the Office of the Cook County Recorder of Deeds, and forward a stamped copy of the recorded document to Walker's attorney.

Dated: May 22, 2008                    Enter:

                                       Judge Milton I. Shadur

150592v2

2

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| AYANNA WALKER, for herself and all others similarly situated, | ) ) ) |
| *Plaintiffs,* | ) ) Case No. 07 C 6148 |
| v. | ) ) Judge Milton I. Shadur ) |
| CALUMET CITY, ILLINOIS, | ) ) ) ) |
| *Defendant.* | ) |

## MEMORANDUM IN SUPPORT OF ENTRY OF ORDER
## THAT GRANTS PLAINTIFF PERMANENT RELIEF

Plaintiff Ayanna Walker ("Walker") submits this memorandum in connection with the order that the Court should enter in connection with its determination that Walker's claims are moot. Walker requests that the Court enter the order attached as Exhibit A. Such order grants Walker the permanent relief that is necessary if her claims are, in fact, moot. The order also provides Walker protection in the event Defendant Calumet City ("City") reneges on the concessions it made to moot her claims. In support of her request, Walker states as follows:

1.  City recently told the Court that it (a) would not enforce its Point of Sale Inspection Ordinance against Walker, and (b) had "certified" that Walker's property is legal nonconforming. On the basis of City's statements, on May 6, 2008, the Court orally ruled that Walker's claims are moot. The Court requested that City prepare a draft order. City circulated the proposed form of order attached as Exhibit B. City's proposed order does not accurately reflect the Court's rulings because, among other things, it does not include any permanent relief for Walker regarding City's "concessions" regarding her property. Without such permanent

150747v1

relief, and a court order protecting Walker's property rights, Walker's claims are not moot and Walker is not protected from City reneging on its concessions after Walker's suit is dismissed.

        2.     In circumstances such as is presented here, a case becomes moot only if the plaintiff obtains all of the relief she sought in her suit. *Laskowski v. Spellings*, 443 F.3d 930 (7th Cir. 2006) (even if some claims become moot, the entire case cannot be dismissed as moot if "meaningful relief" can be granted); *NLRB v. Pfizer, Inc.*, 763 F.2d 887, 888 n.1 (7th Cir. 1985) (case is not moot if award does not give litigant all the relief he sought); *Lowe v. Duckworth*, 663 F.2d 42 (7th Cir. 1981) (case should be dismissed as moot only "[w]hen all the relief sought has been obtained"). Thus, to dismiss Walker's claims as moot, the Court's order must grant Walker all of the relief she sought in her suit.

        3.     Instead of entering the order requested by City, Walker requests that the Court enter the proposed order attached as Exhibit A, which contains limited, but permanent, relief in favor of Walker.   There are compelling reasons for including permanent relief in the order.  This is not a situation where Walker's claims became moot because City amended its Point of Sale Inspection Ordinance.  Rather, Walker's claims became moot because City decided not to enforce the Point of Sale Inspection Ordinance against Walker.  Because the Point of Sale Inspection Ordinance remains on the books, it is critical that City's concessions be contained in an order because, absent an order, nothing would prevent City from revoking its concessions after Walker's claims are dismissed.  Case law is clear that, absent permanent relief, Walker's claims are not moot. *Horina v. City of Granite City, Illinois*, No. 05-cv-0079, 2005 U.S. Dist. LEXIS 36386, at *11-12 (S.D. Ill. Aug. 29, 2005) ("defendant cannot moot a claim simply by voluntarily ceasing behavior when it is free to resume that behavior at any time"); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) (a current policy, adopted after the commencement

150747v1

of the lawsuit, that was not implemented by statute or regulation and could be changed again, is a voluntary cessation of the challenged conduct that does not eliminate the controversy).

       4.     In Walker's case, City may simply refuse to issue transfer stamps, resulting in Walker not only not getting the benefit of City's concessions, but also having no immediately available remedy. The Court may recall that, in the Realtor Association case, City's file regarding the property owned by Debra Houston (at 514 Forsythe) plainly showed that it was "legal nonconforming." When Houston tried to close the sale of her property, City refused to issue transfer stamps and there was no closing of the sale. When the Realtor Association filed a contempt motion against City for violating this Court's injunction regarding the sale of Houston's property, City took the position that the notation in Houston's property file that the property was "legal nonconforming" did not actually mean that City would so treat the property. Of course, nothing prevents City from taking the same position regarding Walker's property. City's personnel violated the preliminary injunction despite repeated advice and directions from counsel. It is unthinkable that Walker would have to rely on City's "concessions" without an order that can be enforced.

       5.     In addition, if City acts improperly in the future despite its concessions (*e.g.*, by refusing to issue transfer stamps), if permanent relief is not included in the Court's order, Walker will have no process by which to obtain prompt relief. If Walker is required to file a new lawsuit, it could take weeks to even get a hearing. City would undoubtedly assert lack of federal jurisdiction (*i.e.*, because the claim is for breach of City's unilateral promise to not enforce its Point of Sale Inspection Ordinance against Walker and there is no diversity jurisdiction). Permanent relief is thus necessary so that City is at risk for a contempt finding if it reneges on its concessions in the future. By providing permanent relief in the order, Walker

3

would have a procedure to obtain immediate and expedited relief if City acts improperly (as it did regarding Houston's property).

    6.  City, of course, should have no objection to such permanent relief being contained in the order if it truly intends to not enforce the Point of Sale Inspection Ordinance against Walker and truly intends to forever "certify" that her property is legal nonconforming. If, on the other hand, City does not so intend, Walker's claims are not moot.

    7.  City's proposed form of order also fails to address the relief Walker sought under Count III of her complaint. In that Count, Walker sought an injunction requiring City to issue a "re-build" letter (*i.e.*, a letter stating that Walker's property can be re-built as legal nonconforming property in the event it is damaged by less than 50%) in connection with any proposed sale of Walker's property. Walker's proposed Third Amended Complaint also sought an injunction requiring City to provide lenders, potential buyers and other entities confirmation that Walker's property is legal nonconforming and/or that all four units of her property may be leased. By asserting Walker's claims are moot, City must also necessarily agree that Walker is entitled to relief in connection with these claims. If City disputes that Walker is entitled to such relief, her suit is not moot. *See* cases cited in ¶2, above.

    8.  Finally, by virtue of the permanent relief that Walker has obtained in this litigation as respects her property, she is entitled to an award of attorneys' fees and expenses pursuant to 42 U.S.C. § 1988.

150747v1

9.    For the reasons set forth above, Walker requests that the Court enter the proposed order attached as Exhibit A.

DATED:  May 13, 2008                              Respectfully submitted,

                                                  **AYANNA WALKER**

Philip C. Stahl
Patrick T. Nash                                   By:  /s/ Patrick T. Nash
Donald P. Bunnin                                       One of Her Attorneys
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
Phone: (312) 704-7700
Fax: (312) 558-1195

150747v1

## CERTIFICATE OF SERVICE

I, Patrick T. Nash, certify that on this 13th day of May, 2008, I served the

foregoing **MEMORANDUM IN SUPPORT OF ENTRY OF ORDER THAT GRANTS**

**PLAINTIFF PERMANENT RELIEF** to the following by Electronic Mail Transmission via

the ECF System upon:

> Mark H. Sterk
> ODELSON & STERK, LTD.
> 3318 West 95th Street
> Evergreen Park, IL  60805
>
> John B. Murphey
> ROSENTHAL, MURPHEY & COBLENTZ
> 30 North LaSalle Street
> Suite 1624
> Chicago, IL  60602

> /s/ Patrick T. Nash
> Patrick T. Nash

150967v1

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AYANNA WALKER,                          )
                          Plaintiff,    )       Case No. 07C 6148
                                        )
vs.                                     )
                                        )       Judge Milton I. Shadur
CALUMET CITY, ILLINOIS                  )       Magistrate Judge Valdez
                          Defendant.    )

## FINAL ORDER TERMINATING SUIT

This matter comes before the Court on (1) the Motion of plaintiff Ayanna Walker ("Walker") for Leave to File Amended Complaint to Add a New Plaintiff and for Extension of Time to File Briefs Regarding Mootness, Class Certification and Motion to Dismiss, and (2) Walker's Motion to Reassign Related Case Under Local Rule 40.4. The Court has also reviewed defendant City of Calumet City's ("City") memorandum on mootness and class certification issues. The Court is also aware of the pendency of Mann, et al v. Calumet City, No. 08 C 555 which is currently pending before Judge Coar. It is hereby ORDERED:

1. For the reasons set forth in Paragraph 3 below, Walker's Motion for Leave to File Amended Complaint to Add a New Plaintiff and for Extension of Time to File Briefs Regarding Mootness, Class Certification and Motion to Dismiss is denied.

2. For the reasons set forth in Paragraph 3 below, Walker's Motion to Reassign Related Case Under Local Rule 40.4 is denied. The related case, Mann, et al v. Calumet City, No. 08 C 555, shall remain pending before Judge Coar.

3. Based on City's statements supporting its position that Walker's claims are moot, including that (a) Walker's property located at 521-23 Greenbay Avenue in City does not need to pass a point of sale inspection in order for her to sell her property and that City will not otherwise enforce its Point of Sale Ordinance against Walker, and (b) City has certified that Walker's property located at 521-23 Greenbay Avenue in City is legal nonconforming, the Court finds that Walker's claims in this action are moot.

4. City is permanently enjoined from (a) enforcing its Point of Sale Inspection Ordinance with respect to property located at 521-23 Greenbay Avenue, and (b)

150592v1

prohibiting the sale of 521-23 Greenbay Avenue or refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "Certificate of Compliance."

5. City's certification that Walker's property located at 521-23 Greenbay Avenue is legal nonconforming applies to the property in perpetuity as long as the property is not substantially modified.

6. Based on paragraphs 3-5 above and pursuant to Walker's additional claims for relief, City is permanently enjoined from refusing to (a) issue a re-build letter (*i.e.*, a letter stating that the property can be re-built as legal nonconforming property in the event it is damaged by less than 50%) in connection with any proposed sale of Walker's property located at 521-23 Greenbay Avenue in City, and (ii) provide confirmation to lenders, potential buyers or other entities that Walker's property located at 521-23 Greenbay Avenue in City is legal nonconforming and/or that all four units of her property may be leased.

7. Because Walker has succeeded in obtaining the permanent relief she sought in her suit as respects her property, the Court awards Walker her attorneys' fees and expenses pursuant to 42 U.S.C. § 1988. Walker shall submit her fee petition pursuant to Local Rule 54.3.

8. Nothing in this Order should be viewed as limiting the rights of any other City homeowner to seek intervention in the Mann action and/or to file a new lawsuit challenging the constitutionality of City's Point of Sale Inspection Ordinance or its alleged failure to issue re-build letters and/or confirmations that property is legal nonconforming in connection with the sale of legal nonconforming property.

Dated: May __, 2008                     Enter:


                                        _____

                                        Judge Milton I. Shadur

2

# Exhibit B

DEFENDANT'S PROPOSED ORDER

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| AYANNA WALKER, | ) | |
| | ) | Case No. 07C 6148 |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Judge Milton I. Shadur |
| CALUMET CITY, ILLINOIS | ) | Magistrate Judge Valdez |
| Defendant. | ) | |

### FINAL ORDER OF DISMISSAL

This matter comes before the Court on (1) the Motion of plaintiff Ayanna Walker ("Walker") for Leave to File Amended Complaint to Add a New Plaintiff and for Extension of Time to File Briefs Regarding Mootness, Class Certification and Motion to Dismiss, and (2) Walker's Motion to Reassign Related Case Under Local Rule 40.4. The Court has also reviewed defendant City of Calumet City's ("City") memorandum on mootness and class certification issues. The Court is also aware of the pendency of Mann, et al v. Calumet City, No. 08 C 555 which is currently pending before Judge Coar. It is hereby ORDERED:

1.  For the reasons set forth in Paragraph 3 below, Walker's Motion for Leave to File Amended Complaint to Add a New Plaintiff and for Extension of Time to File Briefs Regarding Mootness, Class Certification and Motion to Dismiss is denied.

2.  For the reasons set forth in Paragraph 3 below, Walker's Motion to Reassign Related Case Under Local Rule 40.4 is denied. The related case, Mann, et al v. Calumet City, No. 08 C 555, shall remain pending before Judge Coar.

3.  The Court has reviewed the City's submissions supporting its position that Walker's claims are moot, and finds that (because Walker has already submitted the property located at 521-23 Greenbay Avenue to a Rental Inspection Ordinance, and has corrected all identified Code violations in accordance with the terms thereof, she does not need to pass a redundant point of sale inspection in order for her to sell her property and that City will not otherwise enforce its Point of Sale Ordinance against Walker. The Court also finds that as part of the same rental inspection City has

150592v1

certified that Walker's property located at 521-23 Greenbay Avenue in City is a legal nonconforming use under the City's Zoning Ordinance.

4.    Based on these findings, the Court finds that Walker's claims in this action are moot.

5.    This action is dismissed without prejudice. Nothing in this Order should be viewed as limiting the rights of any other City homeowner to seek intervention in the Mann action and/or to file a new lawsuit challenging the constitutionality of City's Point of Sale Inspection Ordinance or its alleged failure to issue re-build letters and/or confirmations that property is legal nonconforming in connection with the sale of legal nonconforming property.

Dated: May 6, 2008                    Enter:

_____

Judge Milton I. Shadur

2

150592v1

# EXHIBIT C

1

```
 1                  IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3

 4    AYANNA WALKER,                        )   Docket No. 07 C 6148
                                            )
 5                        Plaintiff,        )
                                            )
 6              vs.                         )
                                            )
 7    CALUMET CITY, ILLINOIS,               )   Chicago, Illinois
                                            )   May 15, 2008
 8                        Defendant.        )   1:00 o'clock p.m.

 9

                      TRANSCRIPT OF PROCEEDINGS - STATUS
10              BEFORE THE HONORABLE MILTON I. SHADUR

11
      APPEARANCES:
12

13    For the Plaintiff:     GRIPPO & ELDEN
                             BY:  MR. PHILIP C. STAHL
14                                MR. PATRICK THOMAS NASH
                             111 South Wacker Drive
15                           Chicago, Illinois  60606
                             (312) 704-7700
16

17
      For the Defendant:     ROSENTHAL, MURPHEY, COBLENTZ & JANEGA
18                           BY:  MR. JOHN B. MURPHEY
                             30 North LaSalle Street, Suite 1624
19                           Chicago, Illinois  60602
                             (312) 541-1070
20

21

22

23
      Court Reporter:        MS. CAROLYN R. COX, CSR, RPR, CRR
24                           Official Court Reporter
                             219 S. Dearborn Street, Suite 1854-B
25                           Chicago, Illinois  60604
                             (312) 435-5639
```

2

1    (The following proceedings were had in open court:)

2         THE CLERK:  07 C6148, Walker v. Calumet City.

3         MR. NASH:  Good afternoon, your Honor; Pat Nash and

4    Philip Stahl for the plaintiff.

5         MR. MURPHEY:  Good afternoon, your Honor; John Murphy

6    for the City.

7         THE COURT:  Good afternoon.  It's not surprising I

8    guess with able counsel on both sides, which we have here, that

9    both sides seem to have lost track somewhat of what's

10   appropriate in the current situation.  Each one of you,

11   frankly, has matters somewhat wrong, and let me tell you why.

12   And there's no reason you have to be standing around while I'm

13   doing this, so why don't you be seated and then I will hear

14   from both sides.

15        Let me begin with Plaintiff Walker's counsel.  This

16   proposed paragraph 7 reflects a substantive determination that

17   I really have not made at this point and on which I, frankly,

18   should not express any kind of judgment at this point, and that

19   has to do with the question about allowability of fees under

20   Section 1988 in connection with the 1983 action.  Remember,

21   that remains a subject on which some further input is needed.

22   All of us who have been involved in this are familiar with the

23   Supreme Court's teaching that says it's not enough, for

24   example, to be a catalyst; what has to happen is it's the

25   efforts of the successful plaintiff to cause a change in the

3

1  party's legal relationship.  And on that this is certainly a

2  situation in which both sides require further input.  I am not

3  going to say anything more except to reject paragraph 3 of

4  Calumet City's justifiable response.

5         It's certainly true that the federal court's ability

6  to act is predicated on the existence of a case or controversy,

7  but the dispute over fees really meets that requirement, and

8  it's independent.  If you look, for example, at the case law

9  under Section 1988 about the timing for fees requests, it

10  recognizes -- well, let me give you a typical example.  Suppose

11  the plaintiff wins and gets a judgment.  Judgment is a final

12  judgment.  In a sense, that moots the dispute between the

13  parties because it has resolved itself into a judgment, and yet

14  you don't even have to look, for example, at Budinich v. Becton

15  Dickinson to confirm that fees requests are separate issues,

16  they are separately ruled upon, they are indeed separately

17  appealable.  So it's just not correct on the part of Calumet

18  City to say, well, because of the fact that the substantive

19  dispute between the parties has been mooted, and, therefore,

20  Article 3 says dismiss because there's no case or controversy,

21  that somehow that subsumes or preempts the issue of fees.

22         So the short answer on that one is that whatever order

23  is entered should not deal with the fee issue, and not having

24  dealt with it, it's really without prejudice to either side's

25  submission in an appropriate way of a claim for fees and an

4

1   opposition of that claim.  So that's all I am going to say on

2   that one.

3           Now, let me turn to the City's position.  It's quite

4   right to say that an injunction is not an order as is sought in

5   the draft presented by Walker's counsel to frame it.  But you

6   see that argument really tends to prove too much.  In order to

7   moot the present controversy as it existed with respect to

8   Plaintiff Walker, the City really has to provide what amounts

9   to an affirmative assurance, what in I guess the more familiar

10  real estate parlance is essentially a covenant that runs with

11  the land; that is, it wouldn't do simply to give Walker an

12  assurance that says you're okay if what the consequence is

13  going to be is that Walker's buyer does not have the comfort of

14  that because look what that does to the marketability of the

15  property.  And the whole point of all of this is to create a

16  status for this property, and the status for the property I

17  think is best handled by what I have just characterized as

18  confirming that this is essentially a covenant that runs with

19  the land.  And for that reason, the substance of what I see in

20  paragraphs 5 and 6 of the Walker proposed order is appropriate.

21  Essentially it's an undertaking on the part of Calumet City

22  that says, look, you not only have a legal nonconforming use,

23  but it has consequences, and those consequences are not going

24  to be revocable by us under some circumstance that's not

25  defined by us now.

5

1          If I can draw for contrast the famous choke hold case,

2     City of Los Angeles against Lions, the reason that they didn't

3     have to confront the claim by Lions was that there was no -- he

4     lacked standing because of the totally speculative nature of

5     whether he would ever be subjected to a choke hold again.

6     Again, that's exactly the opposite of what we have here.

7     Unless the buyer and successive owners of the Walker property

8     have the degree of protection -- and I shouldn't say this

9     critically, by the way -- I think that that's what Calumet City

10    intends to provide, but the point is that the intention to

11    provide that really has to be put into documentary form.  The

12    way to do that -- you know, I am not proscribing the means of

13    doing it, whether it is a statement that this is irrevocable or

14    it runs with the land or however, it's done to confirm the fact

15    that the assurances that Walker has as a result of the

16    inspection -- and, for example, about the -- look at the

17    question about what happens in the event of a future partial or

18    total destruction of the property.  We know what the current

19    law is out there, and it says, well, if it's destroyed to more

20    than 50 percent, all bets are off; it no longer has that

21    protection.  Nobody is challenging that provision.  I don't

22    understand the plaintiffs' -- what the plaintiffs are saying

23    is, look, we also have to have the assurance that if it's less

24    than that, it's got an ongoing status.  That's why I referred

25    to it as a status issue as contrasted with taking the form of

1    an injunction.

2           Now, I guess that's my say on the thing.  It seems to

3    me that the parties are really -- I hope that the parties are

4    really not apart in terms of the intention of what's sought to

5    be done.  You may have -- well, I shouldn't say that.  I gather

6    you're apart on the 1988 issue, but that's an open controversy

7    and it remains an open controversy.  As and when there is a

8    presentation, I expect it will be made, I expect there will be

9    opposition, I will have to deal with it.  But apart from that,

10   it seems to me that the things that Walker has sought, although

11   sought I think in an inappropriate form, are things to which

12   she is entitled, or maybe more accurately, to which the

13   successive owners of the property are entitled.

14          Now, that's my read, frankly, on the opposing

15   presentations, and I now welcome input from the parties about

16   that.  Maybe I ought to ask.  You know, Mr. Murphy, I think --

17   again, I hope it's more accurate that what I have said really

18   is not at odds with the intention.

19          MR. MURPHEY:  You are correct, your Honor.  It is not

20   at odds that I think as a straightforward matter of Illinois

21   land use law the term is nonconforming use as opposed to

22   nonconforming users.  So the non- -- so indeed, it was the

23   intent to -- when we verified that that is a legal

24   nonconforming --

25          THE COURT:  That's a status.

1        MR. MURPHEY: -- use it as a status that under the law

2   runs with the land irrespective of ownership.

3        THE COURT: Okay.

4        MR. MURPHEY: And that as long as --

5        THE COURT: So there shouldn't be any harm in your

6   confirming?

7        MR. MURPHEY: I orally confirmed it a couple of years

8   ago and so there is no problem on our end with confirming that

9   with the obvious caveat that the 50 percent rule is there.

10        THE COURT: That's there. That's preexisting law, and

11   I don't understand plaintiffs to be challenging that. So it

12   sounded to me, frankly, as though this was just a matter of a

13   failure, you know, like ships that pass in the night, that it

14   was really an absence of effective communication rather than a

15   difference in substantive terms.

16        MR. NASH: Well, if I can respond briefly to that. We

17   appreciate what Mr. Murphy has said, that that was the intent,

18   but it's our position that that relief, mainly that it runs

19   with the land, has to be included in an order by the court.

20        THE COURT: Well, wait a minute. When you talk about

21   a ruling by the court, it's the need for an undertaking on the

22   part of Calumet City because that's the basis on which the

23   issue becomes one of mootness. It's not my determination

24   that's at issue. It's the fact of their commitment and that

25   commitment being an irrevocable commitment that basically has

1    the legal consequence that Mr. Murphy has said flows as a

2    matter of law, but I think the plaintiff is entitled to have it

3    memorialized.

4            MR. STAHL:  But it's not recorded.  I mean, it has to

5    be memorialized.  We have to have a way that it can be

6    recorded.

7            THE COURT:  There is no reason whatever -- look, I am

8    -- I used to practice law.  I used to practice a lot of real

9    estate law, I know all about that.

10           MR. STAHL:  So you know.

11           THE COURT:  So I am not devising the formula for you.

12   I am saying that it's something that has to be effective, and

13   if to the extent -- you know, all of us know, for example, that

14   things that get memorialized by lis pendens create rights, or

15   let's put it this way, avoid untoward consequences in

16   connection with subsequent efforts to market or not to market

17   the property.  And so how you do that is not really a matter

18   for my immediate concern.  It's a matter that I think that the

19   two sides can readily confirm just by confirming about them.

20           MR. MURPHEY:  The ordinary --

21           MR. STAHL:  Before we -- I'm sorry, your Honor.

22           THE COURT:  Go ahead.

23           MR. STAHL:  I don't know where it fits, but we do have

24   the additional problem with Calumet City, as demonstrated

25   previously with enforcement, because the impediment to

9

1   transfer --

2           THE COURT:  You are talking about the payment of the

3   stamps?

4           MR. STAHL:  Yes.  The absence of the transfer stamp

5   when the payment is tendered.  So that we can have a perfectly

6   beautiful, nicely recorded, maybe even certified with a ribbon

7   statement by Cal City that it's legal nonconforming, and when

8   Ms. Walker and the subsequent purchaser go to get the transfer

9   stamp, if they don't give it to her, she can't sell her

10  property.

11          THE COURT:  But I think that's already also been

12  confirmed by Mr. Murphy.

13          MR. MURPHEY:  Yes.

14          THE COURT:  So how you deal with that again I am not

15  -- I am not in the drafting business anymore.  I expect that

16  you'll implement that.

17          MR. MURPHEY:  We will implement it.  We will put the

18  statement that the City makes into the property file so it will

19  be there.  The usual and customary way that these things are

20  handled, your Honor, in real estate matters is that the title

21  companies tend to refer to what you've said rather than as a

22  covenant, as an estoppel letter.  That's what the lenders will

23  lend the money to the buyer on.  So we -- I would recast the

24  statement.  They have the ability then to put it in a

25  recordable form, which means the upper right-hand corner that

1   has a blank.  They can do with it what they want at the
2   recorder's office, and then it gets picked up by the title
3   company when the transaction consummates and that's that.

4        THE COURT:  So, again, I am not going to design your
5   procedure for you.  I simply wanted to get before both sides
6   the areas in which I thought that you were at least nominally
7   at cross purposes, but not in fact I thought.

8        MR. STAHL:  No.  I think this is a matter of based on
9   our experience, not in dealing with Mr. Murphy or Mr. Stahl,
10  but in dealing with Cal City.  They have demonstrated that
11  notwithstanding repeated directions, warnings, notices, oral
12  and written, not only from Mr. Murphy and Mr. Stahl, but also
13  from the Court, they have demonstrated that they do not always
14  act the way they are supposed to act when somebody comes in to
15  get a transfer stamp; and if the sale is lost, the sale is
16  lost.  So then we have an action for damages, and Mr. Murphy
17  will tell us or their next lawyer will say, you have a great
18  action for damages for breach of contract, go file it in the
19  state court.

20       THE COURT:  What is a Court supposed to do with the
21  prospect of future scoff law activity on the part of anybody?

22       MR. STAHL:  I think if the Court's ruling is based on
23  affirmative statements by Calumet City as to what it is going
24  to do in the future, those statements could be --

25       THE COURT:  If what you're saying is that once you've

1    implemented it this way, you want to include in the elements,

2    in the order form of mootness, that the Court is declaring it

3    based upon that --

4            MR. STAHL:  Yes.

5            THE COURT:  -- I don't have a problem with that, and I

6    am sure that Mr. Murphy doesn't.  Okay?

7            MR. STAHL:  I don't know whether the Court would

8    permit us then to take the next step, however, and say that the

9    Court retains jurisdiction.

10           THE COURT:  No, not really.

11           MR. STAHL:  See.  As I understand it, Cal City's

12   representations to the Court have persuaded the Court that

13   Walker is in the same position she would have been in had she

14   won.

15           THE COURT:  Yeah, but you see the problem that you run

16   into there basically is a Doctrine of Law.  The Doctrine of

17   Law, for better or worse, says that unless there is some reason

18   not to deal with this, it's not only presumptively but

19   essentially conclusively presumptive that public officials will

20   obey the law.  And I don't regard the situation -- they have

21   not been confronted, remember, with the situation that we are

22   now talking about.  They have not been confronted with the

23   situation in which they will have gained the benefit of a

24   disposition of litigation on the strength of undertakings that

25   they have made.  And, you know, by the way, I don't have to

1   retain jurisdiction.  There is, of course, contempt which is

2   available when people violate a court ruling, and the fact

3   that, for example, there is no case or controversy currently

4   doesn't alter that.  That's a matter of law.

5          MR. STAHL:  Your Honor, that would do it.  If we have

6   it reflected, and even if the Court is not saying it's

7   retaining jurisdiction, we know that jurisdiction exists to

8   come into court.

9          THE COURT:  That's why I say the way to do it is get

10  your document put together, you can incorporate in the proposed

11  order for the court the fact that the Court has made its

12  determination about mootness --

13         MR. STAHL:  Right.

14         THE COURT:  -- and reliance upon the undertaking, and

15  that will do it.

16         MR. STAHL:  Okay.

17         THE COURT:  Okay?  All right.  So I'll simply await

18  your submission then.  I don't think it should take you very

19  long.

20         MR. NASH:  There's one open issue.  You talked about

21  paragraphs 5 and 6 of our proposed order.

22         THE COURT:  You want to talk about 4, is that it?

23         MR. NASH:  Yes.  Paragraph 4, that too I think falls

24  into the same category.  Cal City has represented to the Court

25  that it will not enforce its sale inspection ordinance against

1    Ms. Walker and that it will issue transfer stamps if she pays

2    the tax but won't require an inspection.  I think that that

3    also should be reflected in what we prepare.

4            THE COURT:  Well, you have framed that, of course, in

5    terms of the entry of an injunction.

6            MR. STAHL:  We know not to do it that way.  We are

7    just looking at the substance now, your Honor, because we had

8    discussed that.

9            MR. NASH:  My point simply is it ought to be addressed

10   in the same fashion as paragraphs 5 and 6.

11           MR. MURPHEY:  I can simply on my proposed paragraph 3

12   incorporate the same undertaking language with respect to the

13   non-conforming use.

14           THE COURT:  I think that's --

15           MR. MURPHEY:  And then that's recorded at the same

16   time.

17           THE COURT:  I think that's right.

18           MR. STAHL:  Okay.

19           THE COURT:  You can maybe massage the language in

20   paragraph 3 a little just to pick that up.

21           Okay.  I'll simply wait to hear from you and I hope

22   soon.

23           MR. STAHL:  Right.  The only other remaining issue,

24   your Honor, relates to the -- it was raised in Mr. Nash's

25   letter that when Walker came in immediately and asked for

1    injunctive relief and class certification, one of the reasons

2    that the Court was willing to postpone that was that the City

3    representative wasn't going to enforce until the Court ruled on

4    the constitutionality of the ordinance.  We are now in a

5    situation where we could have a gap between when we're able to

6    get in front of Judge Coar, or whoever the next judge is.

7              THE COURT:  Judge Coar can manage his lawsuit.

8              MR. STAHL:  We may have a gap in terms of -- we have

9    to file a suit for the new plaintiff if Cal City is going to

10   start enforcing immediately.

11             THE COURT:  That's Judge Coar's issue.  I have already

12   volunteered to him that to the extent he wants to draw me as a

13   resource, that does not violate the code of judicial conduct

14   because judge-to-judge communications are an exception.

15             MR. STAHL:  Right.  I know.  But you were here, he

16   wasn't, and I remember several occasions when I was urging the

17   Court to act and Cal City was urging the Court not to act.

18             THE COURT:  You can present that to Judge Coar.

19             MR. MURPHEY:  Thank you, your Honor.

20             THE COURT:  I will wait to hear from you, but as I

21   say, I hope soon.

22             MR. MURPHEY:  I think if I just do a couple little

23   things to paragraph 3, it's pretty much over.

24             THE COURT:  I would hope so.

25             MR. STAHL:  We will get together on it.

1            THE COURT:  Thank you.

2            MR. NASH:  Thank you.

3            MR. STAHL:  Thank you, your Honor.

4      (Which were all the proceedings had in the above-entitled

5  cause on the day and date aforesaid.)

6      I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.

7

8  Carolyn R. Cox                          Date  6-17-08
   Official Court Reporter
9  Northern District of Illinois

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT D

**Nash, Patrick T.**

| | |
|---|---|
| **From:** | John Murphey [JMurphey@rmcj.com] |
| **Sent:** | Tuesday, May 06, 2008 4:21 PM |
| **To:** | Nash, Pat; msterk@odelsonsterk.com |
| **Subject:** | Fwd: Walker |
| **Attachments:** | Walker |

Please review and comment at your earliest opportunity. I would like to deliver to Judge Shadur on Thursday.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| AYANNA WALKER, | ) | |
| Plaintiff, | ) | Case No. 07C 6148 |
| vs. | ) | |
| | ) | Judge Milton I. Shadur |
| CALUMET CITY, ILLINOIS | ) | Magistrate Judge Valdez |
| Defendant. | ) | |

## ORDER OF DISMISSAL WITHOUT PREJUDICE

This matter comes before the Court on various motions filed by plaintiff Ayanna Walker ("Walker"). The Court has also reviewed defendant City of Calumet City ("City") memorandum on mootness and class certification issues. The Court is also aware of the pendency of <u>Mann, et al v. Calumet City</u>, No. 08 C 555 which is currently pending before Judge Coar.

The Court determines that Walker's claims against the City are moot. Accordingly, the Court dismisses this action without prejudice. Nothing in this Order should be viewed as limiting the rights of the identified proposed additional plaintiff to seek intervention as a plaintiff in the <u>Mann</u> action.

Dated: May 6, 2008                Enter:

_____

Judge Milton I. Shadur