# EXHIBIT E

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386    Page 1 of 11

Case 1:07-cv-06148    Document 71-3    Filed 08/28/2008    Page 2 of 62

**LexisNexis®** *Total Research System*

Switch Client | Preferences | Sign Out | [?] Help

Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | History | 🖉

Service: **Get by LEXSEE®**
Citation: **2005 us dist lexis 36386**

*2005 U.S. Dist. LEXIS 36386, \**

DONALD N. HORINA, Plaintiff, vs. CITY OF GRANITE CITY, ILLINOIS, Defendant.

05-cv-0079-MJR

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS

2005 U.S. Dist. LEXIS 36386

August 29, 2005, Decided
August 29, 2005, Filed

**SUBSEQUENT HISTORY:** Injunction granted at Horina v. City of Granite City, 2006 U.S. Dist. LEXIS 31746 (S.D. Ill., May 19, 2006)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff sued defendant, the City of Granite City, Illinois, alleging that Granite City, Ill., Ordinance ch. 5.78.010 violated the First and Fourteenth Amendments. Plaintiff moved for a preliminary injunction under Fed. R. Civ. P. 65(a).

**OVERVIEW:** Plaintiff, who distributed religious tracts on public sidewalks, was ticketed for violating the ordinance after he placed a tract in a vehicle. The vehicle belonged to a security guard at a clinic at which abortions were performed. The citation was changed to a charge of trespass to vehicle. Plaintiff claimed that Granite City, Ill., Ordinance ch. 5.78.010, which prohibited leafleting in public places of any material that was free of charge, violated his and others' rights to freedom of speech and religion. The court found that plaintiff's claims were not mooted by the City's representations that it would not enforce the ordinance. Plaintiff was likely to succeed on his claim that the ordinance was unconstitutional as applied. The City offered no justification for the necessity of the ordinance, nor did it appear that the ordinance was a reasonable time, place, and manner restriction on speech. A facial challenge also was likely to succeed because the ordinance was overbroad. As the balance of harm favored plaintiff, who had curtailed his leafleting in fear of again being cited, injunctive relief was warranted.

**OUTCOME:** Plaintiff's motion for a preliminary injunction was granted.

**CORE TERMS:** ordinance, leafleting, preliminary injunction, leaflet, content-based, injunction, content-neutral, message, temporary, moot, sidewalk, peddling, clinic, public interest, enforcing, religious, overbroad, narrowly tailored, advertisement, overbreadth, speaker, street, ample, tract, public place, unconstitutionally, irreparable, channels, advertising, handbills

**LEXISNEXIS® HEADNOTES**                                                          ⊟**Hide**

Civil Procedure > Remedies > Injunctions > Elements > General Overview 🖼
Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions 🖼
HN1⬆ To obtain a preliminary injunction, a movant must show: (1) a reasonable likelihood of success on the merits; (2) that there is no adequate remedy at law; (3) that the movant will suffer irreparable harm if an injunction is not issued; (4) that the threatened injury he faces outweighs the injury the non-movant will suffer if the injunction is granted; and (5) that an injunction is in the public interest. If the movant can meet this threshold burden, then the inquiry becomes a "sliding scale analysis" where these factors are weighed against one another. More Like This Headnote

Civil Procedure > Remedies > Injunctions > Elements > General Overview 🖼
Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions 🖼
Constitutional Law > Bill of Rights > Fundamental Freedoms > General Overview 🖼
HN2⬆ When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury, and money damages are therefore inadequate. As well, there can be no irreparable harm to a municipality when it is

prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties. Therefore, if the movant can show a likelihood of success on the merits, the court will balance the harms to the parties and the public interest. More Like This Headnote

Civil Procedure > Justiciability > Mootness > General Overview
Evidence > Procedural Considerations > Burdens of Proof > General Overview

*HN3* A defendant carries a heavy burden when it argues that a plaintiff's claims are moot. More Like This Headnote

Civil Procedure > Justiciability > Mootness > Voluntary Cessation Exception
Governments > Legislation > General Overview
Governments > State & Territorial Governments > General Overview

*HN4* Disavowal of a statute requires that the State do more than say during litigation that it might never prosecute a plaintiff or that it does not intend to prosecute the plaintiff. In order to disavow the statute, the State must instead take some affirmative step against enforcement. More Like This Headnote

Civil Procedure > Justiciability > Mootness > Voluntary Cessation Exception

*HN5* The United States Court of Appeals for the Seventh Circuit has long recognized that a defendant cannot moot a claim simply by voluntarily ceasing behavior when it is free to resume that behavior at any time. More Like This Headnote

Governments > Legislation > General Overview
Governments > Legislation > Overbreadth

*HN6* An "as-applied" challenge consists of a challenge to a regulation's application only to the party before the court. If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable. However, if an overbroad challenge is successful, the statute may not be applied to anyone. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom

*HN7* See U.S. Const. amend. I.

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > General Overview
Constitutional Law > Bill of Rights > State Application

*HN8* The First Amendment applies to state governments under the Fourteenth Amendment. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom

*HN9* Leafleting is a form of speech arguably protected by the Free Speech Clause of the First Amendment. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom

*HN10* Speech addressing religious matters is speech of the highest constitutional order. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Forums

*HN11* Public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Forums
Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom
Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner

*HN12* When regulating First Amendment activity in a public forum, the government has a difficult burden to carry. For a state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The state may also enforce regulations of the time, place and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. Therefore, a court must determine whether an ordinance is content-based or content-neutral so as to apply the proper level of scrutiny. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > General Overview
Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > General Overview

*HN13* Content-based regulations are presumptively invalid under the First Amendment and subject to strict scrutiny, while content-neutral restrictions receive lesser scrutiny. Content-based regulations are defined as those that distinguish favored from disfavored speech based on the ideas expressed. If it is necessary to look at the content of the speech in question to determine whether the speaker violated the regulation, then the regulation is content-based. For instance, a general ban on speech in the

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386    Page 4 of 62

Case 1:01-cv-12257-PBS    Document 5413    Filed 08/28/2008    Page 3 of 11

vicinity of a school is content-neutral whereas an analogous ban on speech containing an exemption for speech relating to labor disputes is content-based. The former regulation requires no consideration to content before applying the ban, while the latter regulation requires consideration of whether the speech in question refers to a labor dispute before it is possible to determine if the regulation applies. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > General Overview

HN14 Where a government does not adopt a regulation of speech because of disagreement with the message the speech conveys, the regulation is content neutral. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > General Overview

HN15 A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner
Evidence > Procedural Considerations > Burdens of Proof > Allocation
Governments > Local Governments > Police Power

HN16 There is no doubt a city has a legitimate interest in protecting its citizens and ensuring that its streets and sidewalks are safe for all citizens. A city's interest in maintaining the flow of pedestrian traffic is intertwined with the concern for public safety. However, a city must be able to justify the necessity of an ordinance. In the context of a First Amendment challenge under the narrowly tailored test, the city has the burden of showing that there is evidence supporting its proffered justification. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > General Overview
Evidence > Procedural Considerations > General Overview

HN17 The United States Supreme Court has stated that it has never accepted mere conjecture as adequate to carry a First Amendment burden. Moreover, using a speech restrictive blanket with little or no factual justification flies in the face of preserving one of Americans' most cherished rights. More Like This Headnote

Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions
Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner

HN18 Where a court finds that a city has failed to show an ordinance restricting speech advances a significant governmental interest, discussion as to whether the ordinance is a reasonable time, place and manner restriction is not necessary for purposes of issuing a preliminary injunction. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > General Overview

HN19 A regulation of speech is narrowly tailored if it promotes a substantial government interest that would be achieved less effectively absent the regulation. To satisfy the narrowly tailored test, an ordinance need not be the least restrictive method for achieving the government's goal. Nevertheless, while a regulation does not have to be a perfect fit for the government's needs, it cannot substantially burden more speech than necessary. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner

HN20 The final inquiry in determining whether an ordinance regulating speech is a reasonable time, place and manner restriction is whether the law leaves open ample alternative channels. An adequate alternative does not have to be the speaker's first choice. Yet an alternative is not adequate if it forecloses a speaker's ability to reach one audience even if it allows the speaker to reach other groups. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner

HN21 For purposes of determining whether a law regulating speech leaves open ample alternative channels, the fact that a plaintiff can communicate his message elsewhere does not end a court's analysis if the intended message is rendered useless or is seriously burdened. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner

HN22 For purposes of determining whether a law regulating speech leaves open ample alternative channels, an alternative is not ample if the speaker is not permitted to reach his intended audience. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Overbreadth & Vagueness

HN23 Under the First Amendment overbreadth doctrine, an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face because it also threatens others not before the court--those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid. A statute may be invalidated on its face, however, only if the overbreadth is "substantial." The requirement that the

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386    Page 5 of 62

Case 1:02-cv-08146   Document #: 73   Filed 08/28/2008   Page 4 of 11

overbreadth be substantial arises from the recognition that application of the overbreadth doctrine is, manifestly, strong medicine, and that there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court for it to be facially challenged on overbreadth grounds. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Overbreadth & Vagueness
HN24 Overbreadth challenges are only successful when a limiting construction cannot be used to narrow the challenged statute and remove the seeming threat or deterrence to constitutionally protected speech. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Overbreadth & Vagueness
HN25 Granite City, Ill., Ordinance ch. 5.78.010 is overbroad. More Like This Headnote

Civil Procedure > Remedies > Injunctions > Elements > General Overview
Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions
HN26 For preliminary injunction purposes, surely, upholding constitutional rights serves the public interest. More Like This Headnote

**COUNSEL:** **[*1]** For Donald N. Horina, Plaintiff: Jason R. Craddock, Sr., Law Offices of Jason Craddock, Sauk Village, IL.

For City of Granite City IL, Defendant: Heidi L. Eckert, Hinshaw & Culbertson - Belleville, Belleville, IL; John L. Gilbert, Hinshaw & Culbertson LLP - Edwardsville, IL, Generally Admitted, Edwardsville, IL.

**JUDGES:** REAGAN, District Judge.

**OPINION BY:** MICHAEL J. REAGAN

**OPINION**

**MEMORANDUM and ORDER**

**REAGAN, District Judge:**

On April 27, 2005, Plaintiff Donald N. Horina filed a "Motion for Temporary and Preliminary Injunction" (Doc. 7) against Defendant City of Granite City, Illinois (hereinafter "Granite City"). In his motion, Horina moves for temporary and preliminary injunction against Granite City prohibiting Granite City from enforcing its ordinance, Chapter 5.78.010, which in part, makes it unlawful to distribute handbills on any public place in Granite City. Horina argues that the ordinance violates both his and other third persons' First and Fourteenth Amendment rights.

A hearing was held on this matter on May 20, 2005, where testimony was heard, evidence was presented, and arguments were made. Because all parties received notice of and participated in the May 20, 2005 hearing, **[*2]** the Court construes the instant motion as solely seeking preliminary injunction pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 65(a)** and denies as moot the motion for a temporary restraining order.

At the hearing, Granite City challenged whether Horina has standing to seek an injunction against Granite City. As a result, the Court had the parties brief the issue (see Docs. 17, 23, and 25) and entered an Order on August 1, 2005 finding that Horina has standing to challenge the ordinance (Doc. 27). In its August 1st Order, the Court set a briefing schedule as to the merits of Horina's motion. Accordingly, Granite City filed its response brief at Doc. 33 to which Horina replied at Doc. 34. This matter being fully briefed as to the merits of Horina's motion for preliminary injunction, the Court begins its analysis with a recitation of the factual background and procedural history as detailed in its August 1st Order.

**Factual Background and Procedural History**

Horina is a Christian who feels obligated to tell others about their need to be "born again." He accomplishes his purpose primarily through public distribution of free religious literature, also known as gospel tracts. **[*3]** [1] Horina offers the tracts on public sidewalks and places them on automobile windshields in a manner that does not impede pedestrian traffic.

**FOOTNOTES**

1 Horina testified his religious tracts carry the following message: "Jesus loves the sinners, Jesus died on the cross, shed his blood so that sinners, which we all are, can have our sins forgiven, and if we'll all trust Jesus

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386        Page 6 of 62

Case 3:07-cv-01332 Document 27-6 Filed 08/28/2008 Page 5 of 11

alone, we can go to heaven on the merits of Christ and not our own merits." Transcript, p. 10.

On July 26, 2003, Horina was distributing gospel tracts on a public sidewalk in Granite City, Illinois on the 2000 block of Iowa Avenue, which is a sidewalk located in front of Hope Clinic. Hope Clinic is a medical facility, that among other procedures, performs abortions. Horina placed a gospel tract through the open window of a vehicle belonging to Nathaniel Lang ("Lang"), a security guard employed at Hope Clinic. Lang had repeatedly asked Horina not to put anything on or in his car. As a result of Horina's placing the gospel tract in the car, Lang **[*4]** contacted the Granite City Police Department. Granite City Police Officer Ronald Fisher issued a ticket to Horina for violating Chapter 5.78.010 ², the Handbill Distribution Ordinance (hereinafter "the ordinance").

### FOOTNOTES

2 Granite City Ordinance Chapter 5.78.010 states in pertinent part: "It is unlawful for any person, firm or corporation to distribute indiscriminately to the public any cards, circulars, handbills, samples of merchandise or any advertisement or advertising matter whatsoever on any public street or sidewalk or other public place in the city; provided, that this section shall not be construed to prohibit the peddling or sale of any article or publication that may carry or be accompanied by advertising matter where a charge is made or a price is paid for such article or publication."

On April 19, 2004, Horina appeared at an administrative hearing regarding the ticket. At the hearing the citation was amended to a charge of trespass to vehicle under a different city ordinance, and Horina was fined **[*5]** $ 100.00. Plaintiff's Exhibit 3.

On February 4, 2005, Horina filed his "Plaintiffs' [sic] Verified Complaint for Declaratory Judgment, Preliminary and Permanent Injunctive Relief and Compensatory Damages" (Doc. 1). In his complaint, Horina seeks to enjoin Granite City from enforcing the ordinance on the grounds that it unconstitutionally prohibits Horina, as well as other similarly situated third persons, from exercising their rights to freedom of speech and religion, and violates their equal protection rights under the First and Fourteenth Amendments. Then on April 27, 2005, Horina filed his "Motion for Temporary and Preliminary Injunction" (Doc. 7) seeking, among other things, preliminary and permanent injunctions restraining Defendant from enforcing the ordinance.

The Court held a hearing regarding Horina's motion for temporary and preliminary injunction on May 20, 2005. At the hearing, Horina testified that prior to being cited under the ordinance, he would leaflet about once a week. Transcript, p. 7. Horina testified that he has curtailed leafleting as a result of having received the citation, as every time he leaflets he fears being cited under the ordinance and having to **[*6]** go to Court and pay fines. Id. He stated that "every time I [leaflet], I keep one eye out for the law so I don't get a ticket. I am fearful." Id. at 15. Horina further stated that if the ordinance were not in place he would not be in fear of leafleting. Id. at 7. Horina also stated that the times he did leaflet since having received the citation, no one from Granite City cited him under the ordinance. Id. at 10. However, Horina did state that at least twice when he was leafleting outside the Hope Clinic, Granite City police officers approached him and told him that he could not hand out literature as it is against city ordinance. ³ Id. at 11.

### FOOTNOTES

3 On cross-examination, Horina was uncertain whether the officers approached him and told him he could not hand out literature as it is against city ordinance at the clinic before or after his arrest in July 2003. Transcript, p. 13.

Also testifying at the hearing was Granite City Police Chief David Ruebhausen who has served as chief for eleven **[*7]** years. Ruebhausen stated that the Granite City Police Officers "bend over backwards to protect the protesters' First Amendment rights." Id. at 22. Ruebhausen has never cited anyone under the ordinance in question and has been handed literature that would fall under the ordinance. Id. at 23. To his knowledge, Horina was the first and only person to ever be cited under the ordinance. Id. at 24-25. However, Ruebhausen did state that if a person came up to a Granite City police officer upset that they had been given a piece of pro-life literature and wanted something to be done about it, a recourse available to the officer would be to issue a citation under the ordinance at issue in this matter, to the person that was leafleting. Id. at 35. Officer Ronald Fischer, the officer that issued Horina the citation under the ordinance, also testified. He stated he issued Horina a citation under the ordinance as he felt his conduct fell under the perimeters of the ordinance. Id. at 41.

At the close of the hearing, Granite City argued that Horina does not have standing to challenge the ordinance because the earlier charge against him was resolved and there are no pending charges **[*8]** under the ordinance against him. As a result, the Court set a briefing schedule regarding the issue of standing. Granite City filed its brief (Doc. 17) to which Horina responded (Doc. 23) and then Granite City replied (Doc. 25). On August 1, 2005, the Court entered its Order finding that Horina has standing to seek a temporary and preliminary injunction against

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386    Page 7 of 62

Case 1:01-cv-01449 Document #: 114 Filed 08/28/2008    Page 6 of 11

Granite City (Doc. 27). In that same Order, the Court set a briefing schedule as to the merits of Horina's motion. Accordingly, Granite City filed its response brief at Doc. 33 to which Horina replied at Doc. 34. This matter being fully briefed, the Court finds as follows.

**Standard for a Preliminary Injunction**

*HN1* To obtain a preliminary injunction, Horina must show: (1) a reasonable likelihood of success on the merits; (2) that there is no adequate remedy at law; (3) that Horina will suffer irreparable harm if an injunction is not issued; (4) that the threatened injury he faces outweighs the injury Granite City will suffer if the injunction is granted; and (5) that an injunction is in the public interest. *JAK Prods., Inc. v. Wiza,* 986 F.2d 1080, 1084 (7th Cir. 1993). If the movant can meet this **[*9]** threshold burden, then the inquiry becomes a "sliding scale analysis" where these factors are weighed against one another. *See AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 804 (7th Cir. 2002).

*HN2* When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor. *Joelner v. Village of Washington Park, Illinois,* 378 F.3d 613, 620 (7th Cir. 2004). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," and money damages are therefore inadequate. *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976). As well, there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because "it is always in the public interest to protect First Amendment liberties." *Connection Distrib. Co. v. Reno,* 154 F.3d 281, 288 (6th Cir. 1998). Therefore, if Horina can show a likelihood of success on the merits, the Court will balance the harms to the parties and the public interest. *See* **[*10]** *Joelner,* 378 F.3d at 627-29.

**Analysis**

**1. Whether Horina's motion is moot in light of Granite City's counsel's representations to this Court that it will not enforce the ordinance until there is a final disposition of this case.**

Before the Court can address the merits of Horina's motion for preliminary injunction, the Court must address Granite City's arguments that Horina's motion for preliminary injunction is moot in light of Granite City's counsel's representations to the Court in its response brief at Doc. 33 that until there is a final disposition of this case, or until the ordinance is repealed, it will not enforce the ordinance. Horina responds that his motion is not moot in spite of these representations. *HN3* A defendant carries a heavy burden when it argues that a plaintiff's claims are moot, *see Kikimura v. Turner,* 28 F.3d 592, 597 (7th Cir. 1994), and this Court is not convinced by Granite City's arguments.

As this Court *previously* addressed in its August 1st Order, *HN4* disavowal of a statute requires that the state do more than say during the litigation that it might never prosecute plaintiff or that it does not **[*11]** intend to prosecute plaintiff. *See Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 302, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (7th Cir. 1979); *Citizens for Responsible Gov't State Political Action Comm. v. Davidson,* 236 F.3d 1174, 1192-93 (10th Cir. 2000). In order to disavow the statute, the state must instead take some affirmative step against enforcement. *See Wisconsin Right to Life, Inc. v. Paradise,* 138 F.3d 1183, 1185 (7th Cir. 1998)(court found plaintiff did not have a credible threat of prosecution where the state body that enforced the law had promulgated a rule stating that it would not enforce the law against groups like the plaintiff and had consistently for twenty-five years followed an Attorney General Opinion recommending against enforcement).

While the Court made those findings in its discussion as to whether Horina faced a credible threat of prosecution in order to confer standing on him to bring the instant motion, they are analogously applicable to the discussion of whether Granite City's current representations make the motion moot. This is because *HN5* the United States Court of Appeals for the Seventh Circuit has "long recognized . **[*12]** .. that a defendant cannot moot a claim simply by voluntarily ceasing behavior when it is free to resume that behavior at any time." *See Edwards v. Illinois Bd. of Admissions to Bar,* 261 F.3d 723 (7th Cir. 2001); *Milwaukee Police Ass'n v. Jones,* 192 F.3d 742, 747 (7th Cir. 1999); *Sefick v. Gardner,* 164 F.3d 370, 372 (7th Cir. 1998); *Jones v. Sullivan,* 938 F.2d 801, 807 (7th Cir. 1991). For instance, in *Citizens for a Responsible Government,* 236 F.3d at 1192-93, the United States Court of Appeals for the Tenth Circuit found that the plaintiff therein faced a credible threat of prosecution even though the state had insisted throughout the litigation it would not prosecute groups like plaintiff. The court held that the state's assertions during the litigation were not binding on future administrations. *Id.* This Court finds the same to be true in the case at bar. Accordingly, the Court finds that Horina's claims are not moot even in light of Granite City's latest representations to the Court that it will not enforce the ordinance.

**2. Whether Horina is likely to succeed on the **[*13]** merits of his motion.**

The Court must decide, in the context of a preliminary injunction, whether a municipality can prohibit leafleting in all public places in its borders. Horina argues that he will succeed on the merits as: (1) the ordinance is unconstitutionally overbroad, and (2) the ordinance is unconstitutional as applied to him. The difference between the two arguments, is that *HN6* an "as-applied" challenge consists of a challenge to a regulation's application only to the

party before the court. *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 758-59, 108 S. Ct. 2138, 100 L. Ed. 2d 771 (1998). If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable. *Id.* However, if an overbroad challenge is successful, the statute may not be applied to anyone. *Id.* The Court will begin its analysis as to whether the ordinance is unconstitutional as applied to Horina.

**2a. Whether the ordinance is unconstitutional as applied to Horina.**

The First Amendment provides that *HN7* "Congress shall make no law … abridging the freedom of speech, or of the press." U.S. Const. Amend. I. The United States Supreme Court **[*14]** recognized in *Gitlow v. New York,* 268 U.S. 652, 666, 45 S. Ct. 625, 69 L. Ed. 1138 (1925), that *HN8* this provision also applies to state governments under the Fourteenth Amendment. Horina wants to pass out his religious leaflets free of fear that he will be cited under the city ordinance. *HN9* Leafleting is a form of speech arguably protected by the Free Speech Clause of the First Amendment. *Martin v. City of Struthers,* 319 U.S. 141, 143, 63 S. Ct. 862, 87 L. Ed. 1313 (1943). Further, Horina's *HN10* speech addressing religious matters is speech of the highest constitutional order. *See DeBoer v. Vill. of Oak Park,* 267 F.3d 558, 570 (7th Cir. 2001), *citing Capitol Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753, 760, 115 S. Ct. 2440, 132 L. Ed. 2d 650 (1995).

Important to the standard or review in this matter, the ordinance in question prohibits leafleting on any public street or sidewalk or other public place in Granite City. *HN11* "Public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum." *Frisby v. Schultz,* 487 U.S. 474, 480, 108 S. Ct. 2495, 101 L. Ed. 2d 420 (1988). *HN12* When regulating First Amendment activity in a public forum, the government has a difficult **[*15]** burden to carry. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983). For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Id.* at 44, *citing Carey v. Brown,* 447 U.S. 455, 461, 100 S. Ct. 2286, 65 L. Ed. 2d 263 (1980). The state may also enforce regulations of the time, place and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *Id., citing United States Postal Service v. Council of Greenburgh,* 453 U.S. 114, 101 S. Ct. 2676, 69 L. Ed. 2d 517 (1981). Therefore, this Court must determine whether the ordinance at issue here is content-based or content-neutral so as to apply the proper level of scrutiny.

*HN13* Content-based regulations are presumptively invalid under the First Amendment and subject to strict scrutiny, while content-neutral restrictions receive lesser scrutiny. *Schultz v. City of Cumberland,* 228 F.3d 831, 840 (7th Cir. 2000). Content-based regulations are defined as **[*16]** those that distinguish favored from disfavored speech based on the ideas expressed. *Turner Broadcasting Sys., Inc. v. F.C.C.,* 512 U.S. 622, 643, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994). If it is necessary to look at the content of the speech in question to determine whether the speaker violated the regulation, then the regulation is content-based. *Gresham v. Peterson,* 225 F.3d 899, 905 (7th Cir. 2000). For instance, "a general ban on speech in the vicinity of a school is content-neutral … whereas an analogous ban on speech containing an exemption for speech relating to labor disputes is content-based. The former regulation requires no consideration to content before applying the ban, while the latter regulation requires consideration of whether the speech in question refers to a labor dispute before it is possible to determine if the regulation applies." *Schultz,* 228 F.3d at 840-41.

Horina argues that the ordinance is content-based since it requires a determination as to whether the literature being distributed falls within the category of "peddling" or "advertising" as the ordinance allows for the peddling or sale of any item that contains or **[*17]** is accompanied by an advertisement. However, the Court finds that this exemption is not enough to automatically qualify the ordinance as being content-based.

Horina alleges that the ordinance is not content-neutral as it permits the sale of materials having advertisements. The Court construes this exception is allowing for the sale of newspaper or magazine-like materials. Similar to the Seventh Circuit's decision in *Weinberg v. City of Chicago,* 310 F.3d 1029 (7th Cir. 2002), the Court finds that Horina's argument fails for several reasons. In *Weinberg,* the plaintiff tried to argue that the ordinance he was challenging, that prohibited the peddling of books within a 1000 feet of the United Center, was not content-neutral because it made a distinction between peddling books and peddling newspapers. In that case, the Seventh Circuit found that the *HN14* because the City of Chicago did not adopt the regulation of speech "because of disagreement with the message [the speech] conveys", the ordinance was content neutral. *Id.* at 1037, *citing Ward v. Rock against Racism,* 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661. The Seventh Circuit stated that "the ordinance is wholly indifferent **[*18]** to any specific message or viewpoint. These regulations do not single out a certain message for different treatment." *Id., citing Schultz,* 228 F.3d at 840.

Similarly, in the case at bar, the leafleting ordinance does not require one to consider the content of the leaflet, merely whether it is being handed out for free, and if not, whether it involves advertisements. Since Granite City treats those handing out any type of material for free, regardless of its content, equally, the Court cannot find that the ordinance is content-based. The fact that the ordinance adversely affects those handing out leaflets while not affecting those peddling materials with advertisements, is of little importance, as *HN15* "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward,* 491 U.S. at 791. What matters to the Court is that the ordinance does not require one to consider the content of the speech, merely its format. Since the ordinance treats anyone

distributing leaflets without advertisements, regardless of its content, equally, this **[\*19]** Court cannot find that the ordinance is content-based. Therefore, the Court finds that the ordinance is content-neutral.

As the Court finds that the ordinance is content-neutral, the Court must now determine whether Horina has a likelihood of success in proving that the ordinance is not a content neutral time, place and manner regulation, that is narrowly tailored to serve a significant government interest, and leaves open ample alternative channels of communication. **_Id., citing United States Postal Service,_** 453 U.S. at 114. Turning to whether the ordinance is narrowly tailored to achieve a significant governmental interest, the Court finds that **HN16** there is no doubt a city has a legitimate interest in protecting its citizens and ensuring that its streets and sidewalks are safe for all citizens. **_Int'l Soc'y for Krishna Consciousness, Inc. v. Lee,_** 505 U.S. 672, 683-85, 112 S. Ct. 2701, 120 L. Ed. 2d 541 (1992). A city's interest in maintaining the flow of pedestrian traffic is intertwined with the concern for public safety. **_See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.,_** 452 U.S. 640, 650-51, 101 S. Ct. 2559, 69 L. Ed. 2d 298 (1981). However, Granite City must be able to justify **[\*20]** the necessity of the ordinance. In the context of a First Amendment challenge under the narrowly tailored test, Granite City has the burden of showing that there is evidence supporting its proffered justification. **_DiMa Corp. v. Town of Hallie,_** 185 F.3d 823, 829 (7th Cir. 1999).

However, neither at the hearing nor in its pleadings submitted after the Court directed the parties to the brief the merits of Horina's preliminary injunction motion, did Granite City offer justification for the necessity of the ordinance. While the Court assumes that some sort of safety and congestion concerns motivated Granite City's invocation of the ordinance, Granite City "cannot blindly invoke safety and congestion concerns without more." [4] **_Weinberg,_** 310 **F.3d at 1038.** However, Granite City has offered no empirical studies, no police records, no reported injuries, nor evidence of any lawsuits filed as a result of leafleting in Granite City. The Court finds that only speculation exists as to the justification of this ordinance, which is problematic, as **HN17** the United States Supreme Court has stated that it has "never accepted mere conjecture as adequate to carry **[\*21]** a First Amendment burden." **_Nixon v. Shrink Missouri Government PAC,_** 528 U.S. 377, 392, 120 S. Ct. 897, 145 L. Ed. 2d 886 (2000). Moreover, "using a speech restrictive blanket with little or no factual justification flies in the face of preserving one of our most cherished rights." **_Weinberg,_** 310 F.3d at 1039. Accordingly, the Court finds that at this stage Granite City has failed to show the ordinance advances a significant governmental interest. [5] **_Cf. Watseka v. Illinois Public Action Council,_** 796 F.2d 1547 (7th Cir. 1986), aff'd, 479 U.S. 1048, 107 S. Ct. 919, 93 L. Ed. 2d 972 (1987).

**FOOTNOTES**

4 As well, the Court notes that the ordinance bans leafleting, but permits such activities as newspaper and magazine sales, peddling, street performances, and charitable solicitations. Any possible argument by Granite City that the ordinance is to advance the city's interest in maintaining traffic congestion is without merit based on its inconsistent approach. **_Cf. Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton,_** 536 U.S. 150, 122 S. Ct. 2080, 153 L. Ed. 2d 205 (2002).

5 The Court notes that most of the testimony at the May 20, 2005 hearing focused on those leafleting near the Hope Clinic. The Court finds it noteworthy that Granite City Police Chief Ruebhausen testified at the hearing that the protestors leafleting at Hope Clinic, which included Horina, were always peaceful and harmless.

**[\*22]** **HN18** Having found that Granite City has failed to show the ordinance advances a significant governmental interest, discussion as to whether the ordinance is a reasonable time, place and manner restriction is not necessary for purposes of issuing a preliminary injunction. However, the Court also finds that at this stage in the proceedings it is unlikely that Granite City has narrowly tailored the leafleting ordinance. **HN19** A regulation is narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation." **_Ward,_** **491 U.S. at 799.** To satisfy the narrowly tailored test, an ordinance need not be the least restrictive method for achieving the government's goal. **_Id. at 797._** Nevertheless, while a regulation does not have to be a perfect fit for the government's needs, it cannot substantially burden more speech than necessary. **_Id. at 800._**

The ordinance completely prohibits all leafleting in any public place in Granite City. This ordinance leaves no alternative means available to those seeking to leaflet. There is no middle ground available, such as a restriction of a certain **[\*23]** distance from highly congested areas or from leafleting on certain narrow sidewalks. Such alternatives would be less restrictive, less encompassing and less intrusive on First Amendment rights. **_See Weinberg,_** 310 F.3d at 1040.

As well, the Court finds as highly instructive **_Krantz v. City of Fort Smith,_** 160 F.3d 1214, 1222 (8th Cir. 1998). In _Krantz,_ the United States Court of Appeals for the Eighth Circuit found that a content-neutral law prohibiting leafleting on vehicles was not narrowly tailored to serve a substantial state interest. The Eighth Circuit found that the regulation was not narrowly tailored because instead of permitting automobile owners who were interested in receiving messages from doing so and allowing uninterested owners to place the equivalent of a no-trespassing sign on their dashboards, the ordinance simply prohibited all leafleting. _Id._ As a result, the Court found that the law restricted more speech than was necessary. Similarly, Granite City's complete prohibition on leafleting in all public areas in Granite City is too great of a restriction that "cannot be reconciled with our First Amendment rights. **[\*24]** " **_See Cox v. Louisiana,_** 379 U.S. 559, 85 S. Ct. 476, 13 L. Ed. 2d 487 (1965). Accordingly, the Court finds at

this stage in the proceeding for purposes of issuing a preliminary injunction, the ordinance burdens more speech than is necessary and is not sufficiently narrow to promote its legitimate interest.

HN20 Final inquiry in determining whether Granite City's ordinance is a reasonable time, place and manner restriction is whether the law leaves open ample alternative channels. Again, while the Court need not decide this issue, it seems unlikely that Granite City's ordinance leaves open ample alternative channels. An adequate alternative does not have to be the speaker's first choice. *Heffron, 452 U.S. at 647.* Yet an alternative is not adequate if it "foreclose[s] a speaker's ability to reach one audience even if it allows the speaker to reach other groups." *Gresham v. Peterson, 225 F.3d 899, 907.*

In the case at bar, Horina is prevented from leafleting in any public forum in Granite City. While Granite City could argue that Horina could post his message via other channels of communication, such as the internet, HN21 the fact that Horina can communicate [*25] his message elsewhere does not end this Court's analysis if the intended message is rendered useless or is seriously burdened. *See City of Ladue v. Gilleo, 512 U.S. 43, 56-57, 114 S. Ct. 2038, 129 L. Ed. 2d 36 (1994).* Leafleting is an inexpensive, unobtrusive, peaceful manner of disseminating information. It allows those not interested to simply not take a leaflet and for others to take one, and read the information. The audience Horina wants to reach are those using the abortion services of the Hope Clinic. As the Seventh Circuit stated in *Weinberg, HN22 "an alternative is not ample if the speaker is not permitted to reach his intended audience." 310 F.3d at 1042.* This Court is not prepared to say that the alternatives available to Horina are ample, as the Court believes his ability to communicate effectively is likely threatened. *See City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 812, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984); Schneider, 308 U.S. at 162-63; American Civil Liberties Union of Nevada v. City of Las Vegas, 333 F.3d 1092, 1106 (9th Cir. 2003).* Accordingly, the Court finds that Horina is likely to succeed on the merits as [*26] to demonstrating that the ordinance is not a reasonable time, place and manner restriction and is unconstitutional as applied to Horina.

## 2b. Whether the ordinance is unconstitutionally overbroad.

Horina also challenges the ordinance contending that it is unconstitutionally overbroad. HN23 Under the First Amendment overbreadth doctrine, an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face "because it also threatens others not before the court -- those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S. Ct. 2794, 86 L. Ed. 2d 394 (1985).* A statute may be invalidated on its face, however, only if the overbreadth is "substantial." *City of Houston v. Hill, 482 U.S. 451, 458-59, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987).* The requirement that the overbreadth be substantial arose from our recognition that application of the overbreadth doctrine is, "manifestly, strong medicine," *Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973),* and that "there must be [*27] a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *City Council of Los Angeles, 466 U.S. at 801.*

In addition to the findings made above in the discussion of the ordinance as it was applied to Horina, on its face, the ordinance appears to be overbroad as it effectively prohibits all leafleting in Granite City of any material that is free of charge. The ordinance broadly prohibits any distribution of any cards, circulars, handbills, samples of merchandise or any advertising matter whatsoever. As a result, the ordinance, as written, manifestly applies to any pamphlets, magazines and periodicals that are being distributed free of charge. The ordinance is not limited to materials that are obscene or offensive to public morals or that advocate for unlawful conduct. In the case at bar, there is no suggestion that Horina was passing out materials of this nature. Instead, Horina was ticketed under the ordinance for handing out religious leaflets, speech which is protected and of the highest constitutional order. [*28] *See Martin, 319 U.S. at 143 (leafleting is a form of speech arguably protected by the Free Speech Clause of the First Amendment). See also DeBoer, 267 F.3d at 570, citing Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 760, 115 S. Ct. 2440, 132 L. Ed. 2d 650 (1995)(speech addressing religious matters is speech of the highest constitutional order).* The ordinance clearly includes an entire spectrum of protected First Amendment expression, not only leafleting and religious speech, but would apply to anyone who "wishes to present his views on political, social or economic questions" or advocate for any cause. *Schneider v. State of New Jersey, 308 U.S. 147, 163, 60 S. Ct. 146, 84 L. Ed. 155 (1939); see also McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357, 115 S. Ct. 1511, 131 L. Ed. 2d 426 (1995)(describing the long-standing practice in this country of anonymous pamphleteering).*

As well, the ordinance appears to be overbroad as it is comprehensive with respect to the method of distribution. It covers anyone who "indiscriminately distributes" materials. As a result, there is no restriction in the ordinance's application to time or place. The ordinance "is not limited to ways [*29] which might be regarded as inconsistent with the maintenance of public order, or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets." *Lovell v. City of Griffin, 303 U.S. 444, 451, 58 S. Ct. 666, 82 L. Ed. 949 (1938).* Consequently, the ordinance prohibits the distribution of all materials that are not for sale at any time, at any place, and in any manner.

Finally, the Court recognizes that HN24 overbreadth challenges are only successful when a limiting construction

cannot be used to narrow the challenged statute and "remove the seeming threat or deterrence to constitutionally protected speech." **Broadrick**, **413 U.S. at 613.** However, at this stage in the proceeding, the Court does not believe the ordinance is susceptible to a narrowing construction. The ordinance sweeps into it constitutionally protected <u>First Amendment</u> speech, including political materials. It also sweeps into its coverage all public areas in Granite City, it does not limit the time or place of distribution. Given the broad scope of this ordinance's application, the Court believes, at this stage in the proceedings, that limiting the ordinance would **[*30]** require a complete overhaul of the ordinance, a task the Court finds is better left to Granite City. See **Kraimer v. City of Schofield, 342 F.Supp.2d 807, 823 (E.D. Wisc. 2005).**

Accordingly, the Court finds that Horina is likely to succeed in proving that the ordinance is invalid on its face. Whatever Granite City's motive was in creating the ordinance, its character is such that it strikes at the very foundation of the freedom of speech and the right to leaflet. As the United States Supreme Court states in Lovell, "[Pamphlets and leaflets] indeed have been historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest." **303 U.S. at 452.** Consequently, the Court concludes ᴴᴺ²⁵ ⊀the ordinance is overbroad.

**3. Balancing the harm to the parties and the public interest.**

As to Horina's irreparable injury, as explained earlier, the United States Supreme Court has stated that the "loss of <u>First Amendment</u> freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." **Elrod, 427 U.S. at 373.** Horina has testified that he has curtailed **[*31]** his leafleting in fear of being cited under the ordinance again. Yet on the other hand, Granite City has offered no evidence of the harm that would befall it if an injunction were put in place preventing them from enforcing the ordinance against Horina or any other person. In fact, Granite City offered to abstain from enforcing the ordinance until this matter reached its conclusion, leading this Court to believe that no harm would befall Granite City if an injunction were granted. Moreover, the public interest weighs in favor of granting the injunction. See **Newsom v. Albemarle County School Bd., 354 F.3d 249, 261 (4th Cir. 2003)**ᴴᴺ²⁶⊀("Surely, upholding constitutional rights serves the public interest"). Cf. **Homans v. City of Albuquerque,** 264 F.3d 1240, 1244 (10th Cir. 2001)("We believe that the public interest is better served by following binding Supreme Court precedent and protecting the core <u>First Amendment</u> right of political expression.")** Accordingly the Court finds the balance of harm to the parties weighs in favor of issuing the injunction.

**Conclusion**

The Court hereby **GRANTS** *in part* and **DENIES** *in part* Plaintiff **[*32]** Donald N. Horina's "Motion for Temporary and Preliminary Injunction" (Doc. 7). The Court **DENIES** the motion in that as all parties received notice of and participated in the May 20, 2005 hearing on the motion for temporary and preliminary injunction, the Court denies as moot the request for temporary injunction. The Court **GRANTS** the motion in that it issues a preliminary injunction preventing Defendant City of Granite City, Illinois from enforcing Granite City Ordinance Chapter 5.78.010 against Plaintiff Donald H. Horina or any other person(s) until this litigation is resolved.

Therefore, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 65(c)**, the Court **DIRECTS** Donald H. Horina to post a bond of One Thousand Dollars ($ 1,000.00) with the Clerk of this Court **on or before Thursday, September 22, 2005** to cover taxable costs in the event Granite City prevails.

Additionally, the Court hereby **SETS** an in-court status conference for **Friday, September 23, 2005 at 3:30 p.m.** to discuss the further pretrial proceedings of this case in light of the Court's rulings in this Order.

**IT IS SO ORDERED.**

**DATED this 29th day of August, 2005.**

**s/ Michael [*33] J. Reagan**

**MICHAEL J. REAGAN**

**United States District Judge**

Service: **Get by LEXSEE®**
Citation: **2005 us dist lexis 36386**
View: Full
Date/Time: Wednesday, August 27, 2008 - 11:08 AM EDT

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated

# EXHIBIT F

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1910849 (N.D.Ill.)

**H**
Gautreaux v. Chicago Housing Authority
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Dorothy GAUTREAUX, et al., Plaintiffs,
v.
THE CHICAGO HOUSING AUTHORITY, Defendants.
No. 66 C 1459.

Aug. 9, 2005.

Adam Edward Gross, Cara A. Hendrickson, Mary Anderson, Business and Professional People for the Public Interest, Jerome M. Butler, Chicago Housing Authority, Timothy Fair, Chicago Transit Authority, Yolande M. Bourgeois, Board of Trustees of Community College District No. 508, Susan Getzendanner, Chicago, IL, for Plaintiffs.
Clyde E. Murphy, Chicago Lawyers' Committee for Civil Rights, AUSA, United States Attorney's Office, Alexander L. Polikoff, Business & Professional People for the Public Interest, Allison S. Davis, Miner Barnhill & Galland, F. Willis Caruso, John Marshall Fair Housing Clinic, James P. Chapman, James P. Chapman & Assoc., Jeffrey Harold Johns, Gardner Carton & Douglas LLP, John J. Hoellen, Hoellen, Lukes & Halper, Kelly Raymond Welsh, City of Chicago, Law Department Corporation Counsel, Lee A. Freeman, Jr., Freeman, Freeman & Salzman, P.C., Lewis M. Nixon, United States Department of Housing & Urban Development, Maurice Jacobs, Schwartz, Cooper, Greenberg & Krauss, Patrick Alex Lucansky, Klein, Thorpe & Jenkins, Ltd., Patrick W. O'Brien, Patrick W. O'Brien, Robert D. Whitfield, Attorney at Law, Roger Pascal, Schiff Hardin LLP, Thomas Edward Johnson, Johnson, Jones, Snelling & Gilbert, Chicago, IL, Clarence John Ruddy, Jr., Ruddy & Varga, Aurora, IL, Kathleen E. Burtschi, United States Department of Housing & Urban Development, Washington, DC, Richard J. Flando, Attorney

at Law, Westchester, IL, William G. Rosing, Rosing, Applehans, Smith, Ericksen & Zeit, Waukegan, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

ASPEN, J.
**\*1** Presently before us is the Gautreaux Plaintiffs' motion for an award of attorneys' fees and related expenses against Defendant Chicago Housing Authority ("CHA") for the period from August 1, 2001 to July 31, 2003. We previously determined that Plaintiffs are "prevailing parties," who are entitled to recover attorneys' fees, under 42 U.S.C. § 1988. *Gautreaux v. CHA,* 523 F.Supp. 684, 690 (N.D.Ill.1981) *(affirmed by Gautreaux v. CHA,* 690 F.2d 601, 614 (7th Cir.1982)). Subsequently, we awarded Plaintiffs attorneys' fees and costs on several additional occasions. Most recently we entered orders on April 2, 2002, covering work from September 25, 1999 to July 31, 2001, and on June 27, 2000, covering work from October 16, 1996 to September 24, 1999. The CHA opposes the Plaintiffs' present motion for attorneys' fee and costs for two reasons. First, the CHA argues that two recent judicial decisions, *Buckhannon Bd. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), and *Alliance to End Repression v. Chicago,* 356 F.3d 767 (7th Cir.2004), preclude an award of fees. Secondly, the CHA opposes Plaintiffs' motion on the grounds that the fee request is excessive and inadequate.

First, the CHA argues that the Supreme Court case *Buckhannon* and the recent Seventh Circuit case *Alliance* preclude an award of fees. In *Buckhannon,* the Supreme Court held that a party must have obtained a judgment on the merits, consent decree, or other judicially-sanctioned change (such as a settlement order) to qualify as a "prevailing party" e n titled to attorney's fees. 532 U.S. 605-06.In doing so, it rejected the "catalyst theory," under which

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1910849 (N.D.Ill.)

some courts had held that a defendant's voluntary change in conduct induced by the lawsuit qualifies a plaintiff to be a "prevailing party" entitled to fees. *Id.*

In *Alliance,* the Seventh Circuit considered the application of *Buckhannon* to post-decree litigation. In *Alliance,* the plaintiffs had won a consent decree against the City of Chicago in 1981 related to the Chicago Police Department's investigative activities that violated class members' First Amendment rights. Based on the consent decree, the plaintiffs were considered "prevailing parties" entitled to attorneys' fees under § 1988. Between 1994 and 2001, the plaintiffs brought two actions for contempt of the decree, which were unsuccessful. In 1997, the City sought modifications to make the decree restrictions less onerous, which were granted on appeal. In granting the modifications on appeal, the Seventh Circuit observed that the City had complied with the decree for the entire period of almost two decades in which it had been in force, and that social conditions had changed so far as to make much of the decree obsolete. 356 F.3d at 769. The plaintiffs in *Alliance* then sought attorneys' fees for these two failed proceedings for contempt of the decree, the failed opposition to the modification, and for monitoring compliance of the decree, on the basis of its "prevailing party" status obtained when the decree was entered. In denying attorney's fees, the Seventh Circuit held that the contempt and modification proceedings were "clearly separable" from the entry of the consent decree, for which the plaintiffs had experienced "not even a disappointing partial success" and "nothing but loss" for a decade. *See id.* at 770-71.As to this separate post-decree work and proceedings, plaintiffs could not be considered "prevailing parties" under § 1988 and, therefore, were not entitled to fees. *Id.*

**\*2** The present case is distinct from *Alliance* in that the post-decree proceedings and related work for which fees are presently sought are not "clearly separable" from the original judgment order. *See Gautreaux,* 690 F.2d at 604, 605 ("It is more con-

sistent with the history of this particular lawsuit ... and with the nature of equitable proceedings in general not to divide a continuously active equitable case into a host of separate smaller matters); *see also Gautreaux,* 523 F.Supp. at 689, 690. Unlike *Alliance,* this case involves post-judgment work and proceedings that are all part of one active equitable case, in which compliance has always been at issue, and modifications and clarifications of the original judgment order must continuously be made to account for changing conditions and circumstances. Indeed, as the Seventh Circuit has recognized, the heart of this unique litigation lies in the present remedial stage, "where the parties struggle, often for years, over the scope and details of injunctive relief."*See Gautreaux,* 690 F.2d at 610. We therefore find *Alliance* inapplicable to this case and reject the CHA's argument that *Alliance* and *Buckhannon* preclude an award of attorneys fees in this case.

Next, CHA argues that Plaintiffs' fee request is inadequate. Attorneys fees are properly calculated by multiplying "the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate."*Mathur v. Bd. of Trs. of S. Ill. Univ.,* 317 F.3d 738, 742 (7th Cir.2003). CHA claims that the Plaintiffs have billed an unreasonable number of hours by including time spent by multiple attorneys on intra-office communications and conferences with third parties, and by including time spent on matters not within the scope of the consent decree.

Initially, we observe that the present fee request is comparable to the two prior agreed orders approving Plaintiffs' fees, dated April 4, 2002 and June 27, 2000. On April 4, 2002, we entered an Order granting Plaintiffs $841,020 for 3,753 hours billed in a twenty-two month period (an average of 171 hours billed per month) at rates of $130 to $360 per hour. On June 27, 2000, we entered an Order granting Plaintiffs $976,440 for 3,137 hours billed in a thirty-five month period (an average of 90 hours billed per month) at rates of $120 per to $360 per

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                              Page 3
Not Reported in F.Supp.2d, 2005 WL 1910849 (N.D.Ill.)

hour. Presently, Plaintiffs have requested payment of $724,732 [FN1] for 2,574 hours billed in a twenty-four month period (an average of 107 hours billed per month) at rates of $200 to $400 per hour.

> FN1. Plaintiffs originally moved for an award in the amount of $728,827 in attorneys' fees for 2,589 hours of work but in their reply, eliminated the request for fees for 15 hours, which they discovered to have been erroneously included.

We find that the Plaintiffs' requested hours are reasonable. By eliminating billing for hours spent by more than two attorneys in consultation, and by reducing hours spent in Gautreaux Team Meetings by fifty percent, the Plaintiffs have exercised proper billing judgment. Although the CHA takes issue with the use of multiple attorneys in this case, courts in this circuit have found that the use of two or more attorneys is appropriate in cases less complex than this matter. *Kurowski v. Krajewski,* 848 F.2d 767, 776 (7th. Cir.1988) (recognizing the propriety and benefits of using multiple lawyers, including that the "use of two (or more) lawyers ... may well reduce the total expenditures by taking advantage of division of labor"); *Bohen v. City of E. Chicago,* 666 F.Supp. 154, 157 (N.D.Ind.1987) (observing that "[t]wo lawyers are the minimum in much private litigation."). Additionally, Plaintiffs have categorized each billing entry to show that the underlying task is within the scope of the consent decree and is consistent with the past orders awarding fees to the Plaintiffs.

*3 Finally, CHA claims that the Plaintiffs have not adequately proven the reasonableness of their proposed market rates, and that the rates are excessive. The burden of proving the proper market rate is on the party seeking the fee award. *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 407 (7th Cir.1999). For attorneys without fee-paying clients, the market rate may be determined by a comparison to the rates charged by other attorneys in the community for similar work and to fee awards the attorney has received in similar cases. *Id.* Plaintiffs have presen-

ted an affidavit from Lowell Sachnoff in support of their proposed market rates. CHA argues that the affidavit is invalid because Sachnoff is a Director of BPI, the organization representing the Plaintiffs. However, the Seventh Circuit has stated that it is appropriate to consider the testimony of a member of the attorney's own firm when determining an attorney's proper market rate. *People Who Care v. Rockford Bd. of Educ.,* 90 F.3d 1307, 1312 (7th Cir.1996) (stating that "[i]f a court chooses to look to the next best evidence of what similarly situated attorneys charge, there is no reason that it should refuse consideration of those who practice in conjunction with the attorney at issue."). Accordingly, Sachnoff's position within BPI does not invalidate his affidavit. In consideration of Sachnoff's affidavit, as well as the current market rates within the Chicago legal community and the past hourly rates in this litigation, we find that the Plaintiffs' requested hourly rates are reasonable.

### CONCLUSION

For the reasons stated above, we grant the Plaintiffs' motion for award of attorneys' fees in the amount of $724,732 and related expenses of $3,706. It is so ordered.

N.D.Ill.,2005.
Gautreaux v. Chicago Housing Authority
Not Reported in F.Supp.2d, 2005 WL 1910849 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT G

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 893840 (N.D.Ill.)

**H**

Johnny's IceHouse, Inc. v. Amateur Hockey Ass'n of Illinois
N.D.Ill.,2001.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
JOHNNY'S ICEHOUSE, INC., et al., Plaintiffs,
v.
AMATEUR HOCKEY ASSOCIATION OF ILLINOIS, et al., Defendants.
No. 00 C 7363.

Aug. 7, 2001.

*MEMORANDUM OPINION AND ORDER*

SHADUR, Senior J.
*1 Johnny's IceHouse, Inc. and its fellow plaintiffs (collectively "Johnny's IceHouse," treated after this sentence as a singular noun) have moved under Fed.R.Civ.P. ("Rule") 54(d) for an award of attorney's fees and other expenses in the aggregate amount of $133,592.56 against Amateur Hockey Association of Illinois, Inc. and its individual codefendants (collectively "AHAI," also treated as a singular noun).[FN1] That award is sought on the strength of this Court's May 4, 2001 order ("Order") that memorialized AHAI's agreement to dismiss the two previously pending disciplinary actions against individual plaintiffs: in one instance Rachael Westenberg and her parents, and in the other instance Nikki Watts. AHAI's agreement and the Order had in turn followed from this Court's April 3 ruling granting Johnny's IceHouse a temporary restraining order ("TRO") on those issues. With the motion now having been fully briefed, it is ripe for decision.

> FN1. For purposes of this opinion, Johnny's IceHouse's earlier Memorandum in Support of Plaintiffs' Emergency Motion for a Temporary Restraining Order is cited

"J. TRO Mem.-." As for the briefs filed on the current motion, Johnny's IceHouse's opening memorandum is cited "J. Mem.-" and its supplemental memorandum is cited "J. Supp. Mem.-," with AHAI's intervening memorandum cited "A. Mem.-." This opinion employs the same "J." and "A." designations in referring to the parties' exhibits.

*Background*

Johnny's IceHouse filed an Emergency Motion for a Temporary Restraining Order on February 13, 2001, based on a number of AHAI's actions that had allegedly been taken in retaliation for the filing of this lawsuit. Johnny's IceHouse primarily sought to restrain AHAI from pursuing (1) a disciplinary action against Rachael Westenberg based on an alleged debt owed to the Chicago Young Americans ("CYA") girls' hockey team (J. TRO Mem. 4-8) and (2) a disciplinary investigation against Nikki Watts for an alleged roster violation in playing for both Johnny's Chicago Chill's 15-and-under team and its 19-and-under team during an exhibition tournament in Minnesota (*id.* 8-9). Johnny's IceHouse also contended that AHAI was further retaliating by pressuring Chicago Chill President Bryan Barrish to withdraw Johnny's IceHouse's permission to use the Chicago Chill name (*id.* 9-10).

After two full days of evidentiary hearings on Johnny's IceHouse's motion, supplemented by extensive pre- and post-hearing briefing, on April 3 this Court found that Johnny's IceHouse had not met its burden on the Chicago Chill name issue but that it had more than amply sustained its burden, and was therefore entitled to a TRO, regarding the Westenberg and Watts issues (Apr. 3 Tr. 6). As to those two issues this Court said in part (*id.* 8):

It is nothing short, I again regret to say, nothing short of disgraceful for an organization such as AHAI, which has the responsibility imposed on it

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 893840 (N.D.Ill.)

and undertaken by it to regulate this activity, to have its persons who are in authority so amorphous and so totally inconsistent as to what the operative rights and responsibilities and rules and procedures are. As I was listening to and examining the evidence as it was introduced, I must say the strong sense that I gleaned was that each of those who were either making or implementing policy for AHAI in the respects at issue here were sort of making it up as they went along. The plaintiffs' March 27th post-hearing memorandum demonstrated that, I thought, with a kind of devastating force. And the total impact is that the purported explanations were just rife with inconsistencies. And there is no predicate for subjecting people who are seeking to participate in the activity to that kind of really anarchic structure, or more accurately lack of structure.

*2 Accordingly my sense is that the TRO certainly should be granted with respect to those two items.

In light of that ruling, on April 26 AHAI agreed to discontinue both the Westenberg disciplinary proceeding and the Watts disciplinary investigation permanently. This Court's Order memorialized that agreement, stating in relevant part:

The AHAI defendants will not at any time in the future pursue, either directly or indirectly, any disciplinary proceedings, investigations, or action of any kind against any person or entity regarding the Westenbergs' alleged debt to CYA.

In addition, in light of the Court's April 3, 2001 ruling, the AHAI defendants will not pursue, either directly ´or indirectly, any investigation, hearing, or discipline against any person relating to an alleged roster violation, or to the events leading up to the alleged roster violation, involving Coach Richard Marshall and plaintiff Nikki Watts that occurred in Minnesota in November 2000.

Based on its success on the Westenberg and Watts issues, Johnny's IceHouse now moves for an award of attorney's fees-an interim award in terms of this

litigation as a whole, but a final award as to the subject matter of the Order.

*Prevailing Party?*

This opinion must first address a cutting edge issue by reason of the United States Supreme Court's recent decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources,* 121 S.Ct. 1835 (2001). Because *Buckhannon* has newly announced that the "catalyst theory" is not a permissible basis for an award of attorney's fees, the initial question is whether Johnny's Ice-House qualifies as a "prevailing party" under Rule 54(d).

Before *Buckhannon* all but one of the Courts of Appeals that had addressed the issue (including ours) had recognized the catalyst theory, under which a plaintiff could be held a prevailing party and hence entitled to attorney's fees if it achieved its desired result because the lawsuit brought about a voluntary change in a defendant's conduct (*Buckhannon,* 121 S.Ct. at 1838 & n. 3). But *Buckhannon,* 121 S.Ct. at 1840 found the catalyst theory to be inconsistent with Supreme Court teaching that a plaintiff prevails only when there is a "material alteration of the legal relationship of the parties" (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792-93 (1989)). Where a defendant voluntarily changes its conduct, the change "lacks the necessary judicial *imprimatur*" for a finding that the plaintiff has prevailed (121 S.Ct. at 1840).

So Johnny's IceHouse could not be deemed the prevailing party if its TRO action had simply brought about AHAI's voluntary dismissal of the proceedings against the Westenbergs and Watts. In that respect, once this Court had called counsel's attention to *Buckhannon* and had asked the parties to address the impact (if any) of that decision on the then-pending motion, Johnny's IceHouse's Supplemental Memorandum argued that it is still a prevailing party in terms of *Buckhannon'* s approach because of this Court's findings of fact made in its favor at

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 893840 (N.D.Ill.)

the TRO hearing and because the prohibitions against AHAI's future activity have been embodied in the Order, which (like all such orders) has thus become subject to judicial enforcement and oversight (J. Supp.Mem.4).

*3 In response AHAI has argued that Johnny's Ice-House is not a prevailing party because *Buckhannon,* 121 S.Ct. at 1840 limited that phrase to parties that achieve either (1) an enforceable judgment on the merits or (2) a court-ordered consent decree (A.Mem.3-4). As AHAI would have it, the Order was neither of those.

*Buckhannon* cannot be fairly read so narrowly-or perhaps to put the matter differently, the concept of a court-ordered consent decree must be read more broadly than AHAI would admit, so as to embrace the Order. *Buckhannon,* 121 S.Ct. at 1841 pointed to enforceable judgments on the merits and court-ordered consent decrees as examples of material alterations of parties' legal relationships, but the Court did not hold that those are the only instances in which a party may be deemed to have prevailed. Indeed, the four-Justice dissent, *id.* at 1850 characterized the holding as insisting "that there be a document filed in court," summarizing the majority opinion in these terms (*id.* at 1849):

The Court today holds that a plaintiff whose suit prompts the precise relief she seeks does not "prevail," and hence cannot obtain an award of attorney's fees, unless she also secures a court entry memorializing her victory. The entry need not be a judgment on the merits. Nor need there be any finding of wrongdoing. A court-approved settlement will do.[FN2]

> FN2. [Footnote by this Court] This Court is of course well aware that it can be perilous to rely too heavily on a dissenting opinion's characterization of the majority's holding (sometimes advanced as a kind of rear-guard action, in an effort to limit the scope of a holding opposed by the dissent-

ers). In this instance, though, the quoted language is a fair statement of the majority opinion as it impacts on this case.

Johnny's IceHouse is wholly persuasive in urging that the Order formalizing and memorializing AHAI's commitment legally altered the relationship between the parties, making Johnny's IceHouse a prevailing party under the standard announced in *Buckhannon.* That Order subjected what would otherwise have been merely a private agreement to judicial oversight and enforcement (see 121 S.Ct. at 1840 n. 7)-and it did so in response to Johnny's Ice-House's concerns that a purely voluntary undertaking on AHAI's part would not alone provide adequate protection for the future.

Moreover, the Order clearly bears the mark of judicial sanction. AHAI's agreement to drop the disciplinary proceedings against the Westenbergs and Watts arose out of this Court's finding of wrongdoing on AHAI's part after a full-fledged factual hearing.[FN3] And AHAI agreed to reduce its commitment to a court order both in response to Johnny's IceHouse's legitimate concerns and at this Court's request, a procedure that obviated a conversion of the TRO into a preliminary injunction (April 26 Tr. 11). Those circumstances surrounding the entry of the Order strongly bolster the view that Johnny's IceHouse is plainly a prevailing party under *Buckhannon.*

> FN3. AHAI argues that the Westenberg issue was dropped not because of this Court's April 3 findings but rather because CYA dismissed its administrative complaint against the Westenbergs, thereby divesting AHAI of jurisdiction over the issue. But that is no more than a red herring: There can be no doubt that CYA itself engaged in that dismissal in light of this Court's findings, which had made plain that there was no basis under AHAI's rules or regulations for CYA's attempted action. In that respect the relationships between CYA and AHAI must also be kept in mind:

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 893840 (N.D.Ill.)　　　　　　　　　　　　　　　　　　　　　　　　　　　

CYA President Stephen Morrow is also an AHAI official, as is his wife and CYA girls' teams manager Kathy Morrow, who testified at the TRO hearing regarding the Westenberg issue.

AHAI also strikes out on its other attempt to label Johnny's IceHouse as other than a prevailing party. In that regard AHAI argues that because this Court made no findings on the merits of Johnny's Ice-House's Title IX claim, Johnny's IceHouse is not a prevailing party under the holdings of such cases as *Libby v. Illinois High Sch. Ass'n,* 921 F.2d 96 (7th Cir.1990). That contention ignores the fact, often reiterated in the Title VII context but equally applicable to Title IX actions, that a claim for retaliation is a discrete claim upon which a plaintiff may recover even if he or she does not ultimately prevail on the merits of the substantive discrimination claim (see, e.g., *Sweeney v. West,* 149 F.3d 550, 554 (7th Cir.1998)). Unlike the situation in *Libby,* no further proceedings in this case have the potential to defeat Johnny's IceHouse's already-achieved success on the two aspects of its retaliation claim. Accordingly it is entitled to attorney's fees for its efforts in that regard.

*Reasonableness of Fees*

**\*4** In dealing with fee-shifting situations (the imposition on one litigant of the costs of legal representation furnished to the litigant's opponent), the free market-the agreement reached between lawyer and client-may or may not dictate the amount of the "reasonable fee" that the cases require a court to determine. For example, where as here a plaintiff's counsel has undertaken representation on a contingent fee basis,[FN4] or where for example counsel are acting entirely pro bono publico or on a basis discounted from normal billing rates for one reason or another, a court's determination of reasonableness must follow a different course. That normally begins by determining the number of hours reasonably expended, multiplied by a reasonable hourly rate, after which the court will look to other consid-

erations (including the results obtained) that may lead to an upward or downward adjustment of the fee (*Hensley v. Eckerhart,* 461 U.S. 424, 433-37 (1983); *People Who Care v. Rockford Bd. of Educ.,* 90 F.3d 1307, 1310 (7th Cir.1996)).

FN4. Counsel for Johnny's IceHouse has agreed that in the absence of any judicial award of fees against its adversaries, no charge will be made for their extensive legal services.

AHAI advances several reasons why it believes that Johnny's IceHouse's requested fees and expenses (if allowed at all) should be reduced as unreasonable: that the requested hourly rates exceed market rates; that certain billing entries are "block billed," duplicative, excessive or unsubstantiated; and that the requested fees are excessive in relation to the extent of Johnny's IceHouse's success. This opinion addresses those objections in turn.

*Market Rates*

In part for the reasons stated earlier, *People Who Care,* 90 F .3d at 1310 (internal citations and quotation marks omitted) sets forth the standard inquiry for determining "reasonable hourly rates":

In determining "reasonable hourly rates," the Supreme Court has repeatedly stressed that attorney's fees awarded under Section 1988 are to be based on market rates for services rendered. The attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate. If the court is unable to determine the attorney's true billing rate, however (because he maintains a contingent fee or public interest practice, for example), then the court should look to the next best evidence-the rate charged by lawyers in the community of reasonably comparable skill, experience and reputation.

Johnny's IceHouse bears the burden of proving the market rate (*id.* at 1311). Once it has done so, the burden shifts to AHAI to demonstrate why a lower

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 893840 (N.D.Ill.)

rate should be awarded (*id.* at 1313; see also such cases as *Batt v. Micro Warehouse, Inc.,* 241 F.3d 891, 894 (7th Cir.2001) and *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 554-55 (7 th Cir.1999)).

Johnny's IceHouse submits that it is entitled to recover hourly rates of $495 for lead attorney Alan Salpeter ("Salpeter"), $295 for associate Adrienne Hiegel ("Hiegel"), $185 for associate Jason Fliegel ("Fliegel"), $155 for two paralegals, $130 for litigation support and $40 for support services. In support of these rates Salpeter submitted an affidavit attesting that those are the hourly rates normally charged by Mayer, Brown & Platt for each attorney's services, although (as stated earlier) the firm has agreed to represent Johnny's IceHouse in this action on a pro bono basis unless fee-shifting is available (Salpeter Aff. ¶ 2, 5).

**\*5** Because Johnny's IceHouse's attorneys charge virtually all of their paying clients at the same rates and because clients who may receive a modest 5% discount because of the volume of work they provide constitute a very small percentage of counsel's overall work (Salpeter R. Aff. ¶ 7), that evidence unquestionably suffices to establish their market rates: It represents the amount the attorneys would have received if they had not been representing Johnny's IceHouse, that while working for paying clients (*People Who Care,* 90 F.3d at 1313)-in economic terms, their opportunity cost in taking this action. Hence those rates are considered presumptively appropriate, and the burden shifts to AHAI to present evidence establishing "a good reason why a lower rate is essential" (*People Who Care,* 90 F.3d at 1313, quoting *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1151 (7 th Cir.1993)).

On that score AHAI argues that the hourly rates requested for the work done by Salpeter and Hiegel far exceed market rates set in other civil rights cases, and AHAI further suggests that they exceed market rates for comparable Chicago attorneys. To that end AHAI points to other civil rights cases in which lead counsel had been allowed hourly rates

ranging from $300-$325 per hour and a second-chair attorney was allowed an hourly rate of $175 per hour (see, e.g., *Krislov v. Rednour,* 97 F.Supp.2d 862, 870 (N.D.Ill.2000)). AHAI also submits the affidavit of its lead counsel Ronald Safer ("Safer") attesting that Schiff, Hardin & Waite's standard hourly billing rates for lead counsel on this matter are $350 for Max Brittain, Jr., $325 for Ralph Morris and $350 for Safer (Safer Aff. ¶ 3). Associate Jennifer Cerven's standard hourly billing rate is $230 (*id.*). Finally, AHAI points out that while Salpeter is an experienced litigator, he does not have extensive case experience arising out of civil rights litigation under Title IX or otherwise (A.Ex. C).

There is however an inherent logical fallacy in the approach urged by AHAI, which would pigeonhole this action in generic terms as a "civil rights action" and then proceed to draw invidious comparisons between the Mayer Brown lawyers' hourly rates and the rates charged by lawyers who handle more conventional litigation that comes under the civil rights rubric and who charge less for their time. This is not at all a situation comparable to that in *Cooper v. Casey,* 97 F.3d 914, 920-21 (7 th Cir.), where prisoners' rights litigation under Section 1983 was in a well-marked-out area of law such that comparisons of that type could have legitimate force. Nor is this case at all akin to that in *Beard v. Teska,* 31 F.3d 942 (10 th Cir.1994), where this Court wrote for a Tenth Circuit panel addressing a claim for fees in a specialized area of school law with an established market for the rates regularly charged by qualified practitioners, while the applicant lawyer submitted his own market rate established in wholly unrelated areas of the legal practice. Instead this litigation poses not only civil rights issues of an unusual nature but also antitrust claims, the retaliation claims at issue, breach of fiduciary duty claims and breach of contract claims [FN5]-all requiring a far greater overall breadth of skills (and a high quality of litigation skills generally), all of whose demands were well met by Johnny's IceHouse's counsel.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 893840 (N.D.Ill.)

FN5. Here the question is not whether all of those claims are ultimately sustainable, but rather the level of skills and experience required to conceptualize, develop and pursue the claims in court and out.

**\*6** Nor would it do, for example, to try to split out the issues posed by the portion of this case that has generated the present claim for fees, coupling that proposed severance with an argument that less expensive counsel might have done the job for less. To begin with, the retaliation claims on which Johnny's IceHouse prevailed and that are now at issue were integral to and inextricably linked with the other claims. And it would be entirely unrealistic (and indeed uneconomic, something about which AHAI could legitimately complain if it had been done) to require Johnny's IceHouse's counsel to have compartmentalized their handling of the litigation in that fashion.[FN6]

FN6. That the Schiff Hardin & Waite attorneys normally charge lower hourly rates than Salpeter and Hiegel also does not show that a lower rate is "essential" (the term employed in *Gusman* and *People Who Care* ). For example, Salpeter adduces important distinguishing factors that militate against such one-to-one comparisons. And most significantly, it is market forces rather than a judge's subjective impressions that best valuate the hourly rate that an attorney merits based on his or her experience, skills and efficiency. Thus it is not for this Court to second-guess that valuation (except, of course, in cases such as *Cooper* and *Beard,* where an attorney is practicing outside of his or her area of expertise).

*Hours Spent and Expenses Incurred*

This District Court has established a carefully structured procedure in its LR 54.3 that serves to implement Rule 54(d) in addressing fee awards stemming from the entry of judgment. But LR 54.3(d) also plays a constructive role in situations such as the present one, for parties who follow its provisions are able to narrow the focus of any disputed aspects of the fee request both for themselves and for the court. At this time the litigants are engaged in the LR 54.3(d) p rocess, and this Court's ruling as to the reasonableness of the lawyers' hours and the out-of-pocket expenses claimed by Johnny's IceHouse will of course be deferred until this Court is provided the necessary grist for the judicial mill in those respects.

*Results Obtained*

AHAI argues finally that the lodestar figure should be reduced because Johnny's IceHouse's success was limited. As cases such as *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (quoting *Hensley,* 461 U.S. at 436) teach:

Indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained."

*Connolly v. National Sch. Bus Serv., Inc.,* 177 F.3d 593, 597 (7 th Cir.1999) (internal citations and quotation marks omitted) sets out a three-part test for evaluating "degree of success":
Under this test, we look at the difference between the judgment recovered and the recovery sought, the significance of the legal issues on which the plaintiff prevailed and, finally, the public purpose served by the litigation. The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case.

AHAI argues that Johnny's IceHouse's success was limited because it did not obtain a broad injunction against retaliation and it did not succeed on the "Chill" name issue (A.Mem.6). AHAI further points out that the Order barring AHAI from pursuing the Westenberg and Watts issues affected only the Westenbergs and Watts, assertedly providing no benefit to the rest of the plaintiffs (*id.*).

That latter contention does not call for a limited-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                           Page 7
Not Reported in F.Supp.2d, 2001 WL 893840 (N.D.Ill.)

success reduction. There is certainly nothing inappropriate about the pursuit of claims that relate to some but not all of a lawyer's litigation clients. In any event, the Johnny's IceHouse motion for a TRO explained that the pursuit of those disciplinary proceedings could result in the suspension of the Chicago Chill teams (J. TRO Mem. 12), and there was no evidence submitted at the hearing to rebut that assertion.[FN7]

> FN7. Moreover, the TRO proceeding resulted in this Court's denunciation of AHAI's running what this Court characterized as TEGWAR ("The Exciting Game Without Any Rules") as far as girls' hockey is concerned. Later developments in the litigation have suggested that this Court's ruling has had a substantial deterrent impact on AHAI's arbitrary policymaking, as well as fostering AHAI's proposed implementation of rules and regulations for girls' hockey, changes that will benefit all of the plaintiffs and others not involved in this action. It is surely fair to say that Johnny's IceHouse's submissions "evince a public purpose rather than merely attempt to redress a private injury" (*Maul v. Constan,* 23 F.3d 143, 146 (7th Cir.1994)), further supporting its claim for attorneys' fees.

*7 As for Johnny's IceHouse's lack of success on the "Chill" name issue, the *Hensley* approach to the concepts of "results obtained" and "limited success" (461 U.S. at 434-37), which has not been vitiated by *Farrar* (506 U.S. at 114), raises a serious question as to whether that may call for some reduction in its attorney fee award. In substantial part that possibility really depends on whether it is feasible (or indeed appropriate) to attempt to carve that time out of the time for which counsel now make their claim (issues on which the parties have not provided all the necessary input, but which they are expected to deal with in the LR 54.3 submissions referred to in the preceding section).

But in all events, any such reduction (if it were to be made at all) would have to be small, for the "Chill" name issue was certainly secondary in terms of both the importance that Johnny's IceHouse placed on it and the limited time that was devoted to it at the hearing. What is most significant is that Johnny's IceHouse obtained through the Order the ultimate equitable relief that it sought on the two issues that were literally front and center in its Memorandum in support of its TRO motion (J. TRO Mem. 2) (see *Hensley,* 461 U.S. at 436-37).

### Conclusion

Johnny's IceHouse prevails in the substantive respects dealt with in this opinion. Quantification of its just-established entitlement to fees and expenses, however, will await the submission of the LR 54.3(d) information and materials for resolution by this Court.

N.D.Ill.,2001.
Johnny's IceHouse, Inc. v. Amateur Hockey Ass'n of Illinois
Not Reported in F.Supp.2d, 2001 WL 893840 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT H

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2005 WL 3455846 (N.D.Ill.)

**C**
Cruz v. Globe Realty Management Co.
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Josie CRUZ, Plaintiff,
v.
GLOBE REALTY MANAGEMENT CO., Defend-
ant.
**No. 03 C 9298.**

Dec. 13, 2005.

Jean K. Janes, Much, Shelist, Freed, Denenberg,
Ament & Rubenstein, P.C., Chicago, IL, Corrie E.
Schafer, Wildman, Harrold, Allen & Dixon LLP,
Lisle, IL, Max P. Lapertosa, Access Living of Met-
ropolitan Chicago, Chicago, IL, for Plaintiff.
Daniel Martin Feeney, Fredrick E. Vars, Miller
Shakman & Hamilton LLP, Chicago, IL, for De-
fendant.

*MEMORANDUM OPINION AND ORDER*

HOLDERMAN, J.
*\*1* On December 23, 2003, plaintiff Josie Cruz
("Cruz"), filed a two count complaint against de-
fendant Globe Realty Management Co. ("Globe"),
pursuant to Section 504 of the Rehabilitation Act of
1973, 29 U.S.C. § 794. (Dkt. No. 1). Globe
answered the complaint and discovery proceeded in
the case. (Dkt. No. 7). After a period of discovery,
and with the assistance of Magistrate Judge Ash-
man, the parties in early March 2005 settled the
case. Included in the settlement agreement was
Globe's agreement to install, among other things, an
outdoor ramp and an indoor wheelchair lift to ac-
commodate the residents, including Cruz, at 6920
South Crandon Avenue. The agreed upon items
were not installed in the building in the time frame
by the parties. Plaintiff Cruz, in turn, sought an or-
der to show cause which has now been resolved.

(Dkt. Nos.31, 34). On November 4, 2005, Cruz
filed the pending motion seeking compensation, at-
torneys fees' and costs resulting from Globe's al-
leged breach of the parties' settlement agreement.
(Dkt. No. 35). For the reasons set forth below,
Cruz's motion for compensation, attorneys' fees and
costs is granted.

*BACKGROUND*

Cruz lives at 6920 South Crandon Avenue in Chica-
go, Illinois. (Dkt. No. 36-2, at pg. 1). She has a
physical disability and relies on a motorized scooter
for mobility. (*Id.*) 6920 South Crandon is a multi-
family apartment building owned by Globe that re-
ceives a federal housing subsidy. (*Id.*) As alleged in
Cruz's initial complaint, 6920 South Crandon "was
not accessible to people with disabilities in that the
front door could be entered only by stairs. This in
turn required Cruz to use an inconvenient and, for
her, dangerous delivery ramp leading to the base-
ment."(Dkt. No. 36-1 at pg. 1).

As mentioned above, after several months of dis-
covery, the parties entered into a settlement agree-
ment dated March 3, 2005 and this court entered an
agreed order of dismissal on March 15, 2005.
(Dkt.Nos.22, 23). This court's March 15, 2005 or-
der: (1) instructed the parties to comply with the
terms of the March 3, 2005 settlement agreement,
(2) explicitly stated that this court retained jurisdic-
tion for the purpose of enforcing the terms of the
settlement agreement through March 30, 2006, and
(3) otherwise dismissed the case with prejudice
with each party to bear its own attorneys' fees and
costs. (Dkt. No. 23).

The settlement agreement required Globe to build
an outdoor concrete ramp and indoor wheelchair lift
at the main, front entrance of 6920 South Crandon
Street by May 30, 2005. (Dkt. No. 36-2 at pg. 2). If
Globe was unable to meet the May 30, 2005 dead-
line, Globe was required to inform Cruz's counsel

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Page 3 of 9

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3455846 (N.D.Ill.)                                        Page 2

in writing of: (1) the efforts made to comply with the deadline, (2) the reasons for the delay, (3) the date that Globe reasonably expected to complete the work, and (4) the reasons why Globe believed the work would be completed by that future time. (*Id.* at pg. 2-3).

The settlement agreement required the parties to endeavor in good faith to informally resolve any differences over the implementation of the settlement agreement. (*Id.* at pg. 3). However, Cruz had a right to seek from this court any appropriate remedies for any breaches of the settlement agreement by Globe if the parties could not resolve their differences. (*Id.* at pg. 4). She was also authorized to seek attorneys' fees incurred for any litigation that she had to undertake in response to a breach by Globe. (*Id.*)

*2 Although Globe promised in the settlement agreement to completed the project by May 30, 2005, the project was not completed until October 27, 2005. Cruz could not access her home via the front entrance of 6920 South Crandon until the entire project was completed because she needed both the wheelchair ramp and lift for access. Cruz did not benefit from any partial performance by Globe that occurred before October 27, 2005. Cruz argues that Globe breached the settlement agreement through its continued delays and the need for her to return to this court and seek judicial assistance in enforcing the settlement agreement.

This court participated through the holding of status hearings on August 2, 2005 and August 23, 2005, (Dkt.Nos.27, 28), granting Globe's motion for modification of the agreed order to extend time for the completion of the project on October 6, 2005, (Dkt. No. 33), and providing a forum for Cruz to file her October 4, 2005 motion for a rule to show cause why Globe should not be held in contempt for violation of the settlement agreement. (Dkt. No. 31).

On October 27, 2005, this court mooted Cruz's October 4, 2005 rule to show cause motion when Globe represented during the status hearing that the

wheelchair ramp and lift were both in place and operational. (Dkt. No. 34). Despite mooting Cruz's motion, this court did, however, allow Cruz leave to file the present motion for compensation, attorneys' fees and costs at the October 27, 2005 status hearing. (*Id.*)

### *ANALYSIS*

Cruz argues in her present motion that "[i]n resolving [her initial lawsuit], and in exchange for immediate safe access to her building, [she] gave up remedies she could have otherwise sought at trial, including compensatory damages.... Despite this agreement, however, [Cruz] did not realize the benefits of this exchange for over six months and only after [this court's] intervention."(Dkt. No. 36-1 at pg. 2). Cruz seeks $14,139.54 in attorneys' fees and costs and $8,000.00 in compensatory damages for Globe's alleged violation of the March 3, 2005 settlement agreement. (Dkt. No. 36-1 at pg. 1). Globe counters that Cruz's motion should be denied because Cruz is not a "prevailing party," most of Cruz's requested fees and costs are not reasonable, and Cruz is not entitled to compensatory damages because the agreement was never breached.

### *A. The Court's Subject Matter Jurisdiction*

"Settlement agreements are contracts," *Seymour v. Hug,* No. 04 C 2041, 2005 WL 3019418, at *13 (N.D.Ill. Nov.8, 2005) (citing *Laserage Tech. Corp. v. Laserage Lab. Inc.,* 972 F.2d 799, 802 (7th Cir.1992); *McCall-Bey v. Franzen,* 777 F.2d 1178, 1186 (7th Cir.1985)), and "[d]isputes about settlement contracts must be resolved in state court, unless they independently satisfy the requirements of federal jurisdiction."*Goulding v. Global Med. Prod. Holdings, Inc.,* 394 F.3d 466, 467-68 (7th Cir.2005) (citing *Peacock v. Thomas,* 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996); *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994))."A settlement agreement, unless it is embodied in a consent de-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3455846 (N.D.Ill.)

cree or some other judicial order or unless jurisdiction to enforce the agreement is retained (meaning that the suit has *not* been dismissed with prejudice), is enforced just like any other contract."*Lynch, Inc. v. SamataMason Inc.,* 279 F.3d 487, 489 (7th Cir.2002) (emphasis in original) (citing *Kokkonen,* 511 U.S. at 380-81;*Jessup v. Luther,* 277 F.3d 926, 929 (7th Cir.2002)).

**\*3** The parties' March 3, 2005 settlement agreement required that the order dismissing the action shall state that this court retains jurisdiction. (Dkt. No. 36-2 at pg. 10). This court's March 15, 2005 agreed order explicitly noted that the court was retaining jurisdiction for the purposes of enforcing the terms of the settlement agreement through March 30, 2006. (Dkt. No. 23 at ¶ 2). This court has subject matter jurisdiction to consider Cruz's pending motion alleging that Globe breached the settlement agreement .[FN1]

> FN1. This court also entered an accompanying minute order with the agreed order on March 15, 2005. The minute order stated, "Enter agreed order of dismissal with prejudice, and each party shall bear its own attorney's fees and costs. Civil case dismissed."(Dkt. No. 22). Despite the minute order's characterization of the agreed order as being a dismissal with prejudice resulting in the dismissal of the case, the language of the March 15, 2005 agreed order explicitly stated that the court was retaining jurisdiction through March 30, 2006 for the purpose of enforcing the terms of settlement agreement. (Dkt. No. 23).*See Ford v. Neese,* 119 F.3d 560, 562 (7th Cir.1997) (a district court's intention to retain jurisdiction was sufficient to retain jurisdiction despite any issues raised by the specific terminology used by the court); *compare Hill v. Baxter Healthcare Corp.,* 405 F.3d 572, 576 (7th Cir.2005) (a court fails to retain jurisdiction to enforce a settlement agreement when the judgment

does not explicitly incorporate the terms of the settlement into the judgment or the court fails to reserve authority to enforce the settlement).

*B. Globe's Breach of the Settlement Agreement*

Although Globe failed to complete the project until October 27, 2005, Globe argues that it did not breach the settlement agreement. Globe argues that the original May 30th deadline was extended to June 30th by consent of the parties and again extended to October 4th and October 27th by court order.

As contracts, "[i]ssues regarding the formation, construction, and enforcement of settlement agreements are governed by state contract law."*Sims-Madison v. Inland Paperboard and Packaging, Inc.,* 379 F.3d 445, 448 (7th Cir.2004) (citing *Pohl v. United Airlines, Inc.,* 213 F.3d 336, 338 (7th Cir.2000)). The settlement agreement states that it shall be "interpreted, enforced and governed under Illinois law."(Dkt. No. 36-2 at ¶ 14).

The settlement agreement required Globe to construct the ramp and lift by May 30, 2005. (*Id.* at ¶ 1). Globe was required to notify Cruz's attorneys in writing "if Globe is unable to meet the [May 30, 2005] deadline due to issues beyond its control such as weather, the unavailability of a contractor, city permitting, or the unavailability of necessary parts or supplies."(*Id.* at ¶ 4). Globe's notification did not automatically extend the deadline, but instead the parties were to attempt to agree on an extension and the parties were allowed to seek this court's assistance in resolving any issues related to any needed extensions. The settlement agreement is open ended in its discussion of extensions and does not contain a final date from which no additional extension would be allowed.

"In Illinois, where a contract does not specify a time for performance of a particular obligation, a 'reasonable time' is implied."*Nelson v. Sotheby's Inc.,* 128 F.Supp.2d 1172, 1176 (N.D.Ill.2001) (citing *Clay v. Harris,* 228 Ill.App.3d 475, 170

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3455846 (N.D.Ill.)

Ill.Dec. 474, 592 N.E.2d 1154, 1158 (Ill.App.Ct.1992)).“A reasonable time [is] such time as is necessary to do conveniently what the contract requires.”*Wilmette Parterns v. Hamel,* 230 Ill.App.3d 248, 171 Ill.Dec. 657, 594 N.E.2d 1177, 1184 (Ill.App.Ct.1992) (citing *Yale Dev. Co. v. Aurora Pizza Hut, Inc.,* 95 Ill.App.3d 523, 51 Ill.Dec. 409, 420 N.E.2d 823 (Ill.App.Ct.1981)).“What constitutes a reasonable time is determined by all of the conditions and circumstances surrounding the contract and the performance thereof.”*Grand Nat'l Bank v. Vill. of Round Lake Beach,* No. 96 C 2790, 1997 WL 12796, at *7 (N.D.Ill. Jan.10, 1997) (citing *U.A.W. v. Randall Div. of Textron, Inc.,* 5 F.3d 224 (7th Cir.1993); *Wilmette Parterns,* 171 Ill.Dec. 657, 594 N.E.2d at 1184).

*4 The agreement set an initial deadline of May 30, 2005, one and one-half months after the court's dismissal order, for the completion of the project. Although the parties agreed to an initial extension, it is unreasonable to conclude that Cruz willingly consented to an extension of almost five more months through October 27, 2005. Cruz wanted the ramp and lift completed as soon as possible because her alternative route through the basement was both dangerous and inconvenient. Cruz had hoped that the project would take the agreed upon one and one-half months to complete but it ultimately took seven months. Globe's failure to complete the project was partially due to Globe's negligence in planning for the project and following through with its contractors. Globe delay is unreasonable, it has breached the agreement and therefore this court turns to a consideration of what is the appropriate compensation for Cruz.

*C. Appropriate Compensation for Globe's Breach*

*1. Compensatory Damages for Cruz*

Cruz seeks $8,000.00 in compensatory damages to compensate her for the alleged pain, suffering and inconvenience she experienced through Globe's breach of the settlement agreement. Globe argues that Cruz should receive nothing because her injuries are only emotional distress and Illinois law does not ordinarily allow emotional distress damages for breach of contract injuries.

“The purpose of compensatory tort damages is to compensate; it is not the purpose of such damages to punish defendants or bestow a windfall upon plaintiffs.”*Arthur v. Catour,* 216 Ill.2d 72, 295 Ill.Dec. 641, 833 N.E.2d 847, 856 (Ill.2005).“When seeking damages, the plaintiff must establish damages were sustained *and* there was a reasonable basis for calculation of the damages. Damages cannot be based on conjecture or speculation.”*Decatur Imaging Center v. Ames,* 237 Ill.App.3d 959, 181 Ill.Dec. 724, 608 N.E.2d 1198, 1202 (Ill.App.Ct.1992) (emphasis in original) (citing *Keno & Sons Construction Co. v. La Salle Nat'l Bank,* 214 Ill.App.3d 310, 158 Ill.Dec. 357, 574 N.E.2d 151, 153 (Ill.App.Ct.1991); *Wehmeier v. UNR Indus., Inc.,* 213 Ill.App.3d 6, 157 Ill.Dec. 251, 572 N.E.2d 320, 339 (Ill.App.Ct.1991)).

Globe's breach resulted in Cruz taking a more dangerous route into her building through the basement. This alternative route was not always available when the basement entrance was locked or the basement elevator was out of order and when this occurred Cruz was forced to call the Chicago Fire Department or seek other residents to assist her up the main steps. (Dkt. No. 36 at pg. 10). Cruz's counsels have asserted in the memorandum filed in support of Cruz's recovery of compensatory damages that “these circumstances are not minor, infrequent inconveniences; they caused Cruz great stress in her daily living and prevent[ed] her from enjoying her residence to the same extent afforded those in her building without disabilities.”(*Id.* at pg. 10-11).

Globe is correct that Cruz cannot recover for emotional damages caused by Globe's breach of contract unless Globe has committed an independent tort with malice, wantonness or oppression. *See Park v. Wells Fargo Home Mortgage, Inc.,* 398 F.3d 937, 940-42 (7th Cir.2005) (citing Illinois

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3455846 (N.D.Ill.)

law). Cruz, however, should receive compensation for her non-emotional damages in terms of the inconvenience resulting from the need to use the basement route and her need to wait for the Chicago Fire Department or others to take her up the front stairs when the basement route was unavailable.

**\*5** Cruz does not explain how she arrives at the $8,000 figure or how that figure is reasonable. The court concludes that a compensation award to Cruz of $300 is reasonable. The court arrives at the $300 figure based on the representations made by counsel in open court during the October 27th status hearing that Cruz's rent is approximately $300 since she lives in a government subsidized building. The first deadline for completion of the project was May 30, 2005, one and one-half months after the settlement agreement was enacted by the court. Even considering the possibility of reasonable extensions, Cruz was being denied the benefit of her bargain under the settlement agreement by July 31, 2005. It took approximately three months until October 27, 2005 for her to receive the benefit of her bargain under the settlement agreement. The $300 amount is reimbursement to Cruz of the portion of the rent for the three month period of August, September and October 2005 when Cruz was denied the appropriate and reasonable access that she had paid for in her rent and had been promised to her by Globe in the settlement agreement. The $300 should be paid to Cruz by noon on December 23, 2005.

## 2. Attorneys' Fees and Costs

Cruz seeks $14,139.54 in attorneys' fees and costs incurred by her attorneys during their efforts to enforce the settlement agreement. Globe counters that Cruz is not entitled to any attorneys' fees and costs because she not a prevailing party and it argues alternatively that Cruz's requested amount is unreasonable.

### a. Prevailing Party Status

Paragraph Nine of the settlement agreement states that "in the event of litigation claiming breach of this Agreement, attorneys' fees incurred in connection with such litigation shall be recoverable by the prevailing party to the same extent allowed under 29 U.S.C. § 794a."(Dkt. No. 36 at ¶ 9). The parties also agreed that "each party shall bear its own attorneys' fees, except as stated in paragraph nine" of the agreement. (*Id.* at ¶ 12).

Title 29, United States Code, Section 794a(b), the section incorporated by the parties' into their agreement, states that "the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee."29 U.S.C. § 794a(b).Section 794a(b) is patterned on the language contained in 42 U.S.C. § 1988 and therefore this court shall turn to the Seventh Circuit's civil rights cases defining the term "prevailing party." *Jones v. Illinois Dep't of Rehab. Serv.,* 689 F.2d 724, 730 n. 8 (7th Cir.1982).

"To be a considered a prevailing party, one must have 'prevailed on the merits of at least some of his claims.... Thus, the [Supreme Court] has held that a litigant is a prevailing party when he has obtained a judgment on the merits, a settlement agreement enforced through a consent decree or some other judicially sanctioned change in the legal relationship of the parties."*Dupuy v. Samuels,* 423 F.3d 714, 719 (7th Cir.2005) (citing *Buckhannon Bd. of Care Home, Inc. v. West Virginia Dep't of Health and Human Res.,* 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Palmetto Properties, Inc. v. County of DuPage,* 375 F.3d 542, 548 (7th Cir.2004)).

**\*6** Cruz argues that entry of the settlement agreement resolving the original lawsuit is sufficient to vest her with prevailing party status for her pending attorneys' fee claim. The Seventh Circuit in *T.D. v. LaGrange School Dist. No. 102,* held that "some settlement agreements, even though not explicitly labeled as a 'consent decree' may confer

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3455846 (N.D.Ill.)

'prevailing party' status, if they are sufficiently analogous to a consent decree."349 F.3d 469, 478 (7th Cir.2003) (citing *Smyth ex re. Smyth v. Rivero,* 282 F.3d 268, 281 (4th Cir.2002))."A settlement short of a consent decree may qualify if, for instance, the terms of the settlement were incorporated into the dismissal order and the order was signed by the court rather than the parties, or the order provided that the court would retain jurisdiction to enforce the terms of the settlement. *Petersen v. Gibson,* 372 F.3d 862, 866-87 (7th Cir.2004) (citing *T.D.,* 349 F.3d at 478-78;*Smalbein v. City of Dayton Beach,* 353 F.3d 901, 905 (11th Cir.2003); *Roberson v. Giuliani,* 346 F.3d 75, 82-83 (2d Cir.2003)); *see also, T.D.,* 349 F.3d at 478-79 (quoting *John T. ex rel. Paul T. v. Delaware County Intermediate Unit,* 318 F.3d 545, 558 (3d Cir.2003) ("A stipulated settlement could confer prevailing party status where it (1) contained mandatory language, (2) was entitled 'Order,' (3) bore the signature of the District Court judge, not the parties' counsel, and (4) provided for judicial enforcement.").

The settlement agreement entered on March 15 2005 met these four requirements and provides Cruz prevailing party status. However, the settlement agreement waives attorneys' fees related to the underlying claim (Dkt. No. 36 at ¶ 12), and only reserves the right to receive attorneys fees for a later enforcement action if the settlement agreement was breached. The question, therefore, is how far does Cruz's prevailing party status extend, specifically, does her prevailing party status earned in the settlement of the underlying claim also extend to her present claim for attorneys' fees?

This court can mostly avoid this issue in that it is awarding Cruz $300 for her compensation claim for the inconvenience she suffered resulting from Globe's unreasonable breach of the agreement and because she prevailed in obtaining the relief she sought of having the ramp and lift installed. She is a prevailing party and she is entitled to some level of attorneys' fees in the enforcement action.

This court does, however, need to decide the issue of Cruz's status as a prevailing party in respect to the original underlying claim because this will impact the court's determination of what are reasonable attorneys' fees. Cruz seeks attorneys' fees beginning in mid May 2005. As this court previously determined above, it is not reasonable to say that Globe breached the settlement agreement until the end of July 2005. If Cruz only obtains her prevailing party status from this present decision holding that Globe has breached the settlement agreement then Cruz is only entitled to attorneys fees starting in the beginning of August 2005.

*7 Cruz cites to *King v. Illinois State Bd. of Elections,* 410 F.3d 404 (7th Cir.2005), and *Alliance to End Repression v. City of Chicago,* 356 F.3d 767 (7th Cir.2004), to support her view that she is entitled to attorneys' fees going back to May 2005. The Seventh Circuit in *King* held that "our cases make clear that, absent some authorization in the initial judgment itself to monitor compliance, parties who seek to protect a previous victory still must prevail in the action or proceeding brought to protect the victory in order to be entitled to attorneys' fees."410 F.3d at 420.

The Seventh Circuit in *Alliance* noted that "attorneys' fees incurred in efforts to monitor compliance with the consent decree are said or assumed to be compensable even if no postjudgment order results from the efforts.... [This is] best explained on a deterrence rationale: careful monitoring reduces the likelihood that the create will be violated."356 F.3d at 770-71.

However, the situations discussed in *King* and *Alliance* are somewhat different from the situation in this case. Cruz waived her rights to attorneys' fees for the underlying claim. Thus, there was no right to attorneys' fees to monitor the situation because the parties were progressing under a settlement agreement, not a consent decree. A settlement agreement may be analogized to a consent decree in turns of determining whether Cruz obtains prevailing party status, but that does not mean that this en-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3455846 (N.D.Ill.)

titled Cruz to attorneys' fees for monitoring compliance with the settlement. The parties in this agreement explicitly waived any right to attorneys' fees with the exception of attorneys' fees related to Globe's breach of the agreement.

Consequently, Cruz prevailed in this enforcement action by receiving $300 in compensation for the breach of settlement agreement. The settlement agreement did not specifically authorize attorneys' fees to compensate for any type of monitoring by her attorneys that would be equivalent to monitoring the compliance with a consent decree or judicial authorization of monitoring of compliance with the original settlement. The agreement only authorized attorneys fees "in the event of litigation claiming breach of [the] agreement."(Dkt. No. 36 at ¶ 9). She has a right to receive attorneys fees as a prevailing party incurred as of August 1, 2005.

### b. Reasonableness of Requested Attorneys Fees and Costs

This court must also review the attorneys' fees requested by Cruz to determine that they are reasonable. "Attorneys' fees are assigned a 'lodestar' amount, [a figure which is] calculated by multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate."*Mathur v. Board of Tr. of Southern Illinois Univ.,* 317 F.3d 738, 742 (7th Cir.2003) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Dunning v. Simmons Airlines. Inc.,* 62 F.3d 863, 872 (7th Cir.1995))."The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed."*Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 550 (7th Cir.1999). The initial lodestar figure may be further adjusted by the court based on a number of factors.FN2*Garcia v. City of Chicago,* No. 01 C 8945, 2003 WL 22175620, at *1 (N.D.Ill. Sept.19, 2003) (citing *Hensley,* 461 U.S. at 434)).

FN2. These factors may include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Mather,* 317 F.3d at 742 n. 1.

**\*8** "The determination of an attorney's 'reasonable hourly rate' is to be based on the 'market rate' for the services rendered. The burden of providing the 'market rate' is on the fee applicant, however, once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded."*Spegon,* 175 F.3d at 554-55 (internal citations omitted).

" 'The reasonable hourly rate (or 'market rate') for lodestar purpose is 'the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question.' ' *Garcia,* No. 01 C 8945, 2003 WL 22175620, at *2 (quoting *Harper v. City of Chicago Heights,* 223 F.3d 593, 604 (7th Cir.2000)). "Evidence of 'market rate' includes rates other attorneys in the area charge paying clients for similar work, fee awards from prior cases, the attorney's credentials, and the attorney's actual billing rate." *Id.* (citing *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205,* 90 F.3d 1307, 1311-13 (7th Cir.1996)). "In addition, an attorney's affidavit alone cannot establish ... her market rate; however, such affidavit 'in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiff's burden." ' *Id.* (quoting

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3455846 (N.D.Ill.)

Page 8

*Harper,* 223 F.3d at 604).

Cruz "may recover only those hours that [her] attorneys would bill in the private sector."*Garcia v. City of Chicago,* No. 01 C 8945, 2003 WL 22175620, at *3 (N.D.Ill. Sept.19, 2003) (citing *Hensley,* 461 U.S. at 434)). This court must exclude "hours that are excessive, redundant, otherwise unnecessary,"*Id.,* and a petition for fees must provide sufficient description of the type of work performed. *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1187 (7th Cir.1992)."A court should not require any more [level of detail or itemization in the plaintiff's billings] than the level of detail paying clients find satisfactory."*Garcia,* No. 01 C 8945, 2003 WL 22175620, at *3 (N.D.Ill. Sept.19, 2003) (citing *In the Matter of Synthroid Mktg. Litig.,* 264 F.3d 712, 722 (7th Cir.2001)).

The court has reviewed the Cruz's attorneys' documentation in support of her requested attorneys' fee award. Cruz has included copies of her attorneys' billings, affidavits in support of the reasonableness of their bill rate and information on their education and professional backgrounds. The requested amount, after excluding services performed before August 1, 2005 to properly reflect this court's decision on when Cruz became a prevailing party, is appropriate. This court awards Cruz $11,105.17 in attorneys' fees and $419.59 in costs.[FN3]

> FN3. The court calculated these figures in the following manner. Cruz requested $11,259 in attorneys fees for her attorney Jean Janes, $2,422.45 in attorneys fees for her attorney Max Lapertosa, and $458.09 in costs for a total request of $14,139.54. This court deducted $2,448 from the amount requested for Ms. Janes, $128.28 from the amount request for Mr. Lapertosa and $38.50 from the requested costs. These deductions represent the work performed and costs incurred before the court determined the date of August 1, 2005 as the date the defendant's delay constituted a breach of the settlement agreement.

*CONCLUSION*

For the reasons set forth above, Cruz's motion of November 4, 2005 seeking compensation, attorneys fees' and costs resulting from Globe's breach of the parties' settlement agreement (Dkt. No. 35), is granted. Cruz is awarded $300 in compensation for Globe's unreasonable breach of the settlement agreement, $11,105.17 in attorneys' fees and $419.59 in costs. The $300 is to be paid to Cruz by noon on December 23, 2003. The attorneys' fees and costs are to be paid by January 13, 2006.

N.D.Ill.,2005.
Cruz v. Globe Realty Management Co.
Not Reported in F.Supp.2d, 2005 WL 3455846 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT I

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| AYANNA WALKER, | ) | |
| Plaintiff, | ) | Case No. 07C 6148 |
| vs. | ) | |
| | ) | Judge Milton I. Shadur |
| CALUMET CITY, ILLINOIS, | ) | Magistrate Judge Valdez |
| Defendant. | ) | |

## CITY'S RESPONSE TO PLAINTIFF'S MEMORANDUM AND LETTER TO COURT

The City of Calumet City ("City") opposes the relief sought in Walker's "Memorandum in Support of Entry of Order that Grants Plaintiff Permanent Relief." This Court should also decline the proposal set forth in Attorney Nash's letter communication to this Court on May 13, 2008. In support of this Response the City states:

1.      With respect to the Memorandum, this Court should not grant the relief proposed. The thrust of this Court's ruling is that the <u>independent intervening events</u> of (1) Walker submitting herself to an annual rental inspection; (2) Walker completing all necessary repair work on the Subject Property; (3) Walker obtaining a Certificate of Compliance; and (4) Walker obtaining a certification as to legal nonconforming use moots her challenge to the City's Amended Point of Sale Inspection Ordinance. The efforts of plaintiff's attorney had nothing to do with these independent intervening events.

2.      This Court's dismissal order had nothing to do with the granting of any sort of injunctive relief. Walker's proposal for an entry of an injunctive order is nothing more than a ploy by Walker in an effort to open the door for Section 1988 attorneys fees.

3.      The mooting of Walker's claim by virtue of these independent intervening events means there is no case or controversy between the parties. Absent a case or controversy, this Court has no jurisdiction to enter any sort of after-the-fact order granting plaintiff any relief. The

same considerations that caused this Court to dismiss this action should cause this Court to deny plaintiff's strategic fee request.

4.     As to the letter request that the City not enforce the amended Point of Sale Ordinance pending ruling by Judge Coar, the City respectfully submits that this is no longer a matter within this Court's purview. The appropriate way of addressing this matter is, first, by way of a request to the other side (a practice not yet evidenced by counsel in the two years this matter has been proceeding), then by way of an appropriate motion before a court having jurisdiction of the subject matter and the parties.

Accordingly, both the request in the Memorandum and the request in the letter should be denied.

City of Calumet City

By:____/s/ John B. Murphey____

JOHN B. MURPHEY/ARDC #1992635
Rosenthal, Murphey & Coblentz
30 North LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel. (312) 541-1070
Fax (312) 541-9191

MARK STERK/ARDC #3125540
Odelson & Sterk, Ltd.
3318 West 95th Street
Evergreen Park, Illinois 60805
Tel. (708) 424-5678
Fax (708) 424-5829

G:\rmcj\Calumet City\Walker\City's Respone to Mem & letter to court.doc

2

# EXHIBIT J

### Rates, Hours, And Total Fees By Attorney, Law Clerk, And Paralegal

| Lawyer | 2007 Rate | 2007 Hours | 2008 Rate | 2008 Hours | Total Fees |
|---|---|---|---|---|---|
| P. Nash | $475 | 59.2 | $500 | 88.9 | $72,570.00 |
| P. Stahl | $690 | 29.1 | $725 | 17.1 | $32,476.50 |
| M. Hanel[1] | $280 | 52.5 | $305 | 50.6 | $30,133.00 |
| D. Bunnin | $345 | 5.3 | $345 | 14.7 | $6,900.00 |
| M. Semisch | ----- | ----- | $305 | 6.2 | $1,891.00 |
| **Law Clerk** | | | | | |
| J. Donoho | ----- | ----- | $200 | 41.3 | $8,260.00 |
| **Paralegals** | | | | | |
| J. Swisher | $195 | 21.3 | $195 | 15.0 | $7,078.50 |
| T. Peverly | ----- | ----- | $195 | 5.9 | $1,150.50 |
| | | Total Amount Requested[2] | | | $160,459.50 |

---

[1]    Ms. Hanel left Grippo & Elden LLC on May 8, 2008, at which time Mr. Semisch began assisting on Grippo & Elden LLC's representation of Walker.

[2]    The Total Amount Requested includes the 13% discount that Grippo & Elden LLC provides to the Realtor Associations.

551104.1

# EXHIBIT K

## DETAILS AND WORK PERFORMED BY WALKER'S COUNSEL

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L250 | PTN | 20070913 | 3.40 | 1,615.00 | BEGIN DRAFTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT, DRAFT AMENDED COMPLAINT. |
| L250 | PTN | 20070914 | 4.00 | 1,900.00 | CONTINUE DRAFTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND CONTINUE DRAFTING AMENDED COMPLAINT, INCLUDING CONFERENCE WITH P. STAHL. |
| L210 | PTN | 20070915 | 0.50 | 237.50 | CONTINUE EDITING AMENDED COMPLAINT, RELATED MOTION FOR LEAVE, EMAIL WITH TEAM REGARDING SAME. |
| L210 | PTN | 20070917 | 3.90 | 1,852.50 | CONTINUE EDITING AMENDED COMPLAINT, MOTION FOR LEAVE TO FILE IT AND PREPARE SAME FOR FILING, INCLUDING CONFERENCES AND EMAILS WITH P. STAHL, CLIENT REGARDING SAME, EMAIL TO OPPOSING COUNSEL REGARDING SAME. |
| L120 | PTN | 20070917 | 1.10 | 522.50 | PREPARE FOR AND PARTICIPATE IN INTERVIEW OF A. WALKER. |
| L120 | PTN | 20070919 | 0.20 | 95.00 | CONFERENCE WITH P. STAHL REGARDING STRATEGY FOR MONDAY'S HEARING BEFORE JUDGE SHADUR. |
| L120 | PTN | 20070919 | 0.40 | 190.00 | ANALYZE TRANSCRIPTS OF PRIOR PROCEEDINGS WHERE STANDING WAS DISCUSSED, CONSIDER STRATEGY FOR HEARING ON MOTION FOR LEAVE TO FILE AMENDED COMPLAINT. |
| L190 | PTN | 20070920 | 0.80 | 380.00 | EDIT RETENTION LETTER WITH A. WALKER, EMAIL WITH TEAM REGARDING SAME. |
| L120 | PTN | 20070920 | 1.10 | 522.50 | CONTINUE PREPARATION FOR HEARING BEFORE JUDGE SHADUR REGARDING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT, INCLUDING EXTENSIVE EMAILS AND CONFERENCES WITH TEAM REGARDING SAME, JUDGE SHADUR'S PRIOR COMMENTS ON STANDING. |
| L120 | PTN | 20070921 | 0.90 | 427.50 | CONFERENCES AND EMAILS WITH P. STAHL, D. BUNNIN, CLIENT REGARDING STRATEGY FOR HEARING ON MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND CONTINUE PREPARING FOR STATUS CONFERENCE. |
| L250 | PTN | 20070924 | 0.90 | 427.50 | PREPARE FOR HEARING ON MOTION FOR LEAVE TO FILE AMENDED COMPLAINT , FOLLOW-UP CONFERENCES WITH P. STAHL. |
| L120 | PTN | 20070924 | 0.10 | 47.50 | REVIEW MINUTE ORDER ENTERED BY JUDGE SHADUR. |
| L210 | PTN | 20070924 | 0.30 | 142.50 | PREPARE AMENDED COMPLAINT FOR FILING. |
| L190 | PTN | 20070927 | 0.30 | 142.50 | EDIT WALKER RETENTION LETTER, EMAIL WITH P. STAHL REGARDING SAME. |
| L120 | PTN | 20070928 | 0.10 | 47.50 | REVIEW EMAILS REGARDING WALKER RETENTION LETTER. |
| L120 | PTN | 20071001 | 0.10 | 47.50 | TELEPHONE CONFERENCE WITH A. WALKER REGARDING STATUS, NEED FOR ADDITIONAL DOCUMENTS. |
| L120 | PTN | 20071004 | 0.50 | 237.50 | CONFERENCE WITH TEAM REGARDING STATUS, STRATEGY, INCLUDING PREPARING WALKER'S MOTION FOR INJUNCTIVE RELIEF. |
| L120 | PTN | 20071004 | 0.70 | 332.50 | TELEPHONE CONFERENCE AND MEETING WITH A. WALKER REGARDING RETENTION AGREEMENT, RELATED MATTERS. |
| L240 | PTN | 20071008 | 0.40 | 190.00 | REVIEW CAL CITY'S MOTION TO DISMISS, CONSIDER STRATEGY. |
| L120 | PTN | 20071009 | 0.30 | 142.50 | CONFERENCES WITH P. STAHL, M. HANEL REGARDING STRATEGY FOR RESPONDING TO CAL CITY'S MOTION TO DISMISS. |
| L120 | PTN | 20071011 | 0.20 | 95.00 | PREPARE FOR HEARING. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L120 | PTN | 20071011 | 0.30 | 142.50 | CONFERENCE WITH P. STAHL REGARDING STRATEGY FOR HEARING ON MOTION TO DISMISS. |
| L120 | PTN | 20071012 | 0.30 | 142.50 | CONFERENCE WITH M. HANEL REGARDING STRATEGY FOR RESPONDING TO MOTION TO DISMISS. |
| L120 | PTN | 20071012 | 0.10 | 47.50 | REVIEW MINUTE ORDER ENTERED BY JUDGE SHADUR. |
| L250 | PTN | 20071012 | 1.10 | 522.50 | PREPARE FOR AND ATTEND HEARING ON MOTION TO DISMISS, FOLLOW-UP CONFERENCE WITH TEAM, T. JOSEPH REGARDING SAME. |
| L220 | PTN | 20071018 | 1.90 | 902.50 | BEGIN TO DRAFT WALKER'S MOTION FOR INJUNCTIVE RELIEF. |
| L120 | PTN | 20071018 | 0.60 | 285.00 | PREPARE FOR AND ATTEND TEAM MEETING REGARDING STRATEGY FOR NEXT STEPS IN DISTRICT COURT. |
| L220 | PTN | 20071019 | 2.20 | 1,045.00 | CONTINUE DRAFTING AND EDITING WALKER'S MOTION FOR INJUNCTIVE RELIEF. |
| L120 | PTN | 20071022 | 0.90 | 427.50 | CONTINUE WORKING ON MOTION FOR PRELIMINARY INJUNCTION, RELATED PLEADINGS. |
| L120 | PTN | 20071022 | 0.30 | 142.50 | EMAIL WITH TEAM, CLIENT REGARDING STATUS. |
| L120 | PTN | 20071023 | 0.10 | 47.50 | EMAILS WITH T. JOSEPH REGARDING STATUS, STRATEGY. |
| L220 | PTN | 20071023 | 1.60 | 760.00 | CONTINUE EDITING WALKER'S MOTION FOR INJUNCTIVE RELIEF. |
| L240 | PTN | 20071024 | 0.10 | 47.50 | EMAIL WITH J. MURPHEY REGARDING SAME. |
| L220 | PTN | 20071024 | 0.60 | 285.00 | EDIT MOTION FOR PRELIMINARY INJUNCTION, EMAIL WITH TEAM REGARDING SAME. |
| L120 | PTN | 20071024 | 0.10 | 47.50 | EMAIL WITH CLIENT REGARDING STRATEGY FOR GOING FORWARD. |
| L120 | PTN | 20071028 | 0.10 | 47.50 | REVIEW EMAILS REGARDING STATUS. |
| L120 | PTN | 20071029 | 0.10 | 47.50 | EMAIL WITH TEAM, CLIENT REGARDING FACTUAL INVESTIGATION REGARDING CURRENT LITIGATION, RELATED MATTERS. |
| L120 | PTN | 20071030 | 0.60 | 285.00 | BEGIN PREPARING NEW COMPLAINT FOR FILING, MOTION FOR TRO, EMAIL WITH TEAM REGARDING SAME. |
| L120 | PTN | 20071030 | 0.10 | 47.50 | EMAIL WITH T. JOSEPH REGARDING STATUS. |
| L120 | PTN | 20071030 | 0.90 | 427.50 | MULTIPLE CONFERENCES AND EMAILS WITH M. HANEL, TEAM REGARDING STATUS, NEED TO MOVE QUICKLY BASED ON SEVENTH CIRCUIT'S DECISION ON PETITION FOR REHEARING AND MOTION TO AMEND JUDGMENT, RULES REQUIRING ASSIGNMENT OF NEW CASE TO JUDGE SHADUR, RELATED ISSUES. |
| L210 | PTN | 20071031 | 5.20 | 2,470.00 | EDIT NEW COMPLAINT, MOTION FOR TRO, RELATED PAPERS, PREPARE ALL FOR FILING, INCLUDING EMAILS AND CONFERENCES WITH TEAM, CLIENT REGARDING SAME, UPDATE RESEARCH REGARDING SAME. |
| L120 | PTN | 20071101 | 0.40 | 190.00 | PREPARE FOR HEARING ON TRO, INCLUDING CONFERENCES AND EMAIL WITH TEAM. |
| L120 | PTN | 20071102 | 0.90 | 427.50 | EMAILS AND CONFERENCES WITH TEAM REGARDING FURTHER INVESTIGATION TO SUPPORT CLAIM FOR INJUNCTIVE RELIEF. |
| L220 | PTN | 20071102 | 1.70 | 807.50 | FOLLOW-UP CONFERENCES WITH TEAM, CLIENT REGARDING MOTION FOR TRO IN WALKER LITIGATION. |
| L120 | PTN | 20071105 | 1.20 | 570.00 | CONTINUE ANALYZING STRATEGY, BEGIN DRAFTING AMENDED COMPLAINT, INCLUDING EMAILS AND CONFERENCES WITH TEAM REGARDING SAME, STATUTE OF LIMITATION ISSUES. |
| L120 | PTN | 20071106 | 1.20 | 570.00 | PREPARE FOR AND PARTICIPATE IN CALL WITH P. KREITER, T. JOSEPH. S. BOCHENEK, R. HOLMEN, TEAM REGARDING STATUS, STRATEGY, FOLLOW-UP EMAILS AND CONFERENCES WITH TEAM. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|---|---|---|---|---|---|
| L120 | PTN | 20071107 | 0.30 | 142.50 | EMAIL AND CONFERENCES WITH TEAM, T. JOSEPH REGARDING STATUS, STRATEGY. |
| L220 | PTN | 20071108 | 1.00 | 475.00 | BEGIN REVIEWING CAL CITY'S RESPONSE TO MOTION FOR TRO, CONSIDER STRATEGY, CONFER WITH P. STAHL, T. JOSEPH REGARDING SAME. |
| L120 | PTN | 20071109 | 0.80 | 380.00 | MULTIPLE EMAILS AND CONFERENCES WITH TEAM, T. JOSEPH REGARDING STRATEGY FOR AMENDING COMPLAINT, PRELIMINARY INJUNCTION HEARING. |
| L220 | PTN | 20071112 | 2.90 | 1,377.50 | PREPARE FOR HEARING ON MOTION, INCLUDING OUTLINING ARGUMENTS, REVIEWING CASES CITED BY CAL CITY, CONFERENCE WITH P. STAHL. |
| L210 | PTN | 20071112 | 1.90 | 902.50 | EDIT CLASS ACTION COMPLAINT AND RELATED PAPERS, INCLUDING NUMEROUS EMAILS AND CONFERENCES WITH TEAM, T. JOSEPH. |
| L220 | PTN | 20071113 | 3.10 | 1,472.50 | PREPARE FOR HEARING ON MOTION FOR TRO, FOLLOW-UP CONFERENCES WITH TEAM, CLIENT. |
| L120 | PTN | 20071114 | 1.60 | 760.00 | REVIEW HISTORY OF LITIGATION, TRANSCRIPTS FROM PRIOR HEARINGS TO ASSESS CAL CITY'S PRIOR DELAYS IN RESPONSE TO JUDGE SHADUR'S SUGGESTION TO AMEND ORDINANCE, CONSIDER STRATEGY FOR HEARING ON NOVEMBER 21 TO DISCUSS CAL CITY'S WILLINGNESS TO AMEND, MULTIPLE EMAILS AND CONFERENCES WITH TEAM. |
| L120 | PTN | 20071114 | 0.20 | 95.00 | EMAILS WITH TEAM, CLIENT REGARDING RESULTS BEFORE JUDGE SHADUR, CONSIDER STRATEGY. |
| L120 | PTN | 20071119 | 0.90 | 427.50 | PREPARE FOR HEARING ON REQUEST FOR INJUNCTIVE RELIEF, INCLUDING REVIEWING TIMELINE OF CAL CITY'S PAST DELAY, EMAIL AND CONFERENCE WITH TEAM REGARDING SAME. |
| L120 | PTN | 20071120 | 0.70 | 332.50 | PREPARE FOR STATUS HEARING INCLUDING EMAILS AND CONFERENCES WITH TEAM. |
| L120 | PTN | 20071121 | 0.40 | 190.00 | EMAILS AND CONFERENCES WITH TEAM, T. JOSEPH REGARDING RESULTS OF STATUS HEARING BEFORE JUDGE SHADUR, CONSIDER STRATEGY. |
| L120 | PTN | 20071126 | 0.20 | 95.00 | EMAIL AND CONFERENCES WITH TEAM REGARDING STATUS, STRATEGY. |
| L120 | PTN | 20071126 | 0.10 | 47.50 | REVIEW MINUTE ORDER ENTERED BY JUDGE SHADUR. |
| L120 | PTN | 20071129 | 0.10 | 47.50 | EMAIL AND CONFERENCE WITH TEAM, T. JOSEPH REGARDING STATUS. |
| L120 | PTN | 20071130 | 0.10 | 47.50 | TELEPHONE CONFERENCE WITH A. WALKER REGARDING STATUS OF LITIGATION. |
| L120 | PTN | 20071210 | 0.20 | 95.00 | EMAIL WITH T. JOSEPH, TEAM REGARDING STATUS. |
| L120 | PTN | 20071217 | 0.30 | 142.50 | REVIEW MURPHEY'S PROPOSAL REGARDING LIMITING INSPECTIONS, CONSIDER STRATEGY. |
| L120 | PTN | 20071218 | 0.30 | 142.50 | BEGIN TO REVIEW TRANSCRIPT FROM LATEST STATUS HEARING, CONSIDER STRATEGY. |
| L120 | PTN | 20071218 | 0.10 | 47.50 | EMAIL WITH TEAM REGARDING STATUS. |
| L120 | PTN | 20071219 | 0.20 | 95.00 | CONFERENCE WITH P. STAHL REGARDING STATUS, STRATEGY IN LIGHT OF MURPHEY'S STATEMENT REGARDING WILLINGNESS TO LIMIT SCOPE OF SEARCHES. |
| L120 | PTN | 20071219 | 0.20 | 95.00 | CONTINUE REVIEWING TRANSCRIPT FROM LAST STATUS HEARING, CONSIDER STRATEGY. |
| L120 | PTN | 20071227 | 0.80 | 380.00 | DRAFT AND EDIT RESPONSE TO MURPHEY PROPOSAL REGARDING PROPOSED COMPROMISE |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|------------|------|-------|----------|-----------|
| L120 | PTN | 20080102 | 0.50 | 250.00 | EDIT LETTER TO JOHN MURPHEY REGARDING PROPOSED COMPROMISE ON ORDINANCE AMENDMENT, DISCOVERY STATUS, EMAIL WITH P. STAHL REGARDING SAME. |
| L320 | PTN | 20080103 | 0.50 | 250.00 | BEGIN REVIEWING DOCUMENTS PRODUCED BY CAL CITY REGARDING WALKER'S PROPERTY. |
| L120 | PTN | 20080103 | 0.30 | 150.00 | TELEPHONE CONFERENCE AND EMAIL WITH J. MURPHEY REGARDING PROPOSED AMENDMENT TO POS ORDINANCE, FINAL EDITS TO LETTER REGARDING SAME. |
| L120 | PTN | 20080105 | 0.10 | 50.00 | DRAFT EMAIL TO P. STAHL REGARDING STATUS, AGENDA FOR MEETING. |
| L120 | PTN | 20080107 | 1.00 | 500.00 | PREPARE FOR AND ATTEND TEAM STRATEGY MEETING. |
| L120 | PTN | 20080108 | 0.40 | 200.00 | EMAIL AND CONFERENCE WITH T. JOSEPH, P. KREITER REGARDING STATUS. |
| L120 | PTN | 20080115 | 1.10 | 550.00 | REVIEW CAL CITY LETTER TO COURT INCLUDING PROPOSED AMENDED ORDINANCE SUPPORTING CASE LAW, CONSIDER STRATEGY, EMAIL AND TELEPHONE CONFERENCE WITH T. JOSEPH AND G&E TEAM REGARDING SAME. |
| L120 | PTN | 20080115 | 0.10 | 50.00 | EMAIL WITH T. JOSEPH REGARDING STATUS. |
| L120 | PTN | 20080116 | 0.20 | 100.00 | EMAIL TO S. BOCHENEK, R. HOLMEN REGARDING RECENT DEVELOPMENTS. |
| L120 | PTN | 20080116 | 0.10 | 50.00 | REVIEW MINUTE ORDER ENTERED BY JUDGE SHADUR. |
| L230 | PTN | 20080116 | 1.80 | 900.00 | PREPARE FOR AND ATTEND STATUS HEARING, FOLLOW-UP CONFERENCE AND EMAIL WITH T. JOSEPH AND TEAM. |
| L120 | PTN | 20080127 | 0.20 | 100.00 | REVIEW STATUS, EDIT AGENDA FOR TEAM MEETING. |
| L120 | PTN | 20080127 | 0.30 | 150.00 | DRAFT AGENDA FOR TEAM MEETING. |
| L120 | PTN | 20080128 | 0.10 | 50.00 | TELEPHONE CONFERENCE WITH T. JOSEPH REGARDING CAL CITY'S OBSTRUCTION OF SALES. |
| L120 | PTN | 20080128 | 0.20 | 100.00 | EMAIL WITH TEAM REGARDING STATUS, STRATEGY. |
| L120 | PTN | 20080129 | 0.20 | 100.00 | CONFERENCE WITH TEAM AND STRATEGY FOR DEALING WITH CAL CITY'S OBSTRUCTION OF SALES DUE TO FAILURE TO PAY WATER BILL. |
| L120 | PTN | 20080129 | 0.10 | 50.00 | EMAIL FROM T. JOSEPH REGARDING STATUS OF CAL CITY'S INTERFERENCE WITH CLOSINGS. |
| L120 | PTN | 20080131 | 0.20 | 100.00 | EMAIL TO M. HANEL REGARDING FILING SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF BASED ON CAL CITY'S REFUSAL TO PERMIT CLOSINGS. |
| L120 | PTN | 20080204 | 0.20 | 100.00 | TELEPHONE CONFERENCE AND EMAIL WITH T. JOSEPH REGARDING SAME. |
| L120 | PTN | 20080204 | 0.30 | 150.00 | CONFERENCE WITH M. HANEL REGARDING MOTION FOR INJUNCTION BASED ON CAL CITY REFUSING TO ISSUE TRANSFER STAMPS WITHOUT PAYMENT OF WATER BILL. |
| L120 | PTN | 20080205 | 0.10 | 50.00 | EMAIL WITH TEAM REGARDING STATUS, STRATEGY FOR MOVING FOR INJUNCTIVE RELIEF. |
| L220 | PTN | 20080206 | 0.20 | 100.00 | EMAILS WITH T. JOSEPH, M. HANEL REGARDING INTERVIEW OF C. CARTER REGARDING RENEWED MOTION FOR INJUNCTIVE RELIEF. |
| L220 | PTN | 20080207 | 1.10 | 550.00 | EMAIL AND CONFERENCE WITH TEAM REGARDING CARTER INTERVIEW, REVIEWED MOTION FOR INJUNCTIVE RELIEF, EDIT CARTER DECLARATION, SUPPORTING PAPERS. |
| L120 | PTN | 20080208 | 0.30 | 150.00 | REVIEW EMAIL FROM T. JOSEPH REGARDING ADDITIONAL INTERFERENCE BY CAL CITY IN SALES OF LEGAL NON-CONFORMING PROPERTY, CONSIDER STRATEGY,FOLLOW UP WITH M. HANEL REGARDING SAME. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L220 | PTN | 20080208 | 1.40 | 700.00 | REVIEW AND EDIT RENEWED MOTION FOR INJUNCTIVE RELIEF, SUPPORTING PAPERS, EMAIL AND CONFERENCE WITH TEAM. |
| L120 | PTN | 20080211 | 0.70 | 350.00 | ANALYZE INFORMATION REGARDING SIBLEY PROPERTY, CAL CITY'S REFUSAL TO ISSUE A REBUILD LETTER, CONSIDER STRATEGY, MULTIPLE EMAILS AND CONFERENCES WITH M. HANEL REGARDING SAME. |
| L220 | PTN | 20080211 | 0.50 | 250.00 | FINAL EDITS TO RENEWED MOTION FOR INJUNCTIVE RELIEF, EMAILS AND CONFERENCES WITH TEAM REGARDING SAME. |
| L120 | PTN | 20080212 | 0.60 | 300.00 | EMAIL AND CONFERENCE WITH TEAM, T. JOSEPH REGARDING STATUS OF RENEWED MOTION FOR INJUNCTIVE RELIEF, EDIT CARTER DECLARATION. |
| L220 | PTN | 20080213 | 0.60 | 300.00 | PREPARE FOR HEARING ON RENEWED MOTION FOR INJUNCTIVE RELIEF, INCLUDING EMAILS AND CONFERENCES WITH TEAM. |
| L120 | PTN | 20080213 | 0.30 | 150.00 | EMAIL WITH CLIENT, S. BOCHENEK, R. HOLMEN REGARDING STATUS, STRATEGY FOR RENEWED MOTION FOR INJUNCTIVE RELIEF. |
| L120 | PTN | 20080214 | 0.30 | 150.00 | EMAILS AND CONFERENCES WITH TEAM REGARDING STRATEGY FOR RESOLUTION OF CASE ON MERITS. |
| L250 | PTN | 20080214 | 1.40 | 700.00 | DRAFT STATUS REPORT FOR JUDGE SHADUR IN ANTICIPATION OF NEXT WEEK'S STATUS HEARING, EMAIL AND CONFERENCES WITH TEAM REGARDING SAME. |
| L120 | PTN | 20080214 | 0.30 | 150.00 | EMAILS WITH T. JOSEPH REGARDING RESULTS OF HEARING, NEXT STEPS. |
| L220 | PTN | 20080214 | 1.30 | 650.00 | PREPARE FOR AND ATTEND HEARING ON RENEWED MOTION FOR INJUNCTIVE RELIEF. |
| L250 | PTN | 20080215 | 0.20 | 100.00 | REVIEW CAL CITY'S STATUS REPORT. |
| L250 | PTN | 20080215 | 0.70 | 350.00 | CONTINUE EDITING STATUS REPORT, INCLUDING CONFERENCES AND EMAILS WITH TEAM. |
| L120 | PTN | 20080215 | 0.60 | 300.00 | PREPARE FOR AND ATTEND TEAM STRATEGY MEETING. |
| L120 | PTN | 20080218 | 0.40 | 200.00 | PREPARE FOR STATUS HEARING, INCLUDING EMAIL WITH TEAM REGARDING SAME. |
| L210 | PTN | 20080219 | 2.70 | 1,350.00 | BEGIN DRAFTING AMENDED COMPLAINT, CONFERENCE AND EMAIL WITH M. HANEL REGARDING NEEDED RESEARCH, FOLLOW UP WITH CLIENT, OUTLINE STRATEGY FOR PRELIMINARY INJUNCTION MOTION. |
| L120 | PTN | 20080219 | 0.80 | 400.00 | ATTEND TEAM STRATEGY MEETING. |
| L120 | PTN | 20080219 | 0.10 | 50.00 | EMAIL WITH TEAM REGARDING RESULTS OF STATUS HEARING. |
| L120 | PTN | 20080220 | 0.40 | 200.00 | REVIEW RESEARCH MEMO REGARDING BILL OF ATTAINDER, CONSIDER STRATEGY. |
| L120 | PTN | 20080220 | 0.20 | 100.00 | EMAILS WITH T. JOSEPH REGARDING STATUS, STRATEGY. |
| L210 | PTN | 20080220 | 1.50 | 750.00 | CONTINUE EDITING AMENDED COMPLAINT, EMAIL WITH TEAM REGARDING SAME. |
| L120 | PTN | 20080220 | 0.10 | 50.00 | REVIEW MINUTE ORDER ENTERED BY JUDGE SHADUR, CONSIDER STRATEGY. |
| L120 | PTN | 20080221 | 0.30 | 150.00 | EMAIL WITH CLIENT REGARDING AMENDED COMPLAINT, STRATEGY FOR MOTION FOR PRELIMINARY INJUNCTION |
| L210 | PTN | 20080222 | 0.30 | 150.00 | CONTINUE EDITING AMENDED COMPLAINT, EMAIL TO S. BOCHENEK, R. HOLMEN REGARDING SAME. |
| L220 | PTN | 20080222 | 0.20 | 100.00 | DRAFT AND EDIT REVISED MOTION FOR INJUNCTIVE RELIEF, EMAIL WITH TEAM REGARDING SAME. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|---|---|---|---|---|---|
| L120 | PTN | 20080226 | 0.30 | 150.00 | EMAIL AND CONFERENCE WITH TEAM, T. JOSEPH REGARDING NUMBER OF CLOSINGS, COMMUNICATION WITH A. WALKER, CONSIDER IMPACT ON REVISED MOTION FOR INJUNCTIVE RELIEF |
| L220 | PTN | 20080227 | 1.00 | 500.00 | EDIT RENEWED MOTION FOR INJUNCTIVE RELIEF |
| L120 | PTN | 20080227 | 0.30 | 150.00 | EMAIL AND CONFERENCES WITH TEAM REGARDING STRATEGY FOR RENEWED MOTION FOR INJUNCTIVE RELIEF AMENDED COMPLAINT |
| L120 | PTN | 20080227 | 0.30 | 150.00 | ANALYZE APPEAL PROCESS RELATED TO ZONING BOARD PROCEEDINGS, CONSIDER INPUT ON MOTION FOR INJUNCTIVE RELIEF |
| L210 | PTN | 20080228 | 0.60 | 300.00 | EDIT AMENDED COMPLAINT |
| L220 | PTN | 20080228 | 3.40 | 1,700.00 | EDIT AMENDED MOTION FOR PRELIMINARY INJUNCTION |
| L120 | PTN | 20080228 | 0.40 | 200.00 | CONFERENCES AND EMAIL WITH TEAM REGARDING STRATEGY |
| L120 | PTN | 20080229 | 0.90 | 450.00 | UPDATE RESEARCH REGARDING KEY ISSUES |
| L210 | PTN | 20080229 | 1.70 | 850.00 | CONTINUE EDITING AMENDED COMPLAINT, AMENDED MOTION FOR INJUNCTIVE RELIEF, RELATED PAPERS, EMAIL WITH TEAM REGARDING SAME |
| L220 | PTN | 20080303 | 1.00 | 500.00 | CONTINUE EDITING BRIEF IN SUPPORT OF AMENDED MOTION FOR INJUNCTIVE RELIEF |
| L120 | PTN | 20080303 | 0.40 | 200.00 | EMAIL AND CONFERENCES WITH TEAM REGARDING STATUS, STRATEGY |
| L210 | PTN | 20080304 | 1.90 | 950.00 | FINAL EDITS TO AMENDED COMPLAINT, EMAIL AND CONFERENCES WITH TEAM REGARDING STATUS, STRATEGY, EMAIL WITH CLIENT REGARDING SAME, CONTINUE ANALYZING STRATEGY FOR MOTION FOR INJUNCTIVE RELIEF |
| L120 | PTN | 20080305 | 0.70 | 350.00 | CONTINUE ANALYZING STRATEGY FOR AMENDED MOTION FOR INJUNCTIVE RELIEF |
| L120 | PTN | 20080307 | 0.10 | 50.00 | REVIEW MINUTE ORDER ENTERED BY JUDGE SHADUR |
| L120 | PTN | 20080307 | 0.30 | 150.00 | FOLLOW-UP EMAIL WITH CLIENT REGARDING RESULTS OF HEARING, OVERALL STRATEGY |
| L220 | PTN | 20080310 | 0.60 | 300.00 | EDIT BRIEF SUPPORTING MOTION FOR INJUNCTIVE RELIEF |
| L120 | PTN | 20080310 | 0.20 | 100.00 | CONFERENCE WITH P. STAHL REGARDING STATUS, STRATEGY |
| L120 | PTN | 20080311 | 0.10 | 50.00 | TELEPHONE CONFERENCE AND EMAIL WITH J. MURPHY REGARDING SAME |
| L120 | PTN | 20080311 | 0.60 | 300.00 | DRAFT EXTENSIVE EMAIL TO MURPHY/STERK REGARDING CITY'S MISCONDUCT IN REFUSING TRANSFER STAMPS UNTIL WATER BILL IS PAID, FOLLOW-UP WITH P. STAHL REGARDING SAME |
| L120 | PTN | 20080311 | 0.20 | 100.00 | TELEPHONE CONFERENCE WITH A. WALKER REGARDING STATUS |
| L120 | PTN | 20080311 | 0.30 | 150.00 | EMAIL REGARDING CALUMET CITY INTERFERENCE WITH CLOSINGS, CONSIDER STRATEGY, FOLLOW-UP EMAIL WITH TEAM |
| L120 | PTN | 20080312 | 0.10 | 50.00 | REVIEW MINUTE ORDER ENTERED BY JUDGE SHADUR |
| L120 | PTN | 20080313 | 0.20 | 100.00 | EMAIL WITH TEAM REGARDING STATUS, STRATEGY |
| L120 | PTN | 20080314 | 0.20 | 100.00 | CONFERENCES WITH M. HANEL REGARDING STATUS |
| L120 | PTN | 20080317 | 0.30 | 150.00 | EMAIL AND CONFERENCE WITH TEAM REGARDING STATUS, STRATEGY |
| L120 | PTN | 20080319 | 0.10 | 50.00 | EMAIL WITH T. JOSEPH REGARDING STATUS |
| L120 | PTN | 20080325 | 1.00 | 500.00 | STRATEGY MEETING WITH P. STAHL |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L120 | PTN | 20080325 | 0.50 | 250.00 | REVIEW EMAIL FROM CALUMET CITY REGARDING DECISION TO NOT ENFORCE ORDINANCE AGAINST A. WALKER, EMAIL AND TELEPHONE CONFERENCE WITH P. STAHL REGARDING SAME, CONSIDER STRATEGY |
| L120 | PTN | 20080325 | 0.80 | 400.00 | MULTIPLE EXTENSIVE EMAILS WITH T. JOSEPH, TEAM, S. BOCHENEK, R. HOLMEN REGARDING STATUS, STRATEGY FOR MULTIPLE HEARINGS THIS WEEK |
| L120 | PTN | 20080326 | 0.20 | 100.00 | TELEPHONE CONFERENCE WITH T. JOSEPH REGARDING RESULTS OF HEARING |
| L120 | PTN | 20080326 | 0.40 | 200.00 | DRAFT SUMMARY OF RESULTS OF HEARING |
| L230 | PTN | 20080326 | 0.90 | 450.00 | PREPARE FOR AND ATTEND STATUS HEARING, FOLLOW-UP CONFERENCE WITH TEAM. |
| L120 | PTN | 20080327 | 0.40 | 200.00 | RESEARCH LAW REGARDING PREVAILING PARTY'S ENTITLEMENT TO ATTORNEY FEES WHERE COURT ISSUES PRELIMINARY INJUNCTION AND DEFENDANT THEREAFTER MOOTS CLAIM |
| L120 | PTN | 20080327 | 0.20 | 100.00 | EMAIL AND CONFERENCES WITH TEAM, CLIENT REGARDING STATUS |
| L120 | PTN | 20080328 | 0.10 | 50.00 | EMAIL WITH T. JOSEPH REGARDING STATUS, STRATEGY |
| L120 | PTN | 20080331 | 0.10 | 50.00 | REVIEW MEMO ON WHETHER CALUMET CITY IS JUDICIALLY ESTOPPED FROM TRYING TO MOOT WALKER'S CLAIM, CONSIDER STRATEGY |
| L120 | PTN | 20080331 | 0.10 | 50.00 | REVIEW MINUTE ORDER ENTERED BY JUDGE SHADUR |
| L120 | PTN | 20080403 | 0.10 | 50.00 | EMAIL WITH T. JOSEPH REGARDING STATUS, STRATEGY. |
| L120 | PTN | 20080407 | 0.30 | 150.00 | MULTIPLE EMAILS WITH CLIENT, TEAM, REGARDING STATUS, STRATEGY, POTENTIAL NEW PLAINTIFF |
| L120 | PTN | 20080408 | 0.10 | 50.00 | EMAIL WITH P. STAHL REGARDING STATUS, STRATEGY |
| L120 | PTN | 20080408 | 0.10 | 50.00 | CONFERENCE WITH M. HANEL REGARDING JUDICIAL ESTOPPEL RESEARCH |
| L120 | PTN | 20080409 | 0.30 | 150.00 | REVIEW MEMO ON JUDICIAL ESTOPPEL DEFENSE TO CAL CITY'S CHANGE OF POSITION |
| L120 | PTN | 20080409 | 0.50 | 250.00 | CONFERENCE WITH P. STAHL REGARDING STATUS, STRATEGY |
| L120 | PTN | 20080410 | 0.40 | 200.00 | REVIEW MOTION FOR LEAVE TO FILE AFFIDAVIT REGARDING WALKER PROPERTY, CONSIDER STRATEGY, FOLLOW UP EMAIL WITH TEAM. |
| L120 | PTN | 20080411 | 0.20 | 100.00 | CONFERENCE WITH P. STAHL REGARDING STATUS, STRATEGY IN LIGHT OF CAL CITY'S RECENT FILINGS. |
| L120 | PTN | 20080415 | 0.40 | 200.00 | DRAFT EXTENSIVE EMAIL TO CLIENT REGARDING STATUS, FOLLOW-UP EMAILS WITH CLIENT, TEAM |
| L520 | PTN | 20080421 | 0.40 | 200.00 | CONTINUE RESEARCH REGARDING REPLY BRIEF. |
| L120 | PTN | 20080422 | 0.10 | 50.00 | EMAIL WITH T. JOSEPH REGARDING STATUS, STRATEGY. |
| L120 | PTN | 20080425 | 1.50 | 750.00 | PREPARE FOR AND ATTEND TEAM STRATEGY MEETING |
| L120 | PTN | 20080505 | 0.10 | 50.00 | EMAIL WITH T. JOSEPH REGARDING STATUS |
| L120 | PTN | 20080506 | 0.20 | 100.00 | EMAIL WITH J. MURPHY REGARDING FORM OF DISMISSAL ORDER, CONSIDER STRATEGY |
| L120 | PTN | 20080506 | 0.50 | 250.00 | FOLLOW-UP CONFERENCE WITH P. STAHL |
| L120 | PTN | 20080507 | 1.70 | 850.00 | DRAFT AND EDIT LETTER TO JUDGE SHADUR REGARDING PROPOSED  FORM OF ORDER, EMAIL WITH P. STAHL REGARDING SAME |
| L120 | PTN | 20080507 | 1.90 | 950.00 | EDIT PROPOSED FORM OF ORDER DISMISSING CLAIM AS MOOT, DRAFT EMAIL TO J. MURPHY REGARDING SAME, EMAIL AND CONFERENCES WITH TEAM REGARDING SAME |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L120 | PTN | 20080508 | 1.90 | 950.00 | DRAFT AND EDIT MEMORANDA SUPPORTING ENTRY OF ORDER GRANTING WALKER PERMANENT RELIEF, EMAIL AND CONFERENCE WITH TEAM REGARDING SAME |
| L120 | PTN | 20080508 | 0.20 | 100.00 | EDIT LETTER TO JUDGE SHADUR REGARDING PROPOSED ORDER ON MOOTNESS |
| L120 | PTN | 20080508 | 0.30 | 150.00 | CONFERENCE AND EMAIL WITH M. HANEL REGARDING STATUS, STRATEGY |
| L120 | PTN | 20080508 | 0.20 | 100.00 | CONTINUE EDITING PROPOSED FORM OF ORDER OF DISMISSAL |
| L120 | PTN | 20080508 | 0.10 | 50.00 | CONFERENCE WITH M. SEMISCH REGARDING RESEARCH ISSUES |
| L120 | PTN | 20080508 | 0.80 | 400.00 | DRAFT AND EDIT STATUS REPORT TO CLIENT |
| L120 | PTN | 20080508 | 0.20 | 100.00 | EMAIL WITH CLIENT, TEAM REGARDING STRATEGY MEETING |
| L120 | PTN | 20080508 | 1.60 | 800.00 | PREPARE FOR AND ATTEND STATUS HEARING, FOLLOW-UP CONFERENCE WITH P. STAHL |
| L120 | PTN | 20080509 | 0.50 | 250.00 | MULTIPLE TELEPHONE CONFERENCES WITH J. MURPHEY, JUDGE SHADUR'S CLERK REGARDING PROPOSED HEARING ON THE FORM OF THE ORDER DISMISSING  CASE, EMAIL TO MURPHEY REGARDING SAME |
| L120 | PTN | 20080509 | 0.90 | 450.00 | CONTINUE EDITING MEMO SUPPORTING ENTRY OF ORDER, INCLUDING EMAIL AND CONFERENCES WITH TEAM |
| L120 | PTN | 20080509 | 0.30 | 150.00 | EMAIL AND CONFERENCES WITH TEAM REGARDING PROPOSED FORM OF ORDER ON DISMISSAL OF WALKER LAWSUIT |
| L120 | PTN | 20080511 | 0.10 | 50.00 | EMAIL WITH T. JOSEPH REGARDING STATUS |
| L120 | PTN | 20080512 | 0.40 | 200.00 | MULTIPLE EMAILS AND TELEPHONE CONFERENCES WITH T. JOSEPH, TEAM REGARDING STATUS |
| L250 | PTN | 20080513 | 1.00 | 500.00 | FINAL EDITS TO MEMO SUPPORTING ENTRY OF ORDER PROVIDING PERMANENT RELIEF, PREPARE SAME FOR FILING, DRAFT LETTER TO JUDGE SHADUR REGARDING SAME |
| L120 | PTN | 20080513 | 0.40 | 200.00 | EMAIL AND CONFERENCES WITH TEAM REGARDING STATUS, STRATEGY |
| L120 | PTN | 20080514 | 0.50 | 250.00 | REVIEW CITY'S RESPONSE TO MEMORANDUM SUPPORTING ENTRY OF ORDER, CONSIDER STRATEGY |
| L120 | PTN | 20080514 | 0.50 | 250.00 | EMAIL AND CONFERENCES WITH TEAM, T. JOSEPH, R. HOLMEN REGARDING STATUS, STRATEGY |
| L120 | PTN | 20080515 | 0.60 | 300.00 | DRAFT REPORT OF HEARING FOR CLIENT, FOLLOW-UP EMAILS WITH CLIENT, TEAM |
| L250 | PTN | 20080515 | 1.10 | 550.00 | PREPARE FOR HEARING REGARDING FORM OF DISMISSAL ORDER, FOLLOW-UP CONFERENCE WITH P. STAHL REGARDING SAME |
| L120 | PTN | 20080515 | 0.90 | 450.00 | EMAIL AND CONFERENCES WITH TEAM, CLIENT REGARDING STATUS, STRATEGY |
| L120 | PTN | 20080516 | 1.30 | 650.00 | EDIT PROPOSED ORDER DISMISSING CLAIM, EMAIL WITH P. STAHL REGARDING SAME |
| L120 | PTN | 20080518 | 0.20 | 100.00 | MULTIPLE EMAILS WITH TEAM REGARDING STRATEGY |
| L120 | PTN | 20080519 | 0.90 | 450.00 | EMAIL WITH J. MURPHEY REGARDING PROPOSED ORDER REGARDING DISMISSAL OF WALKER LITIGATION, EDIT ORDER, CONSIDER STRATEGY, CONFERENCE WITH TEAM |
| L120 | PTN | 20080520 | 0.40 | 200.00 | EMAIL WITH J. MURPHEY REGARDING PROPOSED FORM OF ORDER REGARDING DISMISSAL, CONFERENCE WITH P. STAHL REGARDING SAME |
| L120 | PTN | 20080521 | 0.30 | 150.00 | PREPARE FOR HEARING BEFORE JUDGE SHADUR REGARDING SAME |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L120 | PTN | 20080521 | 0.10 | 50.00 | EMAIL WITH J. MURPHEY REGARDING ORDER OF DISMISSAL |
| L120 | PTN | 20080522 | 0.80 | 400.00 | PREPARE FOR AND PARTICIPATE IN HEARING BEFORE JUDGE SHADUR REGARDING FORM OF ORDER TO ENTER IN CONNECTION WITH WALKER DISMISSAL |
| L120 | PTN | 20080522 | 0.10 | 50.00 | EMAIL WITH T. JOSEPH REGARDING STATUS |
| L120 | PTN | 20080523 | 0.10 | 50.00 | REVIEW ORDER ENTERED BY JUDGE SHADUR |
| L120 | PTN | 20080527 | 0.10 | 50.00 | TELEPHONE CONFERENCE WITH A. WALKER REGARDING DEVELOPMENTS IN LITIGATION |
| L120 | PTN | 20080603 | 0.10 | 50.00 | EMAIL TO J. MURPHY REGARDING RECORDING JUDGE SHADUR'S ORDER |
| L120 | PTN | 20080603 | 0.10 | 50.00 | EMAIL WITH TEAM REGARDING FILING MOTION FOR ATTORNEY FEES IN WALKER LITIGATION |
| L120 | PTN | 20080603 | 0.30 | 150.00 | TELEPHONE CONFERENCE AND EMAIL WITH A. WALKER REGARDING RESULTS OF LITIGATION |
| L120 | PTN | 20080604 | 0.70 | 350.00 | CONFERENCES WITH TEAM REGARDING STATUS, STRATEGY FOR MOTION FOR AWARD OF ATTORNEY FEES |
| L120 | PTN | 20080605 | 0.50 | 250.00 | REVIEW MEMO ANALYZING RIGHT TO RECOVER ATTORNEYS FEES, CONFERENCES AND EMAIL WITH TEAM REGARDING SAME |
| L250 | PTN | 20080609 | 2.20 | 1,100.00 | REVIEW DRAFT MOTION FOR ATTORNEY FEES, UPDATE RESEARCH REGARDING SAME, MULTIPLE EMAILS WITH TEAM REGARDING SAME |
| L120 | PTN | 20080610 | 0.10 | 50.00 | EMAIL WITH T. JOSEPH REGARDING STATUS |
| L250 | PTN | 20080610 | 0.30 | 150.00 | EMAIL AND CONFERENCES WITH TEAM REGARDING ATTORNEY FEE MOTION |
| L250 | PTN | 20080611 | 1.80 | 900.00 | EDIT MOTION FOR ATTORNEY FEES, EMAIL WITH TEAM REGARDING SAME |
| L250 | PTN | 20080612 | 0.90 | 450.00 | FINAL EDITS TO MOTION FOR ATTORNEYS FEES, INCLUDING EMAIL AND CONFERENCES WITH TEAM, PREPARE SAME, RELATED PAPERS FOR FILING |
| L120 | PTN | 20080616 | 0.60 | 300.00 | PREPARE FOR HEARING ON MOTION FOR ATTORNEY FEES |
| L120 | PTN | 20080617 | 0.50 | 250.00 | REVIEW TRANSCRIPT FOR WALKER HEARINGS, ASSESS NEED TO SUPPLEMENT MOTION FOR ATTORNEYS' FEES |
| L120 | PTN | 20080617 | 0.10 | 50.00 | REVIEW MINUTE ORDER ENTERED BY JUDGE SHADUR |
| L120 | PTN | 20080617 | 0.20 | 100.00 | EMAIL WITH T. JOSEPH REGARDING STATUS |
| L250 | PTN | 20080617 | 1.20 | 600.00 | PREPARE FOR AND ATTEND HEARING ON MOTION FOR ATTORNEY FEES IN WALKER LITIGATION |
| L250 | PTN | 20080721 | 2.10 | 1,050.00 | REVIEW CALUMET CITY'S RESPONSE TO PETITION FOR FEES, PREPARE FOR HEARING ON MOTION |
| L120 | PTN | 20080722 | 0.10 | 50.00 | TELEPHONE CONFERENCE WITH A. WALKER REGARDING STATUS, POTENTIAL DAMAGE CLAIM |
| L250 | PTN | 20080722 | 1.00 | 500.00 | CONTINUE PREPARING FOR HEARING ON MOTION FOR ATTORNEY FEES, INCLUDING OUTLINING KEY ARGUMENTS |
| L120 | PTN | 20080723 | 0.80 | 400.00 | PREPARE FOR HEARING ON MOTION FOR ATTORNEY FEES |
| L120 | PTN | 20080724 | 0.10 | 50.00 | REVIEW MINUTE ORDER ENTERED BY JUDGE SHADUR |
| L120 | PTN | 20080724 | 1.00 | 500.00 | OUTLINE STRATEGY FOR SUPPLEMENTAL BRIEF ON FEE PETITION |
| L250 | PTN | 20080724 | 2.00 | 1,000.00 | PREPARE FOR AND ATTEND HEARING ON MOTION FOR ATTORNEY FEES, FOLLOW-UP CONFERENCE WITH TEAM REGARDING SAME |
| L120 | PTN | 20080725 | 0.10 | 50.00 | CONTINUE WORKING ON STRATEGY FOR RENEWED FEE PETITION, INCLUDING EMAIL WITH TEAM |
| L120 | PTN | 20080729 | 0.10 | 50.00 | EMAIL WITH TEAM REGARDING STRATEGY FOR ATTORNEY FEE MOTION |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L120 | PCS | 20070914 | 0.50 | 345.00 | REVIEW INFORMATION REGARDING NEW PLAINTIFF, AYANNA WALKER, AND PREPARE FOR MEETING. ATTENTION TO STANDING ISSUES AND AMENDED COMPLAINT, CONFER WITH P. NASH. |
| L120 | PCS | 20070917 | 1.50 | 1,035.00 | MEETING WITH P. NASH, MS. WALKER REGARDING HER CLAIMS AND BECOMING A PLAINTIFF IN SUIT. REVIEW, EDIT PROPOSED AMENDED COMPLAINT. CONFER WITH P. NASH REGARDING MOTION AND STRATEGY. PREPARE REPORT TO CLIENT. |
| L120 | PCS | 20070920 | 1.20 | 828.00 | REVIEW ISSUES AND STRATEGY REGARDING STANDING ISSUES IF WALKER IS ADDED AS PLAINTIFF. CONFER WITH P. NASH REGARDING SAME. REVIEW CALUMET CITY OPPOSITION TO MOTION FOR LEAVE TO AMEND. ASSESS OPTIONS. |
| L120 | PCS | 20070921 | 0.40 | 276.00 | PREPARE FOR HEARING BEFORE JUDGE SHADUR. |
| L120 | PCS | 20070924 | 2.00 | 1,380.00 | PREPARATION AND COURT APPEARANCE BEFORE JUDGE SHADUR ON MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND TO REGARDING-ENTER INJUNCTION. CONFER WITH MR. JOSEPH REGARDING SAME. PREPARE REPORT TO CLIENT. |
| L120 | PCS | 20071002 | 0.60 | 414.00 | REVIEW REPORT REGARDING HOUSTON'S CLAIM AND ASSESS EFFECT ON MS. WALKER'S CLAIM. OUTLINE DISCOVERY AND CASE PLAN FOR MS. WALKER'S CLAIM. |
| L120 | PCS | 20071005 | 0.20 | 138.00 | CONTINUE WORK ON STRATEGY FOR WALKER CLAIM. |
| L120 | PCS | 20071009 | 0.70 | 483.00 | REVIEW CALUMET CITY MOTION AND MEMORANDUM AND OUTLINE RESPONSE. PREPARE FOR COURT APPEARANCE; CONFER WITH P. NASH. |
| L120 | PCS | 20071011 | 0.50 | 345.00 | PREPARATION FOR COURT APPEARANCE ON MOTION TO DISMISS, INCLUDING CONFERENCE WITH P. NASH. |
| L120 | PCS | 20071012 | 0.80 | 552.00 | COURT APPEARANCE BEFORE JUDGE SHADUR. CONFER WITH CLIENT REGARDING SAME. REVIEW MOTION IN COURT OF APPEALS REGARDING SCHEDULE IN DISTRICT COURT. |
| L120 | PCS | 20071017 | 0.50 | 345.00 | PREPARE ACTION PLAN FOR WALKER'S CASE. |
| L120 | PCS | 20071018 | 1.10 | 759.00 | MEETING WITH P. NASH, M. HANEL, D. BUNNIN REGARDING WALKER MOTION FOR PRELIMINARY INJUNCTION. OUTLINE ALTERNATIVES. |
| L120 | PCS | 20071022 | 1.20 | 828.00 | MEETING WITH P. NASH, M. HANEL, D. BUNNIN REGARDING WALKER'S SUIT, MOTION FOR PRELIMINARY INJUNCTION. |
| L120 | PCS | 20071024 | 0.60 | 414.00 | CONFER WITH MS. KRIETER REGARDING STRATEGY AND ACTION PLAN. |
| L120 | PCS | 20071030 | 2.00 | 1,380.00 | REVIEW WALKER BRIEF SUPPORTING INJUNCTIVE RELIEF AND ASSESS REFILING. REVIEW MLS DATA FOR HEARING ON TRO OR PI. |
| L120 | PCS | 20071031 | 3.00 | 2,070.00 | CONFERENCE CALL WITH MS. KRIETER, MR. JOSEPH REGARDING STATUS AND STRATEGY; FINAL REVIEW AND EDIT OF MS. WALKER'S MEMO SUPPORTING REQUEST FOR TRO AND PI. CONFER WITH P. NASH REGARDING SAME. |
| L120 | PCS | 20071101 | 1.20 | 828.00 | PREPARATION FOR HEARING ON WALKER'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF, INCLUDING CONFERENCE WITH P. NASH, EMAIL WITH M. HANEL. |
| L120 | PCS | 20071102 | 2.50 | 1,725.00 | PREPARATION AND COURT APPEARANCE ON TRO MOTION. CONFER WITH TEAM REGARDING AMENDMENT OF COMPLAINT IN LIGHT OF COURT'S COMMENTS. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L120 | PCS | 20071106 | 1.30 | 897.00 | PREPARATION AND CLIENT BRIEFING; MORe (KRIETER, JOSEPH), NAR (HOLMEN), IAR (BOCHENEK), P. NASH M. HANEL REGARDING STATUS AND STRATEGY. REVIEW REPORT REGARDING CALUMET CITY THREATENED DECONVERSION IN ABSENCE OF INJUNCTION. |
| L120 | PCS | 20071108 | 1.10 | 759.00 | REVIEW, ANALYSIS OF CALUMET CITY OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION. ANALYSIS OF DAMAGES CLAIMS AND POTENTIAL WILLIAMSON ISSUES. |
| L120 | PCS | 20071113 | 2.40 | 1,656.00 | COURT APPEARANCE, HEARING ON MOTION FOR PRELIMINARY INJUNCTION. FOLLOW UP REGARDING SAME. REVIEW STRATEGIC OPTIONS IN LIGHT OF COURT'S VIEWS ON ORDINANCE. |
| L120 | PCS | 20071114 | 1.00 | 690.00 | ATTENTION TO ISSUES RAISED BY POSSIBLE AMENDMENT OF ORDINANCE. PREPARE MEMO TO CALUMET CITY COUNSEL REGARDING STIPULATIONS AND PROCEDURES TO SECURE FINAL DECISION ON MERITS. |
| L120 | PCS | 20071120 | 0.60 | 414.00 | REVIEW TIMELINE OF PRIOR MOTIONS AND CALUMET CITY AMENDMENT OF ORDINANCE IN PREPARATION FOR STATUS HEARING. PREPARE FOR HEARING. |
| L120 | PCS | 20071121 | 2.00 | 1,380.00 | PREPARATION AND STATUS REPORT BEFORE JUDGE SHADUR. PREPARE REPORT TO ASSOCIATIONS. |
| L120 | PCS | 20071219 | 0.20 | 138.00 | CONFER WITH P. NASH RE SETTLEMENT PROPOSAL. |
| L120 | PCS | 20080102 | 0.30 | 217.50 | REVIEW P. NASH DRAFT TO MURPHEY AND COMMENT. |
| L510 | PCS | 20080107 | 0.50 | 362.50 | ATTEND MEETING REGARDING STATUS. |
| L120 | PCS | 20080107 | 1.00 | 725.00 | PREPARE FOR AND ATTEND TEAM STRATEGY MEETING. |
| L120 | PCS | 20080129 | 0.20 | 145.00 | CONFER WITH P. NASH, D. BUNNIN, M. HANEL REGARDING STATUS, STRATEGY AND ACTION PLAN. |
| L120 | PCS | 20080208 | 0.60 | 435.00 | REVIEW DRAFT MOTION REGARDING CALUMET CITY INJUNCTION AND CARTER DECLARATION. CONFER WITH P. NASH REGARDING SAME AND STRATEGY. |
| L120 | PCS | 20080214 | 0.40 | 290.00 | REVIEW REPORT ON COURT APPEARANCE. PREPARATION FOR STATUS CONFERENCE. |
| L120 | PCS | 20080215 | 1.10 | 797.50 | CONFER WITH P. NASH, M. HANEL REGARDING STATUS HEARING AND ACTION PLAN, PREPARATION OF WRITTEN REPORT. REVIEW, EDIT DRAFT REPORT. REVIEW FINAL REPORT AND MEMO FROM CLIENT. |
| L120 | PCS | 20080218 | 0.70 | 507.50 | REVIEW STATUS REPORT. PREPARE FOR STATUS CONFERENCE WITH JUDGE SHADUR. CONFER WITH CLIENT (KREITER) REGARDING STATUS. |
| L120 | PCS | 20080219 | 2.00 | 1,450.00 | COURT APPEARANCE FOR STATUS HEARING. CONFER WITH P. NASH, M. HANEL REGARDING AMENDED COMPLAINT, BRIEF, ARGUMENTS, DISCOVERY REGARDING PI MOTION. REVIEW ORDINANCE REGARDING CONSTITUTIONAL DEFECTS. |
| L120 | PCS | 20080222 | 1.50 | 1,087.50 | REVIEW, REVISE SECOND AMENDED COMPLAINT AND PROVIDE EDITS TO P. NASH. DEVELOP FACTS FOR PI MOTION AND BRIEFING. |
| L120 | PCS | 20080303 | 1.10 | 797.50 | REVIEW SECOND AMENDED COMPLAINT, BLACK DECLARATION, ANALYSIS OF FACIAL AND AS APPLIED CHALLENGES, ASSESS STRATEGY FOR PI. |
| L120 | PCS | 20080304 | 1.80 | 1,305.00 | REVIEW, REVISE SECOND AMENDED COMPLAINT. REVIEW MR. JOSEPH'S MEMO. ATTENTION TO MOTION FOR PI. |
| L120 | PCS | 20080310 | 0.20 | 145.00 | CONFER WITH P. NASH REGARDING STRATEGY AND MOTION FOR PI; CONSIDER OVERALL STRATEGY. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L120 | PCS | 20080325 | 1.00 | 725.00 | CONFER WITH P. NASH REGARDING STATUS, STRATEGY AND APPEARANCES BEFORE JUDGE, LATEST TACTICS BY CAL CITY. |
| L120 | PCS | 20080326 | 1.40 | 1,015.00 | PREPARATION AND ATTEND STATUS CONFERENCE (JUDGE SHADUR).  CONFER WITH P. NASH REGARDING SAME.  DEVELOP STRATEGY AND LEGAL THEORIES. |
| L120 | PCS | 20080409 | 0.30 | 217.50 | CONFER WITH P. NASH REGARDING STATUS AND STRATEGY: MOOTNESS AND MOTIONS. |
| L120 | PCS | 20080416 | 0.60 | 435.00 | REVIEW MR. JOSEPH'S REQUEST FOR STATUS REPORTS.  REVISE DRAFTS.  CONFER WITH MR. JOSEPH REGARDING SAME AND PRESENTATION. |
| L120 | PCS | 20080512 | 0.70 | 507.50 | CONFERENCE CALL WITH CLIENT (MS. KRIETER, MR. JOSEPH, EXECUTIVE COMMITTEE) REGARDING STATUS AND STRATEGY IN WALKER CASE. FOLLOW-UP REGARDING SAME WITH P. NASH AND CONFER REGARDING HEARING ON WALKER ORDER WITH JUDGE SHADUR. |
| L120 | PCS | 20080514 | 0.30 | 217.50 | REVIEW CALUMET CITY POSITION REGARDING DISPOSITION OF WALKER CASE AND ORDER TO BE ENTERED.  CONFER WITH P. NASH REGARDING SAME AND APPEARANCE BEFORE JUDGE SHADUR. |
| L120 | PCS | 20080515 | 1.10 | 797.50 | PREPARATION AND COURT APPEARANCE BEFORE JUDGE SHADUR REGARDING ORDER.  FOLLOW-UP REGARDING SAME AND CONFER WITH P. NASH.  REPORT TO CLIENTS. |
| L120 | PCS | 20080611 | 0.30 | 217.50 | REVIEW DRAFT ATTORNEYS' FEE MOTION.  DRAFT NOTE TO P. NASH REGARDING SAME. |
| L220 | MMH | 20071012 | 0.30 | 84.00 | MEET WITH P. NASH REGARDING RESPONSE TO MOTION TO DISMISS AND FOLLOW-UP SAME WITH LEGAL ASSISTANT. |
| L220 | MMH | 20071016 | 2.00 | 560.00 | BEGIN TO RESEARCH ISSUE OF REMOTENESS AND STANDING, BEGIN TO OUTLINE RESPONSE TO MOTION TO DISMISS. |
| L250 | MMH | 20071018 | 3.00 | 840.00 | COMPARE MOTION TO DISMISS TO MOTION TO DISSOLVE PRELIMINARY INJUNCTION TO OUTLINE STRATEGY FOR RESPONDING TO MOTION TO DISMISS; RESEARCH LAW OF THE CASE DOCTRINE AND STANDARD FOR MOTION TO DISMISS. |
| L250 | MMH | 20071019 | 0.70 | 196.00 | REVISE OPPOSITION TO MOTION TO DISMISS. |
| L250 | MMH | 20071022 | 7.30 | 2,044.00 | BEGIN TO DRAFT MOTION TO DISMISS; ATTEND MEETING REGARDING STATUS OF CASE. |
| L120 | MMH | 20071023 | 0.40 | 112.00 | LOCATE PROPERTY FILES FOR WALKER INJUNCTION MOTION. |
| L250 | MMH | 20071023 | 1.00 | 280.00 | REVISIONS TO RESPONSE TO MOTION TO DISMISS. |
| L320 | MMH | 20071024 | 0.10 | 28.00 | CONTINUE TO LOCATE PROPERTY FILES (.10); REVIEW CLIENT E-MAIL REGARDING NAR REQUEST (.10). |
| L250 | MMH | 20071024 | 3.00 | 840.00 | REVISE MOTION, ORDER, COVER LETTER AND OTHER DOCUMENTS ACCOMPANYING MEMORANDUM IN SUPPORT OF WALKER'S MOTION FOR PRELIMINARY INJUNCTION; CITE CHECK MEMORANDUM; REVIEW PETITION; CONFERENCES AND EMAIL WITH P. NASH. |
| L250 | MMH | 20071025 | 1.10 | 308.00 | REVISE RESPONSE TO MOTION TO DISMISS. |
| L320 | MMH | 20071030 | 0.10 | 28.00 | MEET WITH LEGAL ASSISTANT TO DISCUSS REVIEW OF CALUMET CITY PROPERTY FILES. |
| L220 | MMH | 20071030 | 2.40 | 672.00 | REVISE VERIFIED COMPLAINT FOR WALKER AND DRAFT RELATED DOCUMENTS INCLUDING CIVIL ACTION FORM, APPEARANCES, SUMMONS AND VERIFICATION INCLUDING CONFERENCES WITH P. NASH (2.4) |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L220 | MMH | 20071031 | 6.60 | 1,848.00 | CONTINUE TO PREPARE DRAFT VERIFIED COMPLAINT AND RELATED PAPERS; INCORPORATE P. NASH REVISIONS TO SAME; MEET WITH A. WALKER REGARDING VERIFICATION; REVIEW COPIES TO ENSURE ACCURACY OF FILING; FILE COMPLAINT; SERVE CALUMET CITY COUNSEL; E-MAIL FILING TO CLIENT. |
| L320 | MMH | 20071102 | 0.10 | 28.00 | COMMUNICATE WITH LEGAL ASSISTANT REGARDING REVIEW OF PROPERTY FILES. |
| L220 | MMH | 20071102 | 4.80 | 1,344.00 | FOLLOW-UP TRO HEARING BY RESEARCHING ISSUE OF STANDING AND SUMMARIZE SAME (4.3); ATTEND MEETING WITH P. STAHL AND P. NASH (.50). |
| L120 | MMH | 20071106 | 1.00 | 280.00 | PREPARE FOR AND ATTEND CALL WITH CLIENT. |
| L220 | MMH | 20071107 | 4.50 | 1,260.00 | REVISE RETAINER LETTER FOR WALKER; ENSURE PROPER SERVICE OF OCTOBER 31 COMPLAINT; BEGIN TO RESEARCH EXCEPTION TO MOOTNESS DOCTRINE. |
| L220 | MMH | 20071112 | 1.40 | 392.00 | REVISE LETTER TO SHADUR ENCLOSING COPY OF FILING AND REVIEW STANDING ORDER REGARDING COURT CLOSURE; REVISE WALKER VERIFICATION BASED ON CHANGES IN PLEADINGS AND COMMUNICATE WITH WALKER REGARDING SIGNATURE OF VERIFICATION; ENSURE ACCURACY OF FILING AND REVIEW COURT COPY; UPDATE RESEARCH WHETHER DEPRIVATION OF CONSTITUTIONAL RIGHT IS IRREPARABLE INJURY. |
| L220 | MMH | 20071113 | 0.90 | 252.00 | RESEARCH WHETHER DEPRIVATION OF CONSTITUTIONAL RIGHT IS IRREPARABLE INJURY. |
| L220 | MMH | 20071114 | 0.50 | 140.00 | REVIEW P. STAHL E-MAIL REGARDING TIMELINE OF CALUMET CITY MISCONDUCT; MEET WITH P. NASH REGARDING SAME; FOLLOW-UP SAME BY CALLING BARB FROM TINLEY PARK MORE OFFICE. |
| L220 | MMH | 20071115 | 4.00 | 1,120.00 | BEGIN TO DRAFT TIMELINE IN RESPONSE TO P. STAHL REQUEST; COMMUNICATE WITH CLIENT TO IDENTIFY THE NUMBER OF CLOSED AND OPEN LISTINGS IN CALUMET CITY; SEND SUMMARY OF SAME TO P. STAHL AND P. NASH. |
| L220 | MMH | 20071116 | 1.80 | 504.00 | REVIEW E-MAIL REGARDING SERVICE OF PROCESS; REVISE TIMELINE OF EVENTS IN ORIGINAL CALUMET CITY LITIGATION AND E-MAIL SAME TO P. NASH; REVIEW P. STAHL E-MAIL REGARDING STATUS. |
| L220 | MMH | 20071119 | 5.00 | 1,400.00 | REVIEW TRANSCRIPTS AND CORRESPONDENCE; REVISE SUMMARY OF SAME PER CONVERSATION WITH P. NASH; REVIEW NOTICE OF SERVICE. |
| L260 | MMH | 20071119 | 0.50 | 140.00 | REVIEW FILED MOTIONS, LOCAL RULES REGARDING UNPUBLISHED OPINIONS AND REVISE RULE 5.3 LETTER TO COURT. |
| L120 | MMH | 20080105 | 0.10 | 30.50 | REVIEW P. NASH EMAIL REGARDING AGENDA FOR REALTOR ASSOCIATION MEETING. |
| L510 | MMH | 20080107 | 0.50 | 152.50 | ATTEND MEETING REGARDING STATUS, STRATEGY. |
| L220 | MMH | 20080128 | 0.30 | 91.50 | REVIEW AGENDA FOR MEETING AND PREPARE FOR MEETING BY RESEARCHING RELATED CASE DOCTRINE |
| L220 | MMH | 20080129 | 0.20 | 61.00 | ATTEND TEAM STRATEGY MEETING |
| L220 | MMH | 20080201 | 1.50 | 457.50 | BEGIN TO DRAFT SUPPLEMENTAL MEMORANDUM IN SUPPORT OF INJUNCTIVE RELIEF. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L220 | MMH | 20080204 | 0.40 | 122.00 | CALL WITH P. NASH AND T. JOSEPH TO DISCUSS STRATEGY FOR CALUMET CITY; MEET WITH P. NASH REGARDING SUPPLEMENTAL MEMORANDUM IN SUPPORT OF INJUNCTIVE RELIEF; REVIEW EMAIL FROM P. NASH AND T. JOSEPH TO DETERMINE FACTS RELATING TO SALE OF 321 PULASKI. |
| L220 | MMH | 20080205 | 2.50 | 762.50 | CONTINUE TO REVISE SUPPLEMENTAL MEMORANDUM IN SUPPORT OF INJUNCTIVE RELIEF INCLUDING EMAIL WITH P. NASH RE SAME; CALL BROKER TO DISCUSS FACTS OF SALE AT 321 PULASKI. |
| L220 | MMH | 20080206 | 4.10 | 1,250.50 | CALL 321 PULASKI REALTOR TO DISCUSS SALE OF 321 PULASKI; FOLLOW-UP SAME BY DRAFTING DECLARATION IN SUPPORT OF RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION; REVISE MOTION ACCORDINGLY, EMAIL WITH P. NASH RE SAME. |
| L220 | MMH | 20080207 | 4.30 | 1,311.50 | MEET WITH P. NASH TO DISCUSS THE RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION; FOLLOW-UP SAME BY REVISING DECLARATION IN SUPPORT OF RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION; REVISING RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION AND REVIEW EXHIBITS TO SAME. |
| L220 | MMH | 20080208 | 1.40 | 427.00 | RESPOND TO P. NASH EMAIL REGARDING 424-426 SIBLEY BLVD.; AMEND C. CARTER'S DECLARATION AND CALL C. CARTER REGARDING SAME. |
| L220 | MMH | 20080212 | 2.00 | 610.00 | CALL CARTER TO DISCUSS DECLARATION IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY INJUNCTION (.20); REVISE DECLARATIONS IN RESPONSE TO CALL (.20); REVIEW RENEWED MOTION (.30); REVISE CITATIONS IN MOTION AND REVISE NOTICE OF MOTION (.20); CHECK EXHIBITS TO MOTION AND COURTESY COPY (.60); REVISE LETTER TO COURT (.10); EMAIL COPY OF RENEWED MOTION AND EXHIBITS TO CLIENT AND SPEAK WITH CLIENT ABOUT THE RENEWED MOTION (.30); RESPOND TO CALL FROM OWNER OF SIBLEY PROPERTY (.10). |
| L220 | MMH | 20080214 | 1.00 | 305.00 | REVIEW STATUS REPORT; COLLECT EXHIBITS TO SAME AND DRAFT COVER LETTER TO COURT. |
| L220 | MMH | 20080214 | 1.00 | 305.00 | PREPARE FOR AND ATTEND HEARING REGARDING RENEWED MOTION FOR PRELIMINARY INJUNCTION. |
| L220 | MMH | 20080215 | 0.40 | 122.00 | ATTEND MEETING WITH P. STAHL AND P. NASH REGARDING STATUS REPORT AND SIBLEY PROPERTY EMAIL CLIENT A COPY OF STATUS REPORT; RESPOND TO CALL FROM SIBLEY PROPERTY OWNER. |
| L220 | MMH | 20080218 | 0.10 | 30.50 | EMAIL DEFENSE COUNSEL COPY OF STATUS REPORT FOR FEBRUARY 19 STATUS HEARING. |
| L220 | MMH | 20080219 | 3.20 | 976.00 | CALL CLIENT TO REQUEST MLS INFORMATION FOR PENDING AND LISTED CITY PROPERTY AND RESPOND TO CLIENT EMAIL ENCLOSING MLS INFORMATION; REVIEW PREVIOUS NOTICE TO CITY AND BEGIN TO REVISE NOTICE. |
| L220 | MMH | 20080219 | 0.80 | 244.00 | PREPARE FOR AND ATTEND STRATEGY MEETING WITH P. NASH AND P. STAHL REGARDING RENEWED BRIEFING SCHEDULE. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L220 | MMH | 20080220 | 3.70 | 1,128.50 | ASSIST IN DRAFTING AMENDED COMPLAINT AND MOTION; REVISE NOTICE TO MOR MEMBERS; DRAFT LETTER TO CITY COUNSEL AND REVISE SAME; REVIEW WALKER'S PROPERTY FILE. |
| L220 | MMH | 20080221 | 2.60 | 793.00 | REVIEW EMAIL TO CLIENT REGARDING NOTICE AND REVIEW SECOND AMENDED COMPLAINT; BEGIN TO RESEARCH ADMINISTRATIVE PROCEDURE ACT AND AFFECT ON ZONING BOARD OF APPEALS. |
| L220 | MMH | 20080222 | 0.10 | 30.50 | RESPOND TO P. STAHL EMAIL REQUESTING THE NUMBER OF CITY CLOSINGS FROM 2006 UNTIL THE PRESENT. |
| L220 | MMH | 20080222 | 2.50 | 762.50 | BEGIN TO DRAFT MEMORANDUM ON ADMINISTRATIVE PROCEDURE ACT AND AFFECT ON ZONING BOARD OF APPEALS (2.2); REVIEW CITY BRIEFING IN REFERENCE TO ZONING BOARD OF APPEALS AND REVIEW CITY DISCOVERY PERTAINING TO ZONING BOARD OF APPEALS (.30). |
| L220 | MMH | 20080225 | 1.70 | 518.50 | RESPOND TO CALL FROM CLIENT REGARDING MLS INFORMATION DETAILING THE NUMBER OF CLOSINGS FROM 2006 UNTIL PRESENT; REVIEW AND SUMMARIZE EMAIL FROM CLIENT ENCLOSING MLS INFORMATION (.40); CONTINUE TO ANALYZE CITY BRIEF IN OPPOSITION TO COMPLAINT TO ASCERTAIN CITY'S POSITION REGARDING THE ZONING BOARD OF APPEALS (.40); REVISE MEMORANDUM REGARDING JURISDICTION AND APPEAL RIGHTS TO ZONING BOARD OF APPEALS TO REFLECT CITY'S POSITION (.90). |
| L210 | MMH | 20080226 | 1.20 | 366.00 | RESPOND TO CALL FROM WALKER REGARDING COMPENSATION FOR LOST SALE AND VERIFICATION TO SECOND AMENDED VERIFIED COMPLAINT (.20); REVISE MEMORANDUM REGARDING ZONING BOARD OF APPEALS AND DISCOVERY REQUESTS (.90); REVIEW CODE ENFORCEMENT ORDINANCE (.10). |
| L310 | MMH | 20080227 | 0.30 | 91.50 | REVIEW EXHIBITS TO SECOND AMENDED VERIFIED COMPLAINT (.10); REVISE AND FILE SECOND SET OF INTERROGATORIES AND DOCUMENT REQUESTS (.20). |
| L210 | MMH | 20080228 | 0.30 | 91.50 | MEET WITH WALKER TO REVIEW SECOND AMENDED COMPLAINT AND TO REQUEST SIGNATURE FOR VERIFICATION. |
| L220 | MMH | 20080303 | 4.70 | 1,433.50 | RESEARCH WHETHER MUNICIPALITY MAY ENFORCE ZONING ORDINANCE IN MANNER THAT DEPRIVES PROPERTY OWNER OF RIGHT TO TRANSFER PROPERTY (3.9); DRAFT SUMMARY OF SAME IN EMAIL TO P. NASH (.80). |
| L210 | MMH | 20080304 | 0.80 | 244.00 | PREPARE SECOND AMENDED COMPLAINT FOR FILING BY REVIEWING COMPLAINT, REVISING EXHIBITS TO SAME COURT COPY AND SERVICE OF OPPOSING COUNSEL. |
| L220 | MMH | 20080304 | 0.40 | 122.00 | BEGIN TO DRAFT AMENDED MOTION FOR INJUNCTIVE RELIEF BY REVIEWING COMPLAINT, EXHIBITS, COURT COPY AND SERVE OPPOSING COUNSEL. |
| L220 | MMH | 20080305 | 0.60 | 183.00 | CONTINUE TO DRAFT AMENDED MOTION FOR INJUNCTIVE RELIEF BY REVIEWING SUPPORTING MEMORANDUM AND ORIGINAL MOTION FOR INJUNCTIVE RELIEF AND OUTLINING MOTION. |
| L220 | MMH | 20080306 | 1.80 | 549.00 | REVISE AMENDED MOTION FOR INJUNCTIVE RELIEF; REVIEW AND REVISE EXHIBITS TO SUPPORTING MEMORANDUM; REVIEW AND REVISE LETTER TO COURT AND NOTICE OF MOTION. |
| L220 | MMH | 20080311 | 0.30 | 91.50 | DRAFT AMENDED MOTION FOR INJUNCTIVE RELIEF. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L250 | MMH | 20080317 | 0.30 | 91.50 | CONTINUE TO REVISE DRAFT MOTION FOR INJUNCTIVE RELIEF. |
| L250 | MMH | 20080320 | 0.40 | 122.00 | MEET WITH P. NASH REGARDING SAME. |
| L320 | MMH | 20080326 | 0.10 | 30.50 | REVIEW FILES RELATING TO WALKER'S RENTAL DWELLING INSPECTION PRODUCED BY CITY DURING 3/26/08 HEARING. |
| L190 | MMH | 20080401 | 0.10 | 30.50 | REVIEW TRANSCRIPTS RECEIVED FROM JUDGE SHADUR ON APRIL 1. |
| L260 | MMH | 20080402 | 0.20 | 61.00 | COORDINATE FILING AND SERVICE OF SECOND AMENDED VERIFIED CLASS ACTION COMPLAINT. |
| L190 | MMH | 20080402 | 0.10 | 30.50 | REVIEW COURT DOCKET AND SPEAK WITH JUDGE SHADUR'S DEPUTY TO DETERMINE WHETHER APRIL 7 STATUS HEARING WAS RESCHEDULED. |
| L220 | MMH | 20080408 | 4.60 | 1,403.00 | CONTINUE TO RESEARCH WHETHER JUDICIAL ESTOPPEL APPLIES TO REPRESENTATIONS TO THE COURT BY RESEARCHING WHETHER GAINING AN ADVANTAGE IN LITIGATION IS SUFFICIENT TO PREVAIL ON AN EARLIER POSITION, CONFER WITH P. NASH. |
| L510 | DPB | 20070913 | 0.90 | 310.50 | RESEARCH ISSUES REGARDING CITATION OF AUTHORITIES AND LEAVE TO AMEND TO ADD NEW PLAINTIFFS |
| L510 | DPB | 20071018 | 0.60 | 207.00 | PREPARE FOR AND ATTEND MEETING WITH M. HANEL, P. STAHL, P. NASH REGARDING MOTION TO DISMISS, PI |
| L510 | DPB | 20071024 | 2.80 | 966.00 | DRAFT PETITION FOR REHEARING EN BANC; REVISE PETITION FOR REHEARING REGARDING DISMISSAL |
| L210 | DPB | 20071111 | 0.80 | 276.00 | DRAFT WALKER/CLASS ACTION AMENDED COMPLAINT |
| L210 | DPB | 20071112 | 0.20 | 69.00 | REVISE AMENDED COMPLAINT |
| L190 | DPB | 20080129 | 0.20 | 69.00 | MEET WITH P. STAHL AND P. NASH REGARDING NEXT STEPS IN MATTER |
| L250 | DPB | 20080425 | 1.20 | 414.00 | MEETING WITH P. STAHL, P. NASH AND M. HANEL REGARDING STATUS, STRATEGY AND TASKS |
| L250 | DPB | 20080428 | 0.60 | 207.00 | REVIEW WALKER PLEADINGS AND BRIEFS |
| L250 | DPB | 20080522 | 1.60 | 552.00 | DRAFT MEMO REGARDING LR 54.3 REGARDING MOTION FOR FEES |
| L250 | DPB | 20080522 | 2.60 | 897.00 | RESEARCH ISSUES REGARDING FEE MOTION |
| L250 | DPB | 20080523 | 1.10 | 379.50 | RESEARCH FEE MOTION ISSUE |
| L250 | DPB | 20080530 | 2.70 | 931.50 | WALKER:  RESEARCH REGARDING FEE MOTION |
| L250 | DPB | 20080602 | 1.00 | 345.00 | RESEARCH FEE MOTION ISSUES |
| L250 | DPB | 20080603 | 2.60 | 897.00 | RESEARCH ISSUES REGARDING ATTORNEY FEE MOTION |
| L250 | DPB | 20080603 | 1.10 | 379.50 | DRAFT MEMO REGARDING LR 54.3 |
| L250 | MAS | 20080508 | 1.30 | 396.50 | RESEARCH SEVENTH CIRCUIT CASE LAW ADDRESSING THE IMPORT OF ORDERS ENTERED WITH AND WITHOUT PREJUDICE. |
| L250 | MAS | 20080508 | 1.40 | 427.00 | RESEARCH CASE LAW FOR PROPOSITION THAT AN ACTION IS NOT MOOT UNLESS THE PLAINTIFF RECEIVES ALL RELIEF SHE IS ENTITLED TO. |
| L250 | MAS | 20080604 | 0.70 | 213.50 | MEETING W/ P. NASH & J. DONOHO REGARDING RESEARCH NEEDED TO DRAFT MOTION AND MEMORANDUM FOR ATTORNEY FEES |
| L250 | MAS | 20080609 | 1.00 | 305.00 | REVIEW J. DONOHO'S DRAFT MEMORANDUM SEEKING ATTORNEY FEES; BEGIN REVIEWING CASE LAW CITED THEREIN; EMAIL P. NASH WITH UPDATE ON MOTION. |
| L250 | MAS | 20080610 | 0.30 | 91.50 | REVIEW AND REVISE MOTION FOR ATTORNEY FEES. |
| L250 | MAS | 20080611 | 0.20 | 61.00 | REVIEW MOTION FOR ATTORNEY FEES AND PROVIDE FEEDBACK TO P. NASH. |
| L250 | MAS | 20080612 | 1.30 | 396.50 | PREPARE NOTICE OF MOTION AND EXHIBITS FOR FILING OF ATTORNEY FEES MOTION; DRAFT LETTER TO ACCOMPANY JUDGE'S COPY. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|---|---|---|---|---|---|
| L250 | JRD | 20080604 | 3.20 | 640.00 | RESEARCHED & DRAFTED MEMO REGARDING WALKER'S MOTION FOR ATTORNEY'S FEES |
| L250 | JRD | 20080604 | 3.20 | 640.00 | RESEARCHED AND DRAFTED MEMO REGARDING WALKER'S MOTION FOR ATTORNEY'S FEES |
| L250 | JRD | 20080605 | 3.30 | 660.00 | RESEARCHED WALKER'S MOTION FOR ATTORNEY FEES |
| L250 | JRD | 20080605 | 1.30 | 260.00 | DRAFTED MEMO REGARDING WALKER'S MOTION FOR ATTORNEY FEES |
| L460 | JRD | 20080606 | 3.20 | 640.00 | DRAFTED MEMO IN SUPPORT OF WALKER'S MOTION FOR ATTORNEY FEES |
| L250 | JRD | 20080606 | 1.00 | 200.00 | RESEARCHED CASES REGARDING WALKER'S MOTION FOR ATTORNEY FEES |
| L250 | JRD | 20080606 | 1.20 | 240.00 | DRAFTED MEMO REGARDING CASES REGARDING WALKER'S MOTION FOR ATTORNEY FEES |
| L460 | JRD | 20080609 | 0.30 | 60.00 | DISCUSSED REVISIONS WITH MARK SEMISCH |
| L460 | JRD | 20080609 | 4.40 | 880.00 | DRAFT MEMO IN SUPPORT OF WALKER'S MOTION FOR ATTORNEY FEES |
| L460 | JRD | 20080610 | 2.50 | 500.00 | DRAFT WALKER'S MOTION FOR ATTORNEY FEES |
| L460 | JRD | 20080611 | 1.20 | 240.00 | COLLABORATED WITH MARK SEMISCH AND PAT NASH TO UPDATE WALKER'S MOTION FOR ATTORNEY FEES |
| L460 | JRD | 20080721 | 0.20 | 40.00 | DISCUSSED CAL CITY'S RESPONSE TO MOTION FOR ATTORNEY FEE'S WITH P. NASH |
| L460 | JRD | 20080721 | 1.00 | 200.00 | REVIEWED CAL CITY'S RESPONSE TO MOTION FOR ATTORNEY FEES |
| L460 | JRD | 20080724 | 0.70 | 140.00 | HEARING REGARDING MOTION FOR ATTORNEY FEES BEFORE JUDGE SHADUR |
| L460 | JRD | 20080725 | 1.00 | 200.00 | RESEARCHED MEMO IN SUPP. OF ATTORNEY FEES |
| L460 | JRD | 20080728 | 3.00 | 600.00 | DRAFTED MEMO REGARDING CALCULATING ATTORNEY FEES |
| L460 | JRD | 20080728 | 3.00 | 600.00 | RESEARCHED MEMO REGARDING CALCULATING ATTORNEY FEES |
| L460 | JRD | 20080729 | 1.20 | 240.00 | DRAFTED MEMO REGARDING CALCULATING ATTORNEY FEES |
| L460 | JRD | 20080730 | 6.40 | 1,280.00 | DRAFTED MEMO IN SUPPORT OF MOTION FOR ATTORNEY FEES |
| L140 | JMS | 20070913 | 0.40 | 78.00 | REVIEW AND ANALYZE RECENTLY RECEIVED PLEADINGS AND CORRESPONDENCE; UPDATE CASE INDEX WITH RELEVANT DOCUMENTS. |
| L510 | JMS | 20070913 | 0.30 | 58.50 | PLAN AND PREPARE FOR FILING BY GATHERING EXHIBITS. |
| L210 | JMS | 20070913 | 0.10 | 19.50 | REVIEW AND ANALYZE PLEADINGS AND E-MAIL REQUESTED DOCUMENT TO M. HANEL FOR REVIEW. |
| L140 | JMS | 20070917 | 0.10 | 19.50 | MEET WITH M. HAFTER REGARDING BACKGROUND OF CASE TO ASSIST WITH DRAFTING OF WALKER RETENTION LETTER. |
| L510 | JMS | 20070917 | 1.40 | 273.00 | PLAN AND PREPARE FOR FILING BY GATHERING AND ORGANIZING EXHIBITS. |
| L140 | JMS | 20071002 | 0.20 | 39.00 | REVIEW AND ANALYZE CASE FILE TO DETERMINE IF WE HAVE A PROPERTY FILE FOR AYANNA WALKER, PER M. HANEL REQUEST. |
| L210 | JMS | 20071016 | 0.10 | 19.50 | REVIEW AND ANALYZE RECENTLY RECEIVED ORDER; UPDATE DOCKET WITH SCHEDULED DATES. |
| L210 | JMS | 20071022 | 0.40 | 78.00 | REVIEW AND ANALYZE PLEADINGS; PROVIDE REQUESTED DOCUMENTS FOR M. HANEL TO REVIEW IN PREPARATION OF FILING RESPONSE TO MOTION TO DISMISS. |
| L140 | JMS | 20071022 | 0.10 | 19.50 | REVIEW AND ANALYZE CASE FILE; PROVIDE ALL HEARING TRANSCRIPTS TO M. HANEL FOR REVIEW. |
| L140 | JMS | 20071023 | 3.30 | 643.50 | REVIEW AND ANALYZE CASE FILE AND VARIOUS OTHER LOCATIONS FOR PROPERTY FILES. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L140 | JMS | 20071031 | 0.10 | 19.50 | TELEPHONE CALL WITH COURT REPORTER TO ORDER 10-25-07 HEARING TRANSCRIPT, PER M. HANEL REQUEST. |
| L210 | JMS | 20071031 | 0.10 | 19.50 | PLAN AND PREPARE FOR PROCESS SERVICE BY REVIEWING CALUMET CITY WEBSITE TO DETERMINE WHO WILL RECEIVE PROCESS. |
| L210 | JMS | 20071031 | 3.70 | 721.50 | PLAN AND PREPARE FOR FILING OF NEW COMPLAINT BY GATHERING AND ORGANIZING EXHIBITS AND ASSISTING M. HANEL WITH FILING AND SERVICE. |
| L140 | JMS | 20071105 | 0.30 | 58.50 | REVIEW AND ANALYZE CASE FILE AND PROVIDE REQUESTED CORRESPONDENCE TO M. HANEL FOR REVIEW. |
| L210 | JMS | 20071105 | 0.50 | 97.50 | SCAN MEMO IN SUPPORT OF TRO AND SEND TO CLERK'S OFFICE TO TRY TO RECTIFY SCANNING ISSUES WITH THE DOCUMENT, PER M. HANEL REQUEST. |
| L140 | JMS | 20071106 | 0.80 | 156.00 | REVIEW AND ANALYZE RECENTLY RECEIVED E-MAILS AND ATTACHMENTS; PRINT RELEVANT DOCUMENTS FOR FILE AND INDEXING. |
| L140 | JMS | 20071108 | 2.70 | 526.50 | REVIEW AND ANALYZE RECENTLY RECEIVED PLEADINGS, CORRESPONDENCE AND MISCELLANEOUS DOCUMENTS; UPDATE CASE INDEX WITH RELEVANT DOCUMENTS. |
| L210 | JMS | 20071112 | 0.40 | 78.00 | PLAN AND PREPARE FOR TODAY'S FILING BY GATHERING AND ORGANIZING EXHIBITS. |
| L140 | JMS | 20071112 | 0.90 | 175.50 | ONLINE SEARCH FOR VARIOUS E-MAIL ADDRESSES OF OPPOSING COUNSEL IN ORDER TO SERVE PAPERS, PER M. HANEL REQUEST. |
| L140 | JMS | 20071115 | 0.60 | 117.00 | REVIEW AND ANALYZE ELECTRONIC CORRESPONDENCE FOR E-MAILS BETWEEN GRIPPO & ELDEN AND CALUMET CITY REGARDING PROPOSED ORDINANCES, PER M. HANEL REQUEST. |
| L140 | JMS | 20071115 | 0.10 | 19.50 | REVIEW AND ANALYZE CASE FILE AND PROVIDE M. HANEL WITH PLEADINGS INDEX TO ASSIST WITH DRAFTING OF TIMELINE. |
| L140 | JMS | 20071119 | 0.40 | 78.00 | REVIEW AND ANALYZE RECENTLY RECEIVED E-MAILS; PRINT RELEVANT DOCUMENTS FOR FILE AND INDEXING. |
| L140 | JMS | 20071119 | 0.10 | 19.50 | ARRANGE FOR PICK UP OF HEARING TRANSCRIPT FROM FEDERAL COURT. |
| L140 | JMS | 20071119 | 0.30 | 58.50 | REVIEW AND ANALYZE M. HANEL MEMO; GATHER AND ORGANIZE CITED HEARING TRANSCRIPTS. |
| L140 | JMS | 20071126 | 1.00 | 195.00 | REVIEW AND ANALYZE RECENTLY RECEIVED PLEADINGS, CORRESPONDENCE AND MISCELLANEOUS DOCUMENTS AND UPDATE CASE INDEX WITH RELEVANT DOCUMENTS. |
| L140 | JMS | 20071126 | 0.10 | 19.50 | TELEPHONE CALL WITH JUDGE SHADUR'S COURT REPORTER TO OBTAIN 11-21-07 HEARING TRANSCRIPT. |
| L140 | JMS | 20071126 | 0.20 | 39.00 | REVIEW AND ANALYZE RECENTLY RECEIVED HEARING TRANSCRIPT; UPLOAD INTO LITIGATION MANAGEMENT PROGRAM. |
| L210 | JMS | 20071126 | 0.10 | 19.50 | REVIEW AND ANALYZE RECENTLY RECEIVED PLEADINGS AND ORDERS; UPDATE DOCKET WITH SCHEDULED DATES. |
| L140 | JMS | 20071129 | 1.20 | 234.00 | REVIEW AND ANALYZE RECENTLY RECEIVED SHARED E-MAILS AND TRANSFER TO LITIGATION MANAGEMENT SYSTEM. |
| L140 | JMS | 20071205 | 0.20 | 39.00 | REVIEW AND ANALYZE RECENTLY RECEIVED E-MAILS AND ATTACHMENTS; PRINT RELEVANT DOCUMENTS FOR FILING AND INDEXING. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L140 | JMS | 20071213 | 0.20 | 39.00 | REVIEW AND ANALYZE RECENTLY RECEIVED HEARING TRANSCRIPT; UPLOAD INTO LITIGATION MANAGEMENT PROGRAM. |
| L140 | JMS | 20071217 | 0.20 | 39.00 | REVIEW AND ANALYZE RECENTLY RECEIVED E-MAILS AND ATTACHMENTS; PRINT RELEVANT DOCUMENTS FOR FILE AND INDEXING. |
| L140 | JMS | 20071219 | 0.70 | 136.50 | REVIEW AND ANALYZE RECENTLY RECEIVED PLEADINGS, CORRESPONDENCE AND MISCELLANEOUS DOCUMENTS; UPDATE CASE INDEX WITH RELEVANT DOCUMENTS. |
| L140 | JMS | 20080102 | 0.30 | 58.50 | REVIEW AND ANALYZE RECENTLY RECEIVED E-MAILS; PRINT RELEVANT DOCUMENTS FOR FILE AND INDEXING. |
| L140 | JMS | 20080109 | 0.20 | 39.00 | REVIEW AND ANALYZE RECENTLY RECEIVED E-MAILS AND ATTACHMENTS; PRINT RELEVANT DOCUMENTS FOR FILE AND INDEXING. |
| L210 | JMS | 20080109 | 0.40 | 78.00 | REVIEW AND ANALYZE PLEADINGS; PROVIDE D. BUNNIN WITH REQUESTED DOCUMENTS. |
| L140 | JMS | 20080118 | 0.30 | 58.50 | REVIEW AND ANALYZE RECENTLY RECEIVED E-MAILS AND ATTACHMENTS; PRINT RELEVANT DOCUMENTS FOR FILE AND INDEXING. |
| L510 | JMS | 20080118 | 0.30 | 58.50 | REVIEW AND ANALYZE PLEADINGS; PROVIDE REQUESTED DOCUMENTS TO D. BUNNIN FOR REVIEW. |
| L210 | JMS | 20080201 | 0.20 | 39.00 | REVIEW AND ANALYZE PLEADINGS; PROVIDE REQUESTED DOCUMENTS TO M. HANEL FOR REVIEW. |
| L210 | JMS | 20080204 | 0.30 | 58.50 | REVIEW AND ANALYZE PLEADINGS; PROVIDE M. HANEL WITH REQUESTED DOCUMENTS FOR REVIEW. |
| L140 | JMS | 20080205 | 1.80 | 351.00 | REVIEW AND ANALYZE RECENTLY RECEIVED PLEADINGS, CORRESPONDENCE AND MISCELLANEOUS DOCUMENTS; UPDATE CASE INDEX WITH RELEVANT INFORMATION. |
| L210 | JMS | 20080205 | 0.40 | 78.00 | REVIEW AND ANALYZE VOLUMINOUS M. HANEL-REQUESTED PLEADINGS, SCAN INTO LITIGATION MANAGEMENT SYSTEM AND E-MAIL TO HER FOR REVIEW. |
| L210 | JMS | 20080206 | 0.30 | 58.50 | PLAN AND PREPARE FOR FILING BY GATHERING AND ORGANIZING POTENTIAL EXHIBITS. |
| L210 | JMS | 20080207 | 0.10 | 19.50 | REVIEW AND ANALYZE PLEADINGS; PROVIDE M. HANEL WITH REQUESTED DATES TO ASSIST WITH DRAFTING REPLY BRIEF. |
| L210 | JMS | 20080208 | 0.10 | 19.50 | REVIEW AND ANALYZE PLEADINGS; PREPARE FOR NEXT STATUS HEARING. |
| L320 | JMS | 20080211 | 0.20 | 39.00 | REVIEW AND ANALYZE PROPERTY FILES TO DETERMINE IF WE HAVE A FILE FOR 424-6 SIBLEY, PER M. HANEL REQUEST. |
| L210 | JMS | 20080211 | 0.70 | 136.50 | PLAN AND PREPARE FOR FILING BY GATHERING AND ORGANIZING POTENTIAL EXHIBITS. |
| L210 | JMS | 20080214 | 0.10 | 19.50 | REVIEW AND ANALYZE PLEADINGS; PROVIDE M. HANEL WITH REQUESTED DOCUMENTS (INTL. CODE) FOR HER REVIEW. |
| L140 | JMS | 20080218 | 0.60 | 117.00 | REVIEW AND ANALYZE RECENTLY RECEIVED PLEADINGS, CORRESPONDENCE AND MISCELLANEOUS DOCUMENTS; UPDATE CASE INDEX WITH RELEVANT INFORMATION. |
| L140 | JMS | 20080218 | 0.50 | 97.50 | REVIEW AND ANALYZE RECENTLY RECEIVED E-MAILS AND ATTACHMENTS; PRINT RELEVANT DOCUMENTS FOR FILE AND INDEXING. |
| L140 | JMS | 20080219 | 0.40 | 78.00 | REVIEW AND ANALYZE CORRESPONDENCE FOR M. HANEL-REQUESTED DOCUMENTS (FAXES ENCLOSING MLS LISTS AND DRAFT REQUEST FOR INFORMATION TO BE SENT TO REALTORS FROM T. JOSEPH) AND PROVIDE TO HER FOR REVIEW. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|------------|------|-------|----------|-----------|
| L140 | JMS | 20080222 | 0.50 | 97.50 | REVIEW AND ANALYZE CASE FILE FOR CALUMET CITY DOCUMENT PRODUCTION; PROVIDE TO M. HANEL FOR REVIEW. |
| L210 | JMS | 20080226 | 1.00 | 195.00 | PLAN AND PREPARE FOR UPCOMING FILING BY GATHERING AND ORGANIZING POTENTIAL EXHIBITS. |
| L210 | JMS | 20080303 | 0.30 | 58.50 | PLAN AND PREPARE FOR FILING BY GATHERING NEWLY-ADDED EXHIBITS. |
| L210 | JMS | 20080304 | 0.10 | 19.50 | PLAN AND PREPARE FOR FILING BY COMPILING ADDITIONAL EXHIBITS. |
| L210 | JMS | 20080304 | 0.60 | 117.00 | PLAN AND PREPARE FOR FILING BY REVIEWING AND ANALYZING EXHIBIT SETS PAGE-BY-PAGE AND ENSURING SETS ARE COMPLETE FOR SERVICE, PER M. HANEL REQUEST. |
| L140 | JMS | 20080304 | 0.10 | 19.50 | REVIEW AND ANALYZE RECENTLY RECEIVED E-MAILS AND ATTACHMENTS; PRINT RELEVANT DOCUMENTS FOR FILE. |
| L210 | JMS | 20080305 | 0.30 | 58.50 | REVIEW AND ANALYZE PLEADINGS; PROVIDE M. HANEL WITH REQUESTED DOCUMENTS (PRIOR BRIEFING REGARDING TRO) FOR REVIEW. |
| L140 | JMS | 20080305 | 0.60 | 117.00 | REVIEW AND ANALYZE RECENTLY RECEIVED PLEADINGS, CORRESPONDENCE AND MISCELLANEOUS DOCUMENTS; UPDATE CASE INDEX WITH RELEVANT INFORMATION. |
| L140 | JMS | 20080305 | 0.20 | 39.00 | REVIEW AND ANALYZE RECENTLY RECEIVED E-MAILS AND ATTACHMENTS; PRINT RELEVANT DOCUMENTS FOR FILE AND INDEXING. |
| L210 | JMS | 20080305 | 0.20 | 39.00 | REVIEW AND ANALYZE RECENTLY RECEIVED ORDERS AND PLEADINGS; UPDATE DOCKET WITH RECENTLY SCHEDULED DATES. |
| L210 | JMS | 20080306 | 1.50 | 292.50 | PLAN AND PREPARE FOR UPCOMING FILING (MEMO IN SUPPORT OF PRELIMINARY INJUNCTION) BY GATHERING AND ORGANIZING EXHIBITS. |
| L140 | JMS | 20080313 | 0.30 | 58.50 | REVIEW AND ANALYZE RECENTLY RECEIVED E-MAILS AND ATTACHMENTS; PRINT RELEVANT DOCUMENTS FOR FILE AND INDEXING. |
| L140 | JMS | 20080324 | 0.20 | 39.00 | REVIEW AND ANALYZE E-MAILS AND ATTACHMENTS; PRINT RELEVANT DOCUMENTS FOR FILE AND INDEXING. |
| L320 | JMS | 20080326 | 0.10 | 19.50 | REVIEW AND ANALYZE DOCUMENT PRODUCTION; DRAFT PRODUCTION LOG WITH RELEVANT INFORMATION. |
| L210 | JMS | 20080326 | 0.50 | 97.50 | PLAN AND PREPARE FOR CAL CITY FILING BY PROOFING PLEADINGS, PER M. HANEL REQUEST. |
| L210 | JMS | 20080326 | 0.30 | 58.50 | REVIEW AND ANALYZE PLEADINGS AND PROVIDE REQUESTED DOCUMENTS TO D. BUNNIN FOR REVIEW. |
| L140 | JMS | 20080327 | 0.10 | 19.50 | REVIEW AND ANALYZE RECENTLY RECEIVED PLEADINGS AND ORDERS; UPDATE DOCKET WITH SCHEDULED DATES. |
| L140 | JMS | 20080327 | 0.50 | 97.50 | REVIEW AND ANALYZE RECENTLY RECEIVED PLEADINGS, CORRESPONDENCE AND MISCELLANEOUS DOCUMENTS; UPDATE CASE INDEX WITH RELEVANT INFORMATION. |
| L140 | JMS | 20080327 | 0.10 | 19.50 | TELEPHONE CALL WITH JUDGE SHADUR'S COURT REPORTER REGARDING OBTAINING TWO TRANSCRIPTS. |
| L140 | JMS | 20080401 | 0.30 | 58.50 | REVIEW AND ANALYZE RECENTLY RECEIVED E-MAILS AND ATTACHMENTS; PRINT RELEVANT DOCUMENTS FOR FILE AND REVIEW. |
| L140 | TLP | 20080409 | 0.20 | 39.00 | DOCKET DATES NOTICED BY CITY IN THE WALKER CASE |
| L140 | TLP | 20080414 | 0.30 | 58.50 | CONTACT COURT REPORTER AND ORDER THE TRANSCRIPT FROM THE HEARING AS PER THE REQUEST OF P. NASH. |

| CODE | TIMEKEEPER | DATE | HOURS | BILLED** | NARRATIVE |
|------|-----------|------|-------|----------|-----------|
| L450 | TLP | 20080422 | 0.50 | 97.50 | LOAD FIVE HEARING TRANSCRIPTS INTO LIVENOTE FOR REVIEW BY M. HANEL. |
| L140 | TLP | 20080428 | 0.20 | 39.00 | REVIEW NEW MINUTE ENTRY AND DOCKET RESCHEDULED STATUS HEARING. |
| L140 | TLP | 20080508 | 0.20 | 39.00 | CONTACT JUDGE SHADUR'S COURT REPORTER TO ORDER THE HEARING TRANSCRIPT FROM THE 5/6/08 HEARING. |
| L140 | TLP | 20080512 | 0.30 | 58.50 | BRIEFLY REVIEW RECENT FILINGS. DOCKET DATES FOR STATUS HEARING IN FRONT OF JUDGE SHADUR. |
| L450 | TLP | 20080520 | 0.30 | 58.50 | CONTACT COURT REPORTER TO OBTAIN HEARING TRANSCRIPTS IN J. ANDREW'S ABSENCE. ALL AS PER THE REQUEST OF P. NASH. |
| L140 | TLP | 20080522 | 0.70 | 136.50 | SEARCH FOR AND REVIEW PROPERTY FILES TO FIND FORMAL LEGAL DESCRIPTION OF WALKER PROPERTY. FORMAT AND SEND SAME TO P. NASH FOR REVIEW. |
| L450 | TLP | 20080617 | 1.10 | 214.50 | NUMEROUS CALLS WITH COURT REPORTER AND SUBSTITUTE COURT REPORTERS FOR JUDGE SHADUR TO OBTAIN TRANSCRIPTS.  LOAD SAME INTO LIVENOTE UPON RECEIPT. |
| L140 | TLP | 20080617 | 0.80 | 156.00 | REVIEW ON-LINE DOCKET AND SUBMIT DATES FOR MOTION AND HEARING ON ATTORNEY FEE MOTION TO FIRM DOCKET. |
| L140 | TLP | 20080625 | 0.20 | 39.00 | DOCKET DATE FOR SUBMISSION OF REDACTED TRANSCRIPT. |
| L140 | TLP | 20080626 | 1.10 | 214.50 | REVIEW, ORGANIZE AND INDEX ALL RECENT PLEADINGS AND CORRESPONDENCE.  ENSURE THAT ALL ARE FULLY SEARCHABLE IN LITIGATION MANAGEMENT SYSTEM FOR ATTORNEY REVIEW. |
| | | | | | |
| | | | | | |
| | | | 407.10 | 160,459.50 | |

# EXHIBIT L

## DETAILS OF COSTS REQUESTED BY WALKER

| CODE | | PAYEE | DATE | AMOUNT | NARRATIVE |
|---|---|---|---|---|---|
| 00005 | | PITNEY BOWES MANAGEM | 20070924 | 9.20 | DUPLICATING - OUTSIDE SERVICES-SUPPLIES AND EXPENSES |
| 00077 | | | 20070930 | 170.00 | DUPLICATING SERVICES CHARGES FOR THE MONTH OF SEPTEMBER 2007 @ $.10 PER PAGE. |
| 00076 | | | 20070930 | 43 16/41 | WESTLAW RESEARCH CHARGES FOR THE MONTH OF SEPTEMBER 2007 |
| 00072 | | | 20070930 | 1,204.15 | LEXIS RESEARCH CHARGES FOR THE MONTH OF SEPTEMBER 2007 |
| | 12 | PACER SERVICE CENTER | 20071004 | 6.96 | MISCELLANEOUS-PACER SERV. |
| 00007 | | CLERK OF THE U.S. DI | 20071031 | 350.00 | FILING FEES |
| 00077 | | | 20071031 | 86.50 | DUPLICATING SERVICES FOR THE MONTH OF OCTOBER 2007 @ $0.10 PER PAGE |
| 00071 | | | 20071031 | 2.00 | COURIER SERVICES CHARGES FOR THE MONTH OF OCTOBER 2007 |
| 00076 | | | 20071031 | 218.62 | WESTLAW RESEARCH CHARGES FOR THE MONTH OF OCTOBER 2007 |
| 00072 | | | 20071031 | 487.55 | LEXIS RESEARCH CHARGES FOR THE MONTH OF OCTOBER 2007 |
| 00018 | | EXCEL INVESTIGATIONS | 20071101 | 75.00 | SERVICE OF SUMMONS AND COMPLAINT ON CALUMET CITY |
| 00002 | | STANDARD COURIER | 20071109 | 3.33 | COURIER SERVICES |
| 00030 | | JESSE ANDREWS, CSR | 20071119 | 199.65 | HEARING TRANSCRIPTS |
| 00030 | | JESSE ANDREWS, CSR | 20071130 | 96.80 | HEARING TRANSCRIPTS |
| 00072 | | | 20071130 | 137.55 | LEXIS RESEARCH CHARGES FOR THE MONTH OF NOVEMBER 2007 |
| 00075 | | | 20071130 | 4.25 | FAX CHARGES FOR THE MONTH OF NOVEMBER 2007 |
| 00077 | | | 20071130 | 30.37 | DUPLICATING SERVICES CHARGES FOR THE MONTH OF NOVEMBER 2007 @ $0.10 PER PAGE |
| 00076 | | | 20071130 | 293.81 | WESTLAW RESEARCH CHARGES FOR THE MONTH OF NOVEMBER, 2007 |
| 00072 | | | 20071231 | 247.81 | LEXIS RESEARCH CHARGES FOR THE MONTH OF DECEMBER 2007 |
| 00012 | | PACER SERVICE CENTER | 20080107 | 7.52 | LEGAL AND FINANCIAL DATABASE SERVICE CHARGES FOR OCTOBER 1 AND DECEMBER 31, 2007. |
| 00077 | | | 20080131 | 8.67 | DUPLICATING SERVICES FOR THE MONTH OF JANUARY, 2008 @ $0.10 PER PAGE. |
| 00076 | | | 20080131 | 178.16 | WESTLAW RESEARCH CHARGES FOR JANUARY, 2008 |
| 00072 | | | 20080131 | 291.22 | LEXIS RESEARCH CHARGES FOR THE MONTH OF JANUARY, 2008 |
| 00077 | | | 20080229 | 54.50 | DUPLICATING SERVICES FOR THE MONTH OF FEBRUARY @ $0.10 PER PAGE |
| 00076 | | | 20080229 | 207.16 | WESTLAW RESEARCH CHARGES FOR THE MONTH OF FEBRUARY, 2008 |
| | 19 | PREMIER GLOBAL SERV | 20080319 | 62.18 | TELEPHON & TELECOPY-CONFERENCE CALL 11/06/2007 |
| 00030 | | ANDREWS, JESSE, CSR | 20080327 | 145.20 | TRANSCRIPTS OF HEARINGS ON 1/16/2008 AND 3/26/2008 |
| 00077 | | | 20080331 | 76.33 | DUPLICATING SERVICES CHARGES FOR THE MONTH OF MARCH, 2008 @ $0.10 PER PAGE |
| 00075 | | | 20080331 | 3.75 | TELEPHONE - FAX CHARGES FOR THE MONTH OF MARCH, 2008 |
| 00072 | | | 20080331 | 2.61 | LEXIS RESEARCH CHARGES FOR THE MONTH OF MARCH, 2008 |

## DETAILS OF COSTS REQUESTED BY WALKER

| | | | | |
|---|---|---|---|---|
| 00076 | | 20080331 | 1,113.56 | WESTLAW RESEARCH CHARGES FOR THE MONTH OF MARCH 2008 |
| 00012 | PACER SERVICE CENTER | 20080404 | 7.04 | MISCELLANEOUS-PACER SERV. |
| 00076 | | 20080430 | 171.49 | WESTLAW RESEARCH CHARGES FOR THE MONTH OF APRIL 2008 |
| 00002 | USM LOGISTICS | 20080517 | 1.75 | COURIER SERVICES |
| 00005 | LANDMARK LEGAL SOLUT | 20080527 | 152.85 | DUPLICATING - OUTSIDE SERVICES - DOCUMENT PRODUCTION |
| 00027 | FEDERAL EXPRESS CORP | 20080528 | 6.56 | COURIER-FEDERAL EXPRESS |
| 00075 | | 20080531 | 12.50 | FAX CHARGES FOR THE MONTH OF MAY 2008 |
| 00077 | | 20080531 | 67.67 | DUPLICATING SERVICES FOR THE MONTH OF MAY, 2008 @ $0.10 PER PAGE |
| 00076 | | 20080531 | 205.49 | WESTLAW RESEARCH CHARGES FOR THE MONTH OF MAY 2008 |
| 00072 | | 20080531 | 49.75 | LEXIS RESEARCH CHARGES FOR THE MONTH OF MAY, 2008 |
| 00030 | CAROLYN COX, CSR | 20080617 | 86.25 | TRANSCRIPT OF HEARING ON 5/15/2008 |
| 77 | | 20080630 | 16.77 | DUPLICATING SERVICES FOR THE MONTH OF JUNE 2008 @ $0.10 PER PAGE |
| 00076 | | 20080630 | 47.50 | WESTLAW RESEARCH CHARGES FOR THE MONTH OF JUNE 2008 |
| 00072 | | 20080630 | 26.20 | LEXIS RESEARCH CHARGES FOR THE MONTH OF JUNE, 2008 |
| 00012 | PACER SERVICE CENTER | 20080707 | 211.28 | LEGAL AND FINANCIAL DATABASE SERVICE CHARGES |
| 00077 | | 20080731 | 3.6 | DUPLICATING SERVICES FOR THE MONTH OF JULY 2008 @ $0.10 PER PAGE |
| 00076 | | 20080731 | 159.61 | WESTLAW RESEARCH CHARGES FOR THE MONTH OF APRIL 2008 |
| | | | 7,044.11 | |