IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AYANNA WALKER,                       )
                                     )
            Plaintiff,               )
                                     )
    v.                               )    No.  07 C 6148
                                     )
CALUMET CITY, ILLINOIS,              )
                                     )
            Defendant.               )

MEMORANDUM ORDER

All that remains in this once-hotly-contested but now closed case is the parties' dispute as to the allowability or nonallowability of a fee award to counsel for plaintiff Ayanna Walker ("Walker") under 42 U.S.C. §1988.[1] But "all that remains" is not at all a reaffirmation of T.S. Eliot's "This is the way the world ends Not with a bang but a whimper,"[2] for the legal efforts by Walker's counsel that ultimately led to her material success, coupled with the dismissal of the action on mootness grounds, were intensive, extensive and (as the end of this opinion confirms) expensive.

There is no disagreement between the litigants as to the sea change in Section 1988 jurisprudence that was wrought by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598 (2001), which rejected the catalyst

---

[1] All further references to Title 42's provisions will simply take the form "Section--."

[2] From The Hollow Men.

theory that had previously been applied to determinations under that statute. And both sides concur in the position that <u>Buckhannon</u> and our Court of Appeals' very recent application of that decision in <u>Zessar v. Keith</u>, 536 F.3d 788 (7th Cir. 2008) should control the resolution of the fee-shifting dispute.

In that respect the most recent (and final) submission by Calumet City ("City") correctly says that Walker and her counsel had sought to land bigger fish: a class-action declaration that the original ordinance that impaired Walker's ability to sell her property was unconstitutional. City avoided that ultimate confrontation by amending its ordinance, and if that had been all there was to it--if that amendment alone had mooted this case--nothing more than the catalyst theory could have been invoked by Walker, and <u>Buckhannon</u> would have commanded the denial of any Section 1988 fee award.

But that was <u>not</u> all. City's recharacterization of events may be ingenious, but it is overly simplistic, when its Supp. Mem. 4 says:

> There can be no argument--in this case the "defendant's change in conduct" was <u>not</u> "brought about by a judicial act exhibiting sufficient finality." It is the other way around. The judicial act of finality was brought about by the change of conduct.

To the contrary, when City receded to the position that Walker was currently free to sell her property, she still remained vulnerable to future adverse action by City. In response to the

2

consequent urging by Walker's counsel, this Court <u>ordered</u> City to confirm some important further undertakings as a precondition to this Court's determination that the case had become moot. As the May 22, 2008 Final Order of Dismissal ¶3 specified, to satisfy this Court's express requirements City not only committed itself to not otherwise enforcing its Point of Sale Inspection Ordinance as to Walker's property (other than requiring payment of the transfer tax) but also, and most importantly, made this permanent commitment:

> City has certified that the Subject Property is a legal nonconforming use under City's Zoning Ordinance, a status which runs with the land, and is subject to loss or elimination only for the reasons set forth in Section V of the Calumet City Zoning Ordinance, "Nonconforming Buildings and Uses," as that Ordinance currently exists.

To be sure, Walker did not thus obtain class-based relief (although it remains to be seen whether, in any of the remaining actions pending against City--or in any future actions--brought by property owners who also claim legal nonconforming use status, offensive issue preclusion may prevent City from relitigating the issues that it was forced to agree to in the Final Order of Dismissal here). But that is a red herring, because Walker does not seek fees for work done on class certification.

In summary, the situation here fits precisely the articulation of the <u>Buckhannon</u> standards, as set out in <u>Zessar</u>, 536 F.3d at 795-96 (emphasis added), defining when a plaintiff is

a prevailing party for the purpose of awarding attorney's fees under Section 1988:

> It is well-established that "prevailing party" as used in federal fee-shifting statutes like §1988 includes only those parties that have achieved a "judicially sanctioned change in the legal relationship of the parties." <u>Buckhannon</u>, 532 U.S. at 605. In other words, "to qualify as a prevailing party, a civil rights plaintiff must obtain <u>at least some relief</u> on the merits of his claim." <u>Farrar v. Hobby</u>, 506 U.S. 103, 111 (1992).
>
>        \*       \*       \*
>
> A party is considered prevailing for §1988 purposes when the court enters final judgment in its favor on <u>some portion</u> of the merits of its claims. <u>Buckhannon</u>, 532 U.S. at 605 (citing <u>Farrar</u>, 506 U.S. at 113).
>
>        \*       \*       \*
>
> Cases will sometimes arise where despite there being no final judgment or consent decree, the legal relationship of the parties will be changed due to a defendant's change in conduct <u>brought about by a judicial act exhibiting sufficient finality</u>.

And that being the case, Walker's motion for a Section 1988 award is granted.

That then logically leads to the question of quantification of the Section 1988 award. In that respect Walker's Reply in Support of Motion for Attorney's Fees concludes by explaining the substantial extent to which the aggregate fees incurred have been discounted for current purposes--through the end of July 2008, she seeks the sum of $160,459.50 in attorney's fees and $7,044.11 in expenses, plus interest.

To enable this Court to enter an appropriate award, a

4

responsive input from City's counsel is needed--and promptly--as to the proper amount to be awarded.  Without limiting the issues in that respect, on the subject of interest (a matter that has been addressed by this Court, as Walker's counsel points out, in <u>Lippo v. Mobil Oil Corp.</u>, 692 F.Supp. 826, 838-43 (N.D. Ill. 1988)), this Court draws the attention of both sides' counsel to the book issued in 1999 by the American Bar Association's Section of State and Local Government Law, authored by Professor Russell Lovell and titled <u>Court-Awarded Attorneys' Fees:  Examining Issues of Delay, Payment, and Risk</u>, and most particularly to the software program developed by Professor Lovell to provide a more precise interest determination (based on the value of the use of money) than the rough (and almost invariably erroneous) calculation that results from an across-the-board use of lawyers' current hourly rates as a surrogate for that more accurate figure.

                                                  _____

                                                  Milton I. Shadur
                                                  Senior United States District Judge

Date:   September 25, 2008