IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION

AYANNA WALKER,                    )
                                  )
              Plaintiff,          )
                                  )
     v.                           )      No. 07 C 6148
                                  )
CALUMET CITY, ILLINOIS,           )
                                  )
              Defendant.          )

                        MEMORANDUM ORDER

     This Court has just received the prompt response by counsel for Ayanna Walker ("Walker") to the September 29 supplement to this Court's earlier memorandum order that had addressed the appropriate award under 42 U.S.C. §1988[1] of attorney's fees and expenses in this action.[2] In the interest of concluding the matter as swiftly as possible, this further memorandum order is issued to identify the few issues that call for some further

---

[1] All further references to Title 42's provisions will simply take the form "Section--."

[2] Walker's counsel has followed the usual (but technically incorrect) practice of most lawyers by referring to "costs" rather than expenses as an addition to the fee award. But "costs" is more properly viewed as a term of art that is usually reserved for amounts taxable under 28 U.S.C. §1920 (see, e.g., this Court's opinion in Abbott Labs. v. Granite State Ins. Co., 104 F.R.D. 42 (N.D. Ill. 1984)) but that is also specified in Section 1988 itself as including a reasonable attorney's fee allowed to the prevailing party in Section 1983 litigation. Because of that definition, the caselaw applying Section 1988 has found it necessary to extend the statutory reference to "attorney's fees" to embrace out-of-pocket expenses as well.

input.

Before those issues are addressed, however, it should be made clear that the submission by Walker's counsel is impeccable in most respects. It has properly used Walker's lawyers' actual hourly rates as the measure of a reasonable award (see the Appendix), for nothing suggests that those rates that the law firm charges to its regular clients on a regular basis should be discounted here.[3] And the submission employs a sound methodology in building in an appropriate interest factor to account for the delay in the law firm's receipt of the current award, as contrasted with the firm's normal pattern of prompt billing and prompt client payment. Lastly, the request has employed a number of commendable restraints--in addition to applying the same 13% discount that the firm extends to the realtor associations that are its regular clients and that have been footing the bill for this litigation, page 2 of the current submission states:

> Consistent with her prior positions, Walker (1) does not seek fees for time spent by more than one attorney attending court hearings, (2) seeks only 33% of costs associated with duplicating services, and (3) seeks only 33% of research-related charges.

All of that said, though, this Court is left with one question and one comment:

    1. As for the unanswered question, both Walker's

---

[3] Nor have any of the parties' submissions provided any persuasive reason to depart--in either direction--from a pure lodestar approach to the determination of a reasonable fee.

2

current submission and the supporting declaration of attorney Philip Stahl represent that the 13% discount referred to above is "reflected" in the request. But does that mean, for example, that the 2007 and 2008 hourly rates set out in the current submission's Ex. B and in Ex. J to Walker's Reply in Support of Motion for Attorney's Fees are the actual rates charged to the clients **after** the 13% discount (in which case the calculations in those exhibits would be accurate), or are the listed rates the lawyers' normal rates **before** the discount (in which event the fee request should be reduced)?

2. Page 4 of the current submission states that this Court's final order should provide for a continued accrual of interest at the same average prime interest rate (6.05% per annum) until payment is made. But on that score, the fee award will really constitute a judgment, so that the normal post-judgment interest rate under 28 U.S.C. §1961 accounts for any delay in the payment of or collection on the judgment.

As soon as Walker's counsel respond on the two matters identified here, this Court anticipates quantifying the award of fees and expenses.

_____
Milton I. Shadur
Senior United States District Judge

Date: October 6, 2008

Appendix

Although City's counsel have sought to cut the rates requested by Walker's counsel, the very authority that City seeks to invoke for that purpose negates its counsel's argument. <u>Gautreaux v. CHA</u>, 491 F.3d 649 (7th Cir. 2007) is the latest appellate embodiment of a lawsuit with more than a four-decade history--a lawsuit with which this Court has intimate familiarity, for it was a principal member of the very small team of pro bono lawyers who brought that action in 1966, and it continued to act in that capacity for close to 1-1/2 decades until it was appointed a district judge.

Indeed, the key to City's mistaken invocation of <u>Gautreaux</u> as a basis for rate-cutting is the very fact that all the members of the initial <u>Gautreaux</u> litigation team and their successors <u>were</u> pro bono volunteers with no established market rate for our (and their) services to the <u>Gautreaux</u> class. Here, with citations and internal quotation marks omitted, is what our Court of Appeals has taught in that selfsame <u>Gautreaux</u> opinion that Calumet City's lawyers mistakenly try to enlist in their cause (491 F.3d at 659-60):

> In calculating reasonable attorneys' fees, the district court should first determine the lodestar amount by multiplying the reasonable number of hours worked by the market rate. The reasonable hourly rate used in calculating the lodestar must be based on the market rate for the attorney's work. The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for

> the type of work in question.  The burden of proving
> the market rate is on the party seeking the fee award.
> However, once an attorney provides evidence establish-
> ing his market rate, the opposing party has the burden
> of demonstrating why a lower rate should be awarded.
>
> Plaintiffs' attorneys have no paying clients, and so
> they presented evidence as to what their reasonable
> fees would have been through the affidavit of Attorney
> Lowell Sachnoff.

By sharp contrast, in this case there is a real market rate in the most classic sense:  what a willing buyer (here the actual clients) will really pay to a willing seller (here the law firm having an established track record with those actual clients). Those clients are not eleemosynary institutions devoted to funding the legal profession, and the payment of fees by the clients was not made with any assurance of their recapture via Section 1988.  No room thus exists for a challenge of the kind that City's counsel try to mount.  In short, the most recent word on the subject from our Court of Appeals--the 2007 chapter of a multivolume litigation history in <u>Gautreaux</u>--strongly supports Walker's position rather than City's.